**BUCHALTER, A Professional Corporation**
Harry W.R. Chamberlain II (Bar No. 95780)
Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
Email: *rmcwhorter@buchalter.com*
Jarrett S. Osborne-Revis (Bar No. 289193)
Email: *josbornerevis@buchalter.com*
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone:    916.495.5170

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: 949.477.5050

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; LENDER 1, a California corporation; LENDER 2, a California corporation; LENDER 3, a federally chartered credit union; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership, <br><br>　　　　　　　　　Plaintiffs,<br>　　　v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>　　　　　　　　　Defendant. | Case No.<br><br>**PLAINTIFFS' MOTION TO PROCEED UNDER A PSEUDONYM; MEMORANDUM OF POINTS AND AUTHORITIES** |

1

Plaintiffs, CALIFORNIA MORTGAGE ASSOCIATION, CALIFORNIA CREDIT UNION LEAGUE, UNITED TRUSTEES ASSOCIATION, nonprofit associations, CHEN WANG QIN, LENDER 1, a California corporation; LENDER 2, a California corporation; LENDER 3, a federally chartered credit union, BALBOA, LLC, WILLIAM TERRY HUNEFELD, POSTCITY FINANCIAL CREDIT UNION, BEACON DEFAULT MANAGEMENT, INC., and ZBS LAW, LLP (collectively, referred to as "Plaintiffs") will, and hereby do, move this Court for an order permitting Lender 1, Lender 2, and Lender 3 (collectively, "Lenders") to proceed under pseudonyms in this action, *without prejudice* to Defendant, California Attorney General, Rob Bonta's right to later petition this Court to move reveal Lenders' identities or to obtain reconsideration of any order granting this Application.

Plaintiffs seek this relief under Federal Rules of Civil Procedure 5.2, 10, and 17, this Court's Local Rules 133(h) and 140, and this Court's inherent authority. Plaintiffs seek to use pseudonyms for three lenders – Lender 1, Lender 2, and Lender 3 –two California corporations and a credit union that are members of two named Plaintiff trade associations: California Mortgage Association and the California Credit Union League. These Lenders' right to privacy based on the freedom of association guaranteed by the First Amendment outweighs the public's interest in disclosure of their identities, especially when Defendant will not suffer any prejudice from such nondisclosure. Defendant Rob Bonta has not appeared and has not been served with the Complaint.

Plaintiffs based their motion on the accompanying Memorandum of Points and Authorities, the Declarations of Bradley Laddusaw and Robert D. Wilson filed concurrently herewith, the Complaint, the pleadings and papers on file in this action, and on such further evidence and argument as may be presented at the hearing of this matter.

DATED: September 11, 2025                    BUCHALTER
                                              A Professional Corporation

                                              By: /s/Robert S. McWhorter
                                                   Robert S. McWhorter

WRIGHT, FINLAY & ZAK, LLP

By: */s/ T. Robert Finlay (as authorized by 9-11-2025)*
T. Robert Finlay

Attorneys for Plaintiffs CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; LENDER 1, a California corporation; LENDER 2, a California corporation; LENDER 3, a federally chartered credit union; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This action challenges the constitutionality and enforceability of California's recently enacted Assembly Bill 130 – a small yet sweeping bill buried within a 215-page budget package. AB 130 added Section 2924.13 to the California Civil Code – a sweeping new provision that aims to extinguish so-called Zombie mortgages on residential real property in California. Section 2924.13 redefines certain routine loan servicing practices for lenders holding junior liens on residential real property as "unlawful practices," and conditions foreclosure rights on compliance certifications under penalty of perjury that no unlawful practice ever occurred, even if federal law authorizes or mandates those practices. (Decl. of (Bradley Laddusaw ("Laddusaw Decl."), Ex. A.) Such unlawful conduct enables borrowers to block creditors from exercising their bargained-for legal remedies on their real-property collateral. It may even eliminate some or all of the secured junior debt.

On September 8, 2025, Plaintiffs sued Defendant, challenging Section 2924.13's constitutionality and enforceability. (Dkt. 1.) Plaintiffs include three trade associations, the CMA, the CCUL, and the UTA (collectively, "Plaintiff Associations") and various lenders and trustees. Three Plaintiffs — Lender 1, Lender 2, and Lender 3 ("Lenders") — are identified by a pseudonym and are being named to help establish associational standing for CMA and CCUL. Lender 1 and Lender 2 are CMA members. (Dkt. 1, [Compl. ¶¶ 13-16].) Lender 3 is a CCUL member. (Dkt. 1, [Compl. ¶¶ 20-21].)

