**BUCHALTER, A Professional Corporation**
Harry W.R. Chamberlain II (Bar No. 95780)
Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
Email: *rmcwhorter@buchalter.com*
Jarrett S. Osborne-Revis (Bar No. 289193)
Email: *josbornerevis@buchalter.com*
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone:   916.495.5170

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: 949.477.5050

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; LENDER 1, a California corporation; LENDER 2, a California corporation; LENDER 3, a federally chartered credit union; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership,<br><br>        Plaintiffs,<br>   v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>        Defendant. | Case No.<br><br>**DECLARATION OF BRADLEY LADDUSAW IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED UNDER A PSEUDONYM** |

1

**DECLARATION OF BRADLEY LADDUSAW IN
SUPPORT OF PLAINTIFFS' MOTION TO PROCEED UNDER A PSEUDONYM**

I, Bradley Laddusaw, declare:

1. I am making this Declaration based on personal knowledge and state affirmatively that if called as a witness I can testify competently to the facts set forth in this Declaration. I am submitting this Declaration in support of Plaintiffs' Motion for Leave File Under A Pseudonym ("Motion").

2. I am CMA's President. I have held this position since July 2024. I have been a member of CMA since March 2015. As such, I am familiar with the work of the CMA, its members, and the interest of mortgage lenders in California. As of September 2024, CMA has over 250 members.

3. CMA is a nonprofit association of California licensed private money lenders and brokers that offers a wide variety of services. It provides educational resources and monitors and advocates on behalf of private money lenders on California legislative activities. CMA regularly advocates on behalf of its members in legislative, regulatory, and judicial forums.

4. CMA's members include individuals as well as entities who make, arrange, sell, or service loans secured by deeds of trust on real property throughout California. Most CMA members are licensed as real estate brokers under the California Department of Real Estate or as California Finance Lenders under the California Department of Business Oversight. CMA also represents affiliate members, which include attorneys, escrow companies, accountants, software companies, and others interested in mortgage lending and in loan servicing. CMA members either directly service mortgage loans they make or arrange, or they have other licensees (CMA members) specializing in mortgage loan servicing, who service their loan portfolios.

5. The duties and liabilities of loan servicers and lenders of loans secured by deeds of trust on real property are a matter of great concern to CMA members. For over 60 years, CMA and its predecessors have been actively involved in the California legislative process through its legislative advocates. The CMA's mission is to provide its members and the general public with a clear understanding of pertinent legislation and case law that impacts the private mortgage lending and loan servicing communities, including critical issues relating to lending, funding, servicing, and foreclosure of loans secured by deeds of trust.

**Impact of AB 130 and the Enactment of California Civil Code § 2924.13**

6. CMA's members include California lenders that originate and service loans secured by, as pertinent here, junior residential mortgages adversely affected by Assembly Bill 130 ("AB 130"). Enacted by the California Legislature on June 30, 2025, AB 130 adds California Civil Code section 2924.13. A true and correct of a relevant excerpt of AB 130 is attached to this Declaration as **Exhibit A**.

7. This new statute retroactively and vaguely redefines loan servicing activities as "unlawful practices," and conditions foreclosure rights on compliance certifications under penalty of perjury that no purported unlawful practice ever occurred, even if those practices are permitted, or mandated by federal law or otherwise had been lawful. Section 2923.13 further gives Borrowers new rights to enjoin foreclosures and petition courts for relief that are effectively stripping the junior deed of trust. It may even result in the exoneration of some or all of the debt secured. Section 2923.13 purports to apply to existing and future subordinate liens on all residential properties—including 1 to 4 unit homes, apartment buildings (5+ units), and mixed-use properties. These provisions encompass both consumer and business loans, including home equity lines of credit ("HELOCs"). Section 2923.13(b) states that the following constitutes an unlawful practice in connection with a subordinate deed of trust or mortgage:

> (1) The mortgage servicer did not provide the borrower with any written communication regarding the loan secured by the mortgage for at least three years.
>
> (2) The mortgage servicer failed to provide a transfer of loan servicing notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Real Estate Settlement Procedures Act, as amended (12 U.S.C. Sec. 2601 et seq.), and investor or guarantor requirements.
>
> (3) The mortgage servicer failed to provide a transfer of loan ownership notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements.
>
> (4) The mortgage servicer conducted or threatened to conduct a foreclosure sale after providing a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service Form 1099.
>
> (5) The mortgage servicer conducted or threatened to conduct a foreclosure sale after the applicable statute of limitations expired.
>
> (6) The mortgage servicer failed to provide a periodic account statement to the borrower when required to provide that statement by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements.

See Cal. Civ. Code, § 2924.13(b)(1)-(b)6).

8. CMA has filed its Complaint because Section 2924.13 unconstitutionally impairs existing contracts of its members, deprives its private money lenders and investors of property rights, violates due process and equal protection of its members, and is preempted by federal law. CMA's members are injured by Section 2924.13 because they originate or service consumer or commercial loans secured by junior or subordinate deeds of trust encumbering residential property.

### Lender 1 and Lender 2

9. Lender 1 and Lender 2 are members of CMA. As CMA's President, I regularly communicate with members regarding the impact of laws and regulations affecting their lending operations. I have spoken with Lender 1 and Lender 2 about the challenges that they face due to the passage of AB 130. Through these communications, I have personal knowledge of Lender 1 and Lender 2's concerns, including how Section 2924.13 has injured or harmed their ability to service, collect, manage, and enforce loans secured by junior residential mortgages.

10. Lender 1 is a California corporation located in Southern California, serving as a direct lender and loan servicer. It offers residential, commercial, distressed, and rehab loans to borrowers, some of which are secured by junior deeds of trust secured by residential real property. Section 2924.13 has substantially impaired Lender 1's contractual and property rights and injured its business operations. In the bankruptcy context, Section 2924.13 prevents Lender 1 from foreclosing on loans where monthly statements may not have been sent during a bankruptcy case, even when borrowers have since cured defaults, creating a permanent cloud over enforcement. It also creates compliance traps for loans serviced through standard software, which does not issue statements when accounts are paid ahead (i.e., prepaid), making it impossible for Lender 1 to certify under penalty of perjury that every required statement was sent. In addition, Section 2924.13 treats borrower outreach and discussions of foreclosure prevention alternatives as "threats," thereby chilling Lender 1's ability to communicate with distressed borrowers about alternatives that could save their homes and preventing Lender 1 from warning borrowers of the severe consequences of delinquent taxes and lapsed insurance, thereby depriving borrowers of vital information necessary to avoid escalating financial harm and to protect their ability to stay in their homes. Finally, Section 2924.13 has hindered Lender 1's ability to advise borrowers about

the conflicts between first-lien modifications and junior lien interests, leaving foreclosure as the only viable remedy.

11. Lender 2 is a California corporation with its principal place of business in Southern California. Lender 2 is a member of CMA. Lender 2 services and invests in private mortgage loans, including both performing and non-performing loans secured by junior deeds of trust secured by residential real property. The enforceability of these deeds of trust is essential to its business. Section 2924.13 has impaired Lender 2's contracts and operations by preventing it from executing the required certification where prior servicers may not have maintained three years of borrower communications, sent all transfer notices, or issued monthly statements. For instance, Lender 2 has serviced loans where borrowers have long histories of payments, modifications, or forbearances but have recently defaulted, including cases involving deceased borrowers whose heirs have abandoned the property. In other cases, borrowers continue to collect rent while refusing to pay lenders. Because Lender 2 cannot certify under penalty of perjury to the conduct of prior servicers, it cannot foreclose on these loans, resulting in lost rights and ongoing harm to its business and investors.

12. Both Lender 1 and Lender 2 have expressed significant concern that public disclosure of their identities in this lawsuit would cause them harm. They fear that disclosure could expose sensitive borrower information or hinder their ability to enforce junior deeds of trust secured by residential property by drawing attention to potential legal challenges. If the identity of Lender 1 and Lender 2 are disclosed, public record searches could easily result in the discovery of their borrowers and the issues which Lender 1 and Lender 2 are now facing due to AB 130. As highly regulated lenders, they are also concerned that bringing a lawsuit against the California Attorney General may lead to retaliation or reprisals through increased regulatory scrutiny, delays in licensing or approvals, or other adverse treatment by state agencies. Lender 1 and Lender 2 want to remain private.

13. Lender 1 and Lender 2 are being named in the Complaint for the limited purpose of establishing CMA's standing to bring this action to challenge the constitutionality of Section 2924.13 and issues concerning federal preemption. I believe that these legal issues can be fully and fairly adjudicated without exposing the names of Lender 1 and Lender 2.

14. The use of pseudonyms by Lender 1 and Lender 2 is not sought to evade accountability or mislead the Court, but solely to preserve their privacy and freedom to associate with CMA, and to avoid any serious and irreparable harm from retaliation or reprisals from public disclosure of their identities. As President of CMA, I believe that permitting Lender 1 and Lender 2 to proceed under a pseudonym is necessary to safeguard their rights, while allowing this action to proceed forward with their involvement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 10, 2025.

_____
BRADLEY LADDUSAW

# EXHIBIT A

**Assembly Bill No. 130**

CHAPTER 22

An act to amend Sections 714.3, 5850, and 5855 of, and to add Section 2924.13 to, the Civil Code, to amend Sections 12531, 54221, 65400, 65584.01, 65584.04, 65589.5, 65905.5, 65913.10, 65913.16, 65928, 65941.1, 65952, 65953, 65956, 66323, and 66499.41 of, to amend and repeal Sections 65940, 65943, and 65950 of, to add Section 8590.15.5 to, and to repeal Section 66301 of, the Government Code, to amend Sections 17958, 17958.5, 17958.7, 17973, 17974.1, 17974.3, 17974.5, 18916, 18929.1, 18930, 18938.5, 18941.5, 18942, 37001, 50222, 50223, 50253, 50515.10, 50560, 50561, 50562, 53560, and 53562 of, and to add Sections 17974.1.5, 50058.8, 50406.4, 50410, and 53568 to, the Health and Safety Code, to amend Sections 21180, 21183, and 30603 of, and to add Sections 21080.43, 21080.44, 21080.66, 30114.5, and 30405 to, the Public Resources Code, to amend Section 17053.5 of the Revenue and Taxation Code, and to amend Section 5849.2 of the Welfare and Institutions Code, relating to housing, and making an appropriation therefor, to take effect immediately, bill related to the budget.

[Approved by Governor June 30, 2025. Filed with Secretary of State June 30, 2025.]

LEGISLATIVE COUNSEL'S DIGEST

AB 130, Committee on Budget. Housing.

(1) Existing law, the Planning and Zoning Law, authorizes a local agency to provide for the creation of accessory dwelling units (ADUs) in single-family and multifamily residential zones by ordinance, and sets forth standards the ordinance is required to impose with respect to certain matters, including, among others, maximum unit size, parking, and height standards. Existing law authorizes a local agency to provide by ordinance for the creation of junior accessory dwelling units (JADUs), as defined, in single-family residential zones and requires the ordinance to include, among other things, standards for the creation of a JADU, required deed restrictions, and occupancy requirements.

Existing law makes void and unenforceable any covenant, restriction, or condition contained in any deed, contract, security instrument, or other instrument affecting the transfer or sale of any interest in real property that either effectively prohibits or unreasonably restricts the construction or use of an ADU or JADU on a lot zoned for single-family residential use that meets the above-described minimum standards established for those units. However, existing law permits reasonable restrictions that do not unreasonably increase the cost to construct, effectively prohibit the

95

construction of, or extinguish the ability to otherwise construct, an ADU or JADU consistent with those aforementioned minimum standards provisions.

This bill would prohibit fees and other financial requirements from being included in the above-described reasonable restrictions.

Existing law provides for the creation of ADUs in areas zoned for single-family or multifamily dwelling residential use, by ministerial approval if a local agency has not adopted an ordinance, in accordance with specified standards and conditions. Under existing law, a local agency is also required to ministerially approve an application for a building permit within a residential or mixed-use zone to create any of specified variations of ADUs. Existing law prohibits a local agency from imposing any objective development or design standard that upon any accessory dwelling unit that meets one of those specified variations of ADUs, except as specified.

Existing law authorizes a local agency to establish minimum and maximum unit size requirements for both attached and detached ADUs, subject to certain limitations. Notwithstanding that authorization and the ministerial approval requirement, as described above, existing law requires a local agency that adopted an ordinance by July 1, 2018, providing for the approval of ADUs in multifamily dwelling structures to ministerially consider a permit application to construct an ADU, as specified, and authorizes that local agency to impose objective standards including, but not limited to, design, development, and historic standards on said ADUs, except for requirements on minimum lot size.

This bill would remove the requirement that a local agency ministerially consider a permit application to construct one of the above-specified variations of ADUs, and would remove the authorization for a local agency to impose objective standards on those ADUs, as specified above. By further prohibiting local governments from imposing certain standards on ADUs, the bill would impose a state-mandated local program.

(2) Existing law prescribes various requirements to be satisfied before the exercise of a power of sale under a mortgage or deed of trust. Existing law authorizes a borrower to bring an action for injunctive relief to enjoin material violations of certain of these requirements, and requires that the injunction remain in place and any trustee's sale be enjoined until the court determines that the violations have been corrected, as specified.

This bill would make certain conduct an unlawful practice in connection with a subordinate mortgage, including, among others, that the mortgage servicer did not provide the borrower with any communication regarding the loan secured by the mortgage for at least 3 years. The bill would prohibit a mortgage servicer from conducting or threatening to conduct a nonjudicial foreclosure until the mortgage servicer (A) simultaneously with the recording of a notice of default, records or causes to be recorded a certification, as specified, under penalty of perjury that either the mortgage servicer did not engage in an unlawful practice or the mortgage servicer lists all instances when it committed an unlawful practice and (B) simultaneously with the service of a recorded notice of default, the mortgage servicer sends the recorded certification and a notice to the borrower, as specified. By

expanding the scope of a crime, this bill would impose a state-mandated local program.

(3) Existing law, the Davis-Stirling Common Interest Development Act, governs the formation and operation of common interest developments. Existing law requires that a common interest development be managed by an association.

Existing law, if an association adopts or has adopted a policy imposing any monetary penalty on any association member for a violation of the governing documents, requires the board to adopt and distribute to each member a schedule of the monetary penalties that may be assessed for those violations, as provided, and prohibits an association from imposing a monetary penalty on a member for a violation of the governing documents in excess of that schedule. Existing law requires the board to notify a member 10 days before a meeting to consider or impose discipline on the member, as specified. Existing law requires the board to provide a member with written notification of a decision to impose discipline on the member within 15 days.

This bill would prohibit monetary fees from exceeding the lesser of that specified schedule or $100 per violation, except as specified. The bill would require the board to give a member the opportunity to cure a violation prior to the meeting to consider or impose discipline, as specified. If the board and the member are in agreement after the meeting to consider or impose discipline, the bill would require the board to draft a written resolution. The bill would provide that the written resolution, signed by the association and member of a dispute pursuant to the procedure not in conflict with the law or governing documents, binds the association and is judicially enforceable. The bill would reduce the time to provide written notification of a decision to impose discipline from 15 days to 14 days.

(4) Existing law, until July 1, 2042, establishes the Seismic Retrofitting Program for Soft Story Multifamily Housing for the purposes of providing financial assistance to owners of soft story multifamily housing for seismic retrofitting to protect individuals living in multifamily housing that have been determined to be at risk of collapse in earthquakes, as specified. Existing law establishes the Seismic Retrofitting Program for Soft Story Multifamily Housing Fund, and its subsidiary account, the Seismic Retrofitting Account, within the State Treasury. Existing law requires the California Residential Mitigation Program, also known as the CRMP, to develop and administer the program, as specified.

This bill would require, upon appropriation by the Legislature, the CRMP to fund the seismic retrofitting of affordable multifamily housing, as specified. The bill would require the CRMP to prioritize affordable multifamily housing serving lower income households, as defined.

(5) Existing law creates the National Mortgage Special Deposit Fund in the State Treasury, which is continuously appropriated and subject to allocation by the Department of Finance, for the receipt of moneys from the National Mortgage Settlement. Existing law allocates $300,000,000 from the fund to be administered by the California Housing Finance Agency

purposes, and objectives that the tax credit will achieve, detailed performance indicators, and data collection requirements.

Existing law establishes the continuously appropriated Tax Relief and Refund Account in the General Fund and provides that payments required to be made to taxpayers or other persons from the Personal Income Tax Fund are to be paid from that account, including any amount allowable as an earned income tax credit in excess of any tax liabilities.

This bill, for taxable years beginning on or after January 1, 2026, and only when specified annually in a bill relating to the Budget Act, would increase the credit amount for a qualified renter to $250 and $500, as provided. In the event the increased credit amount is not specified in a bill relating to the Budget Act, the existing credit amounts of $120 and $60, as described above, respectively, would be the credit amounts for that taxable year. The bill would provide findings and declarations relating to the goals, purposes, and objectives of this credit.

(29) This bill would make its provisions severable.

(30) This bill would include findings that changes proposed by this bill address a matter of statewide concern rather than a municipal affair and, therefore, apply to all cities, including charter cities.

(31) This bill would make legislative findings and declarations as to the necessity of a special statute for the City and County of San Francisco with respect to the above-described CEQA exemption and minimum wage requirements.

(32) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for specified reasons.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

(33) This bill would declare that it is to take effect immediately as a bill providing for appropriations related to the Budget Bill.

Appropriation: yes.

*The people of the State of California do enact as follows:*

SECTION 1. Section 714.3 of the Civil Code is amended to read:

714.3. (a) Any covenant, restriction, or condition contained in any deed, contract, security instrument, or other instrument affecting the transfer or sale of any interest in real property that either effectively prohibits or unreasonably restricts the construction or use of an accessory dwelling unit or junior accessory dwelling unit on a lot zoned for single-family residential use that meets the requirements of Article 2 (commencing with Section 66314) of Chapter 13 or Article 3 (commencing with Section 66333) of

Chapter 13 of Division 1 of Title 7 of the Government Code is void and unenforceable.

(b) This section does not apply to provisions that impose reasonable restrictions on accessory dwelling units or junior accessory dwelling units. For purposes of this subdivision, "reasonable restrictions" means restrictions that do not unreasonably increase the cost to construct, effectively prohibit the construction of, or extinguish the ability to otherwise construct, an accessory dwelling unit or junior accessory dwelling unit consistent with the provisions of Article 2 (commencing with Section 66314) or Article 3 (commencing with Section 66333) of Chapter 13 of Division 1 of Title 7 of the Government Code. "Reasonable restrictions" shall not include any fees or other financial requirements.

SEC. 2.  Section 2924.13 is added to the Civil Code, to read:

2924.13.  (a) As used in this section:

(1) "Borrower" has the same meaning as defined in Section 2929.5.

(2) "Mortgage servicer" includes the current mortgage servicer and any prior mortgage servicers.

(3) "Subordinate mortgage" means a security instrument in residential real property, including a deed of trust and any security instrument that functions in the form of a mortgage, that was, at the time it was recorded, subordinate to another security interest encumbering the same residential real property.

(b) The following conduct constitutes an unlawful practice in connection with a subordinate mortgage:

(1) The mortgage servicer did not provide the borrower with any written communication regarding the loan secured by the mortgage for at least three years.

(2) The mortgage servicer failed to provide a transfer of loan servicing notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Real Estate Settlement Procedures Act, as amended (12 U.S.C. Sec. 2601 et seq.), and investor or guarantor requirements.

(3) The mortgage servicer failed to provide a transfer of loan ownership notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements.

(4) The mortgage servicer conducted or threatened to conduct a foreclosure sale after providing a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service Form 1099.

(5) The mortgage servicer conducted or threatened to conduct a foreclosure sale after the applicable statute of limitations expired.

(6) The mortgage servicer failed to provide a periodic account statement to the borrower when required to provide that statement by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements.

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not conduct or threaten to conduct a nonjudicial foreclosure until the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent does both of the following:

(1) Simultaneously with the recording of a notice of default, records or causes to be recorded, in the office of the county recorder of the county that the encumbered property is located, a certification under penalty of perjury that either:

(A) The mortgage servicer did not engage in an unlawful practice as described in subdivision (b).

(B) The mortgage servicer lists all instances when it committed an unlawful practice as described in subdivision (b).

(2) Simultaneously with the service of a recorded notice of default, sends both of the following documents to the borrower by United States certified mail with return receipt requested to the last known mailing address of the borrower:

(A) A notice providing that if the borrower believes the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history, the borrower may petition the court for relief before the foreclosure sale.

(B) A copy of the certification recorded pursuant to paragraph (1).

(d) Upon a borrower's petition to the court for relief before the foreclosure sale, the court shall enjoin a proposed foreclosure sale pursuant to a power of sale in a subordinate mortgage until a final determination on the petition has been made.

(e) It shall be an affirmative defense in a judicial foreclosure proceeding if the court finds the mortgage servicer engaged in any of the unlawful practices specified in subdivision (b).

(f) The court may provide equitable remedies that the court deems appropriate, depending on the extent and severity of the mortgage servicer's violations. The equitable remedies may include, but are not limited to, striking all or a portion of the arrears claim, barring foreclosure, or permitting foreclosure subject to future compliance and corrected arrearage claim.

(g) A borrower may also petition the court to set a nonjudicial foreclosure sale aside when a certification required by subdivision (c) was never recorded or when a certification recorded pursuant to subdivision (c) indicates that the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history.

(h) Any failure to comply with the provisions of this section shall not affect the validity of a trustee's sale or a sale in favor of a bona fide purchaser.

SEC. 3. Section 5850 of the Civil Code is amended to read:

5850. (a) If an association adopts or has adopted a policy imposing any monetary penalty, including any fee, on any association member for a violation of the governing documents, including any monetary penalty relating to the activities of a guest or tenant of the member, the board shall adopt and distribute to each member, in the annual policy statement prepared