1 | **BUCHALTER, A Professional Corporation**
Harry W.R. Chamberlain II (Bar No. 95780)
2 | Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
3 | Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
4 | Email: *rmcwhorter@buchalter.com*
Jarrett S. Osborne-Revis (Bar No. 289193)
5 | Email: *josbornerevis@buchalter.com*
Katharine H. Falace (Bar No. 222744)
6 | Email: *kfalace@buchalter.com*
500 Capitol Mall, Suite 1900
7 | Sacramento, CA 95814
Telephone:    916.495.5170
8 |
9 | **WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
10 | Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
11 | Newport Beach, CA 92660
Telephone: 949.477.5050
12 |
13 | *Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership, | Case No. 2:25-cv-02614-DAD-CKD **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiffs,<br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>Defendant. | Date:    February 2, 2026<br>Time:    1:30 p.m.<br>Judge:    Hon. Dale Drozd<br>Crtrm:    4<br>Location:    501 I St, 15th Floor<br>            Sacramento, CA 95814 |

**TO DEFENDANT ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA ("DEFENDANT"), AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 2, 2026 at 1:30 p.m., in Department 4 of the above entitled Court located at 501 I Street, 15th Floor, Sacramento, California 95815, before the Honorable Dale Drozd, or as soon thereafter as the matter may be heard, Plaintiffs, CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership, (collectively, referred to as "Plaintiffs") move this Court for a preliminary injunction enjoining and restraining Defendant, Rob Bonta, in his official capacity as the Attorney General for the State of California ("Defendant"), and his officers, agents, employees, and all persons acting in concert or participation with him, including any California administrative agencies, boards, or commissions, from implementing, enforcing, invoking or otherwise giving effect to any provision of California Civil Code section 2924.13, pending final judgment in this case in any judicial, administrative, or proceeding pending final judgment in this case or until further order of the court. This Court should issue this preliminary injunction without a bond for the reasons explained in the accompanying memorandum of points and authorities.

This motion is based on this notice of motion, the memorandum of law in support of this motion, the accompanying Request for Judicial Notice, the proposed order and any such testimony or evidence, or argument that may be submitted to the Court. In addition, this Motion is based on the following Declarations and all exhibits attached thereto:

1. Declaration of Robert S. McWhorter (Standing Order requirements)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.

2.  Declaration of Harry W. R. Chamberlain, II (At end of Request for Judicial Notice)
3.  Declaration of Brad Laddusaw
4.  Declaration of Jack G Cohen
5.  Declaration of Joffrey Long
6.  Declaration of Madison Christian
7.  Declaration of Michael Griffith
8.  Declaration of Robert D Wilson
9.  Declaration of Selina Parelskin
10. Declaration of Stephen Ng
11. Declaration Chris L. Boulter
12. Declaration of Chen Wang Qin
13. Declaration of Edward A. Treder
14. Declaration of Gabriel Kass
15. Declaration of William Terry Hunefeld
16. Declaration of Erica D. Jones
17. Declaration of Elizabeth Knight
18. Declaration of Les Zieve
19. Declaration of Michael Belote

## Certification of Meet and Confer Requirement

As set forth in the Declaration of Robert S. McWhorter, pursuant to this Court's standing order, counsel for Plaintiffs and Defendant met and conferred via video conference on October 2, 2025, and December 12, 2025, to discuss the substance of this Motion for Preliminary Injunction, including Defendant's defenses to the relief requested. As a result of these conferences, the parties submitted stipulations with this Court to establish a briefing schedule and other procedural issues. Plaintiffs and Defendant were unable to resolve the relief sought in this Motion.

DATED: December 15, 2025          **BUCHALTER, A Professional Corporation**

By:  ___/s/ Robert S. McWhorter_____
Robert S. McWhorter

**WRIGHT, FINLAY & ZAK, LLP**

By: _/s/ T. Robert Finlay (as authorized by 12-15-2025)_
T. Robert Finlay

Attorneys for Plaintiffs,

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 11

II.    STATEMENT OF FACTS ................................................................................. 13

III.   ARGUMENT ....................................................................................................... 14

    A.    Applicable Legal Standard for Obtaining A Preliminary Injunction ................... 14

    B.    Plaintiffs Are Likely To Succeed On The Merits................................................. 15

        1.    Plaintiffs Are Likely to Succeed on the First Claim for Violation of the Contract Clause Under 42 U.S.C. § 1983................................................. 16

            a.    Section 2924.13 Substantially Impairs Contractual Relationships ........................................................................ 17

                i.    There Are Existing Contractual Relationships and Express Contractual Remedies ........................................ 17

                ii.   Section 2924.13 Impairs Contractual Rights by Eliminating or Restricting the Ability to Exercise the Power of Sale, and that Impairment is Substantial .......... 18

            b.    AB 130 Retroactively Deems Certain Previously Lawful Practices as Unlawful. ................................................... 21

            c.    Prospectively, the State Cannot Show a "Significant and Legitimate Public Purpose" Justifying AB 130 ......................... 23

        2.    Plaintiffs Are Likely to Succeed on the Claim for Violation of Due Process Under 42 U.S.C. § 1983 ................................................................. 26

        3.    Plaintiffs Are Likely to Succeed on the Claim for Violation of Equal Protection Under 42 U.S.C. § 1983 ........................................................ 28

            a.    Standard of Review ..................................................................... 28

            b.    Section 2924.13 Arbitrarily Discriminates Against Holders of Subordinate Mortgages and Lacks Any Rational Basis .............. 29

                i.    Section 2924.13's Classification is Irrational Because the Statutory Definition of "Subordinate Mortgages" is Arbitrary, Ambiguous, and Unadministrable .................. 29

                ii.   Section 2924.13 Irrationally Imposes "Unlawful Practices" on Subordinate Mortgage Lenders That Other Similarly Situated Lenders May Lawfully Perform Without Reasonably Advancing Any Legitimate State Purpose................................................. 31

        4.    Plaintiffs Are Likely to Succeed on the Supremacy Clause Violation Claim ................................................................................... 32

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

a.    Failure to Provide the Borrower with Communications, Statements, and Notices as Required "By Law" .......................... 33

b.    Section 2924.13 Makes Any Ostensibly Inaccurate Statements by the Mortgage Servicer in the Mandatory "Compliance Certificate" Subject to Prosecution as a Criminal Offense .......... 34

5.    Section 2924.13 Constitutes An Unconstitutional Taking ..................... 34

C.    Irreparable Harm ............................................................................... 35

D.    The Balance Of The Equities Tips In Plaintiffs' Favor ..................................... 37

E.    An Injunction Is In The Public Interest ................................................... 38

IV.    PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND UNDER RULE 65(c) .......................................................................................... 39

V.    COMPLIANCE WITH LOCAL RULE 231 .................................................. 39

VI.    CONCLUSION ........................................................................................ 40

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Airline Serv. Providers Ass'n v. Los Angeles World Airports,*
  873 F.3d 1074, 1078 (9th Cir. 2017) ............................................................ 17

*Allegheny Pittsburgh Coal Co. v. County Com.,*
  488 U.S. 336, 344-346 (1989) ...................................................................... 31

*Alliance for the Wild Rockies v. Cottrell,*
  632 F. 3d 1127, 1132 (9th Cir. 2011) ..................................................... 16, 40

*Allied Structural Steel Co. v. Spannaus,*
  438 U.S. 234, 245 (1978) .......................................................................... 25, 27

*Anderson v. Warner,*
  451 F.3d 1063, 1067 (9th Cir. 2006) ............................................................ 17

*Aviel v. Ng,*
  161 Cal. App. 4th 809, 816 (2008) ............................................................... 28

*Banc of Am. Leasing & Capital, LLC v. 3 Arch Tr. Servs., Inc.,*
  180 Cal. App. 4th 1090, 1101 (2009) ........................................................... 20

*Bank of Willows v. County of Glenn,*
  155 Cal. 352, 354 (1909) .............................................................................. 28

*Board of Regents v. Roth,*
  408 U.S. 564, 577-78 (1972) ........................................................................ 28

*Campanelli v. Allstate Life Ins. Co.,*
  322 F.3d 1086, 1098 (9th Cir. 2003) ............................................................ 27

*Campanelli v. Allstate Life Ins.,*
  322 F.3d 1086, 1097 (9th Cir. 2003) ............................................................ 18

*Chamber of Commerce of the United States v. Bonta,* ......... 62 F.4th 473, 481-482 (9th Cir. 2023)
  ................................................................................................................ 34, 36

*City of South Pasadena v. Slater,*
  56 F.Supp.2d 1106, 1148 (C.D. Cal. 1999) .................................................. 41

*Crosby v. Nat'l Foreign Trade Council*
  (2000) 530 U.S. 363, 372 ............................................................................. 34

*de Jesus Ortega Melendres v. Arpaio,*
  695 F.3d 990, 1002 (9th Cir. 2012) .............................................................. 37

*Doe v. United States,*
  419 F.3d 1058, 1062 (9th Cir. 2005) ............................................................ 30

*Elrod v. Burns,*
  427 U.S. 347, 373 (1976) .............................................................................. 37

*Energy Reserves* v. *Kansas Power & Light*
  459 U.S. 400, 412 (1983) .............................................................................. 26

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

*F.D.I.C. v. Cashion,*
   720 F.3d 169, 179 (4th Cir. 2013) ................................................................ 22

*Fed. Home Loan Mortgage Corp. v. SFR Invs. Pool 1, LLC,*
   893 F.3d 1136, 1147 (9th Cir. 2018) ............................................................ 28

*Gen. Motors Corp. v. Romein,*
   503 U.S. 181, 189 (1992) ...............................................................18, 19, 23

*Gericke v. Truist,*
   No. 21-1776, 2022 U.S. App. Lexis 16321, at 8 (3d Cir. June 14, 2022) ................ 22

*Gonzales v. Specialized Loan Servicing LLC,*
   No. 1:20-CV-0159 AWI BAM, 2020, U.S. Dist. Lexis 98478, at 12 (E.D. Cal. June 3, 2020) 36

*Haaland v. Brackeen,*
   599 U.S. 255, 287 (2023) ............................................................................ 34

*Habtemariam v. Vida Capital Grp., LLC,*
   No. 2:16-cv-01189-MCE-AC, 2021 U.S. Dist. LEXIS 93194, at *10 (E.D. Cal. May 14, 2021)
   ........................................................................................................... 22

*Hawkeye Commodity Promotions, Inc. v. Miller*
   432 F.Supp.22d 822, 852 (N.D. Iowa 2006) ................................................... 36

*Hines v. Davidowitz,*
   312 U.S. 52, 67 (1941) ................................................................................ 34

*hiQ Labs, Inc. v. LinkedIn Corp.,*
   2022 U.S. App. Lexis 10349, at 13 (9th Cir. 2022) .......................................... 17

*Home Bldg. & Loan Assn. v. Blaisdell,*
   290 U.S. 398, 423 (1934) ............................................................................ 18

*Honolulu Weekly, Inc. v. Harris,*
   298 F.3d 1037, 1047 (9th Cir. 2002) ............................................................ 30

*Hunt v. Washington State Apple Advert. Comm'n,*
   432 U.S. 333, 343 (1977) ............................................................................ 17

*Idaho Org. of Res. Councils v. Labrador,*
   780 F. Supp. 3d 1013, 1046 (D. Idaho 2025) ................................................. 41

*In re Sukhu,*
   107 B.R. 729, 730 (Bankr. N.D. Cal. 1989) .................................................... 20

*Iten v. Cty. of L.A.,*
   81 F.4th 979, 986-987 (9th Cir. 2023) .......................................................... 18

*Jones v. New York Guar. & Indem. Co.,*
   101 U.S. 622, 628 (1879) ............................................................................ 35

*Logan v. Zimmerman Brush,*
   455 U.S. 422, 428 (1982) ............................................................................ 38

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

*Lorber Industries of Calif. v. Turbulence, Inc.*,
   175 Cal.App.3d 532, 535 (1985) .................................................................... 26

*Martinez v. Specialized Loan Servicing LLC*,
   No. 2:24-cv-1387 WBS AB, 2025 U.S. Dist. LEXIS 214451, at *11 ; 2025 WL 3030982 at *5
   (Oct. 30, 2025) ................................................................................................. 23

*Martinez v. Specialized Loan Servicing LLC*,
   No. 2:24-cv-1387 WBS AB, 2025 WL 3030982 at *5 (Oct. 30, 2025) ............. 14, 24

*Matson v. S.B.S. Tr. Deed Network*,
   46 Cal. App. 5th 33, 40 (2020) ...................................................................... 20

*Maya v. Centex Corp.*,
   658 F.3d 1060, 1068 (9th Cir. 2011) .............................................................. 17

*Mazza v. Primelending*,
   No. CV-25-03832-PHX-KML, 2025 U.S. Dist. Lexis 206868, at 6 (D. Ariz. Oct. 21, 2025) .. 22

*Merck Sharp & Dohme Corp. v. Albrecht*,
   587 U.S. 299, 303 (2019) ................................................................................ 34

*Montoya v. FCI Lender Servs.*,
   2025 U.S. Dist. LEXIS 187209, *22, fn. 9 ...................................................... 39

*Montoya v. FCI Lender Servs.*,
   No. 5:25-cv-01732-JC, 2025 U.S. Dist. LEXIS 187209, at *22 n.9 (C.D. Cal. Sep. 22, 2025) 25

*Pitzer College v. Indian Harbor Ins. Co.*,
   8 Cal.5th 93, 10 (2019) ................................................................................... 35

*Renna v. Bonta*, 667
   F. Supp. 3d 1048, 1071 (S.D. Cal. 2023) ....................................................... 41

*Robin v. Crowell*,
   55 Cal. App. 5th 727, 743 (2020) .................................................................. 19

*Romer v. Evans*,
   517 U.S. 620, 632 (1996) ................................................................................ 30

*RUI One Corp. v. City of Berkeley*,
   371 F.3d 1137, 1147 (9th Cir. 2004) ......................................................18, 19, 25

*Scooter's Pals Rescue v. County of Placer*,
   No. 2:12-cv-01736-GEB-KJN, 2012 U.S. Dist. LEXIS 151682, at *15 (E.D. Cal. Oct. 19,
   2012) ................................................................................................................ 17

*Sheetz v. County of El Dorado*
   (2024) 601 U.S. 267 ........................................................................................ 37

*Sturges v. Crowninshield*,
   17 U.S. (4 Wheat.) 122, 197 (1819) ............................................................... 19

*Sveen v. Melin*,
   584 U.S. 811, 818 (2018) ..........................................................................18, 20

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

*Tucson Woman's Clinic v. Eden,*
    371 F.3d 1173, 1185 (9th Cir. 2004) ................................................................. 30

*Tulsa Prof'l Collection Servs, Inc. v. Pope,*
    485 U.S. 478, 485 (1988) ................................................................................... 38

*Valle Del Sol Inc. v. Whiting,*
    732 F.3d 1006, 1029 (9th Cir. 2013) ................................................................. 40

*Where Do We Go Berkeley v. Cal. DOT,*
    32 F.4th 852, 860 (9th Cir. 2022) ...................................................................... 17

*Winter v. Natural Res. Def. Council,*
    555 U.S. 7, 20 (2008) ............................................................................. 16, 37, 39

*Wyeth v. Levine,*
    555 U.S. 555, 563-64 (2009) .............................................................................. 34

*Youth Justice Coal. v. City of L.A.,*
    No. LA CV 16-07932-VBF, 2017 U.S. Dist. Lexis. 221738, at *11 (C.D. Cal. Jan. 27, 2017) 41

*Ze Chang v. Cty. of Siskiyou,*
    746 F. Supp. 3d 808, 825 (E.D. Cal. 2024) ........................................................ 30

**Statutes**
42 U.S.C. §
1983 ........................................................................................... 17, 18, 28, 30

Business & Professions Code
17200 ...................................................................................................... 39

Cal Civ. Code §
3  ........................................................................................................ 14, 24
882.020(a)(1) ............................................................................................ 20
1442 ...................................................................................................... 35
2924.13 .......................... 13, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25, 26, 27, 29, 31, 35, 37, 38, 42
2924.13(a)(3) ................................................................................... 15, 19, 31
2924.13(b) .......................................................................................... 16, 21
2924.13(b)(1), (d)-(g). ............................................................................ 23, 36
2924.13(c) ................................................................................................ 15
2924.13(b)(1)–(6) ..................................................................................... 36
2924.13(b)(4), (b)(5), (c)(1) ........................................................................ 21
2924.13(b)(4), (f), (g). ............................................................................... 23
2924.13(b)(5), (6) ..................................................................................... 35
2924.13(b)-(g) ......................................................................................... 33
2924.13(d)-(f) ......................................................................................... 16
2924.13(e)-(g) ......................................................................................... 16

Cal. Code Civ. Proc. §
484.090(a) ............................................................................................... 26
725a .................................................................................................. 19, 38

Cal. Com. Code §§
3104(a), (e) ............................................................................................. 19

Cal. Rev. & Tax. Code §§
2187, 2188, 2188.1, 2190.2, 2192.1 .............................................................. 32

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

Fed. R. Civ. P.
65(c) ........................................................................................................................ 41

11 U.S.C. §§
362(a)(1), (a)(6), (c)(2), (d) ................................................................................... 23

12 C.F.R. §
1026.2(a)(10) ......................................................................................................... 21
1026.2(a)(20) ......................................................................................................... 21
1026.41(e)(6)(i) ..................................................................................................... 21
1026.41(e)(3), (e)(4), (e)(5) .................................................................................. 21

15 U.S.C. §§
1640(a) ................................................................................................................... 22
1641 ....................................................................................................................... 22

Cal. Const. art. I, § 1 ..................................................................................................... 28
Cal. Const. art. I, § 7(a) ........................................................................................... 28, 30

Consumer Financial Protection Bureau (CFPB.gov) "What is a Zombie Second Mortgage" (May 24, 2024) ................................................................................................................ 13

IRS Priv. Ltr. Rul. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005) ............................ 22

Kaiponanea T. Matsumura, *Reaching Backward While Looking Forward: The Retroactive Effect of California's Domestic Partner Rights and Responsibilities Act,* 54 UCLA L.Rev. 185, 203, 214-226, (2006) ........................................................................................................ 24

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

California Civil Code section 2924.13 ("Section 2924.13") fundamentally rewrites the rights and remedies governing every deed of trust recorded in this State. Section 2924.13 was enacted by Assembly Bill No. 130 ("AB 130") on June 30, 2025, as part of a 215-page budget trailer bill in the final days of the budget cycle. Issued without hearings and without any finding of emergency or any articulated general social or economic threat to the public at large, Section 2924.13 imposes sweeping retroactive restrictions on the ability of junior lienholders to exercise their contractual foreclosure rights. It requires that, before exercising or threatening to exercise the power of sale clause in junior deeds of trust, certifications must be recorded confirming that no "unlawful practices" associated with so-called "zombie mortgages" occurred at any point in the loan's history.[1] This obligation extends to actions taken by prior servicers decades ago, as well as conduct that federal law expressly permits or even mandates. The consequences of these now-declared "unlawful practices" are immediate and sweeping: the junior lienholder loses its rights under the deed of trust and its ability to foreclose to recover on its unpaid debt. In short, Section 2924.13 retroactively impairs settled contractual rights and arbitrarily singles out subordinate mortgage lenders for punitive treatment that no other similarly-situated creditor faces.

According to AB 130's author, the ostensible purpose of the legislation was to provide "procedural protections for people with these ***zombie second mortgages***. We know that there was so much abuse during, in the aftermath of the Great Recession, and now we're seeing these zombie mortgages being resurrected via debt collectors. We believe that this provision does pass constitutional muster. And of course, if folks disagree, then they can exercise their legal remedies …" (Declaration of Harry W.R. Chamberlain, II ("Chamberlain Dec."), Ex. 18, p. 3) Plaintiffs,

---

[1] A "zombie mortgage" generally refers to an old home loan secured by a mortgage or trust deed on the borrower's residential property that the borrower believes has been settled or exonerated. But even when the debt represented by the loan has been abandoned or extinguished, the "power of sale" continues, which may be assigned and result in later collection proceedings under California law. (Dkt No. 14, FAC ¶¶ 2-3, 34 & 51; *see also*, Consumer Financial Protection Bureau (CFPB.gov) "What is a Zombie Second Mortgage" (May 24, 2024) https://www.consumerfinance.gov/ask-cfpb/what-is-a-zombie-second-mortgage-en-2133/. (Chamberlain Dec., Ex. 20.) Attempts to collect such loans are an infinitesimally small portion of second mortgage market. (Declaration of Bradley Laddusaw ("Laddusaw Dec."), ¶¶ 11-19; Declaration of Edward A. Treder ("Treder Dec."), ¶¶ 5-6.)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

consisting of trade associations (whose members include thousands of California mortgage servicers, lenders, credit unions, and foreclosure trustees), as well as individual members of those associations and other impacted investors in subordinate mortgages, seek a preliminary injunction to enjoin Section 2924.13. Absent such relief, Plaintiffs and the trade associations' other members will suffer immediate and irreparable harm because junior lienholders will be unable to enforce bargained-for contractual remedies to foreclose on deeds of trust. That would render their loans uncollectible, extinguish contractual rights, and destabilize the subordinate mortgage market. The public interest overwhelmingly favors preserving homeowners' access to capital and preventing unconstitutional interference with vested rights.

Plaintiffs are likely to succeed on the merits of each of their constitutional claims. Section 2924.13 violates all of the following constitutional provisions: (a) the Contract Clause, because it retroactively destroys the core bargained-for term under a deed of trust – the power of sale on which subordinate lenders rely to recover a defaulted loan; (b) the Due Process and Takings Clauses because its definitions, certification requirements, and foreclosure prohibitions are unconstitutionally vague and deprive lenders of property rights without adequate standards, procedural protections, or compensation; and (c) the Equal Protection Clause because it irrationally imposes these burdens solely on holders of "subordinate mortgages," a category defined by an arbitrary and irrational historical snapshot of a lien position "at the time of recording" and is untethered from the statute's purported legislative purpose of remedying "zombie" mortgages.[2] Section 2924.13 is preempted by federal law, including IRS regulations, the Bankruptcy Code, and lending regulations, all of which expressly permit or mandate the servicing practices that Section 2924.13 reclassifies as "unlawful."

Unless enjoined, Section 2924.13 will continue to inflict immediate and irreparable harm on subordinate mortgage lenders and related parties. This Court should enter a preliminary

---

[2] As demonstrated in the discussion that follows, California since its inception has adhered to a strong presumption *against* the retroactivity of such legislation. See, e.g., Cal. Civ. Code § 3; Legal Argument III. A., *infra*. The courts within this District have already concluded that there is no such retroactive intent concerning the enactment of Section 2924.13, despite the author's comments, thus rendering AB 130 inapplicable to more than 300,000 existing California second mortgage liens. See *Martinez v. Specialized Loan Servicing LLC*, No. 2:24-cv-1387 WBS AB, 2025 WL 3030982 at *5 (Oct. 30, 2025) (order by Shubb, J.). Other constitutional infirmities remain.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

injunction to protect Plaintiffs' and their members' constitutional rights until final judgment.

## II.    STATEMENT OF FACTS

On June 30, 2025, the California Legislature enacted its annual budget trailer bill, AB 130. Among its numerous provisions, AB 130 added Section 2924.13, a measure wholly unrelated to the State's budgetary framework. (Chamberlain Dec., Ex. 1 [Sec. 2, pp. 25-26].) On June 24, 2025, the operative language of Section 2924.13 was taken verbatim from Senate Bill No. 681 ("SB 681") and added into AB 130, after SB 681 had stalled and been referred to the Committee on Housing and Community Development and the Committee on Judiciary on June 16, 2025, but did not advance further. (Chamberlain Dec., Exs. 2, 3.) Six days later, the Governor signed AB 130 into law as part of the State's annual budget.

According to a Senate Judiciary Committee Analysis, Section 2924.13 "aimed at protecting California homeowners from 'zombie' mortgages . . . [which] generally refers to mortgages that, whether because the mortgage servicer stops sending the consumer notices on the mortgage or because the mortgage was sold to another company that did not contact the borrower or attempt to collect the debt, go many years without any communication with the homeowner only to be resurrected years later when the owner of that debt seeks to collect." (Chamberlain Dec., Ex. 19 [p. 16].)

However, Section 2924.13 failed to target only zombie mortgages. Instead, Section 2924.13 applies to every "subordinate mortgage" in California (whether or not a "zombie mortgage"). Thus, it applies to any "security instrument in residential real property, including a deed of trust . . . that was, at the time it was recorded, subordinate to another security interest encumbering the same property." Cal. Civ. Code § 2924.13(a)(3). (Laddusaw Dec., ¶¶ 11-19; Treder Dec., ¶¶ 5-6.) Section 2924.13 prohibits lenders from recording a Notice of Default, initiating foreclosure, or even "threatening" foreclosure unless they first execute and record a certification under penalty of perjury attesting either that no "unlawful practices" occurred during the life of the security instrument or listing all violations, and must mail the certification and a borrower's rights notice by certified mail. Cal. Civ. Code § 2924.13(c).

These newly-created "unlawful practices" include: (1) failing to provide any written

communication regarding the loan for at least three years; (2) failing to provide required notices of servicing or ownership transfer under federal law, including Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) ("RESPA") and Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) ("TILA"); (3) conducting or threatening foreclosure after issuing a form indicating the debt was written off or discharged, such as IRS Form 1099; (4) foreclosing after the statute of limitations expired; and (5) failing to provide periodic account statements when required by law. Cal. Civ. Code § 2924.13(b). Section 2924.13 permits borrowers to petition the court to enjoin foreclosure if they believe the servicer violated the statute or misrepresented compliance, and courts may grant equitable remedies, including barring foreclosure or adjusting arrearages. Cal. Civ. Code § 2924.13(d)-(f). The statute also provides an affirmative defense in judicial foreclosure actions and permits borrowers to set aside a sale if the required certification was not recorded or was false. Cal Civ. Code § 2924.13(e)-(g).

On September 8, 2025, a group of Plaintiffs sued Defendant, challenging Section 2924.13's constitutionality and enforceability. (Dkt. 1.) On November 13, 2025, Plaintiffs filed a First Amended Complaint, removing certain plaintiffs who had sued under a pseudonym and adding additional plaintiffs. (Dkt. 14.)

Plaintiffs now seek a preliminary injunction to stop the enforcement of Section 2924.13 pending final judgment.

## III.  ARGUMENT

### A.    APPLICABLE LEGAL STANDARD FOR OBTAINING A PRELIMINARY INJUNCTION

A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury without relief; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction serves the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Alternatively, a plaintiff may prevail by raising "serious questions going to the merits," demonstrating likely irreparable injury, and showing the balance of hardships tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1132 (9th Cir. 2011).

Plaintiffs are various organizations representing the interests of their members across a range of industry sectors, serving and servicing secondary mortgages and related property interests.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.

(Dkt. 14 [FAC, ¶¶ 8-28].) To sue on behalf of their members, plaintiff association must meet the constitutional minimum of Article III standing by showing: "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert*. *Comm'n*, 432 U.S. 333, 343 (1977). Individual association members have standing if they suffered an injury in fact, the injury is fairly traceable to defendant's challenged conduct, and the injury must be likely to be redressed by a decision in their favor. *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1078 (9th Cir. 2017). In applying this prong, courts must "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Maya v. Centex Corp*., 658 F.3d 1060, 1068 (9th Cir. 2011).

The allegations in the First Amended Complaint, construed in Plaintiffs' favor as required, satisfy Article III standing. In listing the organizational parties, the First Amended Complaint alleges that members of each organization are subject to the newly enacted requirements of Section 2924.13 and would be irreparably harmed if the statute were to remain in effect. (Dkt. No. 14 (FAC at ¶¶ 8-28). As here, "when plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 860 (9th Cir. 2022); *see also hiQ Labs, Inc. v. LinkedIn Corp.,* 2022 U.S. App. Lexis 10349, at 13 (9th Cir. 2022). Plaintiffs have Article III standing; they have been and will be irreparably harmed.

**B.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

42 U.S.C. § 1983 "authorizes individual suits to enforce existing federal and constitutional rights." *Scooter's Pals Rescue v. County of Placer*, No. 2:12-cv-01736-GEB-KJN, 2012 U.S. Dist. LEXIS 151682, at *15 (E.D. Cal. Oct. 19, 2012). To state a claim for relief pursuant to Section 1983, a plaintiff must establish: (1) the deprivation of a right secured by the federal Constitution or statutory law, and (2) committed by a person acting under color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). As discussed below, the enactment and enforcement of Section 2924.13 by Defendant, as the Attorney General, violates fundamental constitutional protections:

they deprive Plaintiffs of due process and equal protection, impair contractual obligations, and constitute an unlawful taking of property. Moreover, Section 2924.13 is preempted by federal law, rendering it invalid and unenforceable. As such, this Court should issue a preliminary injunction to enjoin the enforcement of Section 2924.13 pending final judgment.

### 1. Plaintiffs Are Likely to Succeed on the First Claim for Violation of the Contract Clause Under 42 U.S.C. § 1983

Article I, Section 10, Clause 1 of the United States Constitution restricts the States' power to disrupt contractual arrangements. *Sveen v. Melin,* 584 U.S. 811, 818 (2018) ("*Sveen*"). It provides: "no State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., Art. I, §10, cl. 1. Article I, section 9 of the California Constitution contains a parallel provision: "A … law impairing the obligation of contracts may not be passed." Courts interpret these clauses (collectively, "Contract Clause") identically. *Campanelli v. Allstate Life Ins.*, 322 F.3d 1086, 1097 (9th Cir. 2003).

The Framers adopted the Contract Clause to prevent States from enacting statutes that alter or suspend debtor obligations – the very type of retroactive mortgage servicing restrictions that Section 2924.13 imposes. As the Ninth Circuit summarized, "State debtor relief legislation . . . was one of the major evils that the Clause was designed to eradicate." *Iten v. County of Los Angeles*, 81 F.4th 979, 986-987 (9th Cir. 2023) (cleaned up); see also *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398, 423 (1934) ("*Blaisdell*") (Contract Clause responded to "an ignoble array of legislative schemes for the defeat of creditors and invasion of contractual obligations" which threatened the "utter destruction of credit.") In *Blaisdell*, the court recognized that although the Contract Clause is "facially absolute," its application must yield to a State's police power "to safeguard the vital interests of its people," upholding a *temporary* Great Depression–era foreclosure moratorium because it addressed a declared emergency, served a broad societal interest, was narrowly tailored, imposed reasonable conditions, and was limited to the emergency's duration. *Blaisdell*, 290 U.S. at 434, 444–447. Changes affecting the enforceability of contracts are "subject to Contract Clause analysis because without them, contracts are reduced to simple, unenforceable promises." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 189 (1992).

Courts apply a three-step analysis to determine whether a state law violates the Contract Clause. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004). The first is whether

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

the state law has "operated as a substantial impairment of a contractual relationship." *Id*. If so, the court must determine whether the State has "a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem, to guarantee that the State is exercising its police power, rather than providing a benefit to special interests." *Id*. (cleaned up). "Finally, the court must inquire whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Id*. (cleaned up).

### a.    Section 2924.13 Substantially Impairs Contractual Relationships

Under the Contract Clause, this Court must determine whether the Legislature's enactment of Section 2924.13 has "operated as a substantial impairment of a contractual relationship." *RUI One Corp.*, 371 F.3d at 1147. This inquiry has three components: (1) whether there is a contractual agreement regarding the specific terms allegedly at issue; (2) whether the change in law impairs that contractual relationship, and (3) whether the impairment is substantial. *Id.*; *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186-187 (1992). All three are satisfied here.

### i.    There Are Existing Contractual Relationships and Express Contractual Remedies

Section 2924.13 indisputably impacts existing contractual relations. As Chief Justice John Marshall described: "A contract is an agreement, in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract." *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 197 (1819). Every subordinate mortgage reflects this binding obligation: a borrower signs a promissory note – an unconditional promise to pay – and secures that promise through a deed of trust encumbering real property subordinate to a senior lien. Cal. Com. Code §§ 3104(a), (e); Cal. Civ. Code, § 2924.13(a)(3). To secure repayment, a borrower or guarantor grants a deed of trust or mortgage. (Laddusaw Dec., ¶ 7.) Upon default, California law affords lenders with two core enforcement mechanisms: (1) judicial foreclosure under Civil Code section 725a; and (2) nonjudicial foreclosure through the power of sale granted in the deed of trust under Civil Code section 2924 *et seq*. *Id.*; see also *Robin v. Crowell*, 55 Cal. App. 5th 727, 743 (2020).

The power of sale is the central remedy, providing "a quick, inexpensive and efficient

remedy against a defaulting debtor/trustor" and ensuring "a final adjudication of the rights of the creditor and debtor." *Matson v. S.B.S. Tr. Deed Network*, 46 Cal. App. 5th 33, 40 (2020). This remedy is especially vital for subordinate lienholders, whose rights are inherently precarious. (Laddusaw Dec., ¶ 25; Declaration of Jack G. Cohen ("Cohen Dec."), ¶¶ 14-19.).) A junior lien is extinguished if a senior lender forecloses unless "the successful bidder purchases at a price sufficiently high to pay off both the senior lien and the junior lien." *Banc of Am. Leasing & Capital, LLC v. 3 Arch Tr. Servs., Inc.*, 180 Cal. App. 4th 1090, 1101 (2009). Thus, junior lenders bargain for the long-term, reliable enforceability of the power of sale so they may act quickly to preserve remaining equity or to strategically wait for property appreciation or the future payoff of senior indebtedness. (Laddusaw Dec., ¶ 8.)

California law has long protected the stability and enforceability of these remedies. Before 1989, the time to enforce a power of sale clause in a deed of trust never expired. *In re Sukhu*, 107 B.R. 729, 730 (Bankr. N.D. Cal. 1989). After 1989, Civil Code section 882.020 established that the power of sale clause in a deed of trust may be enforced for up to 60 years from recordation when the maturity date is not ascertainable, or 10 years from maturity when it is ascertainable. Cal. Civ. Code § 882.020(a)(1). Lenders, including junior lienholders, have consistently relied on these stable, durable remedies when extending subordinate credit. (Laddusaw Dec., ¶ 8.) Section 2924.13 thus directly impacts contracts that were already formed, contain express foreclosure remedies, and rest on a stable legal landscape that is now disrupted.

### ii. Section 2924.13 Impairs Contractual Rights by Eliminating or Restricting the Ability to Exercise the Power of Sale, and that Impairment is Substantial

The substantial impairment inquiry focuses on "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 584 U.S. 811, 819 (2018). Section 2924.13 does all three.

Section 2924.13 prohibits a lender from recording a Notice of Default or even "threatening" foreclosure unless the lender first records a sworn "Compliance Certificate" confirming that none of the six categories of "unlawful practices" have occurred. Cal. Civ. Code §§ 2924.13(b)(4), (b)(5),

(c)(1). These categories include: (1) any failure within a three-year period to provide "written communication" to the borrower; (2) any past failure—by any prior servicer—to provide servicing transfer notices "when required by law"; (3) any past failure to provide TILA ownership-transfer notices "when required by law"; (4) providing any form, including a Form-1099, "indicating" the debt was written off; and (5) failing to provide periodic statements "when required by law." Cal. Civ. Code § 2924.13(b). None of these conditions existed when the loans originated.

Section 2924.13 now retroactively conditions the right to exercise the power of sale on certifying historical regulatory compliance that may be decades old, potentially outside of the current lender's control, and often governed by federal law that expressly disclaims any connection between servicing duties and the enforceability of their lien or collection of the underlying debt. By doing so, Section 2924.13 undermines the contractually-created power of sale to recover a debt upon default. (Declaration of Mike Griffith ("Griffith Dec."), ¶ 11; Declaration of Elizabeth Knight ("Knight Dec."), ¶¶ 12-16; Laddusaw Dec., ¶ 24; Declaration of Madison Christian ("Christian Dec."), ¶¶ 8-9; Cohen Dec., ¶¶ 9-13; Declaration of Gabriel Kass ("Kass Dec., ¶¶ 20-25).

No federal or state law previously suggested that any of the conduct now labeled "unlawful practices" under Section 2924.13(b) affected the enforceability of the lien or the right to foreclose. Under the federal "Regulation Z," which implements a portion of the Truth in Lending Act, a lender is not required to send a periodic statement to a borrower on a closed-end transaction[3] secured by a dwelling when: (i) the borrower is provided a coupon book, (ii) the lender is a "small servicer" (i.e., services less than 5,000 or fewer mortgage loans or is a nonprofit entity), and (iii) the borrower is a debtor in bankruptcy under title 11 of the United States Code. 12 C.F.R. §§ 1026.41(e)(3), (e)(4), (e)(5). Further, Regulation Z permits a lender to forgo sending periodic statements if: (i) it charged off the loan and stops charging any additional fees or interest on the account, and (ii) provides a periodic statement within 30 days of the charge off labeled "Suspension of Statements & Notice of Charge Off - Retain This Copy for Your Records" containing certain disclosures. 12 C.F.R. § 1026.41(e)(6)(i). Thus, Regulation Z acknowledges that periodic statements are not always required

---

[3] Under Regulation Z, closed-end credit involves a single transaction, like a home mortgage. 12 C.F.R. § 1026.2(a)(10). An open-end credit involves repeated transactions like a revolving line of credit. 12 C.F.R. § 1026.2(a)(20).

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

and that the lender may exercise its power of sale rights under the deed of trust, despite the suspension of providing periodic statements to the borrower. *Id*. Violations of the obligation to provide periodic statements may subject a creditor to statutory damages and actual damage (including attorney fees and costs). 15 U.S.C. §§ 1640(a), 1641. But such violations do not prevent a lender from foreclosing under its power of sale. See e.g., *Mazza v. Primelending*, No. CV-25-03832-PHX-KML, 2025 U.S. Dist. Lexis 206868, at 6 (D. Ariz. Oct. 21, 2025) (TILA authorizes only actual or statutory damages—not injunctive relief—so the borrower cannot use a violation to delay or prevent the foreclosure sale). Thus, if a junior lienholder is a small servicer, provides a coupon book, or issues a suspension notice of statements, it could go three years without communicating with the borrower in full compliance with Regulation Z. However, Section 2924.13 retroactively makes such conduct an unlawful practice.

Further, the Internal Revenue Code requires lenders to file a Form 1099-C with the IRS whenever certain "identifiable events" occur. 26 C.F.R. § 1.6050P-1(b). The IRS has confirmed that a creditor's issuance of a Form 1099-C does *not* cancel or forgive an obligor's debt: "The Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." See IRS Priv. Ltr. Rul. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005).

Most courts have held that filing IRS Form 1099-C does not, by itself, discharge a borrower's debt. *Gericke v. Truist*, No. 21-1776, 2022 U.S. App. Lexis 16321, at 8 (3d Cir. June 14, 2022) ("the IRS regulations explicitly create a reporting requirement and provide that a creditor may have to file a Form 1099-C 'whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.'"); *F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013) ("filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred.") In *Habtemariam v. Vida Capital Grp., LLC*, No. 2:16-cv-01189-MCE-AC, 2021 U.S. Dist. LEXIS 93194, at *10 (E.D. Cal. May 14, 2021), Judge Morrison C. England, Jr. harmonized the apparent split of authority in the treatment of the issuance of 1099-C Forms stating: "Under either approach, the 1099-C, alone, is likely insufficient

1  to cancel the debt. There must be some additional proof to demonstrate that the 1099-C is a valid

2  modification of the underlying loan agreement between the parties and that the debt is cancelled."

3  Section 2924.13 now declares the opposite, treating receipt of such a form as evidence that the debt

4  was "written off" as a basis to bar foreclosure. Cal. Civ. Code §§ 2924.13(b)(4), (f), (g).

5      If a debtor files for bankruptcy, the automatic stay prevents creditors from taking any action

6  to collect from the debtor until the bankruptcy case is dismissed or terminated. 11 U.S.C. §§

7  362(a)(1), (a)(6), (c)(2), (d). If a bankruptcy case is dismissed four years after its filing, a lender

8  could easily go three years without communicating with the borrower. Section 2924.13 declares

9  such a lack of communication an "unlawful practice." Cal. Civ. Code § 2924.13(b)(1), (d)-(g).

10     Lenders who extended credit on the expectation that the power of sale would remain

11  available unless state foreclosure procedures were violated must now demonstrate compliance with

12  an array of historical federal requirements dating back years or decades—including requirements

13  applicable to different entities—or risk losing the ability to foreclose. That is the definition of

14  substantial impairment. As the Supreme Court has warned, the Contract Clause prohibits States from

15  transforming an agreement "enforceable at law into a mere promise, thereby impairing the contract's

16  obligatory force." *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 189 (1992). That is precisely what

17  Section 2924.13 does by conditioning the central contractual remedy on compliance with

18  retroactive, extra-contractual, federally inconsistent obligations.

19          **b.      AB 130 Retroactively Deems Certain Previously Lawful**
                      **Practices as Unlawful.**

20     District Court Judge Shubb recently rejected a borrower's claim that Section 2924.13

21  (including the newly crafted definition of "unlawful practices") must apply "retroactively" to a

22  subordinate lender's attempt to foreclose on its interest in real property, stating:

23          Whether a change in state law applies retroactively is a question of state
            law.… And "California courts comply with the legal principle that unless

24          there is an express retroactivity provision, a statute will not be applied
            retroactively unless it is very clear from extrinsic sources that the

25          Legislature must have intended a retroactive application."

26  *Martinez v. Specialized Loan Servicing LLC*, No. 2:24-cv-1387 WBS AB, 2025 U.S. Dist. LEXIS

27  214451, at *11 ; 2025 WL 3030982 at *5 (Oct. 30, 2025) (cleaned up).

28     Neither the legislative history nor the text of Section 2924.13 declared the Legislature's

intent to "retroactively" apply these new duties and obligations to existing subordinate liens. Therefore, Judge Shubb aptly concluded that Section 2924.13 **cannot apply retroactively**; consistent with California Civil Code section 3. *Martinez, supra,* at 5. Moreover, since 1872, California Civil Code section 3 explicitly states the general presumption that "No part of this Code is retroactive, unless expressly so declared." This statute establishes a general rule that statutes operate prospectively only, unless the Legislature provides a clear and unavoidable implication or express language of retroactivity and is able to justify that retroactive application constitutionally. Yet, as Judge Shubb rightly concluded, neither the legislative history nor the text of Section 2924.13 declared the Legislature's intent to "retroactively" apply these new duties and obligations to existing subordinate liens.

The presumption against retroactivity is reinforced by the Contract Clause, analyzed above. Both state and federal constitutional law disfavor retroactive laws that substantially alter the rights and obligations of parties under existing, valid contracts. The rationale is that individuals should have the opportunity to know the law and to conform their conduct accordingly. Retroactive laws that create new obligations or impose new legal duties on past transactions are viewed with particular disfavor because they disrupt these settled expectations. *See* Kaiponanea T. Matsumura, *Reaching Backward While Looking Forward: The Retroactive Effect of California's Domestic Partner Rights and Responsibilities Act,* 54 UCLA L.Rev. 185, 203, 214-226, (2006).

Notwithstanding the state and federal constitutional law disfavoring retroactive laws, Section 2924.13 purports to apply retroactively by taking conduct that occurred long before its enactment (on June 30, 2025) – such as not sending periodic statements, failing to regularly communicate with borrower's in writing, failing to send transfer statements, etc. - that was not unlawful before the new law's enactment and deeming if, after the fact, unlawful. Underscoring the necessity of a preliminary injunction, not all courts agree with Judge Shubb's common-sense analysis that Section 2924.13 does not apply "retroactively."

For example, another judge in the Central District recently opined when addressing *pre-enactment* Section 2924.13 claims: "Although that law did not become effective until June 30, 2025, it at least provides some further support that the alleged conduct violates public policy in California

concerning fair loan servicing practices." *Montoya v. FCI Lender Servs.*, No. 5:25-cv-01732-JC, 2025 U.S. Dist. LEXIS 187209, at *22 n.9 (C.D. Cal. Sep. 22, 2025).

As drafted, Section 2924.13 turns conduct that was not unlawful at the time it occurred and retroactively makes it "unlawful." That is, by definition, an undeclared retroactive application. Since the Legislature did not provide express language of retroactivity or a clear and unavoidable implication, the law cannot apply retroactively. Yet, it purports to do so by declaring past conduct "unlawful." As one of the bill's authors put it, Section 2924.13 must "pass constitutional muster." (Chamberlain Dec., Ex. 1 [Tr., p. 3].) This statute does not.

### c. Prospectively, the State Cannot Show a "Significant and Legitimate Public Purpose" Justifying AB 130

Section 2924.13 cannot be applied retroactively and pass constitutional muster. Attempting to apply the statute prospectively yields the same result. Because the statute substantially impairs junior lenders' contractual rights, the State must show that a "significant and legitimate" interest justifies the law and does not merely "provide a benefit to special interests with its police power." *RUI One Corp.*, 371 F.3d at 1147. This inquiry requires "a careful examination of the nature and purpose of state regulation." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978).

Section 2924.13 was not enacted to address a statewide economic crisis, a systemic market failure, or any broad threat to public welfare. Unlike *Blaisdell*, which addressed the Great Depression that imperiled the housing market and the entire economy, the Legislature here made no finding of emergency, identified no general social or economic problem, and articulated no threat to the public at large. AB 130 does not explicitly identify any purpose for limiting the rights of junior holders with subordinate mortgages. Section 2924.13 was inserted at the last minute into AB 130, a 215-page budget trailer bill wholly unrelated to real estate finance, and the bill was adopted six days later. This conduct underscores that Section 2924.13 was not crafted to address a broad public emergency, but rather to advance a narrow private agenda. (See Chamberlain Dec., Ex. 19 [p. 16].)

Section 2924.13 is unreasonably broad and fails to advance its stated purpose. The only informal justification offered for this statute was to address enforcement issues surrounding so-called "zombie mortgages" that allegedly emerged from the Great Recession of the late 2000s. (Chamberlain Dec., Exs. 18, [Tr, p. 3], 19 [p. 16].). These "zombie" loans represent a tiny fraction

of junior liens. (Laddusaw Dec., ¶¶ 11-19). Although there are over 1.2 million impacted subordinate mortgages in California, recorded notices of default exist for only about 525 potentially "zombie mortgages," just 0.04% of the total. (*Id.*) Yet, Section 2924.13 does not target this narrow problem, but instead applies *to every* subordinate lien in California. The statute even extends protections to successors-in-interest, who purchased properties with constructive notice of recorded junior liens and likely accounted for them in the purchase price. By incorporating Civil Code section 2929.5's expansive definition of "borrower," Section 2924.13 imposes its burdens on parties who were never part of the original transaction. Rather than focusing on dormant, nonperforming "zombie loans," the statute irrationally disrupts the entire subordinate lending market, including seller-carryback financing,[4] home equity lines of credit, down-payment-assist seconds, purchase-assist seconds, private-party junior liens, reverse mortgages, construction liens, "Accessory Dwelling Unit (ADU)" liens, and even federally held or guaranteed subordinate liens. (Treder Dec., ¶ 5; Laddusaw Dec., ¶ 11; Jones Dec., ¶ 17; Parelskin Dec., ¶¶ 8, 12-13; Wilson Dec., ¶ 8; Ng Dec., ¶ 8.) Nothing in the legislative record explains why the State elected to impair *all* junior liens to address a niche category of loans that represent only a small fraction of subordinate mortgage activity. (Laddusaw Dec., ¶¶ 12-19) This overreach chills legitimate lending, increases costs, and reduces access to critical credit tools that support homeownership, disaster recovery, and housing development. (Cohen Dec., ¶¶ 21-22; Long Dec., ¶¶ 14-15; Ng Dec., ¶ 14; Hunefeld Dec., ¶ 19; Knight Dec., ¶ 16; Kass Dec., ¶¶13-14.) The mismatch between the alleged problem and the breadth of the statute confirms that Section 2924.13 is not remotely tailored to a broad societal concern but instead shifts economic advantages between private parties, which the Contract Clause forbids. *Energy Reserves* v. *Kansas Power & Light* 459 U.S. 400, 412 (1983). Here, the purpose underlying the enactment (supposedly curbing the collection of "zombie mortgages") is not reasonably related to a "significant and legitimate public purpose" in addressing and remedying a problem that does not exist in the enforcement of the vast majority of second mortgages and subordinate liens. *Id.* at 411-412; *see also*, *Allied*

---

[4] Section 2924.13 leads to an absurd result such that an unsecured lender has greater rights to foreclose on real property than a secured secondary mortgage holder. *See* Cal. Code Civ. Proc. § 484.090(a); *Lorber Industries of Calif. v. Turbulence, Inc.*, 175 Cal.App.3d 532, 535 (1985). An unsecured creditor should not be afforded more protection. This result highlights the misguided direction of Section 2924.13.

*Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244-245, 247, 249 (where the "state regulation constitutes a substantial impairment, the State, in justification" must demonstrate that the purpose of the enactment will remedy "a broad and general social or economic problem"). The ostensible "purpose" of Section 2924.13 is far more readily and directly addressed, requiring minimal changes to debt collection practice laws, as contrasted with the wholesale assault on the manner in which second mortgages are administered and collected when secured loans are in default. *See* Declaration of Michael Belote, Ex. A (June 24, 2025 objections of a "coalition" of associations involved in financing, servicing, and clearing title to second mortgages, including some of the Plaintiff Associations who bring this action).

Moreover, Section 2924.13, purporting to define "unlawful practices" under TILA, RESPA, and regulations promulgated by the IRS, impermissibly conflicts with and imposes obstacles and penalties on entirely lawful conduct. *See Chamber of Commerce of the United States v. Bonta*, 62 F.4th at 481-483. Finally, the statute's practical effects confirm the absence of a significant and legitimate public purpose. Section 2924.13 blocks the enforcement of otherwise-valid security interests, clouds title, disrupts reliance on public land records, discourages the availability of subordinate financing, increases borrowing costs for homeowners, and eliminates common consumer benefits identified above. (Declaration of Erica D. Jones ("Jones Dec."), ¶¶ 10-24). These consequences harm, rather than serve, the public interest.

Whatever deference courts might give to legislative judgment, such deference is not boundless. "The more severe the impairment, the more searching the examination of the legislation must be." *Campanelli*, 322 F.3d at 1098; *Allied Structural Steel*, 438 U.S. at 245 (the "severity of the impairment measures the height of the hurdle the state legislation must clear"). Section 2924.13 does not satisfy the searching examination required here.

Section 2924.13 did not address a broad, generalized economic or social problem. It imposes severe, permanent, and unforeseeable obligations on junior lienholders, potentially stripping them of their ability to enforce the power of sale clause in their deed of trust and leaving them without any remedy to recover their outstanding loans. Given these defects, Section 2924.13 is neither reasonable nor appropriately tailored to any legitimate public purpose, thereby failing the

1    third step in the Contract Clause analysis.

2          **2.      Plaintiffs Are Likely to Succeed on the Claim for Violation of Due
                Process Under 42 U.S.C. § 1983**

3          Section 2924.13 also violates the Due Process Clause of the Fourteenth Amendment. The

4    U.S. Constitution itself does not create property interests protected by the Due Process Clause of the

5    Fourteenth Amendment; they are defined by existing rules or understandings that stem from

6    independent sources, such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577-78 (1972).

7    These constitutionally protected interests extend beyond mere ownership of physical or tangible

8    property and encompass any interest to which a person has a "legitimate claim of entitlement." *Fed.*

9    *Home Loan Mortgage Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018). Since

10   statehood, California has recognized that mortgages, deeds of trust, and other obligations securing

11   a debt are constitutionally protected property rights. *See, e.g., Bank of Willows v. County of Glenn*,

12   155 Cal. 352, 354 (1909). A deed of trust conveys legal title to the trustee solely for the purpose of

13   securing the debt and executing the trust for the beneficiary, while the trustor retains the beneficial

14   interest and practical ownership of the property. *Aviel v. Ng*, 161 Cal. App. 4th 809, 816 (2008). "In

15   practical effect, if not in legal parlance, a deed of trust is a lien on the property." *Id.* "[A]cquiring,

16   possessing, and protecting property" are among the fundamental rights secured by the California

17   and U.S. Constitutions. (*See* Cal. Const. art. I, § § 1 and 7; U.S. Const. 5th and 14th amends.)

18         Section 2924.13 imposes unprecedented *retroactive* certification requirements that apply to

19   the entire life of a loan, including activity performed by prior loan servicers who may no longer exist

20   or whose records are unavailable. Current servicers are compelled to certify the accuracy and legality

21   of historical conduct they could not supervise or verify. The statute thus attaches new legal

22   consequences to past conduct without fair notice and without providing any meaningful opportunity

23   to investigate or contest the accuracy of decades-old servicing activity. These are core procedural

24   due process violations.

25         Worse, the statute forces servicers into an impossible choice: either certify facts that may

26   be unknowable or incorrect (risking perjury, civil liability, and statutory penalties) or refuse

27   certification and thereby lose the right to foreclose non-judicially. (Declaration of Joffrey Long

28   ("Long Dec."), ¶¶ 10-11; Griffith Dec., ¶¶ 10-11.) This coercive structure functions as a *de facto*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

forfeiture of a constitutionally protected recorded deed of trust. Because the statute provides no hearing, no adjudicatory mechanism, no safe harbor, and no process to contest disputed historical facts, it violates well-established requirements that the government provide fair procedures before depriving a party of significant property rights.

The statute's vagueness and overbreadth magnify these constitutional deficiencies. Critical terms, such as "written communication" within the three-year window or what qualifies as a sufficient "transfer of ownership" notice, are undefined or ambiguous. Servicers cannot determine what conduct satisfies the law, resulting in arbitrary and inconsistent enforcement. A statute that conditions property forfeiture on vague and unknowable standards is unconstitutional under the Due Process Clause and therefore actionable under § 1983.

Additionally, the statute is overbroad in its reach. Section 2924.13 treats virtually all subordinate liens (even those that are properly serviced, active, and well-maintained) as presumptively problematic "zombie" loans.[5] This sweeping approach extends far beyond any legitimate governmental objective and undermines the enforceability of an entire class of property interests. Such overbreadth again supports Plaintiffs' likelihood of success on its constitutional and Section 1983 claims.

The statute likewise fails to provide a subordinate lienholder with any alternative remedy or right to compensation after this confiscatory law took effect. Unless the mortgage servicer can affirmatively declare under oath that there was "no unlawful practice" committed during the life of the mortgage loan (under the statute's legally dubious definition of that phrase), then that lender's right to foreclosure on a defaulted loan and other contractual remedies, as a practical matter, may be extinguished.

---

[5] As noted in the Laddusaw Declaration, although only 525 Notices of Default have been recorded on potential "zombie" mortgages, Section 2924.13 substantially impacts over 1,200,000 subordinate mortgages of all types. (Laddusaw Dec., ¶¶ 11, 13-19.) The CCUL members alone hold over 319,077 subordinate mortgages. (Wilson Dec., ¶ 9.)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

1

**3.      Plaintiffs Are Likely to Succeed on the Claim for Violation of Equal Protection Under 42 U.S.C. § 1983**

2

**a.      Standard of Review**

3      The Fourteenth Amendment commands that no state shall "deny to any person within its

4  jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Section 7(a) of Article

5  I of the California Constitution provides: "A person may not be . . . denied equal protection of the

6  laws[.]" Cal. Const. art. I, § 7(a). "The equal protection clause contained in article I, section 7, of

7  the California Constitution is coextensive with its federal counterpart found in the Fourteenth

8  Amendment to the United States Constitution." *Ze Chang v. Cty. of Siskiyou*, 746 F. Supp. 3d 808,

9  825 (E.D. Cal. 2024). The Equal Protection Clause "entrenches a right to be free from discrimination

10  based on impermissible statutory classifications and other governmental action." *Doe v. United*

11  *States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

12      To determine whether a statute violates the Equal Protection Clause, a court must identify

13  the appropriate level of scrutiny to apply: strict scrutiny; intermediate scrutiny; or rational basis

14  review. *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("*Honolulu Weekly*");

15  *Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1185 (9th Cir. 2004). Because Section 2924.13

16  does not target a "suspect class" or a "fundamental right," rational basis review applies.

17      Under rational basis review, a court must know "the relation between the classification

18  adopted and the object to be attained." *Romer v. Evans*, 517 U.S. 620, 632 (1996). "In the ordinary

19  case, a law will be sustained if it can be said to advance a legitimate government interest, even if the

20  law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems

21  tenuous." *Id.* A law fails rational basis review when it is so irrational or absurd on its face that it

22  "can be motivated by nothing other than animus or prejudice against a group." *Tucson Woman's*

23  *Clinic*, 371 F.3d at 1185.

24      Courts have occasionally invalidated laws under rational basis review when the

25  classification is so arbitrary that any legitimate governmental purpose cannot justify it. In *Romer v.*

26  *Evans*, a law discriminating based on sexual orientation was struck down under rational basis review,

27  because the "sheer breadth [of the law was] so discontinuous with the reasons offered for it that the

28  amendment seemed inexplicable by anything but animus toward the class it affected." 517 U.S. at

632. Similarly, in *Allegheny Pittsburgh Coal Co. v. County Com.*, 488 U.S. 336, 344-346 (1989), the Supreme Court struck down a property tax statute that arbitrarily differentiated among comparable properties, finding that it lacked a rational basis and was not reasonably related to achieving uniformity in taxation. While rational basis review is deferential, it is not a rubber stamp.

### b.    Section 2924.13 Arbitrarily Discriminates Against Holders of Subordinate Mortgages and Lacks Any Rational Basis

Section 2924.13 fails rational basis review because it treats "subordinate mortgages" differently from all other real property creditors in a manner that is irrational, arbitrary, and unrelated to its purported purpose of addressing so-called "zombie mortgages."

Section 2924.13 creates a classification that targets only those lenders whose loans fall within the statute's definition of "subordinate mortgage," while leaving unaffected similarly situated lenders ("Other Lenders"), including senior residential mortgage lenders that hold first-priority liens on residential real property, and commercial property lenders whose loans are secured by liens on commercial property only. Cal. Civ. Code § 2924.13(a)(3). All these lenders are similarly situated. They extend credit secured by real property, may engage in identical servicing practices, and rely on nonjudicial foreclosures to recover on defaulted loans. Both subordinate mortgage lenders and Other Lenders may engage in commercial loans, as "subordinate mortgages" include commercial loans secured by residential property. Yet only the subset defined as "subordinate mortgage" lenders under Section 2924.13 is subject to onerous restrictions, mandatory certifications, and foreclosure prohibitions. Further, as discussed above, it declares "unlawful" for "subordinate mortgage" lenders to engage in servicing practices that remain entirely lawful for the Other Lenders, such as the issuance of IRS Form 1099-C and other actions analyzed above.

### i.    Section 2924.13's Classification is Irrational Because the Statutory Definition of "Subordinate Mortgages" is Arbitrary, Ambiguous, and Unadministrable

The irrationality of Section 2924.13 begins with the definition of "subordinate mortgage," defined as any deed of trust or security instrument "that was, at the time it was recorded, subordinate to another security interest encumbering the same residential real property." Cal. Civ. Code § 2924.13(a)(3). This definition is not merely over-inclusive. It is incapable of coherent application and sweeps far beyond the "zombie mortgages" that the Legislature purported to regulate.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

First, Section 2924.13 fails to define "security interest," thereby leading to the unintended inclusion of purchase-money first-priority mortgages. For instance, real property taxes automatically attach as a lien against real property and take priority over a deed of trust. Cal. Rev. & Tax. Code §§ 2187, 2188, 2188.1, 2190.2, 2192.1. These liens require no recording. Thus, any mortgage recorded at any time when property taxes are unpaid is technically "subordinate" even if intended to be a first lien. Other statutory liens, such as judgment liens, mechanic's liens, HOA liens, and federal tax liens, create similar situations. This interpretation would subject countless ordinary residential mortgages to Section 2924.13. That cannot be reconciled with the statute's claimed focus on old, dormant "zombie" junior mortgages.

Second, Section 2924.13 captures routine refinances and purchase-money transactions in an irrational manner. When a borrower refinances or uses loan proceeds to purchase a property, the new deed of trust is often recorded before the prior lien's reconveyance appears in the county index. This timing anomaly means the statute can misclassify these legitimate loans as subordinate, despite their true priority. (Treder Dec., ¶ 5; Laddusaw Dec., ¶ 11; Jones Dec., ¶¶ 18-19; Wilson Dec., ¶ 8; Boulter Dec., ¶¶ 17–18; Madison Dec., ¶ 8; Parelskin Dec., ¶¶ 14-15). Under Section 2924.13's literal language, the new first-position refinance loan is "subordinate at the time it was recorded" and therefore subject to the statute's severe restrictions even though the prior lien has been paid and extinguished. The classification thus turns on arbitrary happenstance in the recording sequence, not economic substance, and is wholly unrelated to borrower protection.

Third, Section 2924.13 irrationally freezes lien priority based on a historical snapshot. It treats a deed of trust as subordinate in perpetuity, if it was subordinate at the time of recording, even if its priority changed years ago through the payoff or reconveyance of the senior lien, through subordination agreements, or through any other lawful mechanism that elevated it to first position. (Hunefeld Dec., ¶¶ 7-9.) The statute retroactively revives lien hierarchies and imposes restrictions on loans that may be in first-priority position today but are now "subordinate mortgages" based on circumstances that may have existed a decade or more earlier. Freezing lien priority based on a historical snapshot (through retroactive application) that could go back decades, regardless of subsequent lawful changes, bears no rational relationship to regulating servicing conduct or

protecting borrowers relating to zombie mortgages. Still, it also upends lenders' reliance interests when extending additional credit, modifying a loan, or deciding whether and how to service the debt. No legitimate governmental purpose is served by resurrecting extinguished lien priorities and imposing permanent regulatory burdens.

> **ii.    Section 2924.13 Irrationally Imposes "Unlawful Practices" on Subordinate Mortgage Lenders That Other Similarly Situated Lenders May Lawfully Perform Without Reasonably Advancing Any Legitimate State Purpose**

As analyzed above, Section 2924.13 discriminates against subordinate mortgage lenders by declaring certain conduct "unlawful," even though the identical conduct is expressly permitted or, in some circumstances, required for the Other Lenders under federal law. As previously discussed, Section 2924.13 makes these lawful, federally authorized servicing actions become "unlawful practices" only for subordinate mortgage lenders. It also prohibits these lenders from foreclosing or threatening to foreclose unless they record certifications, and permits lenders to enjoin or set aside a foreclosure sale if the lender engaged in unlawful practices or misrepresented its prior conduct in its certification. Cal. Civ. Code §§ 2924.13(b)-(g). No rational basis supports such a classification, in which identical conduct is lawful for a senior lender but foreclosure barring for a junior lender, especially given that all rely on the power of sale under a deed of trust to recover unpaid loans.

Section 2924.13 is neither reasonably related to nor does it advance the Legislature's purpose of addressing "zombie mortgages." Rather than targeting aged, inactive junior liens that ignore federal servicing and notice requirements, the statute applies categorically to all subordinate instruments upon recording, regardless of current priority, servicing history, or compliance. This overbroad reach captures countless performing loans, imposes punitive requirements, and chills legitimate lending. By restricting subordinate financing—essential for down payment assistance, home equity access, wildfire resiliency, disaster recovery, and other critical needs—the law undermines homeownership. It destabilizes the mortgage market during a housing crisis. (Cohen Dec., ¶¶ 21–22; Long Dec., ¶¶ 14–15; Ng Dec., ¶ 14; Hunefeld Dec., ¶ 19; Knight Dec., ¶ 16). A statute that harms the interests it claims to protect cannot satisfy rational basis review.

4.      **Plaintiffs Are Likely to Succeed on the Supremacy Clause Violation Claim**

Under the Supremacy Clause, U.S. Const., art. VI, cl. 2, "when Congress enacts a valid statute pursuant to its Article I powers, state law is naturally preempted to the extent of any conflict with a federal statute. End of story." *Haaland v. Brackeen*, 599 U.S. 255, 287 (2023) (citation and quotation marks omitted); *Chamber of Commerce of the United States v. Bonta*, 62 F.4th 473, 481-482 (9th Cir. 2023) (*Chamber of Commerce*) (citation omitted, emphasis added).

Further, "[e]ven if Congress has not occupied the field [entirely], state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council* (2000) 530 U.S. 363, 372 (*Crosby*). Conflict preemption may occur either where it is "impossible for a private party to comply with both state and federal requirements," *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 303 (2019), or where, under the circumstances of a particular case, the challenged state law "creates an unacceptable 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Wyeth v. Levine*, 555 U.S. 555, 563-64 (2009) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (emphasis added); *see also Chamber of Commerce*, 62 F.4th at 482-483.

A state law impermissibly "conflicts with" or imposes an "obstacle" to federal law in various ways: "There is no 'rigid formula or rule' for determining when an act of Congress preempts a state law. … If the purpose and intended effects of the federal statute are blocked by the state law, then 'the state law must yield to the regulation of Congress within the sphere of its delegated power.'" *Chamber of Commerce of the United States*, 62 F.4th at p. 482 (citations omitted). Section 2924.13 runs afoul of the Supremacy Clause in each of these respects. The challenged provisions of AB 130 create irreconcilable conflicts and obstacles to compliance with federal laws governing mortgage lending, including the "servicing" of subordinate liens.

Section 2924.13's laundry list of allegedly "unlawful practices" specifically references several notice and reporting requirements outlined in federal regulations governing credit transactions, including mortgage loan servicing. When originally amended and presented in the Legislature as section 5 of SB 681 (April 10, 2025), the bill would have stated that a "debt securing a subordinate mortgage is deemed abandoned in its entirety" to the extent of any perceived

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

deficiencies in these federally-regulated notice or reporting processes:[6]

> SEC. 5. Section 2924.13 is added to the Civil Code, to read:
>
> 2924.13. (a) A debt securing a subordinate mortgage is deemed abandoned in its entirety if any of the following conditions are met:
>
> (1) The mortgage servicer did not provide the borrower with any written communication regarding the loan secured by the mortgage for at least three years.
>
> (2) The mortgage servicer failed to provide a transfer of loan servicing notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Real Estate Settlement Procedures Act [RESPA], as amended (12 U.S.C. Sec. 2601 et seq.).
>
> (3) The mortgage servicer failed to provide a transfer of loan ownership notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Truth in Lending Act [TILA], as amended (15 U.S.C. 1601, et seq.).
>
> (4) The mortgage servicer provided a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service Form 1099. (Brackets and emphasis added)

When enacted in its final form as Section 2924.13, the challenged provisions added two more "unlawful practices": Subdivisions—(b)(5) threatening or conducting a foreclosure sale after "the statute of limitations has expired …;" and (b)(6) failure to provide the borrower with periodic "account statements when required to provide that statement by law" including any account statements regulated by TILA. Cal. Civ. Code §§ 2924.13(b)(5), (6). Under the challenged statute, lenders and mortgage servicers must now affirmatively demonstrate compliance with "the law." It must do so under oath before "threatening" or proceeding with any foreclosure sale secured by the loan. This conflicts with federal law.

### a.    Failure to Provide the Borrower with Communications, Statements, and Notices as Required "By Law"

As analyzed above, Section 2924.13 makes conduct authorized by Regulation Z unlawful. For example, the failure to provide a consumer with a periodic statement is now unlawful under Section 2924.13. However, a periodic statement need not be sent for an account if the creditor deems

---

[6] SB 681, 2025-2026 Reg. Sess., § 5, as amended Apr. 10, 2025. On its face, the bill's initial approach would appear to violate "California's strong public policy against 'technical forfeitures'" of property rights and contractual obligations (*Pitzer College v. Indian Harbor Ins. Co.*, 8 Cal.5th 93, 10 (2019)), and the equally fundamental constitutional prohibition against the State's taking of property by simply decreeing that those rights are forfeited; in the language of AB 681, the loan is "deemed abandoned." *Jones v. New York Guar. & Indem. Co.*, 101 U.S. 622, 628 (1879) ("equity abhors forfeitures, and will not lend its aid to enforce them"); *cf.* Cal. Civ. Code § 1442 (same).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

1  it uncollectible, delinquency collection proceedings have been instituted, the creditor has charged

2  off the account and will not charge any additional fees or interest on the account, or furnishing the

3  statement would violate Federal law. 12 C.F.R. § 1026.5(b)(2). The same is true with other federal

4  laws summarized above, such as IRS Form 1099-C.

5         **b.**      **Section 2924.13 Makes Any Ostensibly Inaccurate Statements by the Mortgage Servicer in the Mandatory "Compliance Certificate" Subject to Prosecution as a Criminal Offense**

7        As *Chamber of Commerce v. Bonta* holds, attempts by the California Legislature to

8  criminalize entirely lawful conduct authorized under applicable federal statutes and regulations will

9  be preempted by the Supremacy Clause. *See* 62 F.4th at 478, 486-489 (statute imposing criminal

10  penalties on California employers for proposing agreements to arbitrate employment disputes was

11  preempted by the Federal Arbitration Act). Mortgage lenders and their agents who are engaged in

12  the entirely lawful collection of defaulted "subordinate mortgages" should not be subjected to

13  criminal charges of perjury based upon the vague and largely undefined "practices" stated by Section

14  2924.13. To the extent that the practices referenced in Section 2924.13 are already defined and

15  regulated by federal law, including TILA, RESPA, and Internal Revenue Service regulations,

16  Section 2924.13 improperly re-characterizes those practices as "unlawful." See Cal. Civ. Code §§

17  2924.13(b)(1)–(6). Section 2924.13 is therefore preempted under the Supremacy Clause.

18        **5.**      **Section 2924.13 Constitutes An Unconstitutional Taking**

19        To state a claim under the takings clause, "a claimant must identify a property interest

20  cognizable under the Fifth Amendment." *Hawkeye Commodity Promotions, Inc. v. Miller*, 432

21  F.Supp.2d 822, 852 (N.D. Iowa 2006). A plaintiff must also allege that either the government caused

22  the owner to suffer a permanent and physical invasion of his property or completely deprived the

23  owner of all economically beneficial use of the property without just compensation.

24        The character of a secured mortgage lien constitutes "property" under the Takings Clause.

25  Section 2924.13 deprives junior lien holders of their vested property interests without just

26  compensation. This deprivation is a taking. A loan that has previously been charged off can still be

27  subject to foreclosure. As a matter of law, "[a] Second Loan [that] was 'charged off' or 'written

28  off'… does not mean that the loan was extinguished." *Gonzales v. Specialized Loan Servicing* LLC,
   No. 1:20-CV-0159 AWI BAM, 2020 U.S. Dist. Lexis 98478, at 12 (E.D. Cal. June 3, 2020).

However, Section 2924.13 provides that foreclosing after sending an IRS Form 1099-C (indicating the debt has been written off) is an "unlawful practice," which bars foreclosures altogether in those scenarios. This action constitutes a legislative extinguishment of a lien, which is a property interest.

The Supreme Court's decision in *Sheetz v. County of El Dorado* (2024) 601 U.S. 267 confirmed that legislatively mandated conditions or exactions imposed on land use permits are not immune from Takings Clause scrutiny, thereby rejecting the notion of a legislative exception to the Takings Clause. As such, because Section 2914.13 eliminates a valid, preexisting property right (lien) without compensation, it is subject to scrutiny under the Takings Clause.

## C.    IRREPARABLE HARM

To be entitled to preliminary relief, a plaintiff must also establish that it will likely suffer irreparable harm if the defendant's actions are not enjoined. *Winter,* supra, 555 U.S. 7 at 22. This requirement is readily established here. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Section 2924.13 inflicts precisely that harm by depriving Plaintiffs and their members of vested property rights, contractual remedies, and federally protected enforcement mechanisms.

Section 2924.13 extends far beyond its asserted focus on so-called "zombie mortgages." As enacted, the statute applies to all loans secured by subordinate liens on residential real property, including home equity lines of credit, home equity conversion mortgages, seller carryback financing, first-time homebuyer assistance programs, HUD partial claim liens, Small Business Administration–guaranteed loans secured by residences, construction and ADU loans, refinance loans temporarily recorded behind existing liens, and even loans intended to be first-position but rendered "subordinate" by statutory or off-record liens. (Treder Dec., ¶ 5; Laddusaw Dec., ¶ 11; Jones Dec., ¶¶ 17–19; Parelskin Dec., ¶¶ 8, 12, and 15; Wilson Dec., ¶ 8; Boulter Dec., ¶¶ 17–18; Madison Dec., ¶ 8; Kass Dec., ¶ 6.) Each of these categories is now subject to foreclosure-blocking penalties and certification requirements that did not exist when the loans were originated and cannot realistically be satisfied today.

The irreparable harm is immediate and concrete. Section 2924.13 conditions the initiation

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

35
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.

of foreclosure on the recording of a sworn certification attesting that no "unlawful practices" occurred at any point in the loan's servicing history, including conduct by prior servicers over whom the current holder has no control and for which records often no longer exist. As a result, servicers refuse to execute the required certification because of potential perjury and liability exposure, creating a growing backlog of delinquent subordinate loans that cannot be enforced through nonjudicial foreclosure. (Treder Dec., ¶ 9; Laddusaw Dec., ¶¶ 9, 24; Jones Dec., ¶ 7; Parelskin Dec., ¶ 9; Wilson Dec., ¶ 15; Boulter Dec., ¶ 10; Madison Dec., ¶ 9; Griffith Dec., ¶¶ 10–11; Ng Dec., ¶ 9; Cohen Dec., ¶ 9; Long Dec., ¶ 10; Hunefeld Dec., ¶ 6; Knight Dec., ¶¶ 12-13; Zieve Dec., ¶ 9; Kass Dec., ¶ 11). Each day the statute remains in effect, Plaintiffs and their members are prevented from enforcing valid deeds of trust, recovering collateral, or mitigating losses. In fact, the harm is so severe that subordinate mortgage holders must continue to advance funds from their own pockets to avoid losing their security while simultaneously being prevented from recovering the money they lent and the additional advances. (Laddusaw Dec., ¶ 26; Wilson Dec., ¶¶ 16-17; Ng Dec., ¶¶ 11-12; Cohen Dec., ¶¶ 14-19; Hunefeld Dec., ¶¶ 7-9; Kass Dec., ¶¶ 18-25.) This harm cannot be remedied solely through damages. Plaintiffs submit multiple declarations from lenders, retired investors, trustees, servicers, and trade associations establishing that Section 2924.13 has already halted foreclosure activity, rendered enforcement of valid liens impossible, and caused immediate loss of business and market participation. (Hunefeld Dec., ¶¶ 3-18; Cohen Dec., ¶¶ 14-19.)

Section 2913 threatens the permanent loss of foreclosure rights. California law confers on secured creditors a statutory right to enforce their liens through judicial foreclosure. See Cal. Code Civ. Proc. § 725a *et seq*. That cause of action is itself a protected property interest. The U.S. Supreme Court confirms this "cause of action [to enforce the security interest] is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush*, 455 U.S. 422, 428 (1982); *Tulsa Prof'l Collection Servs, Inc. v. Pope*, 485 U.S. 478, 485 (1988). Section 2924.13 effectively extinguishes this right by barring foreclosure altogether whenever the certification cannot be made, regardless of borrower default, lien validity, or compliance with all substantive servicing laws. As explained in all the supporting declarations that have been filed, holders of subordinate mortgages and other impacted mortgage professionals are losing income they

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

would otherwise have received by assisting with the initiation and processing of nonjudicial foreclosure sales on subordinate mortgages. The deprivation of a cause of action and loss of ability to foreclose is irreparable as a matter of law.

The economic harm is likewise irreparable. The retroactive elimination of the foreclosure process will gut the subordinate mortgage industry and thereby irreparably impair its business operations. This harm is not speculative. To be sure, in *Montoya v. FCI Lender Services*, a lender filed a Motion to Dismiss against the borrower's First Amended Complaint, dismissing the first three causes of action for fraud, violation of TILA (servicing transfer notice), and violation of RESPA (periodic statements) because the applicable statute of limitations barred the three claims. The Court ruled in the lender's favor. However, as to the fourth cause of action, the Court ruled that the allegation related to violation of Business & Professions Code 17200, *et seq.*, was not time-barred under the longer 4-year statute of limitations and allowed the borrower to allege time-barred violations of RESPA and TILA as predicate unfair business practices. In ruling, the Court cited Civil Code section 2924.13. It stated: "Although that law did not become effective until June 30, 2025, it at least provides some further support that the alleged conduct violates public policy in California concerning fair loan servicing practices." *Montoya v. FCI Lender Servs.*, 2025 U.S. Dist. LEXIS 187209, *22, fn. 9. Allowing the claim to survive the motion to dismiss squarely demonstrates the tangible harm to lenders as a result of this statute.

### D.    THE BALANCE OF THE EQUITIES TIPS IN PLAINTIFFS' FAVOR

Before issuing a preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

As detailed in the supporting declarations, Plaintiffs and their members face immediate loss of contractual remedies, security interests, and business operations. By contrast, the State will suffer no cognizable harm from maintaining the status quo while this Court adjudicates the serious constitutional questions presented. An injunction would not forgive debt, extinguish liens, or authorize unlawful servicing practices. It would simply preserve long-standing foreclosure procedures that had existed for decades before the enactment of Section 2924.13.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

37

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.

### E.    AN INJUNCTION IS IN THE PUBLIC INTEREST

The public interest analysis considers "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies*, 632 F.3d at 1138. "'[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available."

*Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

If Section 2924.13 remains in effect, the secondary mortgage market will contract or freeze entirely. Faced with certification requirements tied to decades-old servicing practices, lenders are reluctant to attest to the past treatment of such loans, especially when they have no way to confirm past conduct. (Treder Dec., ¶ 9; Laddusaw Dec., ¶¶ 9, 24; Jones Dec., ¶ 7; Parelskin Dec., ¶ 9; Wilson Dec., ¶ 15; Boulter Dec., ¶ 10; Madison Dec., ¶ 9; Griffith Dec., ¶¶ 10–11; Ng Dec., ¶ 9; Cohen Dec., ¶ 9; Long Dec., ¶ 10; Hunefeld Dec., ¶ 6; Knight Dec., ¶¶ 12-13; Zieve Dec., ¶ 9; Kass Dec., ¶ 11.) As outlined in supporting declarations, Section 2924.13 will cripple the secondary loan market because lenders will exit the market, refuse to originate subordinate loans, and decline to refinance existing debt, thereby depriving consumers and small businesses access to home equity loans, down-payment assistance, and small-business credit secured by residences. (Cohen Dec., ¶¶ 21–22; Long Dec., ¶¶ 14–15; Ng Dec., ¶ 14; Hunefeld Dec., ¶ 19; Knight Dec., ¶ 16.) Title reliability will suffer as enforceability turns on off-record servicing events rather than recorded instruments. For instance, construction loans desperately needed to finance reconstruction after wildfires may rely on subordinate mortgage lenders. (Laddusaw Dec., ¶ 11; Treder Dec., ¶ 5; Wilson Dec., ¶ 8.) The public interest is not served by a statute that clouds title, destabilizes lending, and retroactively penalizes lawful conduct. Preserving the orderly enforcement of security interests while constitutional claims are resolved serves the broader public and maintains confidence in California's real property system.

Further, the continued application of Section 2924.13 harms many of the more than 1.2 millon non-zombie borrowers whose subordinate mortgages were unintentionally caught up in the overly broad and unanticipated impact of Section 2924.13. As detailed in the various supporting declarations, Section 2924.13's prohibition on "threaten[ing]" foreclosure until the foreclosure

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

actually starts (with the recording of the Notice of Default and accompanying Compliance Certification) severely deters a subordinate mortgage holder's ability to discuss pre-foreclosure loss mitigation or foreclosure avoidance options. (Laddusaw Dec., ¶¶ 22-23; Jones Dec., ¶¶ 13-16; Wilson Dec., ¶¶ 13-15; ¶6; Zieve Dec., ¶¶ 13-18.) Stifling loss-mitigation discussions between a lender and its borrower will primarily harm the borrower. The public interest is not served by a statute that harms countless borrowers of subordinate mortgages at their time of need.

## IV.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND UNDER RULE 65(C)

When a motion for preliminary injunction is granted, the plaintiff is required to post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have broad discretion in determining the amount of bond. *Renna v. Bonta*, 667 F. Supp. 3d 1048, 1071 (S.D. Cal. 2023). In public interest litigation, "requiring nominal bonds is perfectly proper," *id.*, and "[c]ourts routinely impose no bond or minimal bond in public interest ... cases." *Id.*, quoting *City of South Pasadena v. Slater*, 56 F.Supp.2d 1106, 1148 (C.D. Cal. 1999).

This Court should enter a preliminary injunction without a bond. Plaintiffs seek to enjoin enforcement of an unconstitutional statute, not to restrain private conduct. Thus, there is no risk of monetary harm to Defendant if he is found to be wrongfully enjoined. See *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1046 (D. Idaho 2025) (court waived bond where there was no risk of monetary harm to defendant). Moreover, requiring a bond would improperly burden Plaintiffs' exercise of constitutional rights and deter meritorious challenges to unlawful state action. Under these circumstances, like *Renna*, no bond should be required. Finally, "[t]he Court may waive the bond requirement altogether when the balance of equities weighs overwhelmingly in favor of the party seeking the injunction." *Youth Justice Coal. v. City of L.A.*, No. LA CV 16-07932-VBF, 2017 U.S. Dist. Lexis. 221738, at *11 (C.D. Cal. Jan. 27, 2017). The balance of equities weighs in favor of issuing a preliminary injunction without a bond.

## V.   COMPLIANCE WITH LOCAL RULE 231

Given the extensive declarations submitted, Plaintiffs do not intend to present oral testimony at the hearing unless the Court deems it necessary or helpful. Plaintiffs anticipate that oral

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

39

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, ETC.

argument will last approximately one hour, with each side allotted 30 minutes.

## VI.    CONCLUSION

Section 2924.13 is an unconstitutional intrusion on property rights, contracts, and federally regulated mortgage practices. Plaintiffs have shown a likelihood of success, immediate irreparable harm, and that both the equities and public interest favor an injunction. Accordingly, the Court should grant the motion and enjoin enforcement of Section 2924.13 pending final resolution, without requiring a bond.

DATED: December 15, 2025

**BUCHALTER**
**A Professional Corporation**

By:    _/s/ Robert S. McWhorter_____
            Robert S. McWhorter

**WRIGHT, FINLAY & ZAK, LLP**

By: _/s/ T. Robert Finlay (as authorized by 12/15/2025)_
            T. Robert Finlay

Attorneys for Plaintiffs,
CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership