1  ROB BONTA
   Attorney General of California
2  LARA HADDAD, State Bar No. 319630
   Supervising Deputy Attorney General
3  WILLIAM BELLAMY, State Bar No. 347029
   Deputy Attorney General
4  CARTER M. JANSEN, State Bar No. 347116
   Deputy Attorney General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6601
     Fax:  (916) 731-2124
7    E-mail:  carter.jansen@doj.ca.gov
   *Attorneys for Rob Bonta in his official capacity as*
8  *Attorney General of the State of California*

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE EASTERN DISTRICT OF CALIFORNIA

11                    SACRAMENTO DIVISION

12

13  **CALIFORNIA MORTGAGE**          Case No. 2:25-cv-2614-DAD-CKD
    **ASSOCIATION**, et al.,
14
                         Plaintiffs,
15                                   **AMENDED MEMORANDUM OF**
          v.                         **POINTS AND AUTHORITIES IN**
16                                   **SUPPORT OF DEFENDANT'S MOTION**
                                     **TO DISMISS PLAINTIFFS' FIRST**
17  **ROB BONTA**, in his official capacity as  **AMENDED COMPLAINT**
    Attorney General of the State of California,
18                                   Hearing Date: February 2, 2026
                         Defendant.  Time:        1:30 p.m.
19                                   Judge:       Hon. Dale A. Drozd
                                     Courtroom:   4, 15th floor
20                                   Action Filed: September 8, 2025

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

Background ................................................................................................................ 3

    I.    "Zombie" Second Mortgages .............................................................. 3

    II.    Enactment of Section 2924.13 ........................................................... 4

    III.    Procedural Background .................................................................... 7

Legal Standard ........................................................................................................ 7

Argument ................................................................................................................ 7

    I.    Plaintiffs' Claims Are Barred by Sovereign Immunity ......................... 7

    II.    Plaintiffs Fail to State Claims Upon Which Relief Can Be Granted. ..................... 8

        A.    Plaintiffs Fail to Allege a Violation of the Contract Clause. ..................... 9

            1.    The statute does not substantially impair any contractual rights ................................................................................ 10

            2.    Section 2924.13 advances a legitimate public purpose ................ 14

            3.    Section 2924.13 may be given retroactive effect. ........................ 15

        B.    Plaintiffs Fail to Allege a Violation of the Due Process Clause. .............. 15

        C.    Plaintiffs Fail to Allege a Violation Of The Equal Protection Clause. ................................................................................ 16

        D.    Section 2924.13 Is Not Preempted by Federal Law ............................... 17

            1.    Subdivisions (b)(2), (b)(3), and (b)(6) are not preempted. .......... 18

            2.    Subdivision (b)(1) is not preempted ........................................ 19

            3.    Subdivision (b)(4) is not preempted ........................................ 21

            4.    Subdivision (c) is not preempted ............................................ 22

Conclusion .............................................................................................................. 25

i

Amended Memorandum of Point and Authorities in Support of Defendant's Motion to Dismiss First Amended Complaint (2:25-cv-02614-DAD-CKD)

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Fed'n of State etc. Emps. v. Cnty. of San Diego*
11 Cal. App. 4th 506 (1992) ........................................................................... 23

*Amtrust Bank v. Fossett*
224 P.3d 935 (Ariz. Ct. App. 2009) ................................................................. 21

*Angelotti Chiropractic, Inc. v. Baker*
791 F.3d 1075 (9th Cir. 2015) ......................................................................... 16

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*
10 F.4th 905 (9th Cir. 2021) ............................................................................ 14

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) ............................................................................. 8

*Aurora Loan Servs., LLC v. Diakite*
148 A.D.3d 662 (N.Y. App. Div. 2017) .......................................................... 11

*Bayview Loan Servicing, LLC v. Bartlett*
87 A.3d 741 (Me. 2014) .................................................................................... 11

*BFP v. Resol. Tr. Corp.*
511 U.S. 531 (1994) .................................................................................... 17, 18

*Campanelli v. Allstate Life Ins. Co.*
322 F.3d 1086 (9th Cir. 2003) ................................................................ 9, 10, 14

*Chamberlan v. Ford Motor Co.*
314 F. Supp. 2d 953 (N.D. Cal. 2004) ............................................................. 18

*Cnty. of Santa Clara v. Trump*
250 F. Supp. 3d 497 (N.D. Cal. 2017) ............................................................. 23

*Credit Bureau of San Diego v. Johnson*
61 Cal. App. 2d Supp. 834 (Cal. App. Dep't Super. Ct. 1943) ....................... 23

*Davis Boat Mfg.-Nordic, Inc. v. Smith*
95 Cal. App. 5th 660 (2023) ....................................................................... 12, 17

*Del Real, LLC v. Harris*
966 F. Supp. 2d 1047 (E.D. Cal. 2013) ........................................................... 18

*Desai v. City of Los Angeles*
602 F. App'x 392 (9th Cir. 2015) .................................................................... 16

ii

*Energy Rsrvs. Grp. v. Kan. Power & Light Co.*
    459 U.S. 400 (1983) ........................................................................... 9, 12, 14

*F.D.I.C. v. Cashion*
    720 F.3d 169 (4th Cir. 2013) ............................................................... 21, 22

*Geier v. Am. Honda Motor Co.*
    529 U.S. 861 (2000) .................................................................................. 18

*Geo Grp., Inc. v. Inslee*
    151 F.4th 1107 (9th Cir. 2025) .................................................................. 8

*Gericke v. Truist*
    No. CV 20-3053, 2021 WL 1153143 (D.N.J. 2021) ................................... 21

*Gugger v. USAA Fed. Sav. Bank*
    No. 17-CV-1518-AJB-AGS, 2017 WL 5552254 (S.D. Cal. Nov. 17, 2017) ......... 21

*Habtemariam v. Vida Cap. Grp., LLC*
    No. 2:16-CV-01189-MCE-AC, 2021 WL 1966325 (E.D. Cal. May 17, 2021) ........ 22

*Hassell v. Uber Techs., Inc.*
    No. 20-cv-04062-PJH, 2021 WL 2531076 (N.D. Cal. June 21, 2021) ............... 15

*Home Bldg. & Loan Ass'n v. Blaisdell*
    290 U.S. 398 (1934) ................................................................................... 9

*Horse Rescue of Am. v. D & D Servs.*
    Nos. B179849, B181167, 2006 WL 134012 (Cal. Ct. App. Jan. 19, 2006) ......... 15

*In re First Alliance Mortg. Co.*
    280 B.R. 246 (C.D. Cal. 2002) ................................................................... 19

*In re Herrera*
    422 B.R. 698 (B.A.P. 9th Cir. 2010) .......................................................... 20

*In re Reed*
    492 B.R. 261 (Bankr. E.D. Tenn. 2013) ...................................................... 21

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products
    Liability Litigation*
    959 F.3d 1201 (9th Cir. 2020) .................................................................... 19

*In re Wilkinson*
    No. 24-24334-A-13, 2025 WL 2671026 (Bankr. E.D. Cal. Sept. 16, 2025) ........ 20

*In re Zotow*
    432 B.R. 252 (B.A.P. 9th Cir. 2010) ............................................................ 20

*Interstate Marina Dev. Co. v. Cnty. of Los Angeles*
    155 Cal.App.3d 435 (1984) ....................................................................... 9

*Jones v. Beckman*
    No. A114974, 2007 WL 2998978, (Cal. Ct. App. Oct. 16, 2007) ......................... 24

*Jones v. Google LLC*
    73 F.4th 636 (9th Cir. 2023) .......................................................... 17, 20, 21

*Keystone Bituminous Coal Ass'n v. DeBenedictis*
    480 U.S. 470 (1987) .............................................................................. 15

*Lac v. Nationstar Mortg. LLC*
    No. 2:15-cv-00523-KJM-AC, 2016 WL 4055041 (E.D. Cal. July 27, 2016) ............ 10

*Levald, Inc. v. City of Palm Desert*
    998 F.2d 680 (9th Cir. 1993) .................................................................. 16

*McClellan v. I-Flow Corp.*
    776 F.3d 1035 (9th Cir. 2015) ................................................................ 18

*Moeller v. Lien*
    25 Cal.App.4th 822 (1994) ..................................................................... 13

*Morgan Guar. Tr. Co. of New York v. Am. Sav. & Loan Ass'n*
    804 F.2d 1487 (9th Cir. 1986) ................................................................ 20

*NEI Direct, Inc. v. First USA Bank*
    No. B159728, 2005 WL 978454 (Cal. Ct. App. Apr. 28, 2005) ........................... 15

*Olson v. California*
    104 F.4th 66 (9th Cir. 2024) ................................................................... 16

*Oregon Ass'n of Hosps. & Health Sys. v. Oregon*
    No. 24-3770, 2025 WL 1833815 (9th Cir. July 3, 2025) ................................... 25

*Palazzo v. Bayview Loan Servicing LLC*
    No. DLB-20-2392, 2024 WL 4361857 (D. Md. Sept. 30, 2024) ........................... 20

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*
    467 U.S. 717 (1984) .............................................................................. 16

*Peters v. Superior Ct.*
  79 Cal. App. 4th 845 (2000).............................................................................. 23

*Project Veritas v. Schmidt*
  125 F.4th 929 (9th Cir. 2025)............................................................................ 9

*Rivera v. Lynch*
  816 F.3d 1064 (9th Cir. 2016)........................................................................... 24

*Robin v. Crowell*
  55 Cal.App.5th 727 (2020)................................................................................ 13

*S. Cal. Gas Co. v. City of Santa Ana*
  336 F.3d 885 (9th Cir. 2003)........................................................................ 10, 11

*San Francisco Taxi Coal. v. City & Cnty. of San Francisco*
  979 F.3d 1220 (9th Cir. 2020)........................................................................... 17

*Seminole Tribe of Fla. v. Florida*
  517 U.S. 44 (1996) ............................................................................................. 7

*Smith v. Ditech Fin. LLC*
  No. EDCV 18-01411 JGB (SHKx), 2018 WL 6431406, at *5 (C.D. Cal. Aug.
  27, 2018) .......................................................................................................... 11

*Speed's Auto Servs. Grp., Inc. v. City of Portland, Or.*
  685 F. App'x 629 (9th Cir. 2017) ..................................................................... 17

*Spoklie v. Montana*
  411 F.3d 1051 (9th Cir. 2005)........................................................................... 16

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001).............................................................................. 7

*Stewards of Mokelumne River v. California Dep't of Transp.*
  No. 2:20-CV-01542-TLN-AC, 2021 WL 2983302 (E.D. Cal. July 15, 2021) ........................ 7

*Sveen v. Melin*
  584 U.S. 811 (2018) ...................................................................................... 9, 10

*U.S. Bank Nat'l Ass'n v. Blowers*
  332 Conn. 656 (2019) ....................................................................................... 11

*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 (2008)....................................................................................... 9, 10

*Whole Woman's Health v. Jackson*
  595 U.S. 30 (2021) ................................................................................. 8

*Williams v. Alameda County*
  642 F.Supp.3d 1001 (N.D. Cal. 2022) ............................................ 12, 13

*Ex parte Young*
  209 U.S. 123 (1908) ............................................................................ 1, 7

*Zamani v. Carnes*
  491 F.3d 990 (9th Cir. 2007) .................................................................. 7

STATUTES

11 U.S.C.
  § 362(a) ............................................................................................. 19, 20

15 U.S.C.
  § 1610(a)(1) ...................................................................................... 19, 20

California Business & Professions Code
  § 17200 .................................................................................................. 19

California Civil Code
  §§ 2923.3-2944.10 ............................................................................... 6, 13
  §§ 2923.4-2914.19 ................................................................................... 22
  § 2923.5 ............................................................................ 11, 13, 22, 23
  §§ 2924-2924k ........................................................................................ 13
  § 2924 ............................................................................................... 15, 18
  § 2924.12(i) ............................................................................................ 10
  § 2924.13 .......................................................................................... *passim*
  § 2924.15 ................................................................................................ 23
  § 2924.19 ................................................................................................ 13

California Code of Civil Procedure
  §§ 725a-730.5 ........................................................................................ 13

California Penal Code
  § 118 ...................................................................................................... 24

Government Code
  § 9606 .................................................................................................... 15

**CONSTITUTIONAL PROVISIONS**

Eleventh Amendment.................................................................................................. 1, 7

California Constitution, Article I
    § 1........................................................................................................................ 16
    § 7.................................................................................................................... 15, 16

Supremacy Clause ........................................................................................................ 7

U.S. Constitution Amendment XIV
    § 1................................................................................................................ *passim*

U.S. Constitution, Article I
    § 10, cl. 1 ................................................................................................... *passim*

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 8(a)(2) ......................................................................................................... 7
    Rule 12(b)(1) ....................................................................................................... 7
    Rule 12(b)(6) ....................................................................................................... 7

**OTHER AUTHORITIES**

12 C.F.R.
    § 1024.5(c)(2)................................................................................................ 19, 20
    § 1024.38...................................................................................................... 11, 13

Arnold, et al., "Zombie 2nd mortgages are coming to life, threatening thousands of
    Americans' homes," NPR (May 18, 2024), available at
    https://www.npr.org/2024/05/10/1197959049/zombie-second-mortgages-
    homeowners-foreclosure (last accessed December 15, 2025) ................................ 3

Assembly Bill No. 130 (2025-2026 Reg. Sess.)
    § 2........................................................................................................................ 4

Buhayar, "Zombie Debt: Pay Up or Move Out," BLOOMBERG NEWS (Oct. 6,
    2025), available at https://www.bloomberg.com/graphics/2025-zombie-debt-
    collectors-mortgage-loans/ (last accessed December 15, 2025) ............................ 4

U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT, " Collecting, Analyzing, and
    Publicizing Data on Housing Turnover: Report to Congress" (Dec. 2024) at 17,
    available at
    https://www.huduser.gov/portal/portal/sites/default/files/pdf/Housing-
    Turnover-Report.pdf ........................................................................................... 2

**INTRODUCTION**

Plaintiffs challenge the constitutionality of California Civil Code section 2924.13, a statute enacted to mitigate the harms of the "zombie" mortgage crisis, and address other harmful aspects of the mortgage industry, in order to alleviate the homelessness and affordable housing crises in California. So-called "zombie" second mortgages are subordinate mortgages on residential property that "rise from the dead" when creditors seek to collect on them after years of noncommunication with the borrower, oftentimes after the borrower was led to believe that the debt had been forgiven. In the years leading up to the 2008 financial crisis, homebuyers commonly originated subordinate mortgages. Many of these subordinate mortgages have now "risen" to become "zombie" mortgages in recent years, threatening to dispossess thousands of unsuspecting, disproportionately low-income borrowers of their homes.

To address these issues, the Legislature passed Section 2924.13, which permits borrowers of subordinate mortgages to halt nonjudicial foreclosures and seek judicial review when a mortgage servicer engages in certain unlawful practices that contribute to the unfair surprise of zombie mortgages, such as failing to communicate with the borrower about the loan for more than three years or failing to provide notices or periodic statements that are already required by law. The statute also requires parties seeking nonjudicial foreclosures to certify whether they have committed any of the designated "unlawful practices" and notify borrowers of their right to petition the court for relief. Many of the "unlawful practices" delineated in the statute are not new, but rather mirror obligations that federal and existing state law already impose on mortgage servicers.

As a threshold matter, Plaintiffs' suit against the Attorney General is barred because of his sovereign immunity under the Eleventh Amendment. The Attorney General does not possess enforcement authority with respect to the challenged law, and no exceptions under *Ex parte Young* apply here.

Moreover, Plaintiffs' claims of constitutional violations of the Contracts and Due Process Clauses—which are based on a range of exaggerations and mischaracterizations—fail. Plaintiffs allege that the statute unconstitutionally infringes on their rights because it "eliminates" or

1

Amended Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss First Amended Complaint (2:25-cv-02614-DAD-CKD)

"extinguishes" the enforceability of subordinate mortgages if servicers have engaged in any of the "unlawful practices" delineated in the statute. But this is simply not true. By its plain language, the statute does not bar foreclosures if one of the "unlawful practices" has occurred; rather, it permits borrowers to temporarily halt the nonjudicial foreclosure process and seek judicial review if they assert there was an unlawful practice. Nor is a judge required to limit the foreclosing party's relief; instead, the statute permits the court to use its traditional equitable powers to determine what, if any, limitations on the sought foreclosure are appropriate. Nonjudicial foreclosure would only be barred *if* the borrower decides to petition the court *and* the court determines that the servicer's violations were severe enough to warrant barring foreclosure—and notwithstanding these potential limitations on *non*judicial foreclosure, the foreclosing party has the option at the outset of pursuing a judicial, rather than nonjudicial, foreclosure. In sum, the statute only restricts, not eliminates, *nonjudicial* foreclosures—which is considerably more lax than the rest of the country, as approximately half of U.S. states do not permit nonjudicial foreclosures at all.[1] Plaintiffs have not met the demanding standard for their facial constitutional challenges. They do not (and cannot) show that Section 2924.13 is anything but a reasonable means of advancing a legitimate public purpose, or that it is clearly arbitrary and unreasonable with no substantial relation to the public's general welfare. Nor can they show that the statute's application is unconstitutional in all circumstances, as required for a facial challenge. Their Contract Clause and Due Process Clause claims therefore fail. Their Equal Protection Clause claim also fails: the challenged statute readily passes rational basis review.

Finally, the statute is not preempted by federal law. The regulation of foreclosures is an area traditionally occupied by the States. Moreover, Plaintiffs have failed to identify any actual conflict between Section 2924.13 and any federal law; in fact, several federal laws to which Plaintiffs cite explicitly permit state legislation that implements additional protections, as Section 2924.13 does here.

---

[1] U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT, " Collecting, Analyzing, and Publicizing Data on Housing Turnover: Report to Congress" (Dec. 2024) at 17, available at https://www.huduser.gov/portal/portal/sites/default/files/pdf/Housing-Turnover-Report.pdf.

1  For all these reasons, the Attorney General's motion to dismiss should be granted without

2  leave to amend.

3                                    **BACKGROUND**

4  **I.  "ZOMBIE" SECOND MORTGAGES**

5        A subordinate mortgage is a security instrument through which a borrower obtains a loan

6  secured by the borrower's real property, and the lender's security interest is "subordinate" to

7  another security interest already encumbering the property (usually a primary mortgage).  *See*

8  Request for Judicial Notice ("RJN"), Ex. 1 (Senate Judiciary Committee Analysis, S.B. 681

9  (April 29, 2025)) at 16.  A "zombie" second mortgage refers to an old subordinate mortgage that

10 the borrower believed had been cancelled or forgiven—for example, because they had not

11 received any communications regarding the loan for years, and/or the servicer indicated long ago

12 that the loan had been discharged—yet the mortgage has now been revived unexpectedly as the

13 debt holder suddenly seeks to collect.  *Id.*  Such mortgages are deemed "zombies" because they

14 reappear after being considered "dead" for a long period of time.   *See* RJN, Ex. 2 (CONSUMER

15 FIN. PROTECTION BUREAU, "What is a zombie second mortgage?" (May 14, 2024)).

16       Zombie mortgages have become increasingly prevalent in recent years as debt holders

17 revive efforts to collect on long-dormant mortgages that are now profitable given the rise in

18 housing prices.  *Id.*[2]  The California Legislature noted that in the years leading up to the 2008

19 housing crisis, during the subprime-lending era and housing bubble, lenders commonly provided

20 lower-income home buyers with second mortgages in lieu of requiring a down-payment.  *See*

21 RJN, Ex. 1 at 16.  When the financial crisis emerged in 2008, however, the value of these second

22 mortgages drastically decreased.  *Id.*  For business reasons, holders of the second mortgages often

23 deemed them uncollectible and told homeowners that the loan had been forgiven, or even stopped

24 communicating with borrowers altogether.  *Id.*; RJN, Ex. 2.  As a result, many borrowers came to

25 believe that these mortgages were "modified along with the first mortgage, discharged in

26 _____

27        [2] *See also* Arnold, et al., "Zombie 2nd mortgages are coming to life, threatening thousands
   of Americans' homes," NPR (May 18, 2024), available at
28 https://www.npr.org/2024/05/10/1197959049/zombie-second-mortgages-homeowners-
   foreclosure (last accessed December 15, 2025).

                                            3

bankruptcy, or forgiven." RJN, Ex. 2. In reality, lenders had determined that the loan was not collectible and had written it off and sold it, often to large companies purchasing pools of "bad debt" for pennies on the dollar. *See* RJN, Ex. 1 at 16. Now that high housing prices have made second mortgages profitable again, the holders of these old second mortgages are seeking to recover on the debt through foreclosure or other collection actions, surprising homeowners who believed for years that their mortgage obligations were settled or discharged. *Id.* Oftentimes, to maximize the potential returns on these old loans, these debt owners will tack on substantial interest and late fees. *Id.*

With the rise of the zombie mortgage crisis, thousands of unsuspecting homeowners suddenly face demands to pay frighteningly large sums (which many simply cannot afford) or otherwise lose their homes, even though they had not received a single communication about the loan for years and believed the loan was long forgiven.[3]

## II.    ENACTMENT OF SECTION 2924.13

Recognizing the threat that the zombie mortgage crisis presented to homeowners, and how that threat, if realized, could contribute to the State's housing and homelessness crises, California lawmakers added section 2924.13 to the Civil Code.[4] Initially, lawmakers introduced Senate Bill 681, portions of which aimed to protect consumers from zombie mortgages. *See* RJN, Ex. 1 at 16-17; *see also* First Amended Complaint ("FAC") ¶ 34 (noting that the challenged provisions of Section 2924.13 were "initially part of" S.B. 681). Senate Bill 681 was not enacted, but portions of the bill directed at zombie mortgages were revised and re-introduced in section 2 of Assembly Bill 130. A.B. 130, 2025-2026 Reg. Sess., § 2. Assembly Bill 130 was signed into law and went into effect on June 30, 2025, which added Section 2924.13 to the Civil Code. The relevant provisions of Section 2924.13 are set forth below.

__Subdivision (b) - Unlawful Practices__: Section 2924.13, subdivision (b), enumerates six "unlawful" practices of a mortgage servicer in connection with a subordinate mortgage,

---

[3] *See, e.g.*, NPR, *supra* n.2; Buhayar, "Zombie Debt: Pay Up or Move Out," BLOOMBERG NEWS (Oct. 6, 2025), available at https://www.bloomberg.com/graphics/2025-zombie-debt-collectors-mortgage-loans/ (last accessed December 15, 2025).
[4] All statutory citations are to the California Civil Code unless otherwise noted.

4

Amended Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss First Amended Complaint (2:25-cv-02614-DAD-CKD)

including: the failure to provide the borrower with any written communication regarding the loan for three or more years (subd. (b)(1)); the failure to provide periodic statements, loan servicing transfer notices, or loan ownership transfer notices when required to provide such notices by law (subds. (b)(2), (b)(3), and (b)(6)); and conducting or threatening to conduct a foreclosure sale after providing a form to the borrower indicating that the loan had been written off or after the applicable statute of limitations has expired (subds. (b)(4), (b)(5)).

**Subdivision (c) - Certification and Notice Requirements for Nonjudicial Foreclosures**: Section 2924.13(c)(1) states that, prior to conducting or threatening to conduct a nonjudicial foreclosure, the "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" must record, simultaneously with the Notice of Default, a certification under penalty of perjury that either:

(A) The mortgage servicer did not engage in an unlawful practice as described in subdivision (b); [or,]

(B) The mortgage servicer lists all instances when it committed an unlawful practice as described in subdivision (b).

Section 2924.13(c)(2) further requires that, prior to conducting or threatening to conduct a nonjudicial foreclosure, the foreclosing party must send the borrower a copy of the certification described above and a notice explaining the borrower's right to petition the court for relief before the foreclosure sale. Specifically, the foreclosing party must send via certified mail:

(A) A notice providing that if the borrower believes the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history, the borrower may petition the court for relief before the foreclosure sale; [and,]

(B) A copy of the certification recorded pursuant to [subdivision (c)(1)].

**Borrower's Remedies**: The law does not bar foreclosures if the mortgage servicer engaged in an unlawful practice under subdivision (b) or if the foreclosing party failed to abide by the notice and certification requirements of subdivision (c). Rather, a violation of subdivision (b) or (c) raises "flags" that permit a borrower to either raise an affirmative defense (in a judicial foreclosure) or petition a court (if subject to a nonjudicial foreclosure) to evaluate the circumstances of the foreclosure and, if appropriate based on the severity of the violations, limit the debt-holder's relief. § 2924.13(d)-(g).

5

With respect to <u>judicial foreclosures</u>, the statute deems it an "affirmative defense" on behalf of the borrower "if the court finds the mortgage servicer engaged in any of the unlawful practices specified in subdivision (b)." § 2924.13(e).

With respect to <u>nonjudicial foreclosures</u>[5], the borrower can petition the court for relief before the foreclosure sale occurs if the borrower believes that the mortgage servicer engaged in one of the unlawful practices enumerated in subdivision (b) or misrepresented its compliance history in the certification under subdivision (c). *See* § 2924.13(c)(2)(A). If the borrower submits such a petition, the court must enjoin the nonjudicial foreclosure "until a final determination on the petition has been made." § 2924.13(d).

Additionally, borrowers can petition the court to set aside a nonjudicial foreclosure sale that has already occurred if the certification required under subdivision (c) was never recorded, or if the certification that was recorded indicates that the mortgage servicer engaged in an unlawful practice listed under subdivision (b) or misrepresented its compliance history. § 2924.13(g).

In evaluating any petitions made, the court may, in its discretion, provide an appropriate equitable remedy "depending on the extent and severity of the mortgage servicer's violations." *See* § 2924.13(f). The remedies "*may* include . . . striking all or a portion of the arrears claim, barring foreclosure, or permitting foreclosure subject to future compliance and corrected arrearage claim." *Id.* (emphasis added). The statute does not require the court to bar the foreclosure sale or otherwise limit the creditor's relief. *Id.*

**Bona Fide Purchaser Exception**: Finally, the bill provides that "[a]ny failure to comply with the provisions of this section shall not affect the validity of a trustee's sale[6] or a sale in favor of a bona fide purchaser." § 2924.13(h).[7]

---

[5] By statute, California permits nonjudicial foreclosures. *See* §§ 2923.3-2944.10. Section 2924.13 requires judicial oversight of nonjudicial foreclosures under certain circumstances.

[6] A trustee's sale occurs when a foreclosed property is sold at public auction.

[7] This provision rebuts Plaintiffs' claims regarding the purported "cloud of title" created by Section 2924.13. FAC ¶ 50(j) (alleging that because the statute introduces "off-record" criteria for determining whether a deed of trust remains enforceable, purchasers, lenders, and title insurers cannot rely on public records to evaluate encumbrances).

6

Amended Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss First Amended Complaint (2:25-cv-02614-DAD-CKD)

### III. PROCEDURAL BACKGROUND

Several months after Section 2924.13 took effect, a group of Plaintiffs filed suit to challenge the statute, and subsequently filed the First Amended Complaint ("FAC," Dkt. No. 14). Plaintiffs allege that Section 2924.13 violates the Contract Clause, Due Process Clause, Equal Protection Clause, and Supremacy Clause under the United States Constitution and/or equivalents contained in the California Constitution. FAC, Prayer for Relief. They seek declaratory, injunctive, and other equitable relief, including an order enjoining the Attorney General from enforcing the law and a declaration and judgment that Section 2924.13 is unconstitutional. *Id.*

### LEGAL STANDARD

Dismissal under Rule 12(b)(1) is proper when "sovereign immunity bars [Plaintiffs'] claims." *Stewards of Mokelumne River v. California Dep't of Transp.*, No. 2:20-CV-01542-TLN-AC, 2021 WL 2983302, at *4 (E.D. Cal. July 15, 2021). Dismissal under Rule 12(b)(6) for failure to state a claim is warranted "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007). Under federal "notice pleading" standards, a plaintiff's complaint must provide, in part, a "short and plain statement" of the plaintiff's claims showing an entitlement to relief. Fed. R. Civ. P. 8(a)(2). In considering whether a complaint states a claim, the court must accept as true all of the material factual allegations, but need not accept as true allegations that contradict matters properly subject to judicial notice or that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

### ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.

Sovereign immunity is the principle contained in the Eleventh Amendment that a State is not "amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). The Supreme Court's decision in *Ex parte Young* created an exception that allows official-capacity suits against State officials. *Ex parte Young*, 209 U.S. 123, 159–60 (1908). But the exception only "authorizes federal courts to enjoin certain state officials from

enforcing state laws." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021). If a plaintiff cannot "'direct [the] Court to any enforcement authority the [A]ttorney [G]eneral possesse[s] in connection with'" the challenged law, then the Attorney General is not a proper defendant in a suit against the State. *Geo Grp., Inc. v. Inslee,* 151 F.4th 1107, 1124 (9th Cir. 2025) (quoting *Whole Woman's Health*, 595 U.S. at 43). Moreover, the Attorney General's "generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).

Plaintiffs seek to enjoin the Attorney General from "taking any action whatsoever to enforce" the statute. FAC, Prayer for Relief subds. (d), (e). However, Plaintiffs have not shown, or even argued, that the Attorney General possesses enforcement authority under Section 2924.13. Indeed, the plain language of the statute shows that he does not; rather, it is the affected borrower who chooses whether to enforce the statute. § 2924.13(d), (g). This is fatal to Plaintiffs' claims against the Attorney General. *See Whole Woman's Health*, 595 U.S. at 43 (in action challenging allegedly unconstitutional Texas Heartbeat Act, which authorized private civil actions against certain healthcare providers, suit against Texas attorney general was barred because "petitioners do not direct this Court to any enforcement authority the attorney general possesses . . . that a federal court might enjoin him from exercising"); *Geo Grp.*, 151 F.4th at 1124 (state attorney general was "not [a] proper defendant[ ]" in action challenging a Washington law that "provided no cause of action to the Attorney General" but instead provided a "private cause of action" to certain detained persons). Plaintiffs' claims against the Attorney General should therefore be dismissed with prejudice because they are barred by sovereign immunity.

## II. PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs bring multiple constitutional challenges to Section 2924.13. Although Plaintiffs do not specifically state that their constitutional challenges are facial or as as-applied, "the label is not what matters. Instead, the important point for identifying the nature of a challenge is whether a plaintiff's claim and the relief that would follow reach beyond the particular circumstances of

that plaintiff." *Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025) (cleaned up).
Plaintiffs' requested relief plainly extends beyond the Plaintiffs' circumstances; their
constitutional challenges are therefore facial ones. *See* FAC ¶ 126 (seeking a declaration that
"Section 2924.13 is unconstitutional and the challenged provisions of that statute are null, void,
and of no force or effect"); Prayer for Relief, subd. (d) (seeking to "[e]njoin[] the Defendant from
implementing, applying, regulating, or taking any action whatsoever to enforce the challenged
provisions").

Because Plaintiffs bring a facial challenge, they can only succeed in their constitutional
claims by showing that "no set of circumstances exists under which the [statute] would be valid."
*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Plaintiffs fall
woefully short of meeting this stringent standard for any of their constitutional claims.

### A. Plaintiffs Fail to Allege a Violation of the Contract Clause.

The Contract Clause (U.S. Const., Art. I, § 10, cl. 1)[8] protects contractual arrangements, but
it gives way to the State's police power "to safeguard the vital interests of its people." *Energy
Rsrvs. Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 410 (1983); *see also Sveen v. Melin*, 584
U.S. 811, 819 (2018) ("[N]ot all laws affecting pre-existing contracts violate the [Contract]
Clause."). The threshold inquiry is whether a challenged law "substantially impairs" the
contractual relationship. *Sveen*, 584 U.S. at 819. If substantial impairment is found, the law will
still pass constitutional muster if it is an "'appropriate' and 'reasonable' way to advance 'a
significant and legitimate public purpose.'" *Id*. (citation omitted). The standard is the same when
a law applies to preexisting contracts. *See Interstate Marina Dev. Co. v. Cnty. of Los Angeles*,
155 Cal.App.3d 435, 441 (1984) (rent control law applying to 20-year-old-leases did not violate
the Contract Clause).[9] Here, Plaintiffs fail to show any substantial impairment. And even if they

---

[8] The parallel provision under the California Constitution is subject to the same federal
Contract Clause analysis. *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1097 (9th Cir.
2003).

[9] Plaintiffs invoke *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) and other
cases from nearly a century ago to suggest that Section 2924.13 violates the Contract Clause
because it was purportedly not enacted in response to a "mortgage crisis or other financial
emergency." FAC ¶¶ 71-73. However, recent case law makes clear that a statute "need not be
addressed to an emergency or temporary situation" to withstand scrutiny under the Contract

(continued…)

had, Section 2924.13 nonetheless does not violate the Contract Clause because it is a reasonable means of advancing a legitimate public purpose.

### 1. The statute does not substantially impair any contractual rights.

Plaintiffs do not (and cannot) allege facts showing that Section 2924.13 constitutes a "substantial impairment" of any contractual rights. To determine if there is a substantial impairment of contracts, courts consider the extent to which the law undermines the contractual bargain; whether it interferes with a party's reasonable expectations; and whether the law prevents the party from safeguarding or reinstating his rights. *Sveen*, 584 U.S. at 819. For an impairment to be "substantial," it must "deprive[ ] a private party of an important right, thwart[ ] performance of an essential term, defeat[ ] the expectations of the parties, or alter[ ] a financial term." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003). Because Plaintiffs bring a facial challenge, they must show that the law constitutes a substantial impairment in *all* applications. *See Wash. State Grange*, 552 U.S. at 449.

First, despite Plaintiff's claims, Section 2924.13 does not eradicate the ability of subordinate lienholders to foreclose. Rather, the statute implements procedural certification and notice requirements and permits, but does not require, borrowers to petition the court for relief if certain practices occurred; it does not guarantee that any relief will be granted. § 2924.13(d)-(g). Specifically, the penalties for the failure to comply with Section 2924.13 are that a borrower can (i) assert certain violations as an affirmative defense in a judicial foreclosure, (ii) temporarily halt a nonjudicial foreclosure and petition the court for equitable relief (which the court is not obligated to grant), or (iii) petition the court to set aside the nonjudicial foreclosure sale (which, again, the court is not obligated to grant). *Id.* Because the Court's exercise of power is discretionary, rather than mandatory, the statute "allows courts to avoid awards that would be inequitable or unconstitutional." *Lac v. Nationstar Mortg. LLC*, No. 2:15-cv-00523-KJM-AC, 2016 WL 4055041, at *6 (E.D. Cal. July 27, 2016) (finding that § 2924.12(i)—which granted courts the discretion to award attorneys' fees *ex parte* to homeowners who successfully enjoined

Clause. *Campanelli*, 322 F.3d at 1098 (citing *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, (1983)).

1  foreclosure sales—did not "implicate [the creditor's] federal constitutional rights" because

2  unconstitutional awards could be avoided).  Plaintiffs therefore cannot show that Section 2924.13

3  even *has any effect on* (let alone substantially impairs) the ability to foreclose in every

4  application.[10]

5      More fundamentally, this type of restriction—implementing procedural requirements and

6  permitting borrowers to petition the court for equitable relief due to the servicer's potential

7  misconduct—hardly constitutes "depriv[ing] a private party of an important right, thwart[ing]

8  performance of an essential term, or defeat[ing] the expectations of the parties."  *S. Cal. Gas Co.*,

9  336 F.3d at 890 (cleaned up).  Even if the borrower petitions the court and the court limits the

10 creditor's relief in some way (§ 2924.13(f)), delaying a foreclosure sale or refashioning debt

11 owed under a loan instrument due to the debt holder's misconduct is within courts' traditional

12 equitable powers and happens regularly in jurisdictions across the country.  *See, e.g.*, *Smith v.*

13 *Ditech Fin. LLC*, No. EDCV 18-01411 JGB (SHKx), 2018 WL 6431406, at *5 (C.D. Cal. Aug.

14 27, 2018) (noting remedy of postponing foreclosure sale for failure to abide by requirements of

15 § 2923.5); *U.S. Bank Nat'l Ass'n v. Blowers*, 332 Conn. 656, 671 (2019) ("When a mortgagee's

16 conduct is inequitable, a trial court in foreclosure proceedings has discretion to withhold

17 foreclosure or to reduce the amount of the stated indebtedness."); *Bayview Loan Servicing, LLC v.*

18 *Bartlett*, 87 A.3d 741, 748-49 (Me. 2014) (upholding the lower court's dismissal with prejudice

19 of a foreclosure action because the mortgagee had repeatedly failed to appear for mediation

20 sessions that were required by statute); *Aurora Loan Servs., LLC v. Diakite*, 148 A.D.3d 662, 664

21 (N.Y. App. Div. 2017) (affirming lower court's order tolling interest, costs, and attorney fees for

22 a four-year period during which servicer failed to participate in good faith in foreclosure

23

24      [10] Plaintiffs allege that the statute prevents certain lenders from initiating nonjudicial
   foreclosure because their servicers are "unable" or "unwilling" to execute the required
25 certifications.  *See, e.g.,* FAC ¶¶ 15, 17, 19-21.  However,  Section 2924.13 does not direct these
   servicers to refuse to sign the necessary certification. And any claimed inability to verify past
26 servicers' compliance with the statute's notice requirements is a result of the servicers' failure to
   comply with federal law, which requires servicers to accurately document communications with
27 borrowers and take affirmative steps to obtain such documentation from prior servicers.  12
   C.F.R. §§ 1024.38(b)(4)(i), (b)(4)(ii), (c); *see infra* at 13.  Accordingly, any potential impairment
28 resulting from the servicer's refusal to execute the required certification is attributable to the
   servicer, not to Section 2924.13.

settlement conferences mandated by state law).

Similarly, there is no substantial impairment when the law merely "alters the tools available to [the challenging party] to protect [his] interest" without totally preventing the party from safeguarding his rights. *Williams v. Alameda County*, 642 F.Supp.3d 1001, 1023-24 (N.D. Cal. 2022). In *Williams*, for example, the court found that an eviction moratorium did not constitute a substantial impairment of landlords' contract rights: "While eviction may be the landlords' preferred remedy, the prohibition on most evictions does not eliminate the landlords' ability to safeguard their rights because they can still sue for breach of contract." *Id.* Likewise, in *Davis Boat*, the court held that the retroactive application of a law that prevented the seizure of a debtor's home to satisfy his consumer debt did not constitute a substantial impairment of the lender's contractual rights because "[o]ther methods of recovery—such as wage garnishment and levying upon deposit accounts—[were] left intact." *Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660, 678 (2023) (internal citations omitted). Here, too, the law merely "alters the tools" available to creditors without eliminating the ability to safeguard their rights. *Williams,* 642 F.Supp.3d at 1023-24. Creditors may still pursue nonjudicial foreclosure—unlike approximately half of the U.S. states in which nonjudicial foreclosure is not permitted, *see supra* at 2, n.1—provided that they comply with the certification and notice requirements implemented by Section 2924.13, *and* they still have the option to pursue judicial foreclosure. While the unfettered right to pursue nonjudicial foreclosures "may be the [creditors'] preferred remedy," limiting this option does not "eliminate" their right to pursue foreclosure and enforce their rights under the loan, contrary to their allegations. *See Williams*, 642 F.Supp.3d at 1023-24.

Finally, Plaintiffs cannot show substantial impairment because significant regulations already exist in the area of home foreclosures, including some regulations that prescribe very similar requirements to the ones being challenged here, or requirements that complement those in the challenged statute. The more extensive the pre-existing regulation of an industry when parties entered into the contract, the weaker a party's argument that a substantial property right was impaired by post-contract regulatory changes. *See Energy Rsrvs. Grp.,* 459 U.S. at 416 (finding no substantial impairment of the parties' reasonable expectations because of the "existence of

extensive regulation" in the field); *Williams* 642 F.Supp.3d at 1023 ("[T]he County's moratorium does not interfere with the landlords' reasonable expectations because there is a long history of regulations governing the landlord-tenant relationship[.]"). The foreclosure process is already subject to significant oversight and regulation. *See, e.g.,* §§ 2923.3-2944.10 (laws governing nonjudicial foreclosures), Civ. Proc. §§ 725a-730.5 (laws governing judicial foreclosures); *see also Moeller v. Lien*, 25 Cal.App.4th 822, 830 (1994) ("Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust"); *Robin v. Crowell*, 55 Cal.App.5th 727, 751 (2020) ("The exercise of the power of sale in a deed of trust is carefully circumscribed by statute") (citations omitted). Pre-existing law implements various procedural requirements that must be satisfied before a nonjudicial foreclosure can proceed, including certification requirements similar to those implemented by Section 2924.13. *See, e.g.,* § 2923.5(b) (requiring certification of compliance with certain obligations before nonjudicial foreclosure can proceed). Preexisting state law also permits borrowers to "bring an action for injunctive relief to enjoin [certain material violations]" of some of these requirements, and requires that the nonjudicial sale "be enjoined until the court determines [that the violations are corrected]." § 2924.19. And, critically, federal law already requires servicers to accurately document and retain information regarding its past communications with borrowers and transfer such documentation to new servicers when there has been a servicing transfer. *See* 12 C.F.R. § 1024.38(b)(4)(i), (c). This law further *imposes an affirmative obligation* on new servicers to obtain any missing documentation from the old servicer. *See* 12 C.F.R. § 1024.38(b)(4)(ii) (transferee servicers must "identify necessary documents or information that may not have been transferred by a transferor servicer and obtain such documents from the transferor servicer").[11] Because there is a "long history of regulations" in this area, Plaintiffs cannot claim that Section 2924.13 interferes with their reasonable expectations. *Williams*, 642 F.Supp.3d at 1023.

---

[11] Thus, any claimed inability to verify past servicers' compliance or noncompliance (*see, e.g.*, FAC ¶¶ 15, 17, 19-21) is a result of Plaintiffs' and/or Plaintiffs' servicers' failure to abide by federal servicing requirements.

### 2. Section 2924.13 advances a legitimate public purpose.

Even if Plaintiffs could show substantial impairment, Section 2924.13 is a reasonable way to advance a "significant and legitimate state interest[ ]," such as remedying a general social or economic problem. *Energy Rsrvs. Grp.,* 459 U.S. at 416-417. When, as here, "the government is not party to the contract being impaired, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles,* 10 F.4th 905, 913 (9th Cir. 2021) (internal quotations omitted).

Section 2924.13 easily passes this deferential test. As noted in the Legislative Analysis for Section 2924.13's precursor, Senate Bill 681, the challenged provisions of Section 2924.13 were adopted to mitigate the harms of the "zombie mortgage" crisis. *See supra* at 4; FAC ¶ 34; RJN, Ex. 1 at 16 (noting "provisions aimed at protecting California homeowners from 'zombie' mortgages"), 17 ("SB 681 aims to . . . limit zombie mortgages and the degree to which they may be resurrected[.]"). Section 2924.13 was also enacted to preserve and protect existing housing and to mitigate the harms of increased housing prices. RJN, Ex. 1 at 1 ("SB 681 proposes a variety of changes to the law in order to lower Californians' costs related to housing."), 9 ("California's affordability crisis is pushing families into homelessness . . . SB 681 takes decisive action to put affordability front and center . . . [and] prioritizes preserving housing that serves moderate- and low-income families[.]"), 10 ("SB 681 . . . responds to the urgent needs of Californians burdened by the high cost of living, and it moves us toward a future where housing is attainable and stable for everyone."). These objectives clearly constitute a significant and legitimate public purpose. *See Apartment Ass'n of Los Angeles Cnty., Inc.*, 10 F.4th at 913 ("preventing displacements from homes" deemed a legitimate public purpose). And the connection between Section 2924.13 and these stated purposes is clear; it protects homeowners facing foreclosures on their second mortgages—including foreclosures from "zombie" second mortgages—by permitting them to seek judicial relief if certain, potentially suspect servicing activities occurred. Given the "substantial deference given to legislative judgment as to the necessity and reasonableness of economic statutes," Section 2924.13 is a reasonable means of achieving its stated purposes. *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1099 (9th Cir.

14

2003); *see also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 506 (1987)

(noting that courts should not "second-guess" the government's determination as to "the most

appropriate ways of dealing with the problem" at issue).

### 3. Section 2924.13 may be given retroactive effect.

Finally, contrary to Plaintiffs' claims, the "unlawful practices" set forth in subdivision (b)

may be given retroactive effect to the extent they impact foreclosures initiated after the statute

became law. *See* FAC ¶ 63. The general rule against retroactive application does not apply when

the challenged legislation repeals or limits "a right of action or remedy [that] is created entirely

by statute." *Horse Rescue of Am. v. D & D Servs.*, Nos. B179849, B181167, 2006 WL 134012, at

*12 (Cal. Ct. App. Jan. 19, 2006). This is because "certain rights or remedies exist solely because

of legislative action, and one who seeks to enforce such a right or remedy does so in recognition

of the Legislature's power to abolish it at any time." *NEI Direct, Inc. v. First USA Bank*, No.

B159728, 2005 WL 978454, at *18 (Cal. Ct. App. Apr. 28, 2005); *see also Hassell v. Uber

Techs., Inc.*, No. 20-cv-04062-PJH, 2021 WL 2531076, at *13 (N.D. Cal. June 21, 2021)

("[W]hat a legislature gives, a legislature may take."). The California Supreme Court has noted

that "when a right of action or remedy is created entirely by statute, it is not a vested property

right, and under Government Code section 9606 a person pursuing that statutory right of action or

remedy is on notice that their statutory right may be impaired by legislation at any time." *Horse

Rescue of Am.*, 2006 WL 134012, at *12 (citing *Callet v. Alioto*, 210 Cal. 65, 290 P. 438 (1930)).

Because the right to nonjudicial foreclosure is *entirely created by statute* (§ 2924), it is "not a

vested property right." *Id.* The California Legislature accordingly has the power to pass

legislation (such as Section 2924.13) that limits the circumstances in which nonjudicial

foreclosure can proceed, even if such limitations may result from past conduct.

### B. Plaintiffs Fail to Allege a Violation of the Due Process Clause.

The standard for establishing a due process violation is the same as the deferential second

step under the Contract Clause analysis. U.S. Const. amend. XIV, § 1; Cal. Const., art. I, § 7.

Section 2924.13 is constitutional under the substantive Due Process Clause as long as it is not

"clearly arbitrary and unreasonable, having no substantial relation to the public health, safety,

15

morals, or general welfare." *Spoklie v. Montana*, 411 F.3d 1051, 1059 (9th Cir. 2005). Courts "give great deference to the judgment of the legislature" "[i]n reviewing economic legislation on substantive due process grounds[.]" *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir. 1993). Even if the law applies retroactively, "retroactive application . . . is justified by a rational legislative purpose." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984). For the same reasons discussed above, Section 2924.13 passes this highly deferential test because it is a reasonable means of achieving the Legislature's public purposes for enacting the law. *See supra* at 14-15. It potentially subjects nonjudicial foreclosures to judicial scrutiny before they can proceed—which, as mentioned above, is effectively required by nearly half of other states that require *all* foreclosures to proceed via the judicial process and do not allow nonjudicial foreclosures at all. *See supra* at 2, n.1.

### C. Plaintiffs Fail to Allege a Violation of the Equal Protection Clause.

Plaintiffs claim that Section 2924.13 violates the Equal Protection Clause of the U.S. Constitution (U.S. Const. amend. XIV, § 1) and analogues in the California Constitution (Cal. Const. art. I, §§ 1, 7) because it "denies" holders of subordinate mortgages "equal protection of the laws, and the privileges and immunities afforded to the same or similar class of mortgage lenders whose loans are secured by real estate[.]" FAC ¶ 78. Plaintiffs cannot meet the deferential "rational basis" standard that applies to their claim.

"[I]t is well settled that equal protection challenges to economic legislation . . . are evaluated under rational basis review." *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015). Rational basis review also applies to retrospective economic legislation. *Desai v. City of Los Angeles*, 602 F. App'x 392, 393 (9th Cir. 2015). Under this standard of review, the law will pass constitutional muster so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Angelotti Chiropractic*, 791 F.3d at 1085. Moreover, the court "need not rely on the legislature to proffer its actual rationale motivating the legislation"; it may consider "*any* other rational purposes *possibly* motivating enactment of the challenged statute." *Olson v. California*, 104 F.4th 66, 78 (9th Cir. 2024) (emphasis in original; citation omitted).

The legislative analysis relating to Senate Bill 681, Section 2924.13's precursor, provides a rational basis for the law's differential treatment of subordinate mortgage holders as opposed to primary mortgage holders. *See* RJN, Ex. 1 at 16-17. The analysis explains that zombie mortgages have become especially prevalent in the past few years because holders of long-dormant second mortgages (which were commonly originated before the 2008 financial crisis) are now collecting on the debt because rising housing prices have made these second mortgages profitable again. *Id.*; *see also supra* at 3-4. Because the zombie mortgage crisis specifically stems from dormant *second* (or subordinate) mortgages, Section 2924.13 reasonably focuses on subordinate mortgages rather than primary mortgages. This easily passes rational basis review. *See, e.g., San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1225 (9th Cir. 2020) (economic legislation's classification passed rational basis review when the law focused on "those most affected by a shift in the market"); *Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660, 679 (2023) (finding a "plausible basis" for the differential treatment of financial institutions and "creditors who are not financial institutions"); *Speed's Auto Servs. Grp., Inc. v. City of Portland, Or.*, 685 F. App'x 629, 630 (9th Cir. 2017) (differential treatment of sedans and taxis was "rationally related to the City's legitimate interest in maintaining a healthy and well-functioning transportation market").

### D. Section 2924.13 Is Not Preempted by Federal Law.

Plaintiffs allege that various aspects of Section 2924.13 are preempted because they conflict with federal law. FAC ¶¶ 86-88. Conflict preemption has two forms: impossibility and obstacle preemption. *Jones v. Google LLC*, 73 F.4th 636, 644 (9th Cir. 2023). Impossibility preemption occurs when it is impossible for a private party to comply with both state and federal law. *Id.* Obstacle preemption occurs when the state law "prevent[s] or frustrate[s] the accomplishment of a federal objective." *Id.*

Here, too, Plaintiffs' claims fail. First, Plaintiffs' preemption arguments fail to recognize that the process of foreclosure, including the availability of nonjudicial foreclosure, is a matter of state law. *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 541-542 (1994) ("States have created diverse networks of judicially and legislatively crafted rules governing the foreclosure process, to

17

achieve what each of them considers the proper balance between the needs of lenders and borrowers.").  For example, it is state, not federal, law that determines whether foreclosures may proceed nonjudicially; about half of the states do not permit judicial foreclosure at all.  *Id.* Plaintiffs claim that requiring additional procedural requirements before a nonjudicial sale can proceed conflicts with *federal* law—notwithstanding that it is *state* law that provides the right to nonjudicial foreclosure to begin with.  *See* § 2924 (statute permitting nonjudicial foreclosures). This tension undermines Plaintiff's preemption arguments because the "presumption against preemption applies with particular force when Congress has legislated in a field occupied by the States."  *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015); *see also Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1054 (E.D. Cal. 2013)*.*

Moreover, preemption only exists if there is "clear evidence" of a conflict.  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000).  "Speculative or hypothetical conflict is not sufficient: only State law that 'actually conflicts' with federal law is preempted."  *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 957 (N.D. Cal. 2004).  As explained in further detail below, Plaintiffs do not and cannot show that any of the purportedly preempted provisions actually conflict with or pose an obstacle to federal law.

## 1.   Subdivisions (b)(2), (b)(3), and (b)(6) are not preempted.

Plaintiffs claim that Section 2924.13 is preempted because it deems it an "unlawful practice" when a mortgage servicer fails to provide the borrower with periodic statements, servicing transfer notices, and ownership transfer notices "when required by law."  FAC ¶ 90; § 2924.13(b)(2), (3), (6).  They are preempted, Plaintiffs contend, because such statements are not always required by federal law.  *E.g.*, FAC ¶ 95 (situations where a creditor is exempted from sending periodic statements under TILA/Reg Z), ¶ 97 (servicing transfer notice requirements are "[s]ubject to certain exceptions"), ¶ 100 (periodic statements are allegedly disallowed during bankruptcy stay).  That federal law provides exceptions to these periodic statement and notice requirements is immaterial, however, because a violation of Section 2924.13 only occurs *when the statement or notice is required by law*, including TILA or RESPA.  § 2924.13(b)(2), (3), (6).

Thus, Section 2924.13 necessarily encompasses the exceptions that Plaintiffs cite, and there is no conflict with federal law on this basis.

Plaintiffs also contend that under federal law, the "remedies provided for lapse in providing timely statements nor notices under TILA or RESPA are the loss of interest and collection fees," not the "'forfeiture' of indebtedness or the lender's ability to foreclose on the secured collateral." FAC ¶ 99. But as already discussed, Plaintiffs are patently incorrect that the existence of an "unlawful practice" categorically leads to the forfeiture of indebtedness or the inability to foreclose. *See supra* at 5-6, 10-11. And regardless, states are not barred from implementing remedies that exceed those provided under federal law. *See, e.g., In re First Alliance Mortg. Co.*, 280 B.R. 246, 251 (C.D. Cal. 2002) (rejecting argument that additional penalties under Cal. Bus. & Prof. Code Section 17200 are inconsistent with TILA because additional penalties "merely provide greater protection to consumers"); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, 959 F.3d 1201, 1224 (9th Cir. 2020) ("The potential for overlapping state and federal penalties has never, without more, raised the inference that Congress intended to preempt state law"). Critically, <u>TILA and RESPA specifically state that they do not preempt any state laws that give greater protections to consumers</u>. *See* 12 C.F.R. § 1024.5(c)(2) (state laws are not "inconsistent with RESPA" if they give "greater protection to the consumer"); 15 U.S.C. § 1610(a)(1) (TILA requirements do not "annul, alter, or affect the laws of any state" unless the state laws are inconsistent with TILA, and "then only to the extent of the inconsistency"). Thus, Plaintiffs cannot show that subdivisions (b)(2), (b)(3), and (b)(6) are preempted.

## 2. Subdivision (b)(1) is not preempted.

Section 2924.13(b)(1) deems it an "unlawful practice" when a servicer fails to communicate with a borrower for three years. Plaintiffs allege that this provision conflicts with federal law because 11 U.S.C. § 362(a) "imposes an automatic stay that prohibits creditors . . . from engaging in any act to collect or recover a claim" after a borrower has declared bankruptcy, and Section 2924.13(b)(1) "could compel servicers to send periodic statements" during a mandatory stay that exceeds three years. FAC ¶ 101.

Contrary to Plaintiffs' claims, it is not "impossible" to comply with both Section 2924.13(b)(1) and federal law under these circumstances. *Jones*, 73 F.4th at 644. An automatic stay under § 362(a) "does not prevent all communications between a creditor and the debtor." *In re Zotow,* 432 B.R. 252, 258–59 (B.A.P. 9th Cir. 2010). It only prevents communications "designed to coerce payment of a prepetition debt." *In re Wilkinson*, No. 24-24334-A-13, 2025 WL 2671026, at *3 (Bankr. E.D. Cal. Sept. 16, 2025); *see also Palazzo v. Bayview Loan Servicing LLC*, No. DLB-20-2392, 2024 WL 4361857, at *12 (D. Md. Sept. 30, 2024) (sending monthly mortgage statements—which included the disclaimer "[This] is not an attempt to collect a debt against you"—did not violate § 362(a)'s mandatory stay provision). Even "requests for payment . . . absent coercion or harassment by the creditor" may be permitted under § 362(a). *Morgan Guar. Tr. Co. of New York v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986). Section 2924.13(b)(1) merely requires some form of "written communication" with the borrower in the past three years, which is clearly possible without running afoul § 362(a).

Plaintiffs also argue that subdivision (b)(1) is preempted because "exemptions and exceptions to TILA and RESPA may authorize the lack of such 'written communications' for period much longer than just three years." FAC ¶ 101. In other words, Plaintiffs claim that because TILA and RESPA do not always require the creditor to communicate with the borrower within the last three years, Section 2924.13(b)(1) is preempted. *Id.* This argument is nonsensical. Section 2924.13 was enacted *because* lawmakers deemed existing regulations insufficiently protective, including because mortgage servicers may go for long periods of time without communicating with borrowers. *See* RJN, Ex. 1 at 17. Subdivision (b)(1) *by design* implements additional communication requirements in order to provide more protection to consumers—which TILA and RESPA explicitly permit. *See* 12 C.F.R. § 1024.5(c)(2); 15 U.S.C. § 1610(a)(1); *supra* at 19; *see also In re Herrera*, 422 B.R. 698, 715 (B.A.P. 9th Cir. 2010), *aff'd sub nom. In re Monroy*, 650 F.3d 1300, 1301 (9th Cir. 2011) ("We conclude that the mortgage creditors' argument that RESPA occupies the field of reports required by mortgage creditors such that chapter 13 debtors are precluded from crafting additional reporting rules in their chapter 13 plans lacks merit and is directly contradicted by the plain language of RESPA."). Moreover, Plaintiffs

20

fail to show that it would be "impossible" to comply with Section 2924.13 and TILA and RESPA's notice requirements, or that Section 2924.13 somehow poses an "obstacle" to federal notice requirements. *See Jones*, 73 F.4th at 644.

### 3. Subdivision (b)(4) is not preempted.

Section 2924.13 deems it an unlawful practice to "conduct[] or threaten to conduct[] a foreclosure sale after providing a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service ["IRS"] Form 1099." § 2924.13(b)(4). According to Plaintiffs, this provision is preempted because it conflicts with IRS guidance and the majority of courts that find that the issuance of a Form 1099-C does not indicate actual discharge of indebtedness. FAC ¶¶ 103-109. Plaintiffs mischaracterize the operation of subdivision (b)(4), which is entirely consistent with federal law.

Federal law distinguishes between "discharge" and "actual discharge" of debt. *See Gericke v. Truist*, No. CV 20-3053, 2021 WL 1153143, at *4 (D.N.J. 2021). "Discharge" is used in the context of tax law and refers to the realization that a debt is unlikely to be repaid. *Id.* "Actual discharge" refers to the act of formally forgiving or cancelling the debt. *Id.* IRS regulations require creditors to issue a Form 1099-C when there is "discharge" of debt to report unpaid debts as taxable income. *Id.* There is a "split in authority" as to whether a Form 1099-C necessarily reflects an actual discharge of debt. *Gugger v. USAA Fed. Sav. Bank*, No. 17-CV-1518-AJB-AGS, 2017 WL 5552254, at *3 (S.D. Cal. Nov. 17, 2017). The IRS's stance and the majority view in federal courts is that the issuance of a Form 1099-C does not, on its own, indicate actual discharge.[12] *See* RJN, Ex. 3 (IRS Priv. Ltr. Rul. 2005-0207 (Dec. 30, 2005)) (cited at FAC ¶ 104). Federal courts *do*, however, view Form 1099-Cs as indicia that debt has been forgiven. *See, e.g., F.D.I.C. v. Cashion*, 720 F.3d 169, 181 (4th Cir. 2013) ("[W]here a properly authenticated Form 1099-C is introduced into evidence along with other circumstantial evidence of cancellation of the debt, the Form 1099-C could be properly considered by the trier of fact

---

[12] Some courts have found that the issuance of a 1099-C, alone, is sufficient to show actual discharge. *See In re Reed*, 492 B.R. 261, 271-273 (Bankr. E.D. Tenn. 2013) (disagreeing with IRS guidance and finding that the filing of a Form 1099-C prohibited further collection on a debt); *Amtrust Bank v. Fossett*, 224 P.3d 935, 937 (Ariz. Ct. App. 2009) ("[The] issuance of the Form 1099-C is prima facie evidence that [the lender] discharged their debt[.]").

1  under the totality of the circumstances on the ultimate issue of whether the debt in question was,

2  in fact, cancelled."); *Habtemariam v. Vida Cap. Grp., LLC*, No. 2:16-CV-01189-MCE-AC, 2021

3  WL 1966325, at *6 (E.D. Cal. May 17, 2021) (the issuance of a Form 1099-C, in addition to other

4  supporting evidence, could plausibly evidence "an objective intent to cancel debt").

5      There is no actual conflict here. Plaintiffs correctly note that IRS guidance "do[es] not

6  prohibit collection activity" after a 1099-C is filed. FAC ¶ 105. Section 2924.13 *also* does not

7  prohibit collection activity after the issuance of a 1099-C. As discussed above, the occurrence of

8  practices delineated in subdivision (b) does not lead to a categorical bar on foreclosure or void the

9  creditor's lien; it merely permits the borrower to petition a court for relief and temporarily halt a

10  nonjudicial foreclosure sale while it does so. *See supra* at 5-6, 10-11. The issuance of a 1099-C

11  prior to initiating nonjudicial foreclosure merely serves as a "flag" that may—if the borrower so

12  petitions—lead to judicial scrutiny before the nonjudicial foreclosure can proceed. *See*

13  § 2924.13(d), (f). The court then evaluates the circumstances surrounding the attempted

14  foreclosure, including the issuance of the 1099-C, and determines if the borrower is entitled to

15  equitable relief. § 2924.13(f).

16      Moreover, under federal law, courts may take the issuance of a Form 1099-C into account

17  when determining whether a debt has been discharged. *See Cashion*, 720 F.3d at 181 (treating a

18  Form 1099-C as one piece of circumstantial evidence that debt has been discharged). Thus,

19  Section 2924.13's framework—treating the issuance of a Form 1099-C as a potential trigger for

20  additional judicial scrutiny, if the borrower so petitions—is not inconsistent with federal law.

21      **4.    Subdivision (c) is not preempted.**

22      Plaintiffs finally argue that subdivision (c), which requires the foreclosing party to record

23  the requisite certification prior to "conduct[ing] or threaten[ing] to conduct a nonjudicial

24  foreclosure," is preempted because it allegedly conflicts with the California Homeowner's Bill of

25  Rights ("HOBR," §§ 2923.4-2914.19) and certain notice requirements for federally related

26  mortgage loans. FAC ¶ 111. Specifically, Plaintiffs claim that § 2923.5 of the HOBR requires a

27  "dialogue between the servicer and the borrower," including a discussion of options to prevent

28  foreclosure, prior to recording a notice of default, and that certain federally related mortgage

22

loans require the foreclosing party to send pre-foreclosure "Notices of Intent to Foreclose." *Id.*

They argue that the "dialogue" required under § 2923.5 of the HOBR and the "Notices of Intent

to Foreclose" are prohibited under the newly-enacted Section 2924.13 because they would

constitute "threatening" foreclosure prior to initiating the nonjudicial foreclosure process. *Id.*

Plaintiffs fail to explain why a purported conflict with a *state law* (such as § 2923.5 of the HOBR)

means that the statute is preempted by *federal law*. *Id.*[13] Regardless, Plaintiffs cannot show an

actual conflict between subdivision (c) and these other pre-foreclosure communication

requirements. Plaintiffs provide no legal authority to support that these communications would

constitute a "threat" to foreclose. FAC ¶ 111. To the contrary, "[s]tatutes are to be interpreted by

assuming that the Legislature was aware of the existing law at the time of [their] enactment[.]"

*Peters v. Superior Ct.*, 79 Cal. App. 4th 845, 850 (2000), *as modified* (May 2, 2000). "[Courts]

also follow the rule that every statute must be construed with reference to the whole system of

which it is a part so that all may be harmonized and have effect." *Am. Fed'n of State etc. Emps.*

*v. Cnty. of San Diego*, 11 Cal. App. 4th 506, 515 (1992). Under these canons of construction, it is

presumed that the Legislature knew of the pre-foreclosure "dialogue" and notice requirements

cited by Plaintiffs and did not intend that these legally required communications would constitute

an unlawful "threat" under Section 2924.13. *See, e.g., Cnty. of Santa Clara v. Trump,* 250 F.

Supp. 3d 497, 515 (N.D. Cal. 2017) ("'[A]s between two possible interpretations of a statute, by

one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that

which will save the [statute].'") (quoting *Blodgett v. Holden*, 275 U.S. 142, 148, (1927)); *Credit*

*Bureau of San Diego v. Johnson*, 61 Cal. App. 2d Supp. 834, 839 (Cal. App. Dep't Super. Ct.

1943) ("If two theories may reasonably proceed from the wording of an act, one in harmony with

organic law as expressed in the Constitution, and the other in conflict therewith, the court must

assume that the Legislature intended the theory in harmony rather than the one in conflict.").

---

[13] Plaintiffs also fail to acknowledge that § 2923.5 applies *only to first lien mortgages.*
§ 2923.5(f) ("This section shall apply only to mortgages or deeds of trust described in Section
2924.15."). This means that the dialogue requirement cited by Plaintiffs would only apply to
subordinate mortgages that are subsequently elevated to first-lien status.

Plaintiffs further claim that the subdivision (c) is preempted because it attempts to "criminalize entirely lawful conduct." FAC ¶¶ 115-117. Similarly, Plaintiffs allege that subdivision (c) is void under the "void-for-vagueness" doctrine, which requires that a "penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." FAC ¶ 114. Plaintiffs fundamentally fail to recognize that Section 2924.13 is not a penal statute and does not criminalize any conduct whatsoever, let alone "lawful conduct." FAC ¶ 115. Plaintiffs appear to suggest that Section 2924.13's certification requirement has the effect of criminalizing the "unlawful activities" listed in subdivision (b). *See id.* ("Attempts by the California Legislature to criminalize entirely lawful conduct authorized under applicable federal statutes and regulations will be preempted . . . Mortgage lenders and their agents who are engaged in the entirely lawful collection of defaulted 'subordinate mortgages' should not be subjected to criminal charges of perjury based upon the vague and largely undefined 'practices' stated by Section 2924.13."). If this is indeed Plaintiffs' argument, it is patently incorrect. Section 2924.13 merely requires that the certification under subdivision (c) be made under penalty of perjury. § 2924.13(c). This "under penalty of perjury" requirement does not itself impart any "criminal" liability; it is an entirely separate statute, Cal. Penal Code § 118 ("Section 118"), that criminalizes deliberately giving false testimony under penalty of perjury.

Servicers or lenders would only face criminal penalties if they *willfully and knowingly* make a false statement in the certification—as is the case with any statement made under penalty of perjury. *See* Cal. Penal Code § 118(a) (perjury occurs only if the declarant "willfully" states as true a matter that "he or she knows to be false."). To the extent that, as Plaintiffs claim, "what the servicer is required to 'declare'" under Section 2924.13 is unclear (FAC ¶ 114), Section 118's stringent intent requirement undermines Plaintiffs' argument that individuals will be criminally sanctioned for a good-faith misinterpretation of Section 2924.13. *See Rivera v. Lynch*, 816 F.3d 1064, 1072 (9th Cir. 2016) (a perjurious statement must be made "with the consciousness that it was false; with the consciousness that [the declarant] did not know that it was true and with the intent that it should be received as a statement of what was true in fact"); *Jones v. Beckman*, No.

A114974, 2007 WL 2998978, at *4 (Cal. Ct. App. Oct. 16, 2007), *as modified on denial of reh'g* (Nov. 7, 2007) (individual did not commit perjury when she made a statement that was "technically incorrect" because there was no "proof of willfulness and knowledge" and the statement was "capable of innocent meaning").

Even if these frameworks did apply to a civil statute like Section 2924.13, Plaintiffs' arguments are meritless. Section 2924.13 clearly explains what must be included in the requisite certification (*see* § 2924.13(c), (b)), and, as discussed above, Plaintiffs' claims of inconsistencies and conflicts with preexisting law are incorrect. *See supra* at 18-22. Moreover, regarding Plaintiffs' vagueness claims, "laws regulating purely economic activity are 'subject to a less strict vagueness test'" because "a 'business person of ordinary intelligence would understand' what conduct is prohibited[.]" *Oregon Ass'n of Hosps. & Health Sys. v. Oregon*, No. 24-3770, 2025 WL 1833815, at *2 (9th Cir. July 3, 2025) (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 498–99, 502, 504 (1982)). Section 2924.13 easily passes this relaxed standard. *Id.*

## CONCLUSION

For the reasons discussed above, the Attorney General respectfully requests that the Court grant the motion to dismiss, without leave to amend.

Dated:  December 22, 2025                           Respectfully submitted,

                                                    ROB BONTA
                                                    Attorney General of California
                                                    LARA HADDAD
                                                    Supervising Deputy Attorney General
                                                    WILLIAM BELLAMY
                                                    Deputy Attorney General


                                                    _____
                                                    CARTER M. JANSEN
                                                    Deputy Attorney General
                                                    *Attorneys for Defendant Rob Bonta in his*
                                                    *official capacity as Attorney General of the*
                                                    *State of California*

# CERTIFICATE OF SERVICE

Case Name: **California Mortgage Ass'n, et al. v. Rob Bonta**     Case No.: **2:25-cv-02614-DAD-CKD**

I hereby certify that on <u>December 22, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 22, 2025</u>, at Los Angeles, California.

| | |
|---|---|
| Kevin Carballo | *Kevin Carballo* |
| Declarant | Signature |