**BUCHALTER LLP**
Harry W.R. Chamberlain II (Bar No. 95780)
Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
Email: *rmcwhorter@buchalter.com*
Jarrett S. Osborne-Revis (Bar No. 289193)
Email: *josbornerevis@buchalter.com*
Katharine H. Falace (Bar No. 222744)
Email: *kfalace@buchalter.com*
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone:    916.495.5170

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: 949.477.5050

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership, | Case No. 2:25-cv-02614-DAD-CKD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:        February 17, 2026<br>Time:        1:30 p.m.<br>Judge:      Hon. Dale Drozd<br>Crtrm:      4<br>Location:   501 I St, 15th Floor<br>                    Sacramento, CA 95814 |
| Plaintiffs,<br>        v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>        Defendant. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 8

II.   ARGUMENT ....................................................................................... 9

      A.    Sovereign Immunity Does Not Bar Plaintiffs' Claims ......................... 9

            1.    The Governing *Ex parte Young* Standard................................... 9

            2.    Section 2924.13 Imposes Criminal Obligations Directly Enforceable
                  by the Attorney General ...................................................... 11

            3.    The Attorney General May Civilly Enforce Section 2924.13 Under the
                  UCL.................................................................................... 11

            4.    The Attorney General's Representation of the DFPI Further Defeats
                  the Sovereign Immunity Argument.......................................... 13

      B.    Defendant's Motion to Dismiss Should Be Denied Because Plaintiffs
            Plausibly Allege A Violation of The Contract Clause ......................... 14

            1.    Section 2924.13 Plausibly Operates As A Substantial Impairment of
                  Contract Relationships ......................................................... 15

                  a.    Plaintiffs Allege Existing Contractual Relationships, Including
                        Express Enforcement Remedies Central to the Bargain.............. 15

                  b.    Section 2924.13 Substantially Impairs Contractual
                        Enforcement Rights by Conditioning and Restricting the Power
                        of Sale and the Ability to Foreclose ...................................... 16

                        i.     Mandatory Preconditions That Block The Bargained-
                               For Power of Sale................................................... 16

                        ii.    Section 2924.13 Imposes Mandatory Foreclosure
                               Blocking Remedies, Not Mere "Tools" ......................... 17

                        iii.   Retroactive Conversion of Lawful Conduct Into
                               Foreclosure Blocking "Unlawful Practices" .................. 18

                  c.    Section 2924.13 Disrupts Long Settled Limitations Governing
                        Foreclosure Remedies.......................................................... 23

                  d.    Section 2924.13 Admitted Retroactivity Establishes Substantial
                        Impairment ...................................................................... 24

                  e.    Prior Regulation of Foreclosure Does Not Eliminate
                        Substantial Impairment Because Section 2924.13 Upends
                        Reasonable Contractual Expectations and the Core Foreclosure
                        Remedy In An Unprecedented Manner ...................................... 25

            2.    Section 2924.13 Does Not Serve a Significant Public Purpose and
                  Imposes Unreasonable, Improper Restrictions ............................ 26

      C.    Plaintiffs State A Valid Claim For Violation of Due Process............................ 28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

D.   Plaintiffs State a Valid Claim for Violation of The Equal Protection Clause....... 30

E.   Plaintiffs State A Valid Claim for Preemption...................................................... 32

1.   Section 2924.13(b) is Preempted ............................................. 33

2.   Section 2924.13(b)(1) is Preempted by Federal Law ............................. 34

3.   Section 2923.13(b)(4) is Preempted by Federal Law ............................. 35

4.   Section 2924.13(c) Conflicts With Mandatory Pre-Foreclosure Notice and Dialogue Requirements........................................................................ 35

5.   Section 2924.13 Effectively Penalizes Lawful Conduct Through Its Certification Scheme................................................................................ 36

6.   Section 2924.13(c) is Void for Vagueness ............................................... 37

7.   Defendant's Saving Constructions Cannot Rescue Section 2924.13........ 37

III.   CONCLUSION.................................................................................................... 37

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

1

## TABLE OF AUTHORITIES

2

**Cases**

*Action Apartment Association, Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir.
3     2000). .................................................................................................................................. 30
*Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 245 (1978)........................................ 26, 27
4   *Arizona v. United States*, 567 U.S. 387, 405 (2012)....................................................................... 34
*Armstrong v. United States*, 364 U.S. 40, 46 (1960) ..................................................................... 29
5   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................................................... 15, 28
*Bank of America v. City and Cty of San Francisco,* 309 F.3d 551. 559 (9th Cir. 2002)............. 33
6   *Bank of Wills v. County of Glenn*, 155 Cal. 352, 354 (1909) ....................................................... 28
*Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) .................................................................... 28
7   *Bokhari v. Metropolitan Government of Nashville and Davidson Cty*, Case No. 3:11-00088, 2012
    WL 162372, at *4 (M.D. Tenn. January 19, 2012) ................................................................. 28
8   *Brown v. Metro by T-Mobile*, 768 F. Supp. 3d 1068, 1097 n.15 (C.D. Cal. 2024) ..................... 16
*Cal. Grocers Ass'n v. City of Long Beach*, 553 F. Supp. 3d 784, 792 (C.D. Cal. 2021)............... 31
9   *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)............... 9
*Cortez v. Am. Wheel (In re Cortez)*, 191 B.R. 174, 178 (B.A.P. 9th Cir. 1995) ......................... 15
10  *Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660 (2023) ........................................ 18
*Daylin Medical and Surgical Supply, Inc. v. Thomas,* 69 Cal. App. 3d Supp. 37 (1977) ............ 25
11  *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)......................................................... 31
*Eagle SPE NV I, Inc. v. Kiley Ranch Communities*, 5 F. Supp. 3d 1238, 1249 (D. Nev. 2014).... 25
12  *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-412 (1983). 14, 25
*Engquist* v. *Oregon Department of Agriculture*, 478 F.3d 985, 992 (9th Cir. 2007).............. 30, 31
13  *Ex parte Young*, 209 U.S. 123, 157, 159-160 (1908) .................................................9, 10, 11, 14
*F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013) .............................................................. 23
14  *Ford Motor Credit Co. v. NYC Police Dept.*, 503 F.3d 186, 191 (2d. Cir. 2007)....................... 29
*Fowler Packing Company v. Lanier*, 674 F. Supp. 3d 851, 867 (E.D. Cal. 2023)......................... 9
15  *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 189 (1992) ............................................................ 15
*Geo Group, Inc. v. Inslee*, 151 F.4th 1107 (9th Cir. 2025)........................................................... 10
16  *Gericke v. Truist*, No. 21-1776, 2022 U.S. App. Lexis 16321, at 8 (3d Cir. June 14, 2022.......... 22
*Gilliam v. Levine*, (9th Cir. 2020) 955 F.3d 1117, 1120.............................................................. 24
17  *Gonzales v. Specialized Loan Servicing LLC*, No. 1:20-CV-0159 AWI BAM, 2020 U.S. Dist.
    LEXIS 98478, at *12 (E.D. Cal. June 3, 2020) ....................................................................... 22
18  *Gonzalez v. Specialized Loan Servicing*, 691 F. Supp. 3d 1162, 1169 (C.D. Cal. 2023). ............. 19
*Habtemariam v. Vida Capital Grp., LLC*, No. 2:16-cv-01189-MCE-AC, 2021 U.S. Dist. LEXIS
19    93194, at *10 (E.D. Cal. May 14, 2021) ................................................................................. 23
*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)................................................................................. 33
20  *Home Bldg. & Loan Asso. v. Blaisdell*, 290 U.S. 398, 444-447 (1934) ...................................... 27
*In re Dalziell*, 608 B.R. 245, 248 n.2 (Bankr. E.D. Wash. 2019) .............................................. 22
21  *Lac v. Nationstar Mortg. LLC*, No. 2:15-cv-00523-KJM-AC, 2016 U.S. Dist. LEXIS 98250, at
    *19 (E.D. Cal. July 26, 2016)................................................................................................... 17
22  *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 270 (1994) ............................................................. 24
*Los County Bar Association v. March Fong Eu*, 979 F.2d 697, 704 (9th Cir. 1992)..................... 9
23  *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 792 (1983)................................................ 29
*Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994)............................................................... 23
24  *Mohammad Ali Talaie v. Wells Fargo Bank, N.A.*, No. CV 12-04959 DMG (AGRx), 2013 U.S.
    Dist. LEXIS 94044, at *13 (C.D. Cal. June 27, 2013) ............................................................ 22
25  *Molosky v. Washington Mut., Inc.*, 664 F.3d 109, 114 (6th Cir. 2011) ...................................... 32
*Montoya v. FCI Lender Servs.,* No. 5:25-cv-01732-JC, 2025 U.S. Dist. LEXIS 187209, at 20–21
26    (C.D. Cal. Sept. 22, 2025)........................................................................................................ 12
*Munoz v. Superior Court of Los Angeles County*, 91 F.4th 977, 980 (9th Cir. 2024)................... 9
27  *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F. 3d 325, 330 (4th Cir. 2006) ............................... 33
*Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1056-1057 (N.D. Cal. 2014).................. 12
28  *Nichols v. Harris*, 945 F. Supp. 2d 1079, 1106 (C.D. Cal. 2012) .............................................. 11

4

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

*Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1142 n.1 (S.D. Cal. 2018) ...................................................................................................................................... 22

*Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) ............................................... 29

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004) .................... 11

*R.W. v. Columbia Basin College*, 77 F.4th 1214, 1225 (9th Cir. 2023) ...................................... 10

*Reed v. Reed (In re Reed)*, 640 B.R. 932, 940 (B.A.P. 9th Cir. 2022) ......................................... 15

*RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) ............................ 15, 26

*Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997) ........ 26

*St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013) ................................................. 30

*Sveen v. Melin*, 584 U.S. 811, 818 (2018) ............................................................................. 14, 26

*Trenk v. Soheili*, 58 Cal. App. 5th 1033, 1041-42 (2020) ........................................................... 23

*United States v. 41741 Nat'l Trails Way*, 989 F.2d 1089, 1092 (9th Cir. 1983) ......................... 29

*Vlahovich v. Cruz*, 213 Cal. App. 3d 317, 321 (1989) ................................................................ 15

*Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 173 (4th Cir. 2010) ........................................ 24

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ............................................................. 10

*Wipperfurth v. U-Haul Co. of W. Wis., Inc.*, 101 Wis. 2d 586, 598-99, 304 N.W.2d 767, 773 (1981) ...................................................................................................................................... 25

**Statutes**

11 U.S.C. §

362(a)(6) ...................................................................................................................................... 33

362(a)(1), (a)(6), (c)(2), (d) ........................................................................................................ 20

12 C.F.R. §

1024.33(b)(1), (b)(3) ................................................................................................................... 19

1024.38(b)(4) ............................................................................................................................... 23

1024.38(c)(1) ............................................................................................................................... 23

1026.39 ......................................................................................................................................... 19

1026.39(a)(1) ............................................................................................................................... 19

1026.41 ......................................................................................................................................... 18

1026.41(e)(3), (e)(4), (e)(5) ........................................................................................................ 19

1026.41(e)(6)(i) ........................................................................................................................... 19

12 U.S.C. §

2605(b) ......................................................................................................................................... 19

2605(f) .......................................................................................................................................... 20

2606(a)(1) ..................................................................................................................................... 23

2615 .............................................................................................................................................. 20

15 U.S.C. §

1601 et seq. ................................................................................................................................... 18

1603(1) ......................................................................................................................................... 20

1603(3) ......................................................................................................................................... 18

1611(a) .......................................................................................................................................... 19

1638(f)(1) ...................................................................................................................................... 18

1640(a) .......................................................................................................................................... 19

1640(k) .......................................................................................................................................... 19

1641(g) .......................................................................................................................................... 19

26 C.F.R. §

1.6050P-1(b) ................................................................................................................................. 21

Cal. Bus. & Prof. Code §§

17203 ............................................................................................................................................ 11

17203-17206 ................................................................................................................................ 12

17204 ............................................................................................................................................ 11

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

17206 ............................................................................................................................. 1
17206.1............................................................................................................................ 1
17200 ...................................................................................................................... 10, 11
90002 ........................................................................................................................... 12
90003 ........................................................................................................................... 12
9006 ............................................................................................................................. 12

Cal. Civ. Code §
882.020 ........................................................................................................................... 2
882.020(a)(1) ................................................................................................................. 22
1054 ............................................................................................................................. 14
2924.13(a)(3), (b)-(c) .................................................................................................... 23
2924.13(b)(1)-(2), (b)(6), (d)-(g) ................................................................................. 20
2924.13(a)(3)-(g) .......................................................................................................... 20
2924.13(b)-(g) ............................................................................................................... 23
2924.13(b), (d)-(g) ....................................................................................................... 18
2924.13(c)(1)(A)-(B) .................................................................................................... 10
2924.13(b)(1), (b)(2), (b)(6) ........................................................................................ 19
2924.13(a)(3) ................................................................................................................ 15
2923.13(d) .................................................................................................................... 16
2924.12 ......................................................................................................................... 16
2924.13(b)(1)-(6) .......................................................................................................... 11
2924.13(e) .................................................................................................................... 16
2924.13(f), (g) .............................................................................................................. 16
2924.13(b)(4), (e) ......................................................................................................... 21
2924.13(b)(4) ................................................................................................................ 21
2924.13(b)(5) ................................................................................................................ 22
2924.13(b)(2), (4), and (6) .......................................................................................... 32
2924.13(b)(2), (3), and (6) .......................................................................................... 32
2924.13(c) ............................................................................................................... 12, 15
2924.13(b)(4) ................................................................................................................ 34
2924.13(b)(1) ................................................................................................................ 33
2923.5 ........................................................................................................................... 34
2924.13(b)(1)-(b)(6), (d) .............................................................................................. 31
2924.13(b)(5) .......................................................................................................... 22, 23
2924.13(b) .............................................................................................................. 18, 32
2924.13(a)(3) ................................................................................................... 15, 26, 30
2924.13(c) .......................................................................................................... 12, 34, 36
2924.13 ....... 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 20, 21, 22, 23, 24, 26, 28, 29, 30, 31, 33, 34, 35, 36
2920.5(d), 2923.6(c), 2924.10(a), 2924.11 ............................................................... 25

Cal. Const., Art. V §
10 ................................................................................................................................. 10
13 ................................................................................................................................. 10

Cal. Fin. Code §§
100 ............................................................................................................................... 12
378, .............................................................................................................................. 13
4977(e) ......................................................................................................................... 13
5301 .............................................................................................................................. 13
8415.18(b) .................................................................................................................... 13
14002 ........................................................................................................................... 12
22000–22780 ............................................................................................................... 12
50002–50120 ............................................................................................................... 12
90017(a)–(c), .............................................................................................................. 13

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

Cal. Gov. Code §§
12511 ................................................................................................ 12
12512 ................................................................................................ 12
12550 ................................................................................................ 10
12560 ................................................................................................ 10
12561 ................................................................................................ 10

Cal. Pen. Code §§
118 ............................................................................................. 10, 35
126 ................................................................................................ 10

Civil Code section 2924.17 ............................................................... 12
Civil Code sections 2906, 2923.1, 2923.3, and 2924(f) ..................... 15

Code of Civil Procedures section
337(a) .............................................................................................. 22

**Other Authorities**
*Black's Law Dictionary*, p. 1518 (11th ed. 2019) ............................ 25
*Black's Law Dictionary*, p. 1929 (11th ed. 2019). ........................... 21
Cal. AB 278, chp. 86 (July 2012) ...................................................... 25
Cal. Sen. Bill No. 825, Chp. 355 (October 6, 2025)........................... 12
IRS Priv. Ltr. Rul. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005)........... 21

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## I.    **INTRODUCTION**

California Civil Code section 2924.13 is not a narrow consumer protection provision targeted at the discrete problem of so-called "zombie" mortgages. As a Senate committee analysis described, "zombie" mortgages constitute a niche category of liens that remained dormant for years, often after the borrower believed the debt had been discharged, and then "reappeared" after housing prices recovered. Rather than addressing this narrow issue, Section 2924.13 permanently restructures the enforceability of *all* subordinate mortgages and retroactively conditions the core contractual remedy that gives a deed of trust its value – the power of sale and the ability to foreclose – on newly created, backward-looking standards that subordinate lenders could not have anticipated and were not required to satisfy at the time. Section 2924.13 retroactively declares certain conduct "unlawful" even though it was lawful at the time it occurred, for only one subset of lenders – subordinate mortgage lenders. It rewrites lien priority through a historical snapshot that sweeps in performing commercial and residential loans and loans in first position and mandates injunctions and affirmative defenses based on the newly created "unlawful practices," regardless of borrower confusion, prejudice, or actual harm.

Defendant wrongfully seeks to dismiss Plaintiffs' constitutional challenges to Section 2924.13 by invoking sovereign immunity, despite being expressly charged with enforcing the statute, and by recasting the law as a modest procedural measure that merely "permits borrowers to temporarily halt" for judicial review and as rationally related to a legitimate legislative purpose. The statutory text contradicts this characterization. The statute bars both nonjudicial and judicial foreclosure based on newly defined "unlawful practices," mandates injunctions, creates affirmative defenses that apply retroactively to conduct occurring many years ago and do not apply to other residential lenders, clouds title by introducing off-record enforceability, and threatens subordinate lending in California. (Dkt. 15, [First Amended Complaint ("FAC"), ¶¶ 8-25, 51(a)-51(j)].) Plaintiffs plausibly allege that Section 2924.13 violates the Contract Clause, the Due Process Clause, and the Equal Protection Clause and is preempted by federal law. For the reasons set forth below, this Court should deny Defendant's motion to dismiss.

## II.    ARGUMENT

### A.    SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS

Defendant's Motion rests on the fundamentally incorrect premise that because Section 2924.13 allows borrowers to bring private actions, Plaintiffs' claims are barred by the sovereign immunity recognized in the Eleventh Amendment because the California Attorney General lacks the authority to enforce Section 2924.13. (Defendant's Motion to Dismiss ("Def's Mot."), pp. 7:23-8:23.) That premise is wrong.

#### 1.    The Governing *Ex parte Young* Standard

While the Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the State's consent, it does not bar suits against state officials sued in their individual capacity for acts taken during the course of their official duties. *Fowler Packing Company v. Lanier*, 674 F. Supp. 3d 851, 867 (E.D. Cal. 2023) ("*Lanier*"). In *Ex parte Young*, 209 U.S. 123, 157, 159-160 (1908), the Supreme Court recognized that the Eleventh Amendment does not bar suit in federal court against a state officer accused of violating a federal statutory or constitutional law based on the notion that states cannot authorize state officers to violate federal law or the Constitution. As such, a plaintiff may "sue state officials for prospective injunctive relief to prevent future statutory or constitutional harms." *Munoz v. Superior Court of Los Angeles County*, 91 F.4th 977, 980 (9th Cir. 2024).

In his Motion, Defendant advances an incorrect categorical rule that a state official must be the exclusive or primary civil enforcer of a statute to be a proper defendant. (Def's Mot. p. 8:9-23.) That is not the law. The state official sued, "must have ***some connection*** with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. Similarly, the Ninth Circuit has made clear that *Ex parte Young* requires only a "fairly direct" connection between the official and the enforcement of the challenged statute. *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) ("*Brown*"); *Los County Bar Association v. March Fong Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Whether Plaintiffs' claims here are barred by Eleventh Amendment immunity is dependent on the scope of the state official's authority. *Lanier*, 674 F. Supp. at 868. "State officials are not entitled to Eleventh Amendment immunity from suit where enforcement of the challenged statute is possible

but is not imminent." *Id.* at 871. *Ex parte Young* does not demand that the challenged statute confer a standalone cause of action on the Attorney General. Instead, the question is whether (1) the complaint alleges an ongoing violation of federal law and (2) it seeks prospective injunctive relief. *R.W. v. Columbia Basin College*, 77 F.4th 1214, 1225 (9th Cir. 2023). These elements are met.

In the FAC, Plaintiffs sue Defendant solely in his official capacity, alleging ongoing violations of federal constitutional law and federal preemption. (Dkt. 14 [FAC, ¶ 27, 55-118].) Plaintiffs seek prospective injunctive relief barring future enforcement of Section 2924.13 and a declaration that the statute is invalid. (Dkt. 14 [FAC, ¶¶ 119-128, pp. 43:26-44:21].)

To support his mistaken claim that Defendant lacks enforcement authority, Defendant relies on *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ("*Woman's Health*") and *Geo Group, Inc. v. Inslee*, 151 F.4th 1107 (9th Cir. 2025) ("*Geo*"). This reliance is misplaced. In *Woman's Health*, plaintiffs sought to enjoin enforcement of SB 8, a Texas statute that banned most abortions and strategically delegated *exclusive* enforcement authority to private citizens *while expressly prohibiting state officials*, including the Attorney General, from bringing any civil or criminal action under the law. *Woman's Health*, 595 U.S. at 32-36. Because SB 8 explicitly stripped state officials of any enforcement role, the Court held the Attorney General was not a proper *Ex parte Young* defendant. *Id.* at 32, 43-44. Likewise, in *Geo*, the court held that the Washington Attorney General could not be sued under *Ex parte Young* because Section 5 of HB 1470 created only a private cause of action for detained individuals to seek damages or injunctive relief for unsafe or unsanitary conditions, conferring no enforcement role, direct or indirect, on the Attorney General. *Geo*, 151 F.4th at 1124. In *Women's Health* and *Geo*, the challenged laws were crafted to eliminate any enforcement connection between the statute and the state officials sued. That is not the case here. Nothing in Section 2924.13 suggests that private enforcement was intended to be exclusive or to displace the Attorney General's enforcement authority. Had the Legislature intended to exclude state officials from enforcement as Texas did in *Women's Health,* it knew how to do so. It did not. Accepting Defendant's theory would immunize state officials whenever the Legislature both public and private enforcement, which is inconsistent with *Ex parte Young*, given that Defendant retains enforcement authority directly tied to Section 2924.13. Sovereign immunity does not apply.

### 2. Section 2924.13 Imposes Criminal Obligations Directly Enforceable by the Attorney General

Civil Code section 2924.13 requires mortgage servicers, trustees, beneficiaries, and their agents to record a certification under penalty of perjury confirming they engaged in no unlawful practices or identify such violations. Cal. Civ. Code § 2924.13(c)(1)(A)-(B).[1] A knowingly false certification constitutes felony perjury, punishable by imprisonment for two to four years. Cal. Pen. Code §§ 118, 126. Enforcement of perjury laws lies squarely within the Attorney General's constitutional and statutory authority. The Attorney General is the chief law enforcement officer in California and has a duty to see that California's laws are uniformly and adequately enforced. Cal. Const., Art. V § 13. Because perjury is a criminal offense "of which the superior court shall have jurisdiction," the Attorney General has a duty to prosecute such violations and possesses direct supervision over district attorneys and may assist them or take full charge of any investigation or prosecution. Cal. Const., Art. VI, § 10, V § 13; Cal. Gov. Code §§ 12550, 12560, 12561.

Defendant's assertion that only borrowers may enforce Section 2924.13 ignores the statute's criminal enforcement mechanism entirely. The threat of felony prosecution is not incidental. It is the statute's primary coercive force. Where a statute conditions regulated conduct on sworn declarations and criminalizes false statements, the Attorney General is not a peripheral actor. He is the ultimate enforcement authority. "The Ninth Circuit has found that where a state Attorney General may assume the role of district attorney, the Attorney General has a sufficient connection to the enforcement of the state's criminal laws to be a proper defendant in suits challenging their constitutionality." *Nichols v. Harris*, 945 F. Supp. 2d 1079, 1106 (C.D. Cal. 2012).[2]

### 3. The Attorney General May Civilly Enforce Section 2924.13 Under the UCL

The Attorney General possesses independent and express authority to enforce violations of Section 2924.13 through California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200 et seq., which creates a direct connection that defeats sovereign immunity.

---

[1] All statutory citations are to the California Civil Code unless otherwise noted.
[2] In *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004), the court held that the Idaho Attorney General was not immune under sovereign immunity because his authority to assume the duties of county prosecutor created the necessary connection under *Ex parte Young*.

The UCL prohibits "any unlawful, unfair[,] or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. It authorizes the Attorney General to bring a civil action in the name of the People of the State of California to enjoin ongoing or threatened violations and to recover penalties of up to $2,500 per violation for each unlawful act or practice. Cal. Bus. & Prof. Code §§ 17203, 17204, 17206, 17206.1. This authority is independent of, and cumulative to, any criminal enforcement or private borrower remedies, and permits the Attorney General to address systemic or statewide practices beyond the scope of private disputes

Under the UCL, a business practice is "unlawful" if it violates any underlying state or federal statute or common law, with Business and Professions Code section 17200 "borrowing" those violations and treating them as unlawful practices independently actionable under the UCL. *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1056-1057 (N.D. Cal. 2014). Section 2924.13 explicitly defines "unlawful practices" in connection with subordinate mortgages to include: (i) failing to provide any written communication to a borrower for at least three years, (ii) failing to provide legally required transfer-of-servicing or transfer-of-ownership notices, (iii) conducting or threatening foreclosure after a debt has been written off or after the statute of limitations has expired, and (iv) failing to provide required periodic account statements. § 2924.13(b)(1)-(6). Because the Legislature made this conduct unlawful, Section 2924.13 violates can serve as UCL predicates and be civilly enforced by the Attorney General through injunctions and penalties.

Independently, the same conduct may constitute an "unfair" business practice under the UCL. Under the UCL's "unfair" prong, a practice may be actionable if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; however, when unfairness is predicated on public policy, courts often require that policy to be tethered to a specific constitutional, statutory, or regulatory provision. *Montoya v. FCI Lender Servs.,* No. 5:25-cv-01732-JC, 2025 U.S. Dist. LEXIS 187209, at 20–21 (C.D. Cal. Sept. 22, 2025). In *Montoya*, the court recognized that although Section 2924.13 was not effective until June 30, 2025, "it at least provides some further support that the alleged conduct violates public policy in California concerning fair loan servicing practices" and may be adequate to show unfair practices in violation of Section 2924.13. *Montoya*, 2025 U.S. Dist. LEXIS 187209, at *22 n.9. Accordingly, the

Attorney General may enforce Section 2924.13 violations under the UCL's unfairness prong.

The Attorney General's UCL enforcement authority extends to certifications filed under Section 2924.13, which mandates that a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent record a certification under penalty of perjury before recording a notice of default or threatening foreclosure. § 2924.13(c). That certification must attest that the servicer did not engage in unlawful practices or disclose all such instances. *Id.* A failure to record the required certification, or submitting one that is false, misleading, or incomplete, may constitute unlawful or unfair business practices under the UCL, thereby allowing the Attorney General to seek injunctive relief or civil remedies. Bus. & Prof. Code, §§ 17203-17206. Civil Code section 2924.17 expands the Attorney General's UCL enforcement authority by allowing enhanced civil penalties of up to $7,500 per deed of trust when a mortgage servicer engages in "multiple and repeated uncorrected" violations involving foreclosure-related declarations, which necessarily includes repeated inaccurate or misleading certifications under Section 2924.13(c). Defendant's sovereign immunity claim fails.

### 4. The Attorney General's Representation of the DFPI Further Defeats the Sovereign Immunity Argument

Defendant's sovereign-immunity argument ignores the Attorney General's statutory role in representing and cooperating with the Department of Financial Protection and Innovation ("DFPI") in civil and enforcement actions. DFPI is the primary regulator of financial service providers in California, including state-chartered banks and credit unions, mortgage lenders and servicers, and providers of consumer financial products and services. Cal. Fin. Code §§ 100, 14002, 22000–22780, 50002–50120. Plaintiffs and their members fall squarely within DFPI's regulatory jurisdiction. Under the California Consumer Financial Protection Law ("CFPL"), the DFPI may bring administrative or civil action against anyone who engages in unfair, deceptive, or abusive acts or practices concerning consumer financial products or services, a category that includes foreclosure-related servicing violations such as those governed by Section 2924.13. Bus. & Prof. Code §§ 90002, 90003, 9006; Cal. Sen. Bill No. 825, Chp. 355 (October 6, 2025).

The Attorney General, in turn, "has charge . . . of all legal matters in which the State is interested" and must prosecute or defend all causes involving the State or its officers. Cal. Gov. Code §§ 12511, 12512. Consistent with this mandate, the Financial Code expressly contemplates

1  cooperation and joint enforcement between DFPI and the Attorney General; DFPI may enter into

2  enforcement agreements with the Attorney General, and may refer evidence for civil or criminal

3  proceedings involving violations of the Financial Code or its regulations. Cal. Fin. Code §§ 378,

4  4977(e), 5301, 90017(a)–(c), 18415.18(b). Accordingly, the Attorney General is not a remote or

5  speculative enforcer, but a designated enforcement partner with the DPFI with direct authority over

6  the practices regulated by Section 2924.13, thereby establishing a sufficient enforcement connection

7  under *Ex parte Young* to defeat Defendant's sovereign immunity defense.

8      **B.**    **DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFFS PLAUSIBLY ALLEGE A VIOLATION OF THE CONTRACT CLAUSE**

9            Defendant seeks to dismiss Plaintiffs' First Cause of Action for Violation of the Contract

10  Clause by recasting Section 2924.13 as a modest, procedural refinement that does not substantially

11  impair contractual remedies and constitutes a reasonable means of advancing a legitimate public

12  purpose. That characterization lacks merit.

13            "The Contracts Clause restricts the power of States to disrupt contractual arrangements."

14  *Sveen v. Melin*, 584 U.S. 811, 818 (2018). To determine whether a state law "crosses the

15  constitutional line," the court must first examine whether the change in state law "operated as a

16  substantial impairment of a contractual relationship." *Id.* at 819. In doing so, the court must consider

17  "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable

18  expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* "If such factors

19  show a substantial impairment, the inquiry turns to the means and ends of the legislation." *Id.* The

20  court must examine "whether the state law is drawn in an 'appropriate' and 'reasonable' way to

21  advance 'a significant and legitimate public purpose.'" *Id.* To have a significant and legitimate

22  public purpose, the State must be exercising its police power to remedy a broad and general or social

23  or economic problem, not provide a benefit to special interests. *Energy Reserves Group, Inc. v.*

24  *Kansas Power & Light Co.*, 459 U.S. 400, 411-412 (1983) ("*Energy Reserves*"). Thus, a court must

25  employ a three step inquiry to determine whether a state law violates the Contract Clause: (1)

26  whether the state law operated as a substantial impairment of a contractual relationship; (2) whether

27  the state law has a significant and legitimate public purpose; and (3) whether the adjustment of the

28  rights and responsibilities of contracting parties is based on reasonable conditions and is of a

1  character appropriate to the public purpose justifying the legislation's adoption. *RUI One Corp. v.*

2  *City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004). All three are satisfied here.

3       At the pleading stage, Plaintiffs need not prove their claim; they must allege sufficient facts,

4  accepted as true, to state a claim to violation of the Contract Clause that is plausible on its face,

5  namely one that allows "the court to draw the reasonable inference that the defendant is liable for the

6  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs met this burden.

7       **1.    Section 2924.13 Plausibly Operates As A Substantial Impairment of Contract Relationships**

8       "The obligation of a contract consists in its binding force on the party who makes it." *Gen.*

9  *Motors Corp. v. Romein*, 503 U.S. 181, 189 (1992) ("*Romein*"). That binding force "depends on the

10  laws in existence when it is made; these are necessarily referred to in all contracts." *Id.* If a

11  "subsequent law" "diminish[es] the duty, or . . . impair[s] the right, it necessarily bears on the

12  obligation of the contract." *Id.* "A change in the remedies available under a contract, for example,

13  may convert an agreement enforceable at law into a mere promise, thereby impairing the contract's

14  obligatory force." *Id.* For this reason, changes in the laws that make a contract legally enforceable

15  may trigger Contract Clause scrutiny if they impair the obligation of pre-existing contracts, even if

16  they do not alter any of the contracts' bargained-for terms." *Id.*

17       **a.    Plaintiffs Allege Existing Contractual Relationships, Including Express Enforcement Remedies Central to the Bargain**

18

19       "Proper execution and delivery of a deed of trust is a grant of an interest in real property

20  under California law; thus, a deed of trust is a lien or charge upon the property which is created upon

21  delivery of the instrument." *Cortez v. Am. Wheel* (*In re Cortez*), 191 B.R. 174, 178 (B.A.P. 9th Cir.

22  1995); see § 1054 (grant becomes effective upon delivery by grantor). Upon default, a beneficiary of

23  a deed of trust may pursue judicial foreclosure or exercise the deed's power of sale. *Reed v. Reed* (*In*

24  *re Reed*), 640 B.R. 932, 940 (B.A.P. 9th Cir. 2022). Electing nonjudicial foreclosure allows a

25  creditor to avoid litigation, authorizing the trustee to sell the property for the beneficiary's benefit.

26  *Id.* The "private power of sale is intentionally designed as a comparatively fast and efficient

27  remedy." *Vlahovich v. Cruz*, 213 Cal. App. 3d 317, 321 (1989).

28       As alleged in the FAC, subordinate mortgage holders, including Plaintiffs and their members, entered into existing, valid deeds of trust that rely on the power of sale as the central

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

mechanism for protecting their secured interests. (Dkt. 14 [FAC, ¶¶ 8-25].) For junior lienholders, prompt nonjudicial foreclosure is essential to preserve lien value, avoid wipeout by senior sale, and keep subordinate lending economically viable. (*Id.*) Defendant does not dispute that the power of sale is a contractual right, thereby conceding the issue. See *Brown v. Metro by T-Mobile*, 768 F. Supp. 3d 1068, 1097 n.15 (C.D. Cal. 2024) (failure to address constitutes concession).

### b. Section 2924.13 Substantially Impairs Contractual Enforcement Rights by Conditioning and Restricting the Power of Sale and the Ability to Foreclose

Defendant recasts Section 2924.13 as a benign, procedural adjustment that "implements procedural certification and notice requirements," "permits, but does not require, borrowers to petition the court for relief," and "does not guarantee that any relief will be granted." (Motion, p. 10:15-17.) In short, Defendant claims that Section 2924.13 merely "alters the tools" available to a borrower. (Motion, p. 11:2.) These characterizations are incorrect. Section 2924.13 does not simply alter procedural "tools" available to borrowers; it affirmatively restricts or eliminates subordinate lienholders' ability to exercise their bargained-for foreclosure remedies.

### i. Mandatory Preconditions That Block The Bargained-For Power of Sale

Section 2924.13 is not a permissive or discretionary procedural mechanism. It is a mandatory restriction on enforcement that applies broadly to existing and future subordinate deeds of trust encumbering "residential property," including both consumer and business loans and deeds of trust that may now sit in first position but were subordinate at the time of recording.[3] § 2924.13(a)(3) (Dkt. 14 [FAC, ¶ 4].) By its terms, a subordinate lienholder "***shall not*** conduct or ***threaten to*** conduct a nonjudicial foreclosure" unless it first records a certification under penalty of perjury. § 2924.13(c) (emphasis added). Without the certification, the subordinate lienholder's contract remedies to threaten to foreclose upon default or record a notice of default are unavailable.

---

[3] Section 2924.13(a)(3) refers to "residential real property," which may be broader than "residential property" as defined in other Civil Code sections governing mortgages. For example, Civil Code sections 2906, 2923.1, 2923.3, and 2924(f) define "residential property" as real property containing one to four housing units. In contrast, the term "residential real property" in Section 2924.13(a)(3) could encompass mixed-use parcels (e.g., retail plus apartments), large multi-family complexes (i.e., apartment buildings 5+ units), or land intended for residential development, because the statute does not expressly limit the number of units. (Dkt. 14 [FAC, ¶ 4].) Thus, the breadth and scope of § 2924.13 is broad and far-reaching – far beyond mere "zombie mortgages."

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

That impairment is far more direct than "implementing a procedural requirement" for the borrower to seek relief, as Defendant suggests. (Motion, pp. 10:14-11:8.) It preconditions a subordinate lienholder's ability to collect a defaulted loan or exercise its bargained-for power-of-sale rights, potentially eroding lien value and exposing them to extinguishment by senior foreclosure. (Dkt. 14 [FAC, ¶¶ 12, 15, 19, 21, 74].)

> **ii.    Section 2924.13 Imposes Mandatory Foreclosure Blocking Remedies, Not Mere "Tools"**

Defendant's "mere procedural" "discretionary" narrative cannot be squared with the text of Section 2924.13. (Def's Mot. pp. 10:3-12:21) Plainly, Section 2924.13 disables the central contractual remedy that defines a deed of trust and obligates courts to *automatically* enjoin any nonjudicial foreclosure sale on a subordinate mortgage upon the filing of a borrower's petition for relief, without judicial discretion and without any express bond requirement. § 2923.13(d) ("the court ***shall enjoin*** a proposed foreclosure sale"). It further commands that any newly created "unlawful practices" "***shall be*** an affirmative defense in a judicial proceeding," even absent borrower harm or even where the servicer's conduct was lawful when undertaken. § 2924.13(e). It authorizes sweeping equitable remedies, including striking arrears, barring foreclosure, and unwinding completed foreclosure sales (without any specified time period), based on the newly created "unlawful practices" that divest subordinate mortgage holders of the core value of their bargained-for rights, namely the ability to collect and enforce secured debt. § 2924.13(f), (g). That foreclosure-blocking architecture is not discretionary, not temporary, and not merely procedural.

Defendant's legal authorities do not salvage his mere "procedural adjustment" theory. Defendant's reliance on *Lac v. Nationstar Mortg. LLC*, No. 2:15-cv-00523-KJM-AC, 2016 U.S. Dist. LEXIS 98250, at *19 (E.D. Cal. July 26, 2016) is misplaced. (Def's Mot. pp. 10:22-11:4.) *Lac* did not address the Contract Clause and did not involve retroactive conditioning of foreclosure remedies. Instead, the *Lac* court evaluated an attorney-fee provision under Civil Code section 2924.12. It emphasized that using mandatory terms like "must" or "shall" could create constitutional problems, and that the permissive verb "may" avoided them by allowing courts to avoid inequitable or unconstitutional outcomes. *Lac*, 2016 U.S. Dist. LEXIS 98250, at *19. Section 2924.13 is the opposite. Rather than employing discretionary language, it is built on mandatory commands as

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

discussed above, which do not grant the flexibility that saved the statute in *Lac*. Defendant's reliance on *Williams v. Alameda County*, 642 F. Supp. 3d 1001 (N.D. Cal. 2022) is likewise inapposite. (Motion, p. 11:2-15.) *Williams* concerned a temporary, emergency Covid-19 eviction moratorium for nonpayment of rent in mid-2020 that merely postponed one remedy (evictions) for a defined, short period during a public health crisis, while rent continued to accrue and contract actions remained available. Section 2924.13 imposes no emergency limitation, no temporal limitation, and no preservation of alternative remedies. Instead, it permanently restricts or eliminates the core contractual remedy that defines a deed of trust – the power of sale – and alters contractual expectations by applying retroactive legal standards under the guise of "unlawful practices."

Defendant relies on *Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660 (2023) ("*Davis Boat*") in his Motion. (Motion, p. 11:8-13.) However, this case confirms rather than undermines Plaintiffs' position. The *Davis Boat* court ruled that "retrospective application of a statute may be constitutional . . . if it impairs the obligation of contract." *Id*. at 677. It recognized that a legislature may not "withdraw all remedies" or "impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made." *Id*. at 678. It recognizes that contractual remedies may be modified without impairing an obligation of contract, provided a substantial or efficacious remedy remains or is given by means of which a party can enforce his rights under the contract." *Id*. Here, Section 2924.13 does not leave a "substantial or efficacious" substitute enforcement remedy. It eliminates the core enforcement mechanism that gives deeds of trust value – the power of sale – and conditions, delays, or eliminates the remedy based on newly created "unlawful practices," even if the servicer's conduct may have been lawful under state and federal law when undertaken. Subordinate mortgage holders do not possess alternative remedies to maintain their secured interests in real property without the timely exercise of the power of sale, and delay predictably results in extinguishment through senior foreclosure.

### iii.    Retroactive Conversion of Lawful Conduct Into Foreclosure Blocking "Unlawful Practices"

Section 2924.13 does not merely give borrowers additional procedural tools to petition a court for equitable relief to combat "servicer's potential misconduct" as Defendant asserts. (Motion,

p. 11:5-7.) It: (i) retroactively converts previously lawfully permitted or mandated conduct into "unlawful practices" for subordinate mortgages, (ii) makes the absence of such practices a "***complete*** affirmative defense in a judicial foreclosure proceeding," (iii) provides an automatic injunction ("court shall enjoin a proposed foreclosure sale") in a nonjudicial foreclosure proceeding, (iv) permits a court to bar foreclosure or collection of the loan; and (v) conditions the initiating or threatening of nonjudicial foreclosure on recording of a certification. §§ 2924.13(b), (d)-(g); see Dkt. 20-2, p. 21 [Plaintiffs' RJN Ex. 1, p. 17] confirming "complete" defense.

### (a) Section 2924.13 Transforms Communications, Periodic Statement, and Transfer Notice Obligations Into Foreclosure Disabling "Unlawful Practices"

Section 2924.13's newly defined "unlawful practices" include: (1) any failure within three years to provide "written communication" to the borrower; (2) any past failure—by any prior servicer – to provide servicing transfer notices "when required by law"; (3) any past failure to provide TILA ownership-transfer notices "when required by law"; (4) providing any form, including a Form-1099, "indicating" the debt was written off; and (5) failing to provide periodic statements "when required by law." § 2924.13(b). These conditions did not exist when the loans originated.

No federal or state law previously suggested that any of the conduct now labeled "unlawful practices" under Section 2924.13(b) affected the enforceability of the right to foreclose. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., "is a consumer protection statute that seeks to 'avoid the uninformed use of credit.'" *Gonzalez v. Specialized Loan Servicing*, 691 F. Supp. 3d 1162, 1169 (C.D. Cal. 2023). It applies to consumer loans secured by a borrower's principal dwelling. 15 U.S.C. § 1603(3). Generally, services must provide a periodic statement each billing cycle. See 15 U.S.C. § 1638(f)(1); 12 C.F.R. § 1026.41. However, under TILA's implementing "Regulation Z," a servicer of a closed-end consumer loan (i.e., a loan with a fixed maturity date) is exempt from having to send a periodic statements to a consumer with residential mortgage, closed-end loan (i.e., a loan with a specific maturity date) when: (i) the servicer made a reverse mortgage loan, (ii) the servicer provided the borrower with a coupon book, (iii) the servicer is a "small servicer" (i.e., services less than 5,000 or fewer mortgage loans or is a nonprofit entity), and (iv) the borrower is a debtor in bankruptcy under title 11 of the United States Code. 12 C.F.R. §§

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

1026.41(e)(3), (e)(4), (e)(5). Additionally, a servicer is exempt from sending periodic statements if: (i) it charges off the loan and stops charging any additional fees or interest on the account, and (ii) provides a periodic statement within 30 days of the charge off labeled "Suspension of Statements & Notice of Charge Off - Retain This Copy for Your Records" containing certain disclosures. 12 C.F.R. § 1026.41(e)(6)(i). Thus, a servicer exempt from sending periodic statements to consumers under Regulation Z may lawfully refrain from providing the borrower with any written communication regarding the loan for three years.

Section 2924.13 fundamentally changes the legal effect of failing to provide transfer-of-servicing or transfer-of-ownership notices. Under TILA, a creditor must notify a consumer whose loan is secured by the consumer's dwelling within 30 days after the loan is sold or transferred, unless the creditor is a "covered person."[4] 12 C.F.R. § 1026.39; 15 U.S.C. § 1641(g). A "covered person" includes an owner who acquires no more than one mortgage loan in any twelve months. 12 C.F.R. § 1026.39(a)(1). Under the Real Estate Settlement Procedures Act ("RESPA"), a mortgage servicer must notify borrowers of a servicing transfer at least 15 days before the transfer. 12 U.S.C. § 2605(b); 12 C.F.R. § 1024.33(b)(1), (b)(3).

Section 2924.13 dramatically changes the consequences of failing to provide periodic statements, written communications, or notices of servicing or ownership transfer to a borrower. Before its enactment, a servicer's failure to provide periodic statements for a closed- or open-ended credit transaction could subject the servicer to statutory damages, actual damages, and/or attorney fees under TILA. Cal. Civ. Code, §§ 2924.13(b)(1), (b)(2), (b)(6); 15 U.S.C. §§ 1640(a), 1641. In more extreme cases, willful and knowing violations of TILA may result in criminal penalties. 15 U.S.C. § 1611(a). However, under TILA, Congress did not restrict or bar foreclosure for such violations; it authorized only a limited defense of recoupment if a servicer-initiated foreclosure proceedings. 15 U.S.C. § 1640(k). Similarly, under RESPA, Congress expressly preserved the right to foreclose on a deed of trust, despite the failure to provide service transfer notification, stating:

---

[4] *Igarashi v. Deutsche Bank Nat'l Tr. Co.*, No. 19-00083 JAO-KJM, 2019 U.S. Dist. LEXIS 119221, at *16 (D. Haw. July 17, 2019) (a TILA notice violation occurs when: (1) a mortgage is transferred triggering the duty to notify; and (2) the new owner of the mortgage fails to provide adequate notice within 30 days).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

"Nothing in this Act shall affect the validity or enforceability of any sale, contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan." 12 U.S.C. § 2615. Instead, RESPA limits liability for failure to provide transfer-servicing notification to a civil suit for actual damages, attorney fees, and costs. 12 U.S.C. § 2605(f). The federal statutory regime furnishes monetary remedies, not foreclosure bars.

For commercial loans, the about-face caused by Section 2924.13 is even more dramatic. TILA does not apply to business loans. 15 U.S.C. §1603(1). Before Section 2924.13, no statute required a servicer to communicate with a commercial borrower; any such duty arose, if at all, from the parties' loan documents. Section 2924.13 upends that framework by retroactively converting the absence of written communications or periodic statements into an "unlawful practice" that blocks or conditions foreclosure. § 2924.13(a)(3)-(g). In effect, the statute grafts new conditions that never existed before Section 2924.13's enactment on June 30, 2025, was not part of the parties' bargain, and then makes past noncompliance a prospective foreclosure disabling defect. This transformation is more than a procedural change; it guts the entire purpose of the deed of trust, which is to secure repayment of the loan.

Bankruptcy law further illustrates why Section 2924.13's three-year communication, periodic statement, and notices of transfer or servicing requirements are incompatible with existing federal regimes. The filing of a bankruptcy petition automatically prohibits a creditor from taking any action to collect from the debtor until the bankruptcy case is dismissed or terminated. 11 U.S.C. §§ 362(a)(1), (a)(6), (c)(2), (d). If a bankruptcy case is dismissed four years after its filing, a lender could go three years without communicating with the borrower or sending periodic statements. Section 2924.13 declares such a lack of communication an "unlawful practice" that blocks or conditions foreclosure. § 2924.13(b)(1)-(2), (b)(6), (d)-(g).

### (b) Section 2924.13 Retroactively Reclassifies Write Off and IRS Form 1099-C Reporting As Foreclosure Bars

Section 2924.13 reclassifies an "unlawful practice" as a mortgage servicer that conducts or threatens to conduct "a foreclosure sale after providing a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Form 1099." § 2924.13(b)(4). This restriction applies to "foreclosures" (judicial and nonjudicial

foreclosures). § 2924.13(b)(4), (e). Before Section 2924.13, the fact that a loan was "charged off" or

"written off" did "not mean that the loan was extinguished." *Gonzales v. Specialized Loan Servicing

LLC*, No. 1:20-CV-0159 AWI BAM, 2020 U.S. Dist. LEXIS 98478, at *12 (E.D. Cal. June 3, 2020).

Courts have defined "charge off" or "write off" merely as "a declaration by a creditor that an amount

is unlikely to be collected." *Gonzales,* 2020 U.S. Dist. LEXIS 98478, at *12." While the charge is

considered uncollectable by the original lender, the debt is still legally valid and remains so after

charge-off." *Id.* "That is, a loan that is 'charged off' may still be legally collected upon."[5] *Id.* As the

court ruled in *Mohammad Ali Talaie v. Wells Fargo Bank, N.A.*, No. CV 12-04959 DMG (AGRx),

2013 U.S. Dist. LEXIS 94044, at *13 (C.D. Cal. June 27, 2013):

> The crux of Plaintiff's newly fashioned claim is that, by "charging off" the debt, Defendants waived the debt altogether and thus their reporting of a lien based on that debt was a false publication. Plaintiffs overstate the effect of a charge-off. By reporting a debt as charged off, a creditor merely declares that the debt is unlikely to be collected. . . . Although a debt discharged in bankruptcy proceedings is effectively forgiven, a debt that is "charged off" remains collectable.

Federal tax law confirms the same principle. The Internal Revenue Code requires lenders to

file a Form 1099-C with the IRS whenever certain "identifiable events" occur. 26 C.F.R. § 1.6050P-

1(b). The IRS expressly stated that the issuance of a Form 1099-C does *not* cancel the debt or bar

collection: "The Internal Revenue Service does not view a Form 1099-C as an admission by the

creditor that it has discharged the debt and can no longer pursue collection." See IRS Priv. Ltr. Rul.

2005-0207, 2005 WL 3561135 (Dec. 30, 2005). Courts agree with this conclusion. See *Gericke v.

Truist*, No. 21-1776, 2022 U.S. App. Lexis 16321, at 8 (3d Cir. June 14, 2022 ("the IRS regulations

explicitly create a reporting requirement and provide that a creditor may have to file a Form 1099-C

'whether or not an actual discharge of indebtedness has occurred on or before the date on which the

---

[5] *See also In re Dalziell*, 608 B.R. 245, 248 n.2 (Bankr. E.D. Wash. 2019) ("Lenders 'charge off' a debt that is deemed unlikely to be collected, but a charge off does not necessarily mean the lender has waived its right to collect."); *Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1142 n.1 (S.D. Cal. 2018) ("The term 'charged off' indicates that the creditor has treated the account receivable as "bad debt" or "a loss or expense because payment is unlikely."). *Black's Law Dictionary*, p. 292 (11th ed. 2019) defines "charge off" as: "To treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." It defines "write off" as: "To transfer the entire balance (of an asset account) to an expense or loss account to reflect the asset's total loss of value." *Black's Law Dictionary*, p. 1929 (11th ed. 2019).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

identifiable event has occurred.'"); *F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013) ("filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred."); *Habtemariam v. Vida Capital Grp., LLC*, No. 2:16-cv-01189-MCE-AC, 2021 U.S. Dist. LEXIS 93194, at *10 (E.D. Cal. May 14, 2021) ("the 1099-C, alone, is likely insufficient to cancel the debt.").

Section 2924.13 now declares the opposite of established law. It retroactively treats an internal charge-off, write-off, or Form 1099-C reporting as evidence that the debt has been discharged, thereby precluding or conditioning foreclosure on conduct that occurred years earlier, while the lender continued to treat the debt as fully enforceable. This retroactive reclassification deprives subordinate mortgage holders of the bargained-for power of sale and undermines the contractual expectation that the debt would remain enforceable unless affirmatively forgiven.

       **c.**    **Section 2924.13 Disrupts Long Settled Limitations Governing Foreclosure Remedies**

Section 2924.13 declares it an "unlawful practice" for a servicer to conduct or threaten to conduct a foreclosure sale (judicial or nonjudicial) "after the applicable statute of limitations expired." § 2924.13(b)(5). The statute does not specify which "statute of limitations" the Legislature intended to invoke. It could refer to the four-year statute of limitations applicable to the underlying debt under Code of Civil Procedures section 337(a) or the separate statute of limitations governing the exercise of the power of sale under Civil Code section 882.020, which permits a lender to exercise a power of sale in a deed of trust for up to 60 years from recordation when the maturity date is not ascertainable, or 10 years from maturity when it is ascertainable. § 882.020(a)(1). The expiration of the limitations on the underlying debt does not extinguish the power of sale because the beneficiary is exercising the beneficiary's authority to cause the trustee to sell the property for the beneficiary's benefit. *Trenk v. Soheili*, 58 Cal. App. 5th 1033, 1041-42 (2020); see *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) (even if statute of limitations barred action on debt, Section 882.020 permits exercise of power of sale). Given the Legislature's purported intent to limit "zombie" mortgages, a plausible reading of Section 2924.13(b)(5) targets the statute of limitations on the debt, not the Section 882.020 limitations period applicable to the power of sale. If so, Section

2924.13(b)(5) renders Section 882.020 meaningless for subordinate mortgages and sharply departs from settled California law by treating the expiration of the limitations on the debt as barring the ability to nonjudicially foreclose. That shift directly impairs the bargained-for enforcement mechanisms on which subordinate mortgage holders relied when extending credit.

### d.    Section 2924.13 Admitted Retroactivity Establishes Substantial Impairment

Defendant concedes that Section 2924.13's newly defined "unlawful practices" may apply retroactively. (Motion, p. 15:4–7.) That concession is dispositive. "A statute operates retroactively when it would attach new legal consequences to events occurring prior to its enactment." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 173 (4th Cir. 2010), citing *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 270 (1994). Section 2924.13 does exactly that. *It applies retroactively in __two__ constitutionally relevant ways, even if the statute were only applied to foreclosures initiated __after__ the effective date of June 30, 2025*. First, it imposes historical reporting retroactivity because the current servicer must certify under penalty of perjury that it and every prior servicer complied with Section 2924.13 communication, transfer-notice, ownership-notice, and period statements for years preceding its enactment.[6] §§ 2924.13(a)(3), (b)-(c). Second, it imposes substantive retroactivity because conduct that was lawful, permitted, or mandated at the time now becomes an "unlawful practice" that statutorily bars or conditions foreclosure. §§ 2924.13(b)-(g). Thus, Section 2924.13 does not impose a mere "procedural adjustment" creating prospective filing requirements as Defendant suggests. It attaches new legal consequences to historical conduct and imposes foreclosure blocking penalties for failing to satisfy standards that did not exist when the loans were originated, assigned, or serviced.

Courts have regularly struck down statutes that apply retroactively. In *Eagle SPE NV I, Inc.*

---

[6] Defendant's reliance on federal documentation-retention regulations, 12 C.F.R. §§ 1024.38(b)(4), is misplaced for numerous reasons, including: (1) it is not against federal law for a current servicer to refuse to make a legal conclusion regarding whether a prior servicer committed an alleged "unlawful practice" by having "threatened" to conduct a foreclosure sale – which "threat" would not necessarily be in a written document; (2) RESPA does not apply to business purpose or commercial loans secured by a Subordinate Mortgage (*See*, *e.g.*, *Gilliam v. Levine*, (9th Cir. 2020) 955 F.3d 1117, 1120, citing to 12 U.S.C. § 2606(a)(1)) which means that a commercial servicer's unwillingness to execute the 2924.13 certification is not the result of a violation of federal law; and, (3) the consumer records retention requirements of RESPA do not apply to consumer Subordinate Mortgages that remain valid and secured by real property when the borrower has been discharged by a bankruptcy court from personal liability for more than one (1) year. *See* 12 C.F.R. § 1024.38(c)(1).

*v. Kiley Ranch Communities*, 5 F. Supp. 3d 1238, 1249 (D. Nev. 2014), the court held that retroactively eliminating a deficiency remedy violated the Contract Clause because it severely impaired the value of the creditor's contract, emphasizing "it is the value of a contract that is ultimately to be protected against retroactive legislation under the Contract Clause" and the "the ability to collect the full amount owed under the mortgage is vital" to that value. *Id*. at 1249-1250.[7]

Section 2924.13 operates in the same impermissible manner. By retroactively imposing new "unlawful practices," "new affirmative defenses," and new foreclosure blocking remedies based on conduct that was lawful at the time, Section 2924.13 diminishes the value of subordinate mortgage holders' loans by restricting or eliminating the security for the debt. It targets the very remedy that gives deeds of trust their economic worth: the power of sale.

> **e.    Prior Regulation of Foreclosure Does Not Eliminate Substantial Impairment Because Section 2924.13 Upends Reasonable Contractual Expectations and the Core Foreclosure Remedy In An Unprecedented Manner**

Defendant argues that Section 2924.13 does not impair deeds of trust because the "foreclosure process is already subject to significant oversight and regulation," citing California's statutory scheme governing foreclosures. (Motion, p. 13:3-25, citing *Energy Reserves*, 459 U.S. at 416.) Defendant contends that there cannot be "substantial impairment of the parties' expectations because of the 'existence of extensive regulation' in the field." *Id*. But *Energy Reserves* does not hold that prior regulation insulates the State from Contract Clause scrutiny; it merely holds that impairment may be less substantial when the change merely "restricts a party to gains it reasonably expected from the contract" in an industry with a long history of regulation. *Energy Reserves,* 459 U.S. at 411. Thus, the relevant inquiry is whether the specific impairment was reasonably foreseeable under existing regulations, not whether the industry is regulated in the abstract.

Here, the answer is no. Prior foreclosure regulations focused on procedural, notice, and timing of foreclosures, with laws such as the Homeowner Bill of Rights aimed primarily at "first

---

[7] See also *Daylin Medical and Surgical Supply, Inc. v. Thomas,* 69 Cal. App. 3d Supp. 37 (1977) (retroactive expansion of homestead exemption violated Contract Clause by creating an exemption where none existed and deprived creditor of remedy available at formation); *Wipperfurth v. U-Haul Co. of W. Wis., Inc.*, 101 Wis. 2d 586, 598-99, 304 N.W.2d 767, 773 (1981) (retroactive application of dealership statute unconstitutionally impaired vested rights that was not shown to be necessary to address an important public problem).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

lien" deeds of trust. Cal. AB 278, chp. 86 (July 2012) (e.g., see then enacted §§ 2920.5(d), 2923.6(c), 2924.10(a), 2924.11). The prior regulations did not retroactively convert lawful historical conduct into conduct that caused the loss of the power of sale or the striking of a debt, or create automatic injunctions against nonjudicial foreclosure, or unwind completed sales based on historical servicing conduct. Subordinate mortgage holders could not have reasonably foreseen that their compliance with TILA, RESPA, bankruptcy laws, IRS reporting requirements, or charge-off accounting decisions would later operate as statutory bars to foreclosure. That is the essence of substantial impairment. See *Sveen*, 584 U.S. at 819 (impairment exists when "law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights"); *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997) ("The primary consideration in determining whether the impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted.").

### 2.    Section 2924.13 Does Not Serve a Significant Public Purpose and Imposes Unreasonable, Improper Restrictions

Because the statute substantially impairs junior lenders' contractual rights, Defendant must show Section 2924.13: (i) serves a "significant and legitimate" interest and does not merely "provid[e] a benefit to special interests with its police power" and (ii) adjusts the contractual relations based on "reasonable conditions" and "of a character appropriate to the public purpose justifying the legislation's adoption." *RUI One Corp.*, 371 F.3d at 1147. "Reasonable" means "fair, proper, or moderate under the circumstances." *Black's Law Dictionary*, p. 1518 (11th ed. 2019). Section 2924.13 is none of these things. Whatever deference courts might give to legislative judgment, such deference is not boundless. "The more severe the impairment, the more searching the examination of the legislation must be." *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 245 (1978) ("*Allied Structural Steel*").

Defendant asserts that Section 2924.13 advances a legitimate public purpose by addressing "zombie mortgages" and promoting housing affordability.[8] (Motion, pp. 14:1-15:3.) But, Assembly

---

[8] Defendant relies on the Senate Committee Analysis of SB 861 to claim that Section 2924.13 was enacted to address housing affordability. (Motion, p. 14:8-20). Plaintiffs disagree. Section 7 of the Analysis addressed SB 861's version of Section 2924.13 and focused exclusively on "zombie mortgages." (Defendant's RJN in Support of Motion ("Def's RJN") Ex. 1, pp. 20-21 [SB 861 p. 16-17].) The broader affordability discussion in SB 861 dealt with unrelated

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

Bill 130 ("AB 130"), which enacted Section 2924.13, contains no legislative findings identifying such a problem, declares no emergency, and recites no policy rationale justifying the permanent impairment of subordinate lienholders' foreclosure rights. (Dkt. 14 [FAC, ¶¶ 3-4, 34, 47-51].) Added at the last-minute to a 215-page budget trailer bill wholly unrelated to real estate finance (which was adopted six days later), AB 130 does not identify an emergency or a significant or legitimate public purpose warranting the curtailment of the rights of all subordinate mortgage holders.

Even if "zombie mortgages" is a legitimate public concern, Section 2924.13 is not reasonably tailored to the asserted "zombie mortgage" concern. (Dkt. 14 [FAC, ¶¶ 3-4, 34, 47-51].) Rather than targeting aged or abandoned junior liens, Section 2924.13 applies categorically to all subordinate instruments upon recording, regardless of current priority, servicing history, or compliance status. § 2924.13(a)(3). The FAC alleges that this overbroad reach captures countless performing loans, imposes punitive requirements, chills legitimate lending and loan purchases, and restricts subordinate financing, which is essential for down payment assistance, home equity access, wildfire resiliency, disaster recovery, and other critical needs. (Dkt. 14 [FAC, ¶¶ 2-28, 51-54].)

Furthermore, Section 2924.13 is not "of a charter appropriate" to addressing zombie mortgages. In *Home Bldg. & Loan Asso. v. Blaisdell*, 290 U.S. 398, 444-447 (1934), the court found "reasonable conditions" justified impairment of private contracts so long as an emergency exists, the legislation "could only be of a character appropriate to that emergency," and the legislation is temporary. In contrast, in *Allied Structural Steel*, 438 U.S. at 244-251, the court invalidated economic legislation that altered private conduct because the state law was not a temporary measure to deal with an emergency, was not necessary to meet an "important general social problem," and imposed a sudden, unanticipated, and substantial retroactive obligation on every Minnesota employer. Section 2924.13 resembles *Allied Structural Steel*: It is retroactive, permanent, imposes broad restrictions, and unduly burdens the core contractual remedy that gives the deed of trust its economic value – the ability to foreclose – without responding to any identified emergency.

---

provisions concerning energy development, construction cost measures, HOA rules, and housing allocation processes, not subordinate mortgage foreclosure. (Def's RJN, Ex. 1, pp. 13-19, 22 [SB 861 9-15, 18].) Section 2924.13 will hamper housing affordability because it will limit homeowners' access to availably equity and block homeowners from taking second loans to fund down payments or make home improvements. (Dkt. 14 [FAC, ¶¶ 51(a)-51(b)].)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant's motion to dismiss should be denied. Whether Section 2924.13 is based on "reasonable conditions" and "of a character appropriate to the public purpose justifying the legislation's adoption" is a factual question, especially given the lack of legislative findings in AB 130. To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs need only plausibly allege that Section 2924.13 does not advance a significant and legislative public purpose through reasonable means. *Ashcroft*, 556 U.S. at 678. They have done so by alleging facts establishing that Section 2924.13 is not narrowly tailored and that it inflicts sweeping and permanent harm, impairing contracts. (Dkt. 14 [FAC, ¶¶ 2-25, 49-54].)

## C.    PLAINTIFFS STATE A VALID CLAIM FOR VIOLATION OF DUE PROCESS

After straining to dispense with Plaintiffs' claim for violation of the Constitution's Contracts Clause, Defendant tries to quickly address Plaintiffs' due process claim (second cause of action) in one paragraph. For a substantive due process violation, Plaintiffs must plausibly show that Section 2924.13 deprives subordinate mortgage holders of a protected property interest and that no rational basis exists for Section 2924.13. *Bokhari v. Metropolitan Government of Nashville and Davidson Cty*, Case No. 3:11-00088, 2012 WL 162372, at *4 (M.D. Tenn. January 19, 2012). Defendant posits that Plaintiffs' substantive due process claim fails because Section 2924.13 "is a reasonable means of achieving the Legislature's public purposes for enacting the law." (Def's Mot. pp.15:27-28, 16:6-8.) But Defendant's factually bereft analysis underscores why this Court should not dismiss Plaintiffs' due process claim at the pleading stage.

Plaintiffs have plausibly alleged that subordinated mortgages constitute constitutionally protected property interests under the Fourteenth Amendment. For property interests, the focus of this case, this Court must answer a threshold question: whether a subordinate mortgage is a protected property interest under the Fourteenth Amendment. On that question, this Court must look to "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Since statehood, California law has recognized that mortgages, deeds of trusts, contracts, and other obligations securing a debt constitute constitutionally protected property rights. *See, e.g., Bank of Wills v. County of Glenn*, 155 Cal. 352, 354 (1909). Security interests enjoy constitutional protection not only under California law but also under the

Fourteenth Amendment. "A security interest is indisputably a property interest protected by the Fourteenth Amendment." *Ford Motor Credit Co. v. NYC Police Dept*., 503 F.3d 186, 191 (2d. Cir. 2007) (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 792 (1983) and *United States v. 41741 Nat'l Trails Way*, 989 F.2d 1089, 1092 (9th Cir. 1983)). Defendant does not dispute this.

Hoping to save Section 2924.13 from judicial scrutiny, Defendant downplays Section 2924.13's scope, claiming it does not deprive subordinate lienholders of their lien rights but merely delays enforcement. As Defendant must acknowledge, subordinated mortgage holders have two rights: the contractual right to repayment of the debt owed and the property right to the collateral that secures the debt in the event of nonpayment. *See Armstrong v. United States*, 364 U.S. 40, 46 (1960). Borrowers of subordinated mortgages who did not repay those debts yet thought they were "forgiven" now receive special treatment under Section 2924.13. Section 2924.13, as the California Legislature intended, "closes the door" on subordinated mortgage holders seeking to foreclose on purportedly forgiven second mortgages. (Def's RJN, Ex. 1, p. 13.) Senator Wahab, SB 681's author, confirmed Section 2924.13's expansive scope, noting it "provides that all or a portion of a debt secured by a subordinate mortgage be abandoned if any of certain conditions are met, as specified." (McWhorter Decl., Ex. 16.) Senator Wahab's remarks show why Defendant's procedural adjustment theory clashes with Section 2924.13's text. Section 2924.13 does far more than delay enforcement. Once a subordinate mortgage holder has committed one of the six types of unlawful practices, Section 2924.13 deems the mortgage in a so-called "zombie" status. Section 2924.13 bars subordinate mortgage holders from enforcing such mortgages nonjudicially or judicially. Subordinate holders cannot record the required certifications to commence nonjudicial foreclosures. And if subordinate mortgage holders seek to judicially foreclose on zombie mortgages, Section 2924.13(e) gives borrowers a "complete" affirmative defense. (Def's RJN, Ex. 1, p. 21). Section 2924.13 does not just delay enforcement of subordinated mortgages; it prohibits it, purportedly to promote housing affordability. In depriving subordinate mortgage holders of their constitutionally protected property interests, Section 2924.13 violates these holders' substantive due process rights. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (a substantive due process claim requires that plaintiff plausibly allege "a government deprivation of life, liberty, or property.").

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Section 2924.13 failure to reasonably advance the Legislature's proclaimed legitimate public purpose of addressing "zombie mortgages" and promoting housing affordability solidifies this point. (Motion, p. 14:1-15:3.) The arbitrary deprivation of a property right supports a substantive due process claim as the Ninth Circuit recognized in *Action Apartment Association, Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir. 2000). There, the plaintiff alleged a rental control ordinance was "arbitrary, unreasonable, and unrelated to the general welfare" because "there is no legitimate interest in subsidizing non-housing uses of rental properties nor in providing new rights and affirmative defenses for illegal occupants." *Id.* at 1026. The Ninth Circuit agreed this claim "state[d] a viable substantive due process theory." *Id.* Emphasizing judicial deference to the California Legislature, Defendant says Section 2924.13 Plaintiffs cannot show a substantive due process violation because Section 2924.13 merely "subjects nonjudicial foreclosures to judicial scrutiny before they can proceed …." (Motion, p. 16:8-9.) While the California Legislature enjoys great deference, that deference does not demand this Court bind itself to the context of Section 2924.13's adoption or accept implausible explanations for it. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013). As noted in Section II(B)(2), the Legislature rushed AB 130 to the governor's desk without identifying an emergency or a significant or legitimate public purpose warranting the curtailment of the rights of all subordinate mortgage holders. Rooted in protectionism, Section 2924.13 favors one group (distressed borrowers) by transforming subordinated mortgages that run afoul of the specified unlawful practices into unsecured debts. Section 2924.13 is retroactive, imposing new procedural hurdles and judicial oversight on foreclosures that were expressly authorized by statute and contract at the time the loans were originated. Retroactively ordering contractual and property rights in this manner is neither necessary nor rationally related to the Legislature's stated goals. Because Section 2924.13 lacks a substantial relation to the public health, safety, morals, or general welfare, it violates the Fourteenth Amendment's Due Process Clause.

### D. PLAINTIFFS STATE A VALID CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE

"The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.'" *Engquist* v. *Oregon Department of Agriculture*, 478 F.3d 985, 992 (9th Cir. 2007). It

"entrenches a right to be free from discrimination based on impermissible statutory classifications and other governmental action." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Courts apply rational-basis review to regulations that implicate economic relationships and, by extension, contracts. *Cal. Grocers Ass'n v. City of Long Beach*, 553 F. Supp. 3d 784, 792 (C.D. Cal. 2021). "[A]cts that are malicious, irrational, or plainly arbitrary" or involve selective enforcement do not have a rational basis under the Equal Protection Clause. *Engquist v. Oregon Department of Agriculture*, 478 F.3d 985, 993 (9th Cir. 2007).

In his Motion, Defendant seeks dismissal of Plaintiffs' equal protection claim based on speculative rationales not found in Section 2924.13, citing the SB 681 committee analysis, even though Section 2924.13 was enacted under AB 130 as part of a trailer bill, without any legislative findings. (Def's Mot. p. 17:1-17; RJN, Exs. 1-8.) Defendant cites committee discussion of "abandoned" second mortgages resurfacing "years later," even though borrowers believed them forgiven. (*Id.*; Def's RJN Ex. 1, pp. 20-21 [SB 861, pp. 16-17].) But Section 2924.13 does not target abandoned or dormant loans. It applies to all subordinate mortgages, regardless of age, servicing history, borrower expectations, or current lien status. (Dkt. 14 [FAC, ¶¶ 2, 77-84].) The Legislature's concern with a narrow problem cannot justify a statute that bears no rationale fit to that problem.

Section 2924 cannot survive rational basis review because it arbitrarily treats "subordinate mortgages" differently from all other real property creditors who engage in identical lending, servicing, or foreclosure practices (i.e., lenders holding senior liens on residential property). (Dkt. 14 [FAC, ¶¶ 77-84].) Rather than targeting "zombie" loans, the statute capriciously applies to any deed of trust that "was, at the time it was recorded, subordinate to another security interest," even if that lien is now senior, fully performing, and actively serviced.[9] § 2924.13(a)(3). Section 2924.13 then declares "unlawful" for subordinate mortgage lenders servicing conduct that remains entirely lawful for other lenders and conditions foreclosure only for that subset, without any logical connection to the asserted harm of dormant mortgages. This declaration is arbitrary and capricious.

The asserted purpose of addressing dormant "zombie" mortgages does not rationally explain

---

[9] Plaintiffs' preliminary injunction motion addresses in depth Section 2924.13's vagueness. (Dkt. 19, p. 29:24-31]].) For the sake of brevity, that argument will not be repeated here, but is incorporated.

1  why Section 2924.13 applies broadly rather than targeting dormant loans, abandoned debt, or

2  prolonged servicing silence. Instead, it selects a historical snapshot of "subordinate mortgages" as of

3  the date the deed of trust was initially recorded and imposes severe restrictions on foreclosure,

4  regardless of whether the conduct was lawful at the time or whether the borrower suffered any

5  prejudice or harm. For instance, Section 2924.13 irrationally entitles a borrower to a mandatory

6  injunction, even if a servicer failed to send one periodic statement or transfer notice, regardless of

7  the servicing or communication history. §§ 2924.13(b)(1)-(b)(6), (d). If the goal is to protect

8  borrowers of dormant liens, there is no rational basis for regulating servicers with performing loans

9  or liens in a now-first position, while senior lenders are exempt from the identical conduct. The

10  statute is arbitrary, not rational.

11      Plaintiffs plausibly allege that Section 2924.13's arbitrary classification produces concrete

12  irrational consequences that affirmatively undermine homeownership and residential finance rather

13  than protect borrowers. (Dkt. 14 [FAC ¶¶ 51(a)-(j)].) Section 2924.13 will increase housing costs

14  and harm homeowners by restricting access to down payment assistance, home equity credit, seller

15  carry-back financing, and other legitimate forms of subordinate credit essential to first-time buyers

16  and existing homeowners. (Dkt 14, [FAC ¶¶ 2-25. 51(a)-(j)].) Section 2924.13 will cloud title by

17  rendering valid security interests unenforceable due to off-record servicing conduct. (Dkt. 14 [FAC,

18  ¶ 51(j)].) A statute that harms the interests it claim to protect cannot satisfy rational basis review.

19      **E.  PLAINTIFFS STATE A VALID CLAIM FOR PREEMPTION**

20      Defendant also cannot shield Section 2924.13 from federal conflict preemption. Defendant's

21  first claim is that this Court should apply the presumption against preemption because Section

22  2924.13 regulates only foreclosure, a field traditionally regulated by state law. (Def's Mot. p. 18:2-

23  8.) Section 2924.13 does far more than Defendant suggests – it regulates subordinated mortgage

24  holders' conduct in servicing their subordinated mortgages to exercise their state-law foreclosure

25  remedies. Section 2924.13 intrudes into an area of law (mortgage servicing) with a "history of

26  significant federal presence." *See Molosky v. Washington Mut., Inc*., 664 F.3d 109, 114 (6th Cir.

27  2011) (finding no presumption against preemption when state regulations intrude into an area of law

28  with a history of significant federal presence."). Section 2924.13 borrows from federal law, RESPA,

TILA, and IRS regulations, and deems a subordinate mortgage holder's failure to comply with certain notice requirements under both acts an unlawful business practice. § 2924.13(b)(2), (4), and (6). (McWhorter Decl., Exs. 16-17 (notes that Section 2924.13 requires "mortgage servicers that sell loans to debt buyers to provide the homeowner federally-required notices or the risk the debt becoming abandoned."). A "subordinate mortgage" under Section 2924.13 includes mortgages held by servicers of consumer debts subject to RESPA and TILA and national banks. Congress has long maintained a "significant federal presence" in national banking and mortgage servicing. *See Bank of America v. City and Cty of San Francisco,* 309 F.3d 551. 559 (9th Cir. 2002) (explains "history of significant federal presence" in national banking). An assumption against preemption "is not triggered when a State regulates in an area where there has been a history of significant federal presence." *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F. 3d 325, 330 (4th Cir. 2006).

### 1.   Section 2924.13(b) is Preempted

Focusing first on Section 2924.13(b)'s notice requirements, Defendant contends these requirements are not preempted by federal law. Both RESPA and TILA, as the Legislature acknowledged in enacting Section 2924.13, require "lenders to provide certain notices to homeowners," including periodic account statements and mortgage transfer statements. 2924.13(b)(2), (3), and (6). (McWhorter Decl., Ex. 4-10, 15-18). Section 2924.13 imports these notice requirements whole cloth, requiring subordinate mortgage holders to provide such statements or risk "the debt becoming abandoned." (*Id.*, Ex. 16.) As noted in Section (B)(1)(iii)(a) above, neither RESPA nor TILA provides such a harsh remedy. Defendant claims Section 2924.13 may do so without preemption under RESPA or TILA because both laws allow states to give greater protections to consumers. (Motion, p. 19:15-21.) Defendants' cursory preemption analysis ignores that state laws may conflict with federal law when they impose an obstacle to "the accomplishment and execution of the full purposes and objectives" of a federal law. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). In RESPA and TILA, Congress "made a deliberate choice" not to strip lenders of their lien rights if they fail to send the federally-required notices; yet, Section 2924.13 imposes that penalty retroactively and prospectively to all non-compliant subordinate mortgage holders. Section 2924.13's new sweeping lien-strip remedy against subordinated mortgage holders overrides

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Congress's "deliberate choice" in RESPA and TILA. *See Arizona v. United States*, 567 U.S. 387, 405 (2012) (finding obstacle preemption where a state imposed criminal penalties for the same conduct that "Congress made a deliberate choice not to impose criminal penalties.").

### 2.    Section 2924.13(b)(1) is Preempted by Federal Law

Defendant, too, struggles to save Section 2924.13(b)(1)'s inactivity provision from preemption under federal law. Section 2924.13(b)(1) makes an unlawful activity where a subordinate mortgage holder or servicer fails to communicate with the borrower regarding the loan "for at least three years." This provision, as the Legislature acknowledged, aims to remedy a purportedly recurring problem where mortgage holders or servicers stop "sending the consumer notices on the mortgage" or "attempting to collect the debt," misleading consumers to believe their subordinated debts had been forgiven. (McWhorter Decl., Ex. 15-17). Section 2924.13(b)(1) mandates subordinated mortgage lienholders communicate information "regarding the loan" – presumably the loan amount, outstanding balance, payment amount, payment due date, information. This provision creates an irreconcilable conflict with federal bankruptcy law, which expressly prohibits creditors, such as subordinated mortgage holders, from sending notices to debtors attempting to collect prepetition debts. See 11 U.S.C. § 362(a)(6). Defendant says no such conflict exists because Section 2924.13(b)(1) "merely requires some form of written communication with the borrower in the past three years" and subordinated mortgage holders may do so with borrowers in bankruptcy without violating the bankruptcy automatic stay. (Motion, 20:1-13.) In the bankruptcy context, if the notices required by Section 2924.13 constitute an attempt to collect a subordinated mortgage, a subordinated mortgage could not send them without running afoul of the automatic stay. That scenario creates an irreconcilable conflict between Section 2924.13 and federal bankruptcy law.

Rehashing another of his arguments, Defendant claims RESPA and TILA do not preempt Section 2924.13(b)(1)'s inactivity provision because of their irreconcilable conflict between these provisions. TILA and RESPA, in some circumstances, authorize the lack of written communication within the last three years, whereas Section 2924.13 mandates such written communication between that period. (Dkt. 14 [FAC ¶ 101].) Defendant sees no constitutional inconsistency between these federal and state laws because Section 2924.13 may provide more protection to consumers than

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

TILA or RESPA. (Motion, p. 20:14-23.) Section 2924.13 mandates more communication between subordinate mortgage holders and borrowers when TILA and RESPA authorize less communication. That tension creates another conflict between Section 2924.13 and federal law.

### 3.    Section 2923.13(b)(4) is Preempted by Federal Law

Defendant next tries to rescue Section 2924.13(b)(4), the unlawful business practice tied to a subordinated mortgage holder's issuance of a 1099-C form, from preemption. A creditor's "issuance of a Form 1099-C does not, on its own, indicate actual discharge" as the IRS and the majority of federal courts conclude. (Def's. Mot. p. 19-21.) Contrary to Defendant's claim, in Section 2924.13(b)(4), when a subordinated mortgage holder issues an IRS Form 1099-C, the subordinated debt is deemed abandoned. (Pls' RJN, Ex. 15-18 ("a subordinated mortgage would be deemed abandoned when … the mortgage servicer provides the borrower an IRS form indicating that the debt had been written off or discharged."). Section 2924.13 thus creates an irreconcilable remedy inconsistent with federal law.

### 4.    Section 2924.13(c) Conflicts With Mandatory Pre-Foreclosure Notice and Dialogue Requirements

Section 2924.13(c) prohibits a foreclosing party from "conduct[ing] or threaten[ing] to conduct a nonjudicial foreclosure" before recording the required certification. In practice, this prohibition directly conflicts with mandatory pre-foreclosure communications required by both California and federal law.

Section 2923.5 of the Homeowner's Bill of Rights requires servicers, *before recording a notice of default*, to engage in borrower outreach that includes discussion of foreclosure alternatives and the potential consequences of continued default. Likewise, federally related mortgage loans governed by federal servicing regulations require the transmission of pre-foreclosure notices that expressly advise borrowers of the lender's intent to pursue foreclosure if default is not cured.

These communications are not optional. They are legally mandated and routinely include language informing borrowers that foreclosure is forthcoming absent corrective action. Under the plain language of subdivision (c), such communications may reasonably be construed as "threatening" foreclosure before the certification is recorded. At a minimum, Section 2924.13(c)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

1   creates an unavoidable tension between complying with existing notice obligations and avoiding

2   statutory violation.

3          Defendant's response (that Plaintiffs have not cited authority establishing that these

4   communications constitute a "threat") misses the point. The constitutional problem is not that

5   subdivision (c) *definitively* prohibits these communications, but that it reasonably places regulated

6   parties in a position where compliance with one legal regime risks violation of another. Conflict

7   preemption exists where a statute "stands as an obstacle to the accomplishment and execution of the

8   full purposes and objectives" of other governing law. Subdivision (c)'s practice operation does

9   exactly that.

10         Nor does Defendant's invocation of harmonizing canons of construction cure the defect.

11  While courts presume legislative awareness of existing law, that presumption cannot rewrite

12  statutory text or supply limiting language the Legislature did not include. Section 2924.13(c)

13  contains no carve-out for legally required notices, no definition narrowing "threaten," and no safe

14  harbor for compliance with federal or state servicing mandates. Courts may not rely on interpretive

15  presumptions to save a statute whose text affirmatively creates conflict.

16         **5.      Section 2924.13 Effectively Penalizes Lawful Conduct Through Its
                     Certification Scheme**

17         Defendant argues that Section 2924.13 is not a penal statute and therefore cannot

18  "criminalize" lawful conduct. That argument elevates form over substance. While Section 2924.13

19  does not, in itself, define a criminal offense, it conditions the exercise of foreclosure rights on a

20  sworn certification made under penalty of perjury. Where the statute requires certification of

21  compliance with vague, undefined, or conflicting standards, it exposes regulated parties to criminal

22  liability under Penal Code section 118 for statements that may later be deemed incorrect. This is

23  particularly problematic where the underlying statutory prohibitions (such as what constitutes

24  "threatening" foreclosure) are undefined and open-ended. That Penal Code section 118 requires

25  willfulness does not eliminate the chilling effect of the statute. The Constitution does not permit the

26  Legislature to impose vague legal obligations and then rely on prosecutorial discretion or mens rea

27  requirements to mitigate their consequences. Regulated parties are entitled to clear notice of what

28  conduct is required before being compelled to attest to compliance under oath.

**6.    Section 2924.13(c) is Void for Vagueness**

Defendant's contention that subdivision (c) "clearly explains" what must be certified is incorrect. The statute requires a sworn declaration that the foreclosing party has not engaged in any of the "unlawful activities" listed in subdivision (b) and has not "threatened" foreclosure before certification. Yet critical terms (including "threaten," the scope of prohibited communications, and how subdivision (c) interacts with mandatory notice regimes) are left undefined.

This vagueness is not cured by characterizing Section 2924.13 as economic regulation. Even under a relaxed standard, due process requires that a statute provide "ascertainable standards of guilt" such that regulated entities can conform their conduct accordingly. Here, servicers must guess whether routine, legally required communications could later be characterized as unlawful "threats," and then certify compliance under oath. That uncertainty is precisely what the void-for-vagueness doctrine forbids. Defendant's reliance on post hoc assurances that the Legislature "did not intend" to prohibit lawful communications is insufficient. Due process demands clarity in statutory text, not confidence in benign enforcement or judicial narrowing after the fact.

**7.    Defendant's Saving Constructions Cannot Rescue Section 2924.13**

Finally, Defendant invokes the canon favoring interpretations that preserve constitutionality. That canon applies only where a statute is genuinely susceptible to two reasonable interpretations. Section 2924.13(c)'s text admits no such narrowing construction without rewriting the statute to add exemptions, definitions, or safe harbors that the Legislature did not enact. Where, as here, a statute creates conflicts with existing law, chills lawful conduct, and compels sworn compliance with vague requirements, courts may not cure those defects by assumption or implication. The Constitution requires more.

**III.    CONCLUSION**

This Court should deny Defendant's motion to dismiss and grant other relief as is just and equitable.

DATED: January 12, 2026

BUCHALTER LLP

By:    _/s/ Robert S. McWhorter_
       Robert S. McWhorter
       Jarrett Osborne-Revis
       Attorneys for Plaintiffs