ROB BONTA
Attorney General of California
LARA HADDAD, State Bar No. 319630
Supervising Deputy Attorney General
WILLIAM BELLAMY, State Bar No. 347029
Deputy Attorney General
CARTER M. JANSEN, State Bar No. 347116
Deputy Attorney General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6601
  Fax:  (916) 731-2124
  E-mail:  carter.jansen@doj.ca.gov
*Attorneys for Rob Bonta in his official capacity as*
*Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA MORTGAGE ASSOCIATION**, et al.,<br><br>                                        Plaintiffs,<br><br>          **v.**<br><br>**ROB BONTA**, in his official capacity as Attorney General of the State of California,<br><br>                                        Defendant. | Case No. 2:25-cv-2614-DAD-CKD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: February 17, 2026<br>Time:          1:30 p.m.<br>Judge:        Hon. Dale A. Drozd<br>Courtroom:  4, 15th floor<br>Action Filed:  September 8, 2025 |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................... 1

Argument ......................................................................................................................... 2

I.     Plaintiffs' Claims are Barred by Sovereign Immunity ............................................ 2

II.    The Court Cannot Grant Plaintiffs the Relief They Seek. ..................................... 5

III.   Plaintiffs Do Not Allege a Violation of the Contract Clause. ................................. 7

      A.    The statute does not substantially impair creditors' contractual rights ........................................................................................................... 7

            1.    Plaintiffs rely on language from a version of the statute that was never enacted. .............................................................. 8

            2.    The statute does not bar nonjudicial foreclosures. ......................... 9

            3.    The statute does not bar judicial foreclosures. ............................. 11

      B.    Even if there is substantial impairment, Section 2924.13 easily clears the deferential standard of review. .................................................. 12

      C.    Section 2924.13 may be applied retroactively. ......................................... 14

IV.   Section 2924.13 Does Not Violate the Due Process Clause. ............................... 15

V.    Section 2924.13 Does Not Violate the Equal Protection Clause. ........................ 16

VI.   Section 2924.13 Is Not Preempted. ........................................................................ 18

      A.    Section 2924.13(b) is not preempted by RESPA and TILA. ................... 18

      B.    Section 2924.13(b)(1) is not preempted by federal bankruptcy law. ........ 19

      C.    Section 2924.13(b)(4) is not preempted by federal tax law. .................... 19

      D.    Plaintiffs' remaining preemption arguments lack merit ........................... 20

Conclusion ..................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page**

*Ali v. Carnegie Inst. of Washington*,
    967 F. Supp. 2d 1367 (D. Or. 2013), *aff'd*, 684 F. App'x 985 (Fed. Cir. 2017) ....................... 6

*Angelotti Chiropractic, Inc. v. Baker*,
    791 F.3d 1075 (9th Cir. 2015) ........................................................................................ 16, 17

*Battle v. Taylor James*,
    LLC, 607 F.Supp.3d 1025 (C.D. Cal. 2022) .......................................................................... 3

*Brooks v. Sulphur Springs Valley Elec. Co-op.*,
    951 F.2d 1050 (9th Cir. 1991) ............................................................................................... 2

*California Chamber of Com. v. State Air Res. Bd.*,
    10 Cal. App. 5th 604 (2017) ................................................................................................. 11

*California Hotels & Lodging Ass'n v. City of Oakland*,
    393 F. Supp. 3d 817 (N.D. Cal. 2019) ................................................................................. 20

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F.Supp.3d 1123 (S.D. Cal. 2014) ..................................................................................... 3

*Crownholm v. Moore*,
    652 F. Supp. 3d 1155 (E.D. Cal. 2023) ............................................................................... 15

*Davis Boat Mfg.-Nordic, Inc. v. Smith*,
    95 Cal. App. 5th 660 (2023) ................................................................................................. 14

*DBSI/TRI IV Ltd. P'ship v. United States*,
    465 F.3d 1031 (9th Cir. 2006) ............................................................................................... 6

*Disbar Corp. v. Newsom*,
    508 F. Supp. 3d 747 (E.D. Cal. 2020) ................................................................................. 17

*Doe v. Holcomb*,
    883 F.3d 971 (7th Cir. 2018) ....................................................................................... 4, 5, 20

*E. Bay Sanctuary Covenant v. Garland*,
    994 F.3d 962 (9th Cir. 2020) ................................................................................................. 6

*Free Speech Coal., Inc. v. Anderson*,
    119 F.4th 732 (10th Cir. 2024) .............................................................................................. 5

*Free Speech Coal. v. Knudsen*,
    No. CV 24-67-M-DWM, 2025 WL 2240252 (D. Mont. Aug. 6, 2025) ............................. 6, 7

# TABLE OF AUTHORITIES
### (continued)

Page

*Freedom to Travel Campaign v. Newcomb*,
 82 F.3d 1431 (9th Cir. 1996).................................................................... 20

*Geo Grp., Inc. v. Inslee*,
 151 F.4th 1107 (9th Cir. 2025)..................................................................... 5

*Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*,
 188 F. Supp. 3d 986 (E.D. Cal. 2016) ....................................................... 11

*Gospel Missions of Am. v. City of Los Angeles*,
 419 F.3d 1042 (9th Cir. 2005)................................................................... 20

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
 480 U.S. 470 (1987) ................................................................................... 14

*Long v. Van de Kamp*,
 961 F.2d 151 (9th Cir. 1992).................................................................... 3, 4

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ..................................................................................... 6

*Munoz v. Superior Ct.*,
 91 F.4th 977 (9th Cir. 2024)........................................................................ 2

*Novak v. United States*,
 795 F.3d 1012 (9th Cir. 2015)................................................................... 17

*Olson v. California*,
 104 F.4th 66 (9th Cir. 2024)...................................................................... 17

*Palmer v. Stassinos*,
 419 F. Supp. 2d 1151 (N.D. Cal. 2005) .................................................... 14

*Penermon v. Wells Fargo Bank, N.A.*,
 47 F. Supp. 3d 982 (N.D. Cal. 2014) ........................................................ 16

*People v. Goodloe*,
 37 Cal. App. 4th 485 (1995)...................................................................... 11

*People v. Super. Ct. (Ferguson)*,
 34 Cal. Rptr. 3d 481 (2005) ................................................................. 13, 17

*Planned Parenthood of Idaho v. Wasden*,
 376 F.3d 908 (9th Cir. 2004)....................................................................... 4

# TABLE OF AUTHORITIES
### (continued)

Page

*Richmond Mortg. & Loan Corp. v. Wachovia Bank & Tr. Co.*,
  300 U.S. 124 (1937) ................................................................... 10, 11, 14

*S. Pac. Transp. Co. v. Redden*,
  651 F.2d 613 (9th Cir. 1980) ................................................................. 4

*Sessions v. Dimaya*,
  584 U.S. 148 (2018) ................................................................. 20

*Snoeck v. Brussa*,
  153 F.3d 984 (9th Cir. 1998) ................................................................. 2, 3

*State of Ariz. v. Atchison, T. & S. F. R. Co.*,
  656 F.2d 398 (9th Cir. 1981) ................................................................. 13, 17

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................... 12, 14

*Sveen v. Melin*,
  584 U.S. 811 (2018) ................................................................. 7, 12, 13, 15

*Thornton v. Carrington Mortg. Servs., LLC*,
  No. 2:17-CV-0127-JCC, 2017 WL 11458071 (D. Idaho Apr. 13, 2017) ........... 16

*United States v. Ayala-Bello*,
  995 F.3d 710 (9th Cir. 2021) ................................................................. 18

*United States v. MacKenzie*,
  510 F.2d 39 (9th Cir. 1975) ................................................................. 15

*United States v. Pickard*,
  100 F. Supp. 3d 981 (E.D. Cal. 2015) ................................................... 16

*Vance v. Bradley*,
  440 U.S. 93 (1979) ................................................................. 16

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ................................................................. 7, 10, 12

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ................................................................. *passim*

*In re Zotow*,
  432 B.R. 252 (B.A.P. 9th Cir. 2010) ................................................... 19

iv

1

# TABLE OF AUTHORITIES
## (continued)

2

Page

3

**Statutes**

4

15 U.S.C.

5

    § 1610(a)(1) ........................................................................................................ 18

6

California Business & Professions Code

7

    § 17200 ................................................................................................................. 2

8

California Civil Code

    § 2923.5(b) .......................................................................................................... 10

9

    § 2924.13 ........................................................................................................ *passim*
    § 2924.13(a)(3) .............................................................................................. 13, 16
    § 2924.13(b) ................................................................................................... *passim*
    § 2924.13(c) .................................................................................................... 9, 20
    § 2924.13(d) .......................................................................................................... 9
    § 2924.13(e) .................................................................................... 8, 11, 12, 15
    § 2924.13(f) ...................................................................................... 10, 12, 13
    § 2924.17 .............................................................................................................. 3

10

11

12

13

14

California Financial Code

    § 378 ..................................................................................................................... 4
    § 4977(e) ............................................................................................................... 3
    § 5301 ................................................................................................................... 3
    § 18415.18(b) ....................................................................................................... 3
    § 90006 ................................................................................................................. 3
    § 90017(a) ............................................................................................................. 4
    § 90017(c)(1) ........................................................................................................ 4

15

16

17

18

19

California Government Code

    § 12550 ................................................................................................................. 4

20

21

California Penal Code

    § 118 ................................................................................................................... 20

22

Montana's Age Verification Act .................................................................................. 6

23

Real Estate Settlement Procedures Act (RESPA) ................................................ 18, 19

24

Truth in Lending Act ("TILA") ............................................................................ 18, 19

25

Washington Revised Code

26

    § 70.395.070 ......................................................................................................... 5

27

28

<u>**TABLE OF AUTHORITIES**</u>
**(continued)**

<u>**Page**</u>

**Other Authorities**

12 C.F.R.
    § 1024.5(c)(2) ................................................................................................. 18

California Constitution, Article 5
    § 13 ............................................................................................................... 4

Defendant's Reply in Support of Motion to Dismiss (2:25-cv-02614-DAD-CKD)

**INTRODUCTION**

Plaintiffs sue the Attorney General—a state officer with little connection to Section 2924.13—in a roundabout attempt to enjoin individual aggrieved borrowers from enforcing California Civil Code section 2924.13 ("Section 2924.13"). Their true goal is not to enjoin the Attorney General himself from bringing enforcement actions with respect to the statute, but rather to obtain a judgment that the statute itself is unconstitutional and therefore cannot be enforced by the world at large. However, the Supreme Court has unequivocally held that federal courts may not "parlay" the Attorney General's alleged enforcement authority into an injunction against "any and all unnamed private persons" who might seek to bring enforcement actions. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). This alone is fatal to Plaintiffs' claims.

As a threshold matter, Plaintiffs fail to show that Defendant has a sufficiently direct connection to enforcement of Section 2924.13 such that *Ex parte Young* applies. Defendant possesses no enforcement authority under the statute's plain terms; instead, the statute provides for a private enforcement mechanism. The external sources of law that Plaintiffs claim confer the requisite enforcement authority are not sufficient; they either have no relation to Section 2924.13, have such a broad scope that they are essentially akin to "a generalized duty to enforce state law" that is insufficient under *Ex parte Young*, or have too attenuated a connection to the statute.

Even if Plaintiffs could show that the Defendant possesses a sufficient connection to Section 2924.13, they nonetheless cannot obtain the relief sought (an injunction against the statute itself). Rather, the Court is limited to an injunction against specific enforcement actions taken by Defendant. Plaintiffs' claimed injuries arise out of the existence of the statute itself, rather than any action or threatened action by the Attorney General. Thus, an injunction against Defendant will not redress Plaintiffs' injuries, and Plaintiffs lack standing to bring a claim against him.

Notwithstanding these fundamental issues, Plaintiffs fail to plausibly allege that Section 2924.13 is unconstitutional on its face. Plaintiffs' Opposition is riddled with a slew of mischaracterizations and exaggerations regarding the operation of the statute and the extent to which it restricts foreclosure remedies. Ultimately, they have not shown and cannot show that the statute substantially impairs contractual rights in all applications (as required for their Contract

1

1 │ Clause claim), fails rational basis review (as required for their Due Process and Equal Protection

2 │ claims), or actually conflicts with or poses an obstacle to federal law (as required for their

3 │ preemption claim).  Defendant's motion should be granted in its entirety.

4 │ **ARGUMENT**

5 │ **I.    PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.**

6 │ As set forth in Defendant's motion, *Ex parte Young* does not apply and Plaintiffs' claims

7 │ are barred by sovereign immunity.  *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43-44

8 │ (2021).  Official capacity suits against state officials are presumptively barred.  *See Brooks v.*

9 │ *Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991).  The Supreme Court

10 │ carved out a "narrow" exception to sovereign immunity for suits seeking declaratory or

11 │ prospective injunctive relief, known as the *Ex parte Young* exception.  *Munoz v. Superior Ct.*, 91

12 │ F.4th 977, 980 (9th Cir. 2024).  But this exception only "authorizes federal courts to enjoin

13 │ certain state officials from enforcing state laws."  *Whole Woman's Health*, 595 U.S. at 43.  To be

14 │ a proper defendant, a state officer "must have some connection with the enforcement of the act, or

15 │ else it is merely making him a party as a representative of the State, and thereby attempting to

16 │ make the State a party."  *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).  The connection

17 │ "'must be fairly direct; a generalized duty to enforce state law or general supervisory power over

18 │ the persons responsible for enforcing the challenged provision will not subject an official to

19 │ suit.'"  *Id.* (quoting *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

20 │ Defendant, far from being "expressly charged" with enforcing the statute as Plaintiffs

21 │ claim (Dkt. No. 26 ("Opp.") 8), possesses no enforcement authority under Section 2924.13's

22 │ terms.  *See* § 2924.13.  Rather, the statute clearly indicates that *borrowers* may choose to enforce

23 │ the statute.  *Id.*  And Plaintiffs fail to point to any external source that suggests a "fairly direct"

24 │ connection between the Attorney General and Section 2924.13 beyond his "generalized" duties.

25 │ Plaintiffs claim that Defendant's authority to bring actions to enforce the Unfair

26 │ Competition Law's ("UCL") prohibition against "any unlawful, unfair or fraudulent business act

27 │ or practice" (Cal. Bus. & Prof. Code § 17200) amounts to enforcement authority over Section

28 │ 2924.13 such that *Ex parte Young* applies.  Opp. 11-13.  Plaintiffs do not cite to a single case in

1    which the Attorney General's enforcement authority under the UCL permitted plaintiffs to evade

2    sovereign immunity. *Id*. Moreover, the scope of the UCL is immensely broad, sweeping in

3    "anything that can properly be called a business practice and that at the same time is forbidden by

4    law." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.Supp.3d 1123, 1139 (S.D. Cal. 2014); *see*

5    *also Battle v. Taylor James*, LLC, 607 F.Supp.3d 1025, 1045 (C.D. Cal. 2022) (noting the

6    "intentionally broad" standard of the "unfair" prong of the UCL). This wide-ranging, unspecified

7    scope renders Defendant's enforcement authority under the UCL akin to "a generalized duty to

8    enforce state law" as opposed to a "fairly direct" connection to enforcement of Section 2924.13.

9    *Snoeck*, 153 F.3d at 986. This cannot be the basis for the *Ex parte Young* exception; if so, it

10    would effectively eliminate sovereign immunity for the Attorney General in California for any

11    statute that could conceivably be said to regulate business practices. Even more problematic is

12    that Plaintiffs do not plead facts showing a "real likelihood" of the Attorney General bringing

13    civil actions to enforce Section 2924.13, which the Ninth Circuit has held is necessary for the

14    application of *Ex parte Young*. *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992)

15    (finding that claims against the California Attorney General were barred because "there is no

16    threat that [the statute] will be enforced by the Attorney General").[1]

17        Plaintiffs' argument that Defendant is "a designated enforcement partner" of the

18    Department of Financial Protection and Innovation ("DFPI") similarly fails. Opp. 13-14. It is

19    true that DFPI is empowered to prosecute civil actions arising from consumer financial laws. *See*

20    Cal. Fin. Code § 90006. However, the various statutes cited by Plaintiffs do not establish any

21    "direct" connection to the Attorney General. For example, Plaintiffs note that DFPI is statutorily

22    authorized to refer violations of the Financial Code and DFPI regulations to the Attorney General.

23    *See* Cal. Fin. Code §§ 4977(e), 5301, 18415.18(b). But Section 2924.13 is part of the *Civil Code*,

24    not the Financial Code or DFPI regulations, so these statutes are irrelevant. Plaintiffs also cite to

---

26    [1] Plaintiffs also claim that Cal. Civ. Code section 2924.17 supports the evasion of
    sovereign immunity here because it authorizes Defendant to pursue "enhanced civil penalties" if a
27    servicer repeatedly issues inaccurate certifications under Section 2924.13. Opp. 13. Again, the
    connection between Section 2924.17 and the Attorney General's enforcement of Section 2924.13
    is too attenuated to support the application of *Ex parte Young*, especially without any allegations
28    showing a "real likelihood" or "threat" of such enforcement. *See Long*, 961 F.2d at 152.

---

3

1   a statute that authorizes DFPI to refer "a violation of the state law punishable by criminal

2   penalties" to Defendant.  Cal. Fin. Code § 378; *see also* Cal. Fin. Code § 90017(c)(1).  But, as

3   discussed below, Section 2924.13 is not a criminal statute; it provides for civil remedies only.

4   Finally, Plaintiffs cite to a statute broadly authorizing DFPI to enter into agreements with

5   Defendant "with respect to civil actions."  Cal. Fin. Code § 90017(a).  But Plaintiffs do not plead

6   any facts indicating that there is any "real likelihood" that this potential cooperation between the

7   Attorney General and DFPI has or will occur in connection with Section 2924.13.  *Long*, 961

8   F.2d at 152 ("[T]here must be a connection between the official sued and enforcement of the

9   allegedly unconstitutional statute, and *there must be a threat of enforcement.*") (emphasis added).

10  Regardless, the Ninth Circuit has rejected mere assistance in another officer's prosecutorial effort

11  as a sufficient connection to enforcement.  *See Planned Parenthood of Idaho v. Wasden*, 376 F.3d

12  908, 919 (9th Cir. 2004); *S. Pac. Transp. Co. v. Redden*, 651 F.2d 613, 614-615 (9th Cir. 1980).

13       Nor does the Attorney General's ability to prosecute perjury charges give him sufficient

14  enforcement authority.  *See* Opp. 11.  Any perjury prosecution would be for making false

15  statements under the penalty of perjury, not for violating Section 2924.13.  *See Doe v. Holcomb*,

16  883 F.3d 971, 977 (7th Cir. 2018) (civil statute that required a declaration to be submitted under

17  penalty of perjury did not itself implement any "criminal penalties").  Indeed, an individual could

18  violate every major provision of the statute—for example, by engaging in each of the unlawful

19  practices, and refusing to record a certification prior to nonjudicial foreclosure—without

20  committing perjury.  There simply is no "criminal enforcement mechanism," as Plaintiffs claim,

21  for Section 2924.13.  Opp. 11.  Moreover, Plaintiffs ignore that before prosecuting criminal

22  violations, either the Attorney General must determine that the law is "not being adequately

23  enforced" or the Governor must instruct the Attorney General to prosecute such violations.  Cal.

24  Const. Art. 5, § 13; Cal. Gov. Code § 12550.  This connection is too speculative and attenuated to

25  support the application of *Ex parte Young.*  Indeed, at least once court has found that a statute

26  requiring a declaration to be submitted under penalty of perjury did not render the state attorney

27  general an "enforcer" of that statute for sovereign immunity purposes.  *Holcomb*, 883 F.3d at 977

28  (finding that although "the Attorney General could assist a local prosecuting attorney in a perjury

1    prosecution," this connection was "too attenuated").

2          Finally, Plaintiffs' attempts to distinguish *Whole Woman's Health* and *Geo Grp., Inc. v.*

3    *Inslee,* 151 F.4th 1107 (9th Cir. 2025) are unavailing.  Contrary to Plaintiffs' claims, *Whole*

4    *Woman's Health* supports that the Attorney General is not a proper defendant to this suit.  In

5    concluding that the Texas attorney general was not a proper defendant in that case, the Supreme

6    Court did not rely on (or even mention) the fact that the Texas statute "stripped state officials of

7    any enforcement role" (Opp. 10).  595 U.S. at 43.  Rather, the Supreme Court reasoned that there

8    was no "enforcement authority the attorney general possesses in connection with [the challenged

9    law]" because the law that petitioners claimed conferred such enforcement authority did not

10    actually cover the challenged statute in question.  *Id.* at 43-44.  The Supreme Court certainly did

11    not hold that a statute must "expressly prohibit" the official from enforcing the law for *Ex parte*

12    *Young* to apply, as Plaintiffs contend.  *Id.*; Opp. 10; *see also Free Speech Coal., Inc. v. Anderson*,

13    119 F.4th 732, 740 (10th Cir. 2024) (citing to *Whole Woman's Health* and holding that "the

14    enforcement inquiry under *Ex parte Young* does not ask whether enforcement has been expressly

15    prohibited; it asks whether a defendant enforces or gives effect to the law.").  *Geo* is proof that no

16    such categorical rule exists.  151 F.4th at 1124.  There is no material difference between the

17    enforcement mechanisms in Section 2924.13 and the statutory provision at issue in *Geo.  Id.*; *see*

18    Wash. Rev. Code § 70.395.070.  Both confer enforcement authority to aggrieved individuals, and

19    both are silent as to the enforcement authority of government officials.  § 2924.13; Wash. Rev.

20    Code § 70.395.070.  Despite the lack of an express prohibition of enforcement by the attorney

21    general, the *Geo* court nonetheless found that the state attorney general lacked enforcement

22    authority and was not a proper defendant.  *Geo*, 151 F.4th at 1124.

23          None of Plaintiffs' arguments overcome the fact that Section 2924.13 calls for enforcement

24    by private parties, not Defendant.  Because the Attorney General does not have a sufficiently

25    direct connection to the enforcement of the statute, sovereign immunity bars Plaintiffs' claims.

26    **II.    THE COURT CANNOT GRANT PLAINTIFFS THE RELIEF THEY SEEK.**

27          Even if Plaintiffs could show that the *Ex parte Young* exception applies, this would only

28    "expose another [problem]"—that Plaintiffs' injuries cannot be redressed by enforcement against

1    the Attorney General, and Plaintiffs therefore lack Article III standing.[2]  *Whole Woman's Health*

2    *v. Jackson*, 595 U.S. at 44.  Article III standing requires that the plaintiff allege an injury-in-fact

3    that is "likely" to be "redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S.

4    555, 560–61 (1992).  Here, Plaintiffs ask that the Court redress their alleged injuries by declaring

5    the law unconstitutional and implementing a "permanent injunction against enforcement of the

6    challenged provisions of [Section 2924.13]."  Dkt. No. 14 ("FAC") ¶¶ 121, 126.  But, as noted by

7    the Supreme Court, courts may not issue an injunction against the "world at large" when it is the

8    *attorney general* who is named as the defendant:

9    
10           Supposing the attorney general did have some enforcement authority under S.B. 8,
             the petitioners have identified nothing that might allow a federal court to parlay that
             authority, or any defendant's enforcement authority, into an injunction against any
11           and all unnamed private persons who might seek to bring their own S.B. 8 suits.

12    *Whole Woman's Health v. Jackson*, 595 U.S. at 44 (cleaned up).  In other words, while a federal

13    court "may enjoin named defendants [such as the Attorney General] from taking specified

14    unlawful actions," it may not "enjoin the world at large or purport to enjoin challenged laws

15    themselves."  *Id.* (cleaned up).

16           *Free Speech Coal. v. Knudsen*, No. CV 24-67-M-DWM, 2025 WL 2240252 (D. Mont.

17    Aug. 6, 2025) is instructive.  In this case, the plaintiffs sued the Montana attorney general to

18    challenge the constitutionality of Montana's Age Verification Act, a law that provided a private

19    cause of action for damages against internet providers that failed to abide by the statute's age

20    verification requirements.  *Id.* at *1. The court held that even if the attorney general possessed

21    sufficient enforcement authority over the statute for sovereign immunity purposes, plaintiffs'

22    claims against him failed "because this Court cannot provide redress for the injury posed by the

23    _____

24           [2] "Standing, mootness, and ripeness are jurisdictional issues that may be raised at any
       time[.]"  *DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006).  Thus,
25     the Court may consider this argument despite it not appearing in Defendant's initial Motion.  *See
       Ali v. Carnegie Inst. of Washington*, 967 F. Supp. 2d 1367, 1380 (D. Or. 2013), *aff'd*, 684 F.
26     App'x 985 (Fed. Cir. 2017) (considering standing argument that had been raised for the first time
       in defendant's reply brief because "defects in a plaintiff's standing cannot be waived by a
27     defendant"); *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 974 (9th Cir. 2020) (declining
       to treat as waived a standing challenge that had been asserted "only in a footnote" because
28     "[courts] have an independent obligation to determine [their] jurisdiction under Article III").

1    private right of action created under the Act." *Id.* at *3.  Citing to *Whole Woman's Health*, the

2    court noted that it could not enjoin "private persons" from independently filing suit under the

3    challenge statute, nor could it enjoin the statute itself or issue a declaration regarding the legality

4    of the statute beyond the parties named to the suit.  *Id.* at *4.  Thus, regardless of any connection

5    between the attorney general and the challenged statute, the plaintiffs' claims against the attorney

6    general failed for lack of standing.

7         Here, too, Plaintiffs' claims against the Attorney General fail for lack of standing because

8    Plaintiffs are limited to an injunction that would, at most, enjoin the Attorney General from taking

9    any action to enforce Section 2924.13.  The Court cannot and should not enjoin "the world at

10   large" or "purport to enjoin [Section 2924.13 itself]."  *Whole Woman's Health v. Jackson*, 595

11   U.S. at 44.  Yet none of Plaintiffs' claimed injuries arise out the threat of enforcement by the

12   Attorney General.  Rather, they flow from the mere existence of Section 2924.13 and its potential

13   use by borrowers.  *See, e.g.,* FAC ¶¶ 60, 71, 75, 83, 117 (alleging harms resulting from the

14   operation of Section 2924.13, rather than from any specific action taken by the Attorney General

15   to enforce it).  An injunction against the Attorney General will simply not redress any of

16   Plaintiffs' grievances.  Plaintiffs accordingly lack Article III standing, and their claims against the

17   Attorney General must be dismissed.

18   **III.    PLAINTIFFS DO NOT ALLEGE A VIOLATION OF THE CONTRACT CLAUSE.**

19        **A.    The statute does not substantially impair creditors' contractual rights.**

20        The first step of the Contract Clause analysis requires the challenger to show that the statute

21   "substantially impair[s]" preexisting contractual rights.  *Sveen v. Melin*, 584 U.S. 811, 819

22   (2018).  Because Plaintiffs bring a facial challenge, they face the difficult burden of showing that

23   Section 2924.13 constitutes a substantial impairment in all possible circumstances.  *Wash. State*

24   *Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

25        Because Plaintiffs cannot meet this burden, they resort to blatantly mischaracterizing the

26   operation of the statute and the extent to which it impacts foreclosure remedies.  For example,

27   Plaintiffs claim that the statute leaves "no preservation of alternative remedies" (Opp. 18), even

28   though (i) the statute does not operate as a bar on nonjudicial foreclosure, but rather conditions

7

1   that remedy on compliance with a certification and notice requirement, and (ii) judicial

2   foreclosure plainly remains an alternative remedy if lenders do not wish to comply with this

3   certification requirement.

4          **1.    Plaintiffs rely on language from a version of the statute that was never enacted.**

5

6        To support their exaggerated claims regarding the impact of Section 2924.13, Plaintiffs cite

7   to and repeatedly quote language contained in a *prior version of the statute that was not enacted*,

8   including phrases that the Legislature specifically removed from the enacted statute.  For

9   example, Plaintiffs claim that the existence of any "unlawful practices" under Section 2924.13(b)

10   is a "complete defense" to nonjudicial foreclosure, citing to the legislative history for an early

11   version of Senate Bill No. 681 ("SB 681"), the precursor to Section 2924.13.  Opp. 19 (citing Dkt.

12   No. 20-2, Ex. 1 (Senate Judiciary Committee for SB 681 (April 29, 2025)) at 17).  It is true that

13   an early draft of SB 681 stated that the existence of any of the "unlawful practices" was a

14   "complete defense" to judicial foreclosure.  *See* Dkt. No. 26-1, Ex. 9 (SB 681, as amended May

15   23, 2025) at 20-21.  But the Legislature deliberately removed this "complete defense" language

16   when it amended SB 681 (which itself, as Defendant noted in his motion, was not ultimately

17   enacted by the Legislature):

18                *(e)* It shall be ~~a complete~~ *an* affirmative defense in a judicial foreclosure proceeding if the court

19                finds ~~that any portion of the debt secured by the mortgage or deed of trust is deemed abandoned pursuant to subdivision (a) or (b),~~ *the mortgage servicer engaged in any of the unlawful practices specified in subdivision (b).*

20   *Id*.[3]  Indeed, there is no mention whatsoever to any "complete defense" in the actual statute that

21   was enacted.  § 2924.13(e).  As discussed in more detail below, this instead evinces the opposite

22   of what Plaintiffs contend: that the court is *not* required to treat the occurrence of an "unlawful

23   practice" as a complete defense in judicial foreclosures.  *Infra* III.A.3.

24        Plaintiffs similarly claim that the subordinate debt is deemed "abandoned" whenever an

25   unlawful practice has occurred.  *See, e.g.,* Opp. 33 (claiming that if lenders do not provide all

26   notices required by law, they "risk 'the debt being abandoned'"); *id.* at 35 ("Contrary to

27

28          [3] This screenshot is a colorized version of the redlined text contained in Dkt. No. 26-1, Ex. 9 at 20-21 and can be viewed at https://legiscan.com/CA/text/SB681/2025.

1  Defendant's claim . . . when a subordinated mortgage holder issues an IRS Form 1099-C, the

2  subordinated debt is deemed abandoned.").  However, Plaintiffs again cite to legislative analyses

3  for the *prior* version of the statute, which stated the occurrence of any unlawful practice meant

4  that the debt was "deemed abandoned."  *Id.* at 33, 35 (citing Dkt. No. 26-1, Ex. 16 (Senate

5  Housing Committee for SB 681 (April 22, 2025)) and Ex. 15 (Senate Judiciary Committee for SB

6  681 (April 29, 2025)).   Again, the Legislature specifically revised SB 681 to eliminate every

7  instance of this "deemed abandoned" language.  *See* Dkt. No. 26-1, Ex. 9 at 19-21 (redlined

8  version of SB 681, as amended on May 23, 2025).  Indeed, after these revisions were made, a

9  subsequent legislative analysis for SB 681 states that the bill "[p]rovide[s] flexibility to a court to

10  provide equitable remedies where the mortgage servicer committed an unlawful practice,

11  including but not limited to, striking all or some of the arrears, barring foreclosure, or other

12  remedies **rather than specifying that the debt becomes abandoned upon a mortgage**

13  **servicer's failures**."  *See* Plaintiffs' Dkt. No. 26-1, Ex. 12 (Senate Floor Analyses for SB 681

14  (June 2, 2025)) at 12 (emphasis added).  This unambiguous evidence of the Legislature's intent in

15  crafting the provisions of SB 681, that were later enacted through the budget bill, directly

16  contradicts Plaintiffs' claim that Section 2924.13 makes subordinate mortgages "abandoned" if a

17  violation has occurred.

18            **2.      The statute does not bar nonjudicial foreclosures.**

19       Plaintiffs also attempt to paint the statute as a "mandatory restriction" that "blocks" the

20  power of sale.  *E.g.,* Opp. 16, 18, 26.  But the fact remains that Section 2924.13 simply does not

21  eliminate nonjudicial foreclosure; it rather conditions it on compliance with a certification and

22  notice requirement.  § 2924.13(c).  And if a creditor does not wish to comply with these

23  requirements, it can opt to pursue judicial foreclosure instead.  *See infra* III.A.3.

24       Plaintiffs stress that the statute "mandates" a court to enjoin a nonjudicial foreclosure if a

25  borrower petitions the court for relief, implying that Section 2924.13 automatically implements a

26  permanent ban on nonjudicial foreclosure if any of the unlawful practices have occurred.  Opp.

27  17-18.  They conveniently ignore that this enjoinment is expressly temporary and only lasts "until

28  a final determination on the petition has been made."  § 2924.13(d).  The court retains *complete*

1    *discretion* to determine what ultimate relief (if any) to provide to the borrower when ruling on the

2    petition.  *See* § 2924.13(f) ("The court <u>may</u> provide equitable remedies that the court deems

3    appropriate[.]") (emphasis added).  The impact of the "mandatory" terms in subdivision (d)—

4    which merely require a court to *temporarily* enjoin the nonjudicial foreclosure if the borrower

5    petitions the court—is minor; meanwhile, the discretionary terms in subdivision (f) gives the

6    court complete freedom to determine the ultimate outcome of the case, including whether to grant

7    the borrower any relief at all.  In Plaintiffs' own words, the "permissive verb 'may'" in Section

8    2924.13(f) avoids constitutional problems by "allowing courts to avoid inequitable or

9    unconstitutional outcomes."  Opp. 17 (citing *Lac v. Nationstar Mortg. LLC*, No. 2:15-cv-00523-

10   KJM-AC, 2016 U.S. Dist. LEXIS 98250, at *19 (E.D. Cal. July 26, 2016)).  That Section 2924.13

11   mandates the *temporary* halt of *nonjudicial* foreclosures, and only upon the borrower's petition to

12   the court, does not rise to the substantial impairment of contracts, for all the reasons explained in

13   Defendant's motion.  *See* Dkt. No. 24 ("Mot.") 10-11.

14        Plaintiffs also claim that the statute is unconstitutional because it imposes "mandatory

15   preconditions" on nonjudicial foreclosures.  Opp. 16.  But the right to nonjudicial foreclosure has

16   never been absolute; it is already subject to numerous other statutory "preconditions" that must be

17   complied with before creditors can exercise the power of sale.  *See, e.g.,* § 2923.5(b) (requiring

18   certification of compliance with certain obligations before a creditor can initiate nonjudicial

19   foreclosure); *see also* Mot. 12-13 (noting the extensive pre-existing regulation of nonjudicial

20   foreclosures).  That the ability to nonjudicially foreclose is dependent on meeting Section

21   2924.13's certification requirement does not automatically transform the law into an

22   unconstitutional impairment.  Plaintiffs must show that this precondition is so onerous that it

23   constitutes a substantial impairment of their contractual rights in all applications.  *Wash. State*

24   *Grange*, 552 U.S. at 449.  This they cannot do—not only because servicers who comply with the

25   certification requirement can still proceed with nonjudicial foreclosure, but also because (as

26   Defendant has argued at length) various alternative methods of enforcing their contractual rights

27   remain, such as the ability to pursue judicial foreclosure without recording any certification

28   whatsoever.  *See Richmond Mortg. & Loan Corp. v. Wachovia Bank & Tr. Co.*, 300 U.S. 124,

1  131 (1937) (upholding statute's retroactive application that limited the availability of deficiency

2  judgments after nonjudicial foreclosures because the lender still had the option to pursue judicial

3  foreclosure); Mot. 12.  Indeed, the Legislature could have "elected altogether to abolish the

4  remedy by trustee's sale" as long as the "adequate remedy" of judicial foreclosure remained.

5  *Richmond*, 300 U.S. at 131.[4]

6                    **3.    The statute does not bar judicial foreclosures.**

7          Plaintiffs claim that the existence of any unlawful practice is a "complete defense" to

8  judicial foreclosure.  Opp. 19.  This is blatantly incorrect.  As the only support for this claim,

9  Plaintiffs cite to language contained in a prior version of this bill that was never enacted.  *Supra*

10  III.A.1.  In reality, Section 2924.13 merely states that it shall be "*an* affirmative defense" in a

11  judicial foreclosure proceeding if any of the unlawful practices have occurred.  § 2924.13(e)

12  (emphasis added).  The Legislature deliberately removed the "complete defense" phrase from the

13  operative version of the statute, indicating that it does not intend for these affirmative defenses to

14  be "complete."  *See People v. Goodloe*, 37 Cal. App. 4th 485, 490-491 (1995) ("[T]he

15  Legislature's rejection of a specific provision which appeared in the original version of an act

16  supports the conclusion that the act should not be construed to include the omitted provision.")

17  (citations omitted); *California Chamber of Com. v. State Air Res. Bd.*, 10 Cal. App. 5th 604, 630

18  (2017) (noting that the legislature's "pass[ing of] a bill without a specific provision contained in a

19  prior version of the bill" is probative of legislative intent).

20          Moreover, California courts have recognized that affirmative equitable defenses are not

21  always "complete" defenses that entirely preclude liability.  *E.g., Gomez v. J. Jacobo Farm Lab.*

22  *Contractor, Inc.*, 188 F. Supp. 3d 986, 996 (E.D. Cal. 2016) (noting that "equitable defenses are

23  _____

          [4] Plaintiffs claim that Section 2924.13(b)(5)—which deems it an unlawful practice to
24  conduct or threaten a nonjudicial foreclosure "after the applicable statute of limitations expires—
    impairs the right to nonjudicially foreclose because it can "plausibly" be interpreted to mean that
25  any type of foreclosure (judicial or nonjudicial) is barred after the statute of limitations for
    judicial foreclosure has passed.  Opp. 23-24.  This interpretation is completely illogical. The
26  statute is unambiguous: creditors cannot foreclose or threaten to foreclose "after the *applicable*
    statute of limitations" has run.  The "applicable" statute of limitations, as defendants note in their
27  Complaint, depends on whether the creditor seeks to enforce the underlying debt (i.e., judicially
    foreclose) or exercise the power of sale under the deed of trust (i.e., nonjudicially foreclose).
28  FAC ¶¶ 35-37.  There is no reason to think that the Legislature somehow meant to impose the
    statute of limitations for one variety of foreclosure on the other variety of foreclosure.

                                                      11

1    not complete defenses" but rather "guide the court in shaping relief").  There is simply no reason

2    to think that the existence of "affirmative defenses" under Section 2924.13(e) means that every

3    time an unlawful practice has occurred, judicial foreclosure is necessarily barred.

4        The statute's remedies provision further illustrates that these affirmative defenses are not

5    "complete," but rather the court retains discretion.  The statute provides that the court "*may*

6    provide equitable remedies *that the court deems appropriate*, depending on the extent and

7    severity of the mortgage servicer's violations."  § 2924.13(f) (emphasis added).  Requiring the

8    court to entirely bar judicial foreclosure any time an unlawful practice occurred would directly

9    conflict with this provision.  *Id.; see also* Dkt. No. 26-1 at 335 (legislative history noting that the

10   revised remedies provision is intended to "provide flexibility to a court . . . rather than specifying

11   that the debt becomes abandoned upon a mortgage servicer's failures").

12       Finally, Plaintiffs fail entirely to rebut Defendant's argument that they bring a facial

13   challenge and thus face the high burden of showing that the statute is unconstitutional in all

14   circumstances.  *Wash. State Grange*, 552 U.S. at 449.  Plaintiffs thus waive any objection to the

15   applicability of this standard.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802

16   F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an

17   opposition brief to an argument put forward in an opening brief constitutes waiver or

18   abandonment in regard to the uncontested issue.").

19       **B.    Even if there is substantial impairment, Section 2924.13 easily clears the
            deferential standard of review.**
20

21       Plaintiffs imply (incorrectly) that the statute must be "narrowly tailored" to survive scrutiny

22   under the Contract Clause.  *See, e.g.,* Opp. 28 (arguing that Plaintiffs have plausibly alleged a

23   violation of the Contract Clause by "alleging facts establishing that Section 2924.13 is not

24   narrowly tailored").  But that is not the standard.  If a statute does substantially impair contractual

25   rights (and the Attorney General maintains that Section 2924.13 does not), the law need only be

26   an "appropriate and reasonable way to advance a significant and legitimate public purpose."

27   *Sveen*, 584 U.S. at 819 (cleaned up).   Section 2924.13 easily meets this standard.

28

In the legislative analyses of SB 681 (the precursor to Section 2924.13; *see* FAC ¶ 34), the legislature articulated at least two significant and legitimate public purposes: addressing the harms of "zombie" mortgages and mitigating the housing affordability crisis in California.[5]  Dkt. No. 20-2, Ex. 1 at 9, 16.  The purpose motivating SB 681, as articulated in this legislative analysis, is clearly relevant to determining the purpose motivating Section 2924.13.  *See People v. Super. Ct. (Ferguson)*, 34 Cal. Rptr. 3d 481, 487 (2005) ("[P]rior versions of a bill as well as analyses of such earlier versions [ ] shed light on how the Legislature arrived at the ultimately enacted statute."); *State of Ariz. v. Atchison, T. & S. F. R. Co*., 656 F.2d 398, 404 n. 6 (9th Cir. 1981) (considering the legislative history of prior bills that were similar to the statute at issue for purposes of statutory construction).  Plaintiffs are therefore wrong to claim that the Legislature identified no legitimate public purpose behind the statute.  *See* Opp. 26-27.

Section 2924.13 is clearly a "reasonable way" to achieve these stated objectives.  *Sveen*, 584 U.S. at 819.  The statute appropriately focuses on subordinate mortgages because, as determined by the Legislature, most "zombie" mortgages fall into this category of liens.  *See* Dkt. No. 20-2, Ex. 1 at 16; § 2924.13(a)(3).  The statute then reasonably provides borrowers of such subordinate mortgages with the ability to seek judicial scrutiny if certain servicing practices that contribute to the housing affordability crisis and "zombie mortgages" have occurred—such as failing to communicate with borrowers for more than three years or failing to send required notices.  § 2924.13(b)(1)-(6).  The statute does *not* categorically bar foreclosure if any of these practices occurred, and the borrower's relief (if any is granted) depends on "the extent and severity of the mortgage servicer's violations.  § 2924.13(f).  Plaintiffs may disagree with the

---

[5] Contrary to Plaintiffs' claims, Section 2924.13 was indeed enacted in part to address the housing affordability crisis in California, as shown in the legislative history for SB 681.  Plaintiffs claim that "[t]he broader affordability discussion in SB 861 [sic] dealt with unrelated provisions," rather than Section 2924.13.  Opp. 26, n. 8.  To the contrary, the legislative analysis's language regarding SB 681's goal of addressing housing affordability is not limited to any particular section of the bill.  *See* Dkt. No. 20-2, Ex. 1 at 1, 9, 10.  In fact, in the very same paragraph in which the legislature acknowledges the "housing affordability crisis," it also notes that "debt collectors are aggressively pursuing second mortgages long thought forgiven"—a clear reference to the provisions that would later become Section 2924.13.  *Id*. at 9.  The analysis also states that SB 681 "ensures protections are in place to shield . . . homeowners from abusive financial practices that deepen the crisis," another reference to Section 2924.13.  *Id.*

Defendant's Reply in Support of Motion to Dismiss (2:25-cv-02614-DAD-CKD)

1   Legislature's determination that Section 2924.13 will mitigate California's housing affordability

2   crisis, but this difference of opinion does not render the statute unconstitutional. *See Keystone*

3   *Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 506 (1987) (rejecting plaintiffs' Contracts

4   Clause claim and noting that courts should not "second-guess" the government's determination as

5   to "the most appropriate ways of dealing with the problem" at issue).

6       **C.    Section 2924.13 may be applied retroactively.**

7       Plaintiffs entirely fail to rebut Defendant's argument that the general rule against retroactive

8   application without express Legislative intent does not apply because Section 2924.13 constitutes

9   a repeal of limitation on a "purely statutory cause of action." *See Palmer v. Stassinos*, 419 F.

10  Supp. 2d 1151, 1155 (N.D. Cal. 2005); Mot. 15; Opp. 24. By failing to address this argument,

11  Plaintiffs concede that there does not need to be any express Legislative intent for Section

12  2924.13 to apply retroactively. *See Stichting*, 802 F. Supp. 2d at 1132 ("[The] failure to respond

13  in an opposition brief to an argument put forward in an opening brief constitutes waiver or

14  abandonment in regard to the uncontested issue.").

15      The only remaining issue, then, is whether the retroactive application of Section 2924.13

16  constitutes a substantial impairment that is not reasonably related to a significant and legitimate

17  public purpose. For the same reasons discussed above and in Defendant's motion, Plaintiffs

18  cannot show that this is the case. *See* Mot. 10-15. Other courts have similarly upheld retroactive

19  statutes that did not substantially impair contractual rights or that were justified by a legitimate

20  public purpose. *See Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660, 678 (2023)

21  (retroactive application of a law that prevented the seizure of a debtor's home to satisfy his

22  consumer debt did not constitute a substantial impairment of the lender's contractual rights

23  because "[o]ther methods of recovery [were] left intact.")[6]; *Richmond*, 300 U.S. at 131 (upholding

24  statute that retroactively limited the availability of deficiency judgments after nonjudicial

25      _____

        [6] Plaintiffs' attempt to distinguish *Davis Boat* make little sense. As Plaintiffs note, *Davis*

26  *Boat* stands for the proposition that the Legislature may not "withdraw all remedies," but it may
    "modify" existing remedies "provided a substantial or efficacious remedy remains." Opp. 18;

27  *Davis Boat,* 95 Cal. App. 5th at 678. That is exactly what Section 2924.13 does: it modifies the
    existing remedy of nonjudicial foreclosure without "withdraw[ing] all remedies," and it permits

28  parties to continue engaging in nonjudicial foreclosure (subject to the statute's requirements) or,
    in the alternative, judicial foreclosure. *See supra* III.A.2-3.

1  foreclosures because the continued availability of judicial foreclosure meant that plaintiffs'

2  contractual rights were not substantially impaired).

3  **IV.    SECTION 2924.13 DOES NOT VIOLATE THE DUE PROCESS CLAUSE.**

4        Economic legislation is subject to rational basis review under the Due Process Clause,

5  which requires only that the statute "'bear[ ] a rational relationship to a legitimate state interest.'"

6  *Crownholm v. Moore*, 652 F. Supp. 3d 1155, 1169 (E.D. Cal. 2023) (quoting *Slidewaters LLC v.*

7  *Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021)).  Thus, for the same reasons

8  that Section 2924.13 is an "appropriate and reasonable way to advance a significant and

9  legitimate public purpose," *Sveen*, 584 U.S. at 819, it certainly passes rational basis review under

10  the Due Process Clause, too.  *See supra* III.B; Mot. 15-16.

11        In their challenge, Plaintiffs rely on the same faulty logic and mischaracterizations as for

12  their Contract Clause Claim.  They again cite to outdated language from a previous version of the

13  statute that would have deemed a subordinate mortgage "abandoned" any time the statute was

14  violated, ignoring that the Legislature subsequently opted to eliminate this "abandonment"

15  language.  Opp. 29 (claiming that the statute mandates that "a subordinate mortgage [is]

16  abandoned if any of certain conditions are met.")*; but see supra* III.A.1 (noting the Legislature's

17  express rejection of this "abandonment" language).  Plaintiffs falsely claim that the statute "bars

18  subordinate mortgage holders from enforcing such mortgages nonjudicially or judicially" (Opp.

19  29), notwithstanding that both remedies continue to be an option for subordinate mortgage

20  holders under the statute.  *See supra* III.A.2-3.  And Plaintiffs assert that Section 2924.13(e) gives

21  borrowers a "complete defense" in judicial foreclosure proceedings, even though the Legislature

22  specifically amended this provision to eliminate any reference to a "complete defense" and

23  provide the court with flexibility in determining equitable remedies.  Opp. 29; *see supra* III.A.1.

24        Most remarkably, Plaintiffs appear to argue that protecting "distressed borrowers" facing

25  the devastating effects of zombie mortgages and threatened foreclosures is not a "significant or

26  legitimate public interest."  Opp. 29, 30.  But courts have regularly held that protecting borrowers

27  from the effects of a foreclosure crisis is a legitimate public interest.  *See, e.g., United States v.*

28  *MacKenzie*, 510 F.2d 39, 41-42 (9th Cir. 1975) (recognizing state government's legitimate

15

1    interest in "protecting debtors from economic overreaching in foreclosure sales"); *Penermon v.*

2    *Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 992 (N.D. Cal. 2014) (noting that the purpose of

3    California's Homeowner Bill of Rights was to protect homeowners and "combat the foreclosure

4    crisis and hold banks accountable for exacerbating it"); *Thornton v. Carrington Mortg. Servs.,*

5    *LLC*, No. 2:17-CV-0127-JCC, 2017 WL 11458071, at *2 (D. Idaho Apr. 13, 2017) ("There is a

6    strong public interest in ensuring that mortgage companies, which yield immense financial and

7    legal resources, follow the proper procedures when initiating foreclosure proceedings.").

8          Section 2924.13 clearly passes rational basis review, and Plaintiffs' misguided assertions

9    cannot save their Due Process claim.

10    **V.    SECTION 2924.13 DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.**

11          Likewise, Plaintiffs' Equal Protection claim fails because the statute's classification

12    passes rational basis review.  Section 2924.13 is far from "malicious, irrational, or plainly

13    arbitrary."  Opp. 31; *see Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir.

14    2015) (legislation passes constitutional muster as long as "there is any reasonably conceivable

15    state of facts that could provide a rational basis for the classification").

16          In Plaintiffs' view, because the statute applies to subordinate mortgages that may not be

17    "zombie" mortgages, it is necessarily irrational. Opp. 31-32.  But rational basis review does not

18    require such a perfect fit between the means and ends of a statute.  "Even if the classification is to

19    some extent both underinclusive and overinclusive, and hence the line drawn by [legislators]

20    imperfect, it is nevertheless the rule that perfection is by no means required."  *Vance v. Bradley*,

21    440 U.S. 93, 108 (1979) (cleaned up); *see also United States v. Pickard*, 100 F. Supp. 3d 981,

22    1005 (E.D. Cal. 2015) ("The law may be overinclusive, underinclusive, illogical, and unscientific

23    and yet pass constitutional muster.").  And as discussed above, this law is far from "illogical" in

24    addressing the issues of the zombie mortgage crisis and the harms of foreclosures and the housing

25    crisis more generally.  Section 2924.13 does not deem all subordinate mortgages that fall under its

26    purview "zombie" mortgages.  Rather, it rationally imposes a certification requirement on a

27    certain class of mortgages that are more likely to be "zombies" (subordinate liens).  *See*

28    § 2924.13(a)(3).  It also provides borrowers with a means of seeking judicial review if the

16

1  servicer has engaged in potentially predatory practices—such as failing to send notices required

2  by law, or attempting to collect on debt after indicating to the borrower that the debt had been

3  forgiven—that do not exclusively occur in the context of zombie mortgages but nonetheless

4  contribute to the harms of foreclosures and ultimately the housing crisis. *See* § 2924.13(b). This

5  easily satisfies the Equal Protection Clause's mandate that "the relationship of the classification to

6  its goal is not so attenuated as to render the distinction arbitrary or irrational." *Angelotti*, 791

7  F.3d at 1085; *see also id.* at 1086 (finding that the challenged statute rationally "focused on the

8  group that most frequently" contributed to the lien backlog issue that the legislature sought to

9  address).

10      Plaintiffs also complain that Defendant relies on "speculative rationales not found in

11  Section 2924.13." Opp. 31. But under rational basis review, *any* potential purpose motivating

12  the statute is sufficient, regardless of whether that purpose has been articulated by the Legislature.

13  *Olson v. California*, 104 F.4th 66, 77-78 (9th Cir. 2024) ("When conducting rational basis review

14  of economic legislation . . . We need not rely on the legislature to proffer its actual rationale

15  motivating the legislation—or any rationale, for that matter."). In fact, on rational basis review,

16  "the challenger of a classification bears the burden of negating every conceivable basis which

17  might support it." *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 755 (E.D. Cal. 2020) (quoting

18  *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017)). Plaintiffs improperly attempt

19  to flip this standard on its head. And regardless, Plaintiffs cite no authority to support the

20  proposition that the legislative history for SB 681, which Plaintiffs admit is the precursor to

21  Section 2924.13 (*see* FAC ¶ 34), cannot be considered as evidence of the legislature's intent with

22  respect to the challenged statute. Case law confirms the opposite. *See Ferguson*, 34 Cal. Rptr. 3d

23  at 487*; Atchison,* 656 F.2d at 404 n. 6*; supra* III.B (p.13).

24      Finally, Plaintiffs' speculative opinion that the statute will harm rather than protect

25  borrowers (Opp. 32), which has not borne out, does not mean that the statute violates the Equal

26  Protection Clause. Rational basis review "is not a license for courts to judge the wisdom,

27  fairness, or logic of legislative choices." *Novak v. United States.*, 795 F.3d 1012, 1023 (9th Cir.

28  2015). The Legislature has made the determination that Section 2924.13 will protect borrowers

17

1  from the harms of zombie mortgages and address the issues of housing affordability, and a

2  sufficiently rational explanation connects the statute to these purposes.  Although Plaintiffs may

3  disagree as to the wisdom of the Legislature's choice, that does not render the statute

4  unconstitutional.  *See United States v. Ayala-Bello*, 995 F.3d 710, 716 n.3 (9th Cir. 2021)

5  ("[U]nder rational basis review, governmental choice is not subject to courtroom fact-finding and

6  may be based on rational speculation unsupported by evidence or empirical data.") (cleaned up).

7  **VI.    SECTION 2924.13 IS NOT PREEMPTED.**

8      **A.    Section 2924.13(b) is not preempted by RESPA and TILA.**

9      Plaintiffs fail to show that the statute's notice requirements, contained in Section

10  2924.13(b), conflict with or pose an obstacle to the objectives of the Truth in Lending Act

11  ("TILA") or the Real Estate Settlement Procedures Act ("RESPA").

12      First, Plaintiffs fail to meaningfully grapple with the fact that both TILA and RESPA

13  specify that state laws giving "greater protections" to consumers are not preempted unless there is

14  a "conflict" with federal law, as Defendant points out in his motion.  *See* 12 C.F.R. § 1024.5(c)(2)

15  (state laws are not "inconsistent with RESPA" if they give "greater protection to the consumer");

16  15 U.S.C. § 1610(a)(1) (TILA requirements do not "annul, alter, or affect the laws of any state"

17  unless the state laws are inconsistent with TILA, and "then only to the extent of the

18  inconsistency"); Mot. 19.  These provisions are not inconsequential; they indicate that Congress

19  intended TILA and RESPA to be a "floor" for borrower protections.  Plaintiffs sidestep these

20  provisions and instead claim that Section 2924.13 imposes an obstacle to federal law because

21  "Congress 'made a deliberate choice' not to strip lenders of their lien rights" if they violate TILA

22  and RESPA.  Opp. 33.  But Congress also made the "deliberate choice" to specify that states can

23  choose to give greater protections to consumers, which logically includes imposing greater

24  penalties on parties who do not abide by the statutes' requirements.  There is no indication that

25  Congress intended TILA and RESPA to be a "ceiling" in terms of potential penalties, as Plaintiffs

26  suggest; the two provisions noted above suggest the opposite.

27      Similarly, Plaintiffs assert that Section 2924.13(b)(1) is preempted because "Section

28  2924.13 mandates more communication between subordinate mortgage holders and borrowers

18

1    when TILA and RESPA authorize less communication." Opp. 34-35. There is no tension here.

2    Once again, TILA and RESPA specifically provide a *floor*, and states are expressly permitted to

3    implement additional protections for consumers.

4    **B.    Section 2924.13(b)(1) is not preempted by federal bankruptcy law.**

5    Nor can Plaintiffs show that Section 2924.13(b)(1) irreconcilably conflicts with federal

6    bankruptcy law. Plaintiffs note that "if the notices required by Section 2924.13 constitute an

7    attempt to collect a subordinated mortgage, a subordinated mortgage [sic] could not send them

8    without running afoul of the automatic stay." Opp. 34. But the notices required by Section

9    2924.13(b)(1) do *not* need to come in the form of an attempt to collect. The statute merely

10   requires "a written communication regarding the loan secured by the mortgage" at least every

11   three years. § 2924.13(b)(1). A servicer can easily comply with Section 2924.13(b)(1) without

12   violating a bankruptcy stay. *See In re Zotow,* 432 B.R. 252, 258–59 (B.A.P. 9th Cir. 2010) (an

13   automatic bankruptcy stay "does not prevent all communications between a creditor and the

14   debtor"); Mot. 20. Plaintiffs cannot manufacture conflict by speculating that subdivision (b)(1)'s

15   communication requirement could, theoretically, be satisfied by an unlawful collection attempt.

16   **C.    Section 2924.13(b)(4) is not preempted by federal tax law.**

17   And as discussed in Defendant's motion, there is no conflict between Section 2924.13(b)(4)

18   and federal law. Like federal law, Section 2924.13 merely treats the issuance of a Form 1099-C

19   as a potential indicator that the debt has been discharged; it does not definitively bar any further

20   collection on the debt if a Form 1099-C has been issued. *See* Mot. 21-22. Plaintiffs' single-

21   paragraph rebuttal to Defendants' arguments merely claims (incorrectly) that Section 2924.13

22   actually *does* bar foreclosure whenever a Form 1099-C has been issued. Opp. 35. Plaintiffs' sole

23   support for this claim is a quote from the legislative analysis of a *prior version* of the bill. *Supra*

24   III.A.1. The Legislature made the deliberate choice to remove this "abandoned" language from

25   the operative statute and even stated in a subsequent legislative analysis that, under the new

26   statute, the debt does *not* automatically "become abandoned" when a servicer violates the statute.

27   *Id.* Plaintiffs therefore fail entirely to rebut Defendant's claim regarding the lack of actual

28   conflict between the statute and federal law's treatment of Form 1099-Cs.

19

1    **D.    Plaintiffs' remaining preemption arguments lack merit.**

2        Section 2924.13(c) is not preempted.  In their opposition to this point, Plaintiffs still fail to

3    explain how an alleged conflict with the California Homeowners' Bill of Rights makes the statute

4    federally preempted.  Opp. 35.  Plaintiffs also wrongly presume that the referenced pre-

5    foreclosure notices and dialogue requirements would necessarily be considered "threats" under

6    the statute, ignoring that the Legislature is presumed to have known of these requirements when

7    enacting Section 2924.13(c).  Id.; see Mot. 22-23.

8        Plaintiffs strain to paint the statute as one that imposes criminal penalties.  See Opp. 36.

9    Section 2924.13 does not criminalize anything.  It is the penal code that criminalizes perjury—

10    and in doing so, it penalizes willful and false testimony under oath, not any of the practices listed

11    in Section 2924.13.  See Cal. Penal Code § 118; Mot. 24-25; *Holcomb*, 883 F.3d at 977 (finding

12    that "there are no criminal penalties for violating the [challenged civil statute]," even though the

13    statute required a declaration to be submitted under penalty of perjury).

14        Finally, the statute is not "void for vagueness."  Plaintiffs' rebuttal on this point is entirely

15    unsupported by *any* case law.  Opp. 37.  They imply that the statute must define every single term

16    in complete detail and seem to impose a standard that is well beyond the relaxed standard for

17    economic legislation.  *See* Mot. 25; *Sessions v. Dimaya*, 584 U.S. 148, 159 (2018) ("Many

18    perfectly constitutional statutes use imprecise terms[.]"); *Freedom to Travel Campaign v.*

19    *Newcomb*, 82 F.3d 1431, 1440 (9th Cir. 1996) (upholding regulations that initially failed to define

20    "educational activities" because "even undefined, this term is not unconstitutionally vague");

21    *California Hotels & Lodging Ass'n v. City of Oakland*, 393 F. Supp. 3d 817, 832 (N.D. Cal.

22    2019) ("Due process does not require . . . perfect clarity and precise guidance.") (cleaned up).

23    Section 2924.13 is explained in sufficient detail such that it is "clear what the statute proscribes in

24    the vast majority of its intended applications"—which is all that is required to survive under this

25    claim.  *Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042, 1047 (9th Cir. 2005).

26                              **CONCLUSION**

27        For the reasons discussed above, the Attorney General respectfully requests that the Court

28    grant the motion to dismiss, without leave to amend.

20

Dated:  January 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
LARA HADDAD
Supervising Deputy Attorney General
WILLIAM BELLAMY
Deputy Attorney General

CARTER M. JANSEN
Deputy Attorney General
*Attorneys for Defendant Rob Bonta in his*
*official capacity as Attorney General of the*
*State of California*

21