## CASE NO. 2:25-cv-02614-DAD-CKD

## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

**California Mortgage Association, a California nonprofit association;**
California Credit Union League, a California nonprofit association; United Trustees Association, a nonprofit organization; Chen Wang Qin, an individual; Surf City Investors, LLC, a California limited liability company; Stephen NG, and individual; NDetail Capital, LLC, a California limited liability company; Balboa, LLC, a limited liability company;  William Terry Hunefeld, an individual; PostCity Financial Credit Union, a non-profit financial cooperative; Beacon Default Management, Inc., a California Corporation**, and ZBS Law, LLP., a California limited liability partnership.**
**Plaintiffs,**

v.

**Rob Bonta, in his official capacity as**
**Attorney General of the State of California,**
**Defendant.**

## JOHN & MARINA AKRABIAN NOTICE of EX-PARTE APPLICATIONS for
(1) Leave to Intervene as a Matter of Right under Rule 24(a) to Establish Retroactive Scope & Remedies in California Civil Code §2924.13;
(2)  Continuance of Hearing on Motion for Preliminary Injunction & MtD Set for Thursday 19 February 2026, under Local Rule 230; and
(3) Extension of Time for Fourteen Days from granting of Leave to Intervene to File John and Marina Akrabian's Complaint-in-Intervention.

**Michael L. Tusken**
**LAW OFFICES OF MICHAEL L. TUSKEN**
1510 W. Whittier Blvd., #42
La Habra, California 90631
(562) 365-9465; (562) 252-8529 Fax
Michael@TuskenLaw.com
*Attorney for John & Marina Akrabian*

i

# TABLE OF CONTENTS

SUMMARY STATEMENT OF PROPOSED INTERVENTION ............................................................1

INTERVENORS' NEED FOR EX PARTE RELIEF TO CONTINUE HEARING .........................3

I.  LEGISLATIVE INTENT AND RETROACTIVITY ...............................................................8

II.  STATUTORY TEXT AND STRUCTURE ARGUMENTS ..........................................................11

III.  ATTORNEY GENERAL'S EXPERT WITNESSES AND INTERVENORS' LOSSES .....14

IV.  RULE 24(a) APPLICATION FOR LEAVE TO INTERVENE AND REQUEST TO CONTINUE

HEARING……………………………………………………………………………………...16

V.  LEGAL STANDARDS FOR EX PARTE APPLICATIONS .........................................................18

VI.  TIMELINESS ANALYSIS IN CONSTITUTIONAL CASES .....................................................20

VII.  INTERVENTION AS OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE

24(a)(2)……………………………………………………………………………………….23

VIII.  PRACTICAL IMPAIRMENT OF INTEREST...........................................................................26

IX.  INTERVENORS' POSITION ON RETROACTIVE EFFECT OF THE STATUTE ...........27

X.  COMPLIANCE WITH RULE 24(c) — PROPOSED PLEADING .........................................33

PRAYER FOR RELIEF............................................................................................................36

**TABLE OF AUTHORITIES**

**CASES**

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District*, 162 F. Supp. 3d 1053
(C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269 (D. Ariz. 2020) . . . . . . . . . . . . . . . .25

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . .32

*Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022) . . . . . . . . . .24

*Cameron v. EMW Women's Surgical Center*, P.S.C., 595 U.S. 267 (2022) . . . . . . . . . . . . . . .19

*California v. Health & Human Servs.*, 330 F.R.D. 248 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . .21

*Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . .26

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) . . . . . . . . . .18

*United States v. Dep't of Mental Health*, 785 F. Supp. 846 (E.D. Cal. 1992) . . . . . . . . . . . . . .22

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . .23

**STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

42 U.S.C. § 1988(a) 28

28 U.S.C. §§ 2201–2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Cal. Civ. Code § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Cal. Civ. Code § 2924.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Cal. Civ. Code § 2924.13(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Cal. Civ. Code § 882.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

Cal. Code Civ. Proc. § 337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

Cal. Com. Code § 3118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

**RULES**

Fed. R. Civ. P. 24(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 24(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 24(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

E.D. Cal. Local Rule 144(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

E.D. Cal. Local Rule 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1  **Michael L. Tusken** (Cal. Bar No. 175715)
   Law Offices of Michael Tusken
2  **Michael@TuskenLaw.com**
3  1510 West Whittier Boulevard, #42
   La Habra, California 90631
4  Telephone: 562-365-9465; Facsimile: 562-252-8529

5  **Attorney for John and Marina Akrabian**

6
7              **UNITED STATES DISTRICT COURT FOR THE**
                  **EASTERN DISTRICT OF CALIFORNIA**
8                      **SACRAMENTO DIVISION**

9  **California Mortgage Association**, a California
   nonprofit association; **California Credit Union**
10 **League**, a California nonprofit association;       **Case: 2:25-cv-02614-DAD-CKD**
11 **United Trustees Association**, a nonprofit
   organization; **Chen Wang Qin**, an individual;      **John and Marina Akrabian**
12 **Surf City Investors, LLC**, a California limited    **Notice of Ex-Parte Applications**
   liability company; **Stephen NG**, and individual;   **(1) For Leave to Intervene as a Matter of**
13 **NDetail Capital, LLC**, a California limited         **Right under Rule 24(a) to Defend and**
   liability company; **Balboa, LLC**, a limited         **Establish Retroactivity of Scope &**
14 liability company;  **William Terry Hunefeld**, an     **Remedies in new California Civil Code**
   individual; **PostCity Financial Credit Union**, a    **§2924.13;**
15 non-profit financial cooperative; **Beacon Default**  **(2) For Continuance of Hearing on**
16 **Management, Inc.**, a California Corporation,         **First Substantive, Dispositive**
   and **ZBS Law, LLP.**, a California limited            **Motions Hearing Set for Thursday**
17 liability partnership.                                 **19 February 2026, under Local**
                                                          **Rule 230;**
18              Plaintiffs,                                        **and**
19                                                       **(3) For Fourteen Days from granting of**
          v.                                              **Leave to Intervene to File John and**
20                                                        **Marina Akrabian's Complaint/**
21 **Rob Bonta, in his official capacity as Attorney**
   **General of the State of California**,
22
                Defendant.
23

24 (1)    John and Marina Akrabian, by and through their undersigned counsel, file this their Ex-Parte

25 Applications (1) for Leave to Intervene under Rule 24(a) to Defend and Establish Retroactivity of

26 California Civil Code §2924.13,  (2) for continuance of the hearing on Plaintiffs' Motion for Preliminary

27 Injunction and Defendant's Motion to Dismiss set for 19 February 2026 to permit their full participation

28 in the first substantive and dispositive hearing in this case, and (3) to file their complaint within 14 days.

*John and Marina Akrabian's*                                                          **1**
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

## SUMMARY STATEMENT of PROPOSED INTERVENTION

(2)    Former homeowners John and Marina Akrabian hereby apply on an ex-parte basis for leave to intervene both individually and jointly in the California Mortgage Association's Eastern District of California lawsuit challenging Civil Code §2924.13.

(3)    A consortium of California mortgage servicers, lobbyists and attorneys have filed suit in the Eastern District of California against the California Attorney General Robert Bonta seeking declaratory judgment to invalidate a new law, Civil Code 2924.13, which is designed to avoid and prevent collection of "zombie" mortgages (mortgages which were not collected in the past, and lay dormant for years).

(4)    No credit or finance service consumers or homeowners are currently involved in this case (and Attorney General Bonta has the statutory mandate and power to represent consumers, he does not seem, in his pleadings, here expressly to represent them).

(5)    Marina and John Akrabian are former California homeowners who have tried for years to challenge what they always contended was the wrongful foreclosure of their California home.

(6)    In November 2025, John and Marina Akrabian noticed that the ZBS Law, LLP, firm that jad foreclosed on them had filed as a Plaintiff with other mortgage finance insiders in this new case in the Eastern District, suing the Attorney General to declare the new statute §2924.13 unconstitutional.

(7)    In particular, John and Marina Akrabian seek declaratory judgment to affirm the express retroactive intent and applicability of §2924.13(g), as a remedy for past violations of pre-existing law.

(8)    John and Marina Akrabian here move to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) because they have a legally protectable interest in defending the newly enacted statute.  The purpose of their intervention is to seek a declaratory judgment that §2924.13 clearly covers past conduct and provides RETROACTIVE remedies for zombie mortgage practices which have directly impacted them over the past ten years, including wrongful foreclosure for which 2924.13(g) specifically authorizes a new remedy which would appear to authorize the relief they have sought.

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**2**

(9)    John and Marina Akrabian's interest might be irreparably impaired if the statute were invalidated, and the Attorney General seems only weakly and inadequately to represent their specific interest in retroactive application of the law's protections, despite the express statements and conclusions of his own expert witnesses' declarations Manisha Padi and Bernard Jay Patterson (see below).

(10)    Individual intervention as proposed here will permit the Akrabians to allege individualized damages and their unique need for declaratory judgment concerning the litigation which they have maintained to this date, as well as to secure, on their own behaves and on behalf of the people of California, the important legislative value and findings inherent in §2924.13.

### INTERVENORS NEED FOR EX-PARTE RELIEF TO CONTINUE HEARING: PLAINTIFFS DEMAND "LAY WITNESSES" TO SUPPORT EXPERT TESTIMONY and INTERVENORS OFFER EXACTLY THAT "REAL LIFE" EXPERIENCE

(11)    Lay Consumer (by victims of Zombie Mortgage Foreclosure) participation by testimony and representation of Interests in the hearing to be held on Defendant Attorney General's Motion to Dismiss, and Plaintiff's Motion for Preliminary Injunction, currently set for Thursday 19 February 2026, at 1:30 p.m., is absolutely essential to a just adjudication of this case from the beginning.

(12)    The need for lay witnesses only began to crystalize on Friday, January 23, 2026, in Plaintiff's Documents 29, 29-1, and 29-2, in response to the Defendant Attorney General's Opposition to Plaintiffs' Motion for Preliminary Injunction, Document 27, 27-1, and 27-2 filed exactly one month ago, on January 12, 2026.

(13)    While John and Marina Akrabian had considered intervening prior to now, it was not absolutely clear from the motions and pleadings **until the completion of initial briefing by the Plaintiffs and Defendant Attorney General on February 3, 2026, (Document 31)** that the full historical reasons for the enactment of §2924.13, including the California Assembly's full recognition of the need for retroactive remedial action in the courts (§2924.13(g)) could only be resolved by reference to "real life experience" of consumer victims such as John and Marina Akrabian.

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

3

(14)    **The triggers to the need for lay testimony and input into this case were the mostly excellent expert Declarations of Manish Padi (Document 27-1) and Bernard Jay Patterson (27-2) which the Attorney General offered in opposition to the Plaintiffs' Motion for Preliminary Injunction.**

(15)    Both of these declaration focused on the time period of 2006-2024 and summarized the harm to "borrowers, communities, and markets" and so  to the American society and economy generally.

(16)    For example, Manisha Padi wrote on page 4 of her declaration (27-1) states:

> **10. Section 2924.13 may create some incidental compliance costs but also some benefits by reducing foreclosures. Foreclosures can result in serious financial losses to borrowers, worsen borrowers' health, destabilize children, decrease house prices, and increase issues like homelessness and crime in the neighborhoods. Replacing unexpected foreclosure with less costly methods of resolving mortgage defaults, including loan modification, deed-in-lieu, short sale, and other foreclosure alternatives, can improve the well-being of borrowers, communities, and the mortgage market.**

(17)    On January 23, 2026, in their Document 29, the Plaintiffs submitted their own declarations, but NO PARTY HAS PRESENTED THE VIEW OF ACTUAL CONSUMERS.

(18)    The Plaintiffs did, however, also submitted their "Evidentiary Objections to Declarations and Documents", (29-1) among which, Intervenors submit, the most significant was (on Page 8, under "C. PADI LACKS THE EXPERTISE TO OFFER MOST IF NOT ALL OF HER OPINIONS"):

> **She [Manisha Padi] offers no evidence of experience in any realm other than as an academic law professor. To the extent that Defendant would claim the declaration offers evidence of the sociological, health, psychological and market ills that may be caused by zombie mortgages, the declarant is not qualified to give those opinions; they lack foundation, constitute speculation, and do not constitute admissible opinion testimony, expert or lay. Plaintiff's groups various paragraphs and then make these same objections to each:**
> **Objection No. Statement (Dkt. 27-1)**
> **4 ¶ 9 that zombie mortgages cause significant harm to the public, both by imposing financial costs on vulnerable borrowers and by harming communities and markets through unexpected foreclosure.**
> **5 ¶ 10 in its entirety stating that Section 2924.13 "may create some incidental compliance costs but also some benefits by reducing foreclosures" and listing the purported effects of foreclosures, including that they "worsen borrower's health, destabilize children, decrease housing prices" and "increase" homelessness and crime, and further arguing that replacing foreclosures with loan modifications, deed-**

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing Set for Thursday 19 February 2026*

**4**

**in lieu, short sales or other alternatives can "improve the well-being of borrowers, communities and the mortgage market."**

(19)    While John and Marina Akrabian do not in any way to Padi's or Patterson's expertise and in fact support both their historical reviews and conclusions (so far as they go), the Akrabians agree with the Plaintiffs to the extent that they have demanded lay witnesses with first-hand knowledge and experience.

(20)    The perspectives and actual losses of witnesses who may offer qualified "lay opinion based on first hand perceptions" are critical to the just resolution of this case, and woefully lacking (See Rule 701, Federal Rules of Evidence, and Plaintiffs' "Objections Stated" on pages 10, 13, 15, 16, of 23).

(21)    Allowing the intervention of John and Marina Akrabian will offer a major balancing of expert and lay opinion: their own first-hand insight plus by a dozen or twenty or more of the real-life victims of zombie mortgages together with the sociological and economic insights of the experts.

(22)    But in addition, both the Attorney General and his expert witnesses seem to ignore the very clear implications of the history presented and summarized by Padi and Patterson: THE CALIFORNIA ASSEMBLY RECOGNIZED A PROBLEM AND PROPOSED A SOLUTION, WHICH CAN ONLY BE MEANINGFUL IF RETROACTIVE AT LEAST TO THE ACCUMULATION OF SECONDARY MORTGAGES JUST BEFORE THE "SUB-PRIME MELTDOWN" of 2006-2009.

(23)    Padi and Patterson's historically focused declarations covering the past twenty years will ring hollow indeed if the legislature, and the mortgage foreclosure industry, provides only prospective remedies by preventing such conduct in the future, rather than providing meaningful remedies.

(24)    Manish Padi concludes her declaration by writing:

35. On the benefits side, Section 2924.13 is likely to provide significant value to borrowers, communities, and mortgage markets by encouraging lienholders to pursue modification, sale, and other foreclosure alternatives. One averted foreclosure was estimated by the Joint Economic Committee to provide $80,000 in benefits to society in 2008 dollars, or as high as $120,000 in 2026 dollars, split across borrowers, communities, and market participants. Augmenting these are significant non-pecuniary benefits, such as less homelessness, better health, lower crime, and better long-term outcomes for children.83 **Using these numbers, Section 2924.13 would need to avert only 850**

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**5**

**foreclosures to provide over $100 million in benefits to the public**. Although there are likely some compliance costs associated with a rule like Section 2924.13, the benefits of averting unexpected foreclosures on zombie mortgages are likely to outweigh the costs.

Case 2:25-cv-02614-DAD-CKD, Document 27-1, Filed 01/12/26, Page 17 of 23 (Footnotes omitted).

### LEGISLATIVE INTENT AND RETROACTIVITY

(25)    California Civil Code §3 "No part of it is retroactive, unless expressly declared so."

(26)    Whether this presumption applies to the enactment of §2924.13 depends entirely on the linguistic deconstruction and parsing of the text of the California Assembly's enactment.

(27)    Civil Code §2924.13 is written in the present tense about the results of consequence which occurred in the past, and provides both structural analysis and remedial provisions for such conduct.

(28)    The Plaintiffs in the present case say that §2924.13 impairs the obligation of existing lawful contracts.  That is their constitutional challenge and reason for filing suit.

(29)    The Defendant Attorney General simply appears to try to "downplay" the retroactive effect and to advocate for prospective enforcement only.

(30)    John and Marina Akrabian believe that the language and structure of the statutory analysis and provision of remedies constitute a clear and present command to use §2924.13 to correct past wrongs, such as they suffered, and that these wrongs constituted violations of existing California law, so that §2924.13 merely creates clearer enforcement mechanisms and standards.

### LAST YEAR'S LEGISLATURE WAS FOCUSED ON REMEDIES FOR PAST INJUSTICE

(31)    Last year, 2025, the California Legislature was focused on retroactive remedies.  During the same legislative session which enacted §2924.13, the Assembly reified the agenda formulated five years earlier in 2020, when the State of California enacted Assembly Bill 3121 committing the state to formulating and paying reparations for the horrors and injustices wrought by slavery, in which the State of California was indirectly complicit during its early statehood, from 1850-1865.

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**6**

(32)    In particular, subsection (g) authorizes courts to set aside foreclosure sales where statutory prerequisites were not satisfied. That remedy necessarily contemplates review of completed transactions and indicates that the Legislature intended courts to examine prior conduct when applying the statute.

(33)    The historical context of reparations for slavery, focused on historical injustices dating back more than 160 years, and the provision of retroactive remedies for the enforcement of dead debt obligations which resulted in deprivations of liberty and property without due process of law 25 years ago and up until recently, shows a similar legislative mindset.

(34)    The attorney general's experts Manisha Padi and Bernard Jay Patterson discuss some of the drastic social dislocations and perversions leading to long-term social and economic inequality brought on by unfair and (as Padi and Patterson both express) "unexpected" mortgage foreclosure.

## THE ATTORNEY GENERAL'S EXPERT WITNESSES and INTERVENORS' LOSSES

(35)    Based on the declarations and findings of the Attorney General's defense experts Padi and Patterson, retroactive reparations are warranted for the massive social dislocations which John and Marina Akrabian, and thousands of other Californians have suffered from the "Zombie Mortgage" abuses which Plaintiffs seek to defend.

(36)    John and Marina Akrabian can testify directly regarding the abuses of at least one Plaintiff claiming innocence, namely ZBS Law, LLP.

(37)    But unlike the California efforts to provide remedies for the abuses of slavery during the 19th century, which are (so far) largely aspirational and hortatory, the California Assembly inserted at least one clearly retroactive provision into §2924.13, namely subsection (g):

> **(g) A borrower may also petition the court to set a nonjudicial foreclosure sale aside when a certification required by subdivision (c) was never recorded or when a certification recorded pursuant to subdivision (c) indicates that the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history.**

Cal. Civ. Code § 2924.13 (West)

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

7

(38)    But furthermore, neither Padi nor Patterson nor the Attorney General in any of his motions or responses address the semantic and semiotic facts that the present tense formulation of California Civil Code §2924.13, in which the Assembly has declared that specific conduct "constitutes an unlawful practice," combined with its comprehensive remedial structure providing equitable relief for historical violations, **creates a clear and unavoidable implication of legislative intent to afford retroactive application of remedies for past conduct.**

(39)    The statute's authorization of courts to "strike arrears claims" for past servicer failures and to "set aside" completed foreclosure sales demonstrates legislative intent to address historical misconduct rather than merely regulate prospective conduct. However, this argument faces significant challenges under California's strong presumption against retroactivity absent express legislative declaration.

## STATUTORY TEXT AND STRUCTURE ARGUMENTS

(40)    Nor have Padi, Patterson, nor the Attorney General addressed the further semantic and semiotic reality that California Civil Code §2924.13(b) uses present tense language stating that specified conduct "constitutes an unlawful practice in connection with a subordinate mortgage."

(41)    This formulation differs markedly from future-oriented language such as "shall constitute" and suggests the Legislature intended to characterize existing conduct as immediately unlawful upon the statute's effective date. The use of present tense creates an immediate legal classification that encompasses historical servicer conduct rather than establishing prospective rules.

(42)    The statutory structure of §2924.13, as expressly interpreted and supported by the Declarations of Padi and Patterson, provides comprehensive coverage of historical violations spanning multiple years, including servicer failures to provide written communication "for at least three years" and conducting foreclosure sales "after the applicable statute of limitations expired."

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**8**

(43)    These provisions expressly, inherently, and implicitly reference past conduct and pre-existing legal obligations, demonstrating legislative intent to address recent historical violations rather than establish purely prospective requirements.

(44)    For all these reasons, John and Marina Akrabian submit that THEIR INTERESTS ARE NOT REPRESENTED, and that they could not have known for certain that the Attorney General was NOT taking a position compatible with their own, regarding retroactivity, until the completion of the recent briefing regarding the Plaintiffs' Motion for Preliminary Injunction during the week of February 3-10.

## RULE 24(a) APPLICATION FOR LEAVE TO INTERVENE & CONTINUE HEARING

(45)    John and Marina Akrabian now move for Ex-Parte consideration and an initial ex-parte continuance of the February 19 hearing date under Eastern District Local Rule 144(c) alleging:

> **(A)    the extraordinary circumstances of a case of first impression challenging the constitutionality and constitutional scope of a new state statute creating significant protectable interests requiring immediate protection by the Akrabians themselves,**
>
> **(B)    the impossibility of meaningful participation in constitutional litigation without adequate time to prepare, constituting irreparable prejudice,**
>
> **(C)    the liberal construction favoring intervention in constitutional cases where existing parties may inadequately represent broader public interests, and**
>
> **(D)    good cause for continuance based on unforeseeable developments in the litigation timeline that prevent diligent compliance with scheduling deadlines.**

(46)    Each of these circumstances exist here, as more fully set forth in the attached Draft Application and conference letters (Exhibits A-D).  The constitutional significance of the case and the intervenors' unique interests justify extraordinary procedural relief, while John and Marina Akrabian's diligence in seeking intervention within two months of their interests became apparent and their complete lack of fault in creating the scheduling dilemma together justify ex-parte relief.

## LEGAL STANDARDS FOR EX PARTE APPLICATIONS

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*                                                            **9**

(47)    John and Marina Akrabian acknowledge that Ex Parte applications in California federal district courts require extraordinary circumstances and are "rarely justified." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488 (C.D. California 1995**).**  But such circumstances do exist here.

(48)    The *Mission Power* standard requires movants to demonstrate two essential elements: first, that "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and second, "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488 (1995*). See also: *Arredondo v. University of La Verne*, 618 F.Supp.3d 937 (C.D. California 2022); *Wells Fargo Bank, N.A. v. Stewart Homes, Inc.*, 732 F.Supp.3d 1169 (C.D. California, 2024).

## TIMELINESS ANALYSIS IN CONSTITUTIONAL CASES

(49)    Timeliness represents the threshold requirement for intervention, but courts apply a flexible, fact-specific analysis rather than rigid deadlines: "timeliness is to be determined from all the circumstances" and "[the] point to which [a] suit has progressed is ... not solely dispositive." *Cameron v. EMW Women's Surgical Center, P.S.C.,* 595 U.S. 267 (2022).

(50)    Wherein not one single substantive hearing has been held nor any ruling on either the Plaintiffs' and Defendant's competing opening motions, for Preliminary Injunction and to Dismiss, there is no serious question regarding the timeliness of the Akrabians' Rule 24(a) Ex-Parte Application for Leave.

(51)    John and Marina Akrabian submit that, as outlined above, there can be absolutely NOT serious question that their intervention is timely, and that even their request for continuance of the hearing set for Thursday, 19 February 2026 is entirely reasonable and timely, under both Local Rule 230 and the litigation realities of the Padi and Patterson Declarations described above, which shape this litigation.

(52)    The Ninth Circuit examines three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the

delay." ***Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District***, 162 F.Supp.3d 1053 (C.D. California, 2014).

(53)    Significantly, timeliness of a motion (or application) to intervene as of right is a flexible concept, and the inquiry is inherently fact-sensitive and depends on the totality of the circumstances. ***R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp***., 584 F.3d 1 (1st Circuit, 2009)

(54)    The "crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." ***California v. Health and Human Services***, 330 F.R.D. 248 (N.D. California, 2019).

(55)    In constitutional challenges to new statutes, this awareness often crystallizes only when litigation strategies become apparent or when the scope of requested relief clarifies potential impacts on intervenor interests.  As described above, this only happened during the past month, since January 12, concluding in the latest filings of February 3-10, 2026.

(56)    Courts demonstrate particular sensitivity to intervention in constitutional cases involving matters of first impression. The Eastern District of California granted intervention in ***United States v. Department of Mental Health*** where the motion was filed "only one week prior to the scheduled trial date." ***U.S. v. Department of Mental Health***, 785 F.Supp. 846 (Eastern District of California, 1992).

(57)    More recently, he Ninth Circuit has measured timeliness, as a practical matter, from "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." ***Smith v. Los Angeles Unified School District***, 830 F.3d 843 (2016).

(58)    As discussed above in connection with the Akrabians' threshold need for Ex-Parte relief, the simple truth is that it is only NOW, that briefing on Plaintiffs' Application for Preliminary Injunction and Defendant's Motion to Dismiss have been fully briefed, (which would be AT THE EARLIEST as of last Tuesday, namely, as of the Attorney General's Responses to Plaintiffs' Evidentiary Objections

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**11**

to Declaration and Documents Offered in Opposition to Plaintiffs' Motion for Preliminary Injunction, i.e. Document 31, Filed 02/03/26).

(59)    John and Marina Akrabian's Motion for Leave to Intervene is clearly timely.

### INTERVENTION AS OF RIGHT UNDER FEDERAL RULE 24(A)(2)

(60)    As former homeowners. John and Marina Akrabian satisfy all four requirements for mandatory intervention under Federal Rule 24(a)(2).

(61)    Intervention of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's (or ex-parte applicant's) ability to protect its interest, unless existing parties adequately represent that interest." **Fed. R. Civ. P. 24(a)(2).** Courts in the Ninth Circuit employ a four-part test when analyzing intervention of right:

> (1)    the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

***Wilderness Soc. v. U.S. Forest Serv.***, 630 F.3d 1173, 1177 (9th Cir. 2011) **(**quoting ***Sierra Club v. EPA***, 995 F.2d 1478, 1481 (9th Cir. 1993)); **see also *California v. Health and Human Services***, 330 F.R.D. 248, 252-253 (N.D. California, 2019).

(62)    Most recently, the Central District of California has stated a strong-pro-intervenor position which John and Marina Akrabian here urge this Court to adopt as its own.

> When evaluating these requirements, courts are guided by "practical and equitable considerations," and generally construe the Rule to apply "broadly in favor of proposed intervenors." ***Wilderness Soc. v. U.S. Forest Serv.,*** 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting ***United States v. City of Los Angeles***, 288 F.3d 391, 397 (9th Cir. 2002)) (internal quotation omitted).
> Alternatively, when an intervenor cannot satisfy the four-part test for intervention as of right, courts may allow anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1)(B).

***GHP Mgmt. Corp. v. City of Los Angeles***, 339 F.R.D. 621, 623 (C.D. Cal., November 22, 2021).

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**12**

(63)     And finally, most reently, the Supreme Court's decision in **Berger v. North Carolina State Conference of the NAACP, 597 U.S. 179, 190-192, 142 S.Ct. 2191, 2200-2202, 213 L.Ed.2d 517 (2022)** established that this minimal burden standard simply requires movants to provide concrete evidence of inadequate representation, and John and Marina Akrabian have plainly done that already, above, by outlining their different and distinct approach to retroactive application of CA CC §2924.13.

(64)     Courts emphasized that intervention requirements "are broadly construed, because a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." **Arizonans for Fair Elections v. Hobbs,** 335 F.R.D. 269, 273-274 (D. Arizona, 2020).

**(20)     This liberal construction particularly favors intervention in constitutional challenges where courts can benefit from multiple perspectives on the statute's validity and application.**

## PRACTICAL IMPAIRMENT OF INTEREST

(21)     If the CMA-ZBS Law consortium should in this litigation successfully invalidate Civil Code 2924.13, John and Marina Akrabians' ability to seek relief under the statute would be completely eliminated, satisfying the impairment requirement.

(22)     The Ninth Circuit applies a straightforward standard for the impairment element under the language of Rule 24(a)(2). **Kalbers v. United States Department of Justice,** 22 F.4th 816 (9th Circuit, 2021). Complete invalidation of the protective statute clearly meets this standard.

## INTERVENORS' POSITION ON RETROACTIVE EFFECT OF THE STATUTE

(23)     The Plaintiffs, both in their Original Complaint and November 13, 2025 First Amended Complaint and the California Attorney in his Motion to Dismiss and subsequent filings, address retroactivity, but neither share the proposed intervenors' interest and perspective in legal remedies.

(24)     The Plaintiffs' key constitutional arguments in their First Claim for Relief is that §2924.13 violates the Impairment of Contract Clause of Article I, §10, Clause 1.

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**13**

**(25)    Plaintiffs seek declaratory judgment to nullify this "retroactive" provision of §2924.13 by a declaratory judgment action under 42 U.S.C. §1983.  Document 14, pages 22, line 13-24, line 27, see especially page 24, lines 1-27, focusing on paragraphs 63 - 65:**

> 63.        Moreover, any substantive change to the creditors' contractual rights and remedies may not be given retroactive operation before the effective date of the newly enacted law (here, June 30, 2025). *See Barnitz v. Beverly*, 163 U.S. 118, 128-129 (1896) (stating the general rule that new legislation cannot permissibly "affect any remedy the mortgagee had by existing law for the enforcement of his contract".
>
>  64.        California likewise restricts the powers of its legislative and executive branches, founded on similar principles. Article 1, § 9 of the Cal. Const. provides: "A law … impairing the obligation of contracts may not be passed." The rules of construction in this State also generally preclude retroactive application of any changes in its laws—new statutes enacted by the California Codes are to be construed *prospectively* only, unless there is an express intent to the contrary. The Legislature's expression of retroactive intent must be clear and unequivocal, subject to the same constitutional and practical considerations limiting the exercise of its powers. *See* Cal. Civil Code § 3; *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1207-1208 (1988). No such intent, express or implied, appears from the text of Section 2924.13. As such, this statute cannot be applied retroactively to impair or affect the myriad of mortgage contracts and subordinate liens that existed before its passage.
>
> 65.        For each and all of the foregoing reasons, Section 2924.13 violates the Contract Clause and should be declared null, void, and of no force or effect.

**(26)    In short, the Plaintiffs' position is that retroactive application of the statute IS apparent on the face of §2924.13, and is prohibited by the impairments clause of U.S. Article I, §10, Cl. 1.**

**(27)    By contrast, in the Attorney General's original Motion to Dismiss, Document 20-1, filed 12/15/2025, the State of California takes a VERY narrow position in favor of limited retroactivity:**

> 3. Section 2924.13 may be given retroactive effect.  Finally, contrary to Plaintiffs' claims, the "unlawful practices" set forth in subdivision (b) may be given retroactive effect to the extent they impact foreclosures initiated after the statute became law.  See FAC ¶ 63.  The general rule against retroactive application does not apply when the challenged legislation repeals or limits "a right of action or remedy [that] is created entirely by statute."  *Horse Rescue of Am. v. D & D Servs.*, Nos. B179849, B181167, 2006 WL 134012, at *12 (Cal. Ct. App. Jan. 19, 2006).  This is because "certain rights or remedies exist solely because of legislative action, and one who seeks to enforce such a right or remedy does so in recognition of the Legislature's power to abolish it at any time."  *NEI Direct, Inc. v. First USA Bank*, No. B159728, 2005 WL 978454, at *18 (Cal. Ct. App. Apr. 28, 2005); see also *Hassell v. Uber Techs., Inc.*, No. 20-cv-04062-PJH, 2021 WL 2531076, at *13 (N.D. Cal. June 21, 2021) ("[W]hat a legislature gives, a legislature may take.").  The California Supreme Court has noted that "when a right of action or remedy is created entirely by

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*                                                    **14**

statute, it is not a vested property right, and under Government Code section 9606 a person pursuing that statutory right of action or remedy is on notice that their statutory right may be impaired by legislation at any time." *Horse Rescue of Am.*, 2006 WL 134012, at *12 (citing *Callet v. Alioto*, 210 Cal. 65, 290 P. 438 (1930)).  Because the right to nonjudicial foreclosure is entirely created by statute (§2931), it is "not a vested property right."  Id. The California Legislature accordingly has the power to pass legislation (such as Section 2924.13) that limits the circumstances in which nonjudicial foreclosure can proceed, even if such limitations may result from past conduct.

**Attorney General MPA in support of MtD FAC, Document 2-1, Page 15, Lines 4-23**

(28)    John and Marina Akrabian submit and contend that Zombie Mortgages were already illegal under existing California law prior to the July 1, 2025, effective date of §2924.13.

(29)    John and Marina Akrabian endorse and favor the enactment and expansion of §2924.13 not so much because it defines new rights as because §2924.13 serves to defend old rights and definitions found in California law, especially the MRTA or Marketable Record Title Act of 1982 prior to the "discovery" of the Zombie Mortgage explosion of the past several years, which was itself an outgrowth of so-called "subprime mortgage meltdown" of 2007-2009.

(30)    Specifically, either a four-or-six-year statute of limitations applies to California mortgage notes and negotiable instruments.  California Code of Civil Procedure §337 and California Commercial Code §3118.

**(31)    John and Marina Akrabian's obligations had expired by BOTH of these standards.**

**(32)    But in addition, John and Marina Akrabian assert that they were already protected from "Zombie" mortgage type practices under the California Marketable Title Act, CA C.C. §882.020.**

**(33)    At the very least, California's new Civil Code §2924.13 creates complementary protections by targeting subordinate mortgage servicing practices that can harm borrowers long before even the shortest of the Marketable Title Act's specific expiration periods might clearly apply.**

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**15**

(34)    These four statutes (§337, §3118, 882.020 and §2924.13, all work together rather than in conflict, with the Marketable Title Act providing long-term title clearing mechanisms and §2924.13 addressing immediate borrower protection needs.

(35)    The Marketable Title Act releases claims at most 10 years "following the final maturity date if ascertainable from recorded evidence, such as, for example, a recorded Notice of Acceleration, which John and Marina Akrabian had received in February 2008 (and their foreclosure took place more than ten years later).

(36)    By EVERY standard, John and Marina Akrabian should have been liberated by legal prescription from any obligations on their second mortgage, but they lost their home to Zombie foreclosure and have been repeatedly rebuffed in their efforts to obtain relief.

(37)    California Civil §2924.13(g) offers the Akrabians a hope of final retroactive relief which is ENTIRELY CONSISTENT with ancient and existing law in California, but the California Mortgage Association Plaintiffs will surely oppose the statute for granting such relief and despite presenting the Declarations of Padi and Patterson in response to the Plaintiffs' Motion for Preliminary Injunction, the California Attorney General does not seem to be focused on the remedial aspect of §2924.13 at all.

(38)    In this case, it appears that the California Attorney General's priority (even as affirmed by Carter Jansen, Exhibit C-1) to support the general constitutionality of the law simply does not align with the former homeowner's specific substantive interest in retroactive application and individual relief.

### JOHN & MARINA AKRABIAN SUBMIT THIS RULE 24(a) MOTION PRIOR TO COMPLETING THEIR PROPOSED COMPLAINT AND PRAY FOR AN EXTENSION OF TIME OF A SINGLE FORTNIGHT

(39)    While Federal Rule of Civil Procedure 24(c) formally requires that intervention motions "must be accompanied by a pleading that sets out the claim or defense for which intervention is sought" FRCP Rule 24, well-established Ninth Circuit precedent allows courts to grant intervention when they are

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*

**16**

"otherwise apprised of the grounds for the motion." ***Beckman Industries, Inc. v. International Ins. Co.***, 966 F.2d 470 (9ᵗʰ Circuit, 1992):

(40)    The Eastern District of California has embraced the Ninth Circuit's flexible interpretation in recent decisions. In ***Hoopa Valley Tribe v. United States Bureau of Reclamation***, the court directly addressed a technical argument that "intervention should be denied because the motion was not accompanied by a proposed pleading" *Hoopa Valley Tribe v. United States Bureau of Reclamation*, 648 F.Supp.3d 1196 (E.D. California 2022).

(41)    The court held that

> To the extent Hoopa is advancing a technical argument that intervention should be denied because the motion was not accompanied by a proposed pleading, that argument is without merit in light of the facts that (a) Westlands' prior motions to intervene attached a proposed pleading, and (b) the basis for intervention is clear from Westlands' current motion.

***Hoopa Valley Tribe v. United States Bureau of Reclamation***, 648 F.Supp.3d 1196 (2022).

(42)    Similarly, in ***Abdurahman v. Alltran Financial, LP***, a Southern District of California case, the court allowed intervention where the proposed intervenor attached a motion to compel arbitration instead of a formal pleading ***Abdurahman v. Alltran Financial, LP***, 330 F.R.D. 276 (S.D. California, 2018). The court found that "it is clear here that AMEX seeks to intervene to compel arbitration as it attached both the proposed motion and a copy of plaintiff's contract with AMEX—which includes an arbitration clause" ***Abdurahman v. Alltran Financial, LP,*** 330 F.R.D. 276 (2018). Rather than denying intervention for the technical defect, the court granted the motion and established procedures for the arbitration motion.

(43)    A strong statement of the intervenors' intent upon granting of the motion for leave to intervene for the purposes of advocating strong, maximized statutory retroactivity, such as John and Marina Akrabian have submitted in their above-and-foregoing Ex-Parte Application, sufficient makes their basis for intervention clear from the application itself: the Akrabians' purpose is apparent, and they have

***John and Marina Akrabian's***
***Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing***
***Set for Thursday 19 February 2026***

**17**

in fact filed prior pleadings have been on similar issues (in ***Akrabian v. Veripro***, 2:23-cv-. cv-08709-DMG-AGR.  California federal district courts consistently apply this flexible approach, prioritizing substance over form in constitutional challenges to state statutes.

### <u>PRAYER FOR RELIEF</u>

**(44)    WHEREFORE, Applicants/Movants in intervention John and Marina Akrabian pray that this Court will examine their attached "Draft" Complaint in Intervention for declaratory judgment and mandatory injunction (for retroactive enforcement) pursuant to 42 U.S.C. §1983 and specially fashioned remedies under 42 U.S.C. §§1988(a) as their proposed pleading, with the understanding that Intervenors reserve the right to edit, amend and supplement this "Draft" Complaint once there are granted leave to intervene.**

**(45)    As Intervening Plaintiffs, opposed to both the original Plaintiffs and the Attorney General, John and Marina Akrabian further move and pray for a continuance of the hearing currently set for Thursday, February 19, 2026, so that the existing parties may agree, answer, or otherwise respond to their Intervention, prior to hearing either the Plaintiffs' Application for Preliminary Injunction against enforcement or the Defendant Attorney General's Motion to Dismiss.**

**(46)    John and Marina Akrabian move and request that the hearing set for 1:30 p.m. on Thursday, February 19 be continued for at least the 35 days from the date of the granting of their Ex-Parte Application to Intervene, parallel to the time allowed by Local Rule 230, and that**

**(47)    They, John and Marina Akrabian, upon granting of their Motion for Leave to Intervene, be granted 14 days to file their Complaint-in-Intervention, which will seek declaratory judgment under 28 U.S.C. §2201-2202 concerning the retroactive effect and intent of California Civil Code §2924.13, 42 U.S.C. §1983/1988(a) concerning the constitutional need for retroactivity, 42 U.S.C. §1983/1988(a) against the constitutionality of California Code of Civil Procedure §1908, and**

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*                                    **18**

declaratory judgment under 28 U.S.C. §§2201-2202 against the applicability of California Civil Code §3 creating a presumption of non-retroactivity in regard to new civil code §2924.13.

**EMAIL MEETING & CONFERENCE with COUNSEL for PLAINTIFFS & DEFENDANT:**

(65)    I have sent out three letters prior to filing this Ex-parte (Exhibits, B, C, and D), each one including the draft Motion for Leave to Intervene which this Ex-Parte Application has now replaced and supplanted since both Deputy Attorney General Carter M.  Jensen, speaking for Attorney General Robert Andres Bonta, and Bradford E. Klein, ZBS Law, LLP, have expressly declined our requests for stipulation (See Exhibits B-1 and C-1).

(66)    I, Michael Lewis Tusken, as John and Marina Akrabian's undersigned counsel, have in the past week directed the preparation and pre-filing "meet and confer" delivery of

(A)    drafts of this Ex-Parte Application for Leave to Intervene under Rule 24(a), attached as an exhibit to each of the following:

(B)    the meet & confer letter (Exhibit B) to ZBS LAW, LLP, and others involved in litigation with Marina Akrabian, together with Holly E. Cheong's (referencing ZBS Law's Bradford E. Klein) attached as Exhibit B-1,

(C)     the meet & confer letter to Robert Andres Bonta, Attorney General of California, and several deputy attorneys general, with Deputy Attorney General Carter M. Jansen's Response declining a stipulation at Exhibit C-1 and

(D)    the meet & confer letter to Plaintiffs' Attorneys at Buchalter, LLP, and Wright, Finlay & Zak, LLP, and lead Buchalter Attorney, Mr. Robert S. McWhorter's courteous response at Exhibit D-1.

**COMPLIANCE WITH LOCAL RULE 231(D)**

**(48)    Applicants-for-Intervention John and Marina Akrabian intend and will offer to present oral testimony at the hearing on their Rule 24(a) Ex-Parte Application for Leave to Intervene.**

*John and Marina Akrabian's*
*Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing*
*Set for Thursday 19 February 2026*                                                    **19**

Counsel for applicants/movants anticipates that the hearing will require approximately two hours including 45-60 minutes of the Akrabians' and possible supporting witnesses live testimony.

**RESPECTFULLY SUBMITTED,**

Friday, 13 February, 2026

_/s/Michael L. Tusken/s/_
**Michael L. Tusken**, **Cal. Bar No. 175715)**
**Law Offices of Michael Tusken**
**Michael@TuskenLaw.com**
**1510 West Whittier Boulevard, #42**
**La Habra, California 90631**
**Telephone: 562-365-9465**
**Facsimile: 562-252-8529**

**Attorney for John and Marina Akrabian**

_John and Marina Akrabian's_
_Rule 24 Ex-Parte Application for Leave to Intervene and to Continue Hearing_
_Set for Thursday 19 February 2026_                                    **20**