This Court should permit Lenders to proceed anonymously for three reasons. First, an interim pseudonym filing order would avoid publicly exposing sensitive borrower information and risk harming Lenders' ongoing contractual rights and remedies against real property secured by Zombie mortgages. Second, an interim pseudonym filing order preserves Lenders' privacy, without exposing them to the risk of reprisal or retaliation for bringing this constitutional challenge against the California Attorney General Rob Bonta ("Defendant"). And lastly, Defendant will suffer no prejudice from an interim pseudonym order. Lenders' identity is immaterial for Defendant to address the central issues underlying Plaintiffs' complaint – the constitutionality and enforceability of AB 130 (Civil Code § 2924.13). To mitigate any prejudice to Defendant, Lenders request to proceed under pseudonyms without prejudice to Defendant's right to move to reveal the identities of Lenders.

## II. ARGUMENT

### A. APPLICABLE LEGAL STANDARD FOR PLEADING UNDER A PSEUDONYM

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schools*, 596 F.3d 1036, 1042 (9th Cir. 2010). Federal Rule of Civil Procedure 10(a) generally requires complaints to include the names of all parties. The Ninth Circuit, however, allows parties to "proceed anonymously when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1067 (9th Cir. 2000). Such circumstances, the Ninth Circuit has explained, arise in the "unusual case" when nondisclosure of the party's identity "is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *Id*. at 1067-68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981)). In assessing pseudonym filing requests, district courts in the Ninth Circuit "balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Does I thru XXIII*, 214 F.3d at 1068 (citing *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998)). District courts consider "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party and whether the proceedings may be structured to mitigate that prejudice, and (5) the public interest. *Id*. at 1068; see also *Kamehameha Schools*, 596 F.3d at p. 1042 (reaffirming *Does I thru XXIII's* five-factor balancing test for a party's request to proceed anonymously). After applying that balancing test, district courts may permit "a party [to] preserve his or her anonymity … when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII*, 214 F.3d at 1068. As set forth below, special circumstances exist to permit Lenders to remain anonymous.

### B. THIS COURT SHOULD PERMIT LENDERS TO PROCEED ANONYMOUSLY

#### 1. Special Circumstances Exist to Permit Pseudonymous Identification of Lenders

"To state a case or controversy under Article III, a plaintiff must establish standing." S*tudents for Fair Admissions, Inc. v. President & Fellows of Harv. Coll*., 600 U.S. 181, 199 (2023). When a plaintiff is an association, standing can be established in two ways. *Id*. The association "can claim that it suffered an injury in its own right," or it can assert "standing solely as the representative of its members."

*Students for Fair Admissions, Inc.,* 600 U.S. at 199. An association may sue as a representative of its members if: (1) its members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members" *Id.*; see also *Satanic Temple v. Labrador*, No. 24-1243, 2025 LX 314706, at *7 (9th Cir. Sep. 2, 2025) ("*Satanic Temple*"). To establish the first element, the association must prove that at least one identified member has suffered or will suffer harm by the alleged illegal activity.[1] *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); see also *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) (standing requires that "an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association."). "Associational standing, then, is derivative of—and not independent from—individual standing." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021).

Courts nationwide have recognized that Article III associational standing merely requires the identification of members with concrete injuries, not disclosure of legal names, thereby allowing members of an association to proceed under pseudonyms when necessary to protect sensitive privacy interests or to guard against retaliation.[2] The Ninth Circuit recently reaffirmed this right in *Satanic Temple*, 2025 LEXIS 314706, at *8, recognizing that "an organization need not always 'identify by name the member or members injured." *See also Humane Society of the United States v. USDA*, No. 20-03258 AB (GJSx), 2021 U.S. Dist. Lexis. 80065, at *14-15 (C.D. Cal. Mar. 26, 2021) ("*Humane Society*") (allowing a plaintiff organization to identity a member anonymously because "it [was] relatively clear, rather than merely speculative, that one or more members have been or will be adversely

---

[1] See *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) ("association must, at the very least, identify a member who has suffered the requisite harm" to have standing).

[2] See *American Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024) (associational standing does not "impose[] a requirement that an organizational plaintiff identify affected members by their legal names"; permitted organizational members to be identified through pseudonymns); *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (reversed district court's dismissal for lack of standing by not allowing organization to identify "anonymous persons"); *Faculty Alumni, & Students Opposed to Racial Preferences v. N.Y. University*, 11 F.4th 68, 75–76 (2d Cir. 2021) (acknowledging that an association may not need to "name names," but must allege facts affirmatively and plausibly suggest that it has standing to sue); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("[T]here is precedent for departing from a procedural custom fraught with constitutional overtones to accommodate a plaintiff's asserted need to proceed anonymously through the use of a fictitious name").

affected by a defendant's action, and the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury.") So too, in *Parents Defending Educ. v. Olentangy Local School Distr. Bd. of Educ.*, No. 2:23-cv-1595, 2024 U.S. Dist. LEXIS 154594, at *12 (S.D. Ohio Aug. 28, 2024), the court allowed the organizational plaintiff to identify members anonymously. As the district court remarked, "naming the members adds no essential information bearing on the injury component of standing, so long as 'the requirements of 'injury in fact' and causation have been met." *Id.* (internal quotations omitted).

Permitting an association's members to remain anonymous rests on "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment" and a right protected by the First Amendment. *Tashjian v. Republican Party,* 479 U.S. 208, 214 (1986); *Elrod v. Burns*, 427 U.S. 347, 357 (1976). "[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious, or cultural matters." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). Disclosure of members' names can chill association, invite harassment, or provoke retaliation. *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91-92 (1982) (protecting anonymity of members of association to preserve "First Amendment values"); *Acorn Invest., Inc. v. Seattle*, 887 F.2d 219, 225 (9th Cir. 1989) ("forcing an association engaged in protected expression to disclose the names of its members may have a chilling effect on that expression"). "This chilling effect exists even when it is not the government's intention to suppress particular expression." *Acorn Invest., Inc.*, 887 F.2d at 225.

Here, Lenders seek leave to be identified as pseudonyms to bolster Plaintiff Associations' associational standing. Lender 1 and Lender 2 are private lenders. Lender 3 is a credit union that originates and services loans secured by junior deeds of trust on residential property and relies on their enforceability to recover its loans. Along with lenders identified in the Complaint, each has alleged concrete and particularized harms from AB 130 – the impairment of foreclosure rights, loss of contractual remedies, the uncertainty and vagueness created by its passage, and the diminished value of their lienhold interests. (Dkt. 1, [Compl. ¶¶ 13-16, 20-21].) These Lenders seek to proceed anonymously because they fear that disclosure of their legal names would potentially expose sensitive borrower information, interfere with their ongoing loan enforcement, and risk reprisal from borrowers (by

highlighting potential legal issues) and regulators from challenging Defendant. (Laddusaw Decl., ¶ 12, Wilson Decl., ¶ 9.) Protecting their identities ensures that Plaintiff Associations can address the constitutional and other legal deficiencies plaguing AB 130, enacted through Section 2924.13, without forcing Lenders to bear the cost of disclosure. Accordingly, special circumstances exist to justify the use of pseudonyms.

### 2. Weighing The Competing Interests Favors Pseudonymous Identification

As demonstrated below, when balancing the privacy and retaliation concerns of Lenders against the minimal, if any, prejudice to Defendant, the competing interests tip decisively in favor of permitting pseudonymous identification.

#### a. Lenders' Need for Anonymity is Great

Plaintiff Associations are challenging governmental activity – the passage of AB 130, enacting Section 2924.13. Following the Ninth Circuit's guidance, these associations named Lenders anonymously to establish these associations' associational standing. Lenders' identity is not needed to verify this standing. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (one factor for associational standing being that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"). It is the information about Lenders that provides the public with insight that Plaintiff Associations have the requisite standing to bring their claims. Lenders have a discrete privacy interest embedded in their right to freedom of association. Further, public disclosure of their identities could potentially expose confidential borrower information, which may impact those borrowers' privacy rights and may undermine Lenders' ability to enforce their junior liens. (Laddusaw Decl., ¶ 12.) By challenging government activity, Lenders are concerned about reprisal or retaliation from Defendant as highly regulated businesses. Protecting Lenders' anonymity is necessary to safeguard their constitutional rights and to prevent a chilling effect on the participation of similarly situated members of Plaintiff Associations.

#### b. An interim pseudonym order will not prejudice Defendant

Permitting Lenders to be identified by a pseudonym imposes no prejudice on Defendant. Plaintiffs' Complaint explicitly alleges specific facts showing that their members' concrete, particularized injuries directly caused by AB 130's enactment of Section 2924.13, injuries that are

redressable by a favorable ruling. Granting Plaintiffs' request to proceed under pseudonyms will not prejudice Defendant's ability to litigate this case, given that Defendant already knows the identity of Plaintiff Association and the alleged harms to their members. Defendant does not require public disclosure of Lenders' names to defend the constitutionality of Section 2924.13 or to address Plaintiffs' preemption arguments. Courts recognize that where defendants can fully understand and respond to the claims without disclosure, no prejudice results. See *Humane Society*, 2021 U.S. Lexis 80065, at *15. Even if Defendant claims to need additional information to determine Plaintiff Association's standing, he may do so without disclosure of Lenders. As the court recognized in *Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin*., 41 F.4th 586, 594 (D.C. Cir. 2022), "Naming [an association's] members adds no essential information bearing on the injury component of standing." Similarly, in *B.R. v. F.C.S.B*., 17 F.4th 485, 493 (4th Cir. 2021), the court found standing even though plaintiff used a pseudonym for privacy and health reasons because "everything else about what she alleged was real" and "showed that she possessed the kind of 'personal stake' necessary for standing."

Accordingly, the balance of interest favors protecting Lenders' anonymity, as it safeguards their privacy rights without imposing any undue burden on Defendant.

### c. The Public Interest in Identity Is Minimal

Lenders' substantial rights to privacy and protection against retaliation outweigh the public's limited interest in knowing the names of Lenders. Plaintiffs do not seek to withhold the facts or law underlying this action, nor do they seek to shield Plaintiff Associations' positions or arguments from public scrutiny. They request only that Lenders' names be withheld from the public record. Resolution of the issues in this case will implicate Lenders' identities. Preserving anonymity under these circumstances will not obstruct the public's ability to follow or evaluate the significant constitutional and statutory issues raised in this litigation. As the Fifth Circuit explained, "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Id*. The same principle applies here: the central question—whether Section 2924.13, as enacted by AB 130, is unconstitutional

9
PLAINTIFFS' MOTION TO PROCEED UNDER A PSEUDONYM

and preempted—will remain fully accessible to the public regardless of whether the Lenders proceed under pseudonyms.

An interim pseudonym order serves the public interest. This lawsuit challenges the constitutionality and enforceability of Section 2924.13, which not only unconstitutionally impairs existing contracts, deprives lenders and investors of property rights, violates due process and equal protection, and contravenes federal law, but also threatens the broader public's access to credit. If enforced, the statute risks destabilizing the junior lien and home equity loan markets ("HELOC") markets, thereby limiting the ability of consumers to finance home purchases, renovations, and other essential needs, and depriving small businesses of capital. (Laddusaw Decl., ¶ 13;___ Decl., ¶ __.) Ensuring that these claims are adjudicated on the merits benefits not just the Lenders, but the public at large. As the Ninth Circuit has observed, "the public has an interest in seeing this case decided on the merits." *Does I thru XXIII*, 214 F.3d at 1073. Allowing Lenders to use pseudonyms ensures that the case can move forward unimpeded by collateral concerns about borrower privacy, reputational harm, or retaliation.

Moreover, permitting anonymity in this context does not cut against the underlying rationale for the presumption of public access to judicial records. That presumption safeguards the public's right to hold the judiciary accountable and to evaluate the fairness of judicial proceedings. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). An interim pseudonym preserves that principle. The public will have access to all the relevant facts, claims, and arguments concerning the validity of Section 2924.13. Indeed, Plaintiffs' 44-page Complaint contains 130 paragraphs of detailed factual allegations explaining precisely how the statute impairs existing contracts, deprives lenders and investors of property rights, violates due process and equal protection, and conflicts with federal law. Paragraphs 8 through 24 specifically identify the harms to subordinate lienholders. This record provides more than sufficient information for the public to evaluate the case and hold the Court accountable in its adjudication.

For these reasons, the public interest weighs decisively in favor of permitting the Lenders to proceed under pseudonyms. Anonymity preserves privacy and protects associational rights without undermining the public's ability to monitor or assess the integrity of these proceedings.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order permitting Lenders to proceed by the pseudonyms "Lender 1, Lender 2, and Lender 3" in place of their true and correct names, without prejudice to Defendant's right to later petition this Court to move to reveal Lenders' identities or to obtain reconsideration of this Application. Plaintiffs request that this Court grant other relief as is just and equitable.

DATED: September 11, 2025

**BUCHALTER**
**A Professional Corporation**

By: _/s/Robert S. McWhorter_
   Robert S. McWhorter

**WRIGHT, FINLAY & ZAK, LLP**

By: _//s// T. Robert Finlay (as authorized by 9-11-2025)_
   T. Robert Finlay

Attorneys for Plaintiffs CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; LENDER 1, a California corporation; LENDER 2, a California corporation; LENDER 3, a federally chartered credit union; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership