**BUCHALTER LLP**
Harry W.R. Chamberlain II (Bar No. 95780)
Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
Email: *rmcwhorter@buchalter.com*
Jarrett S. Osborne-Revis (Bar No. 289193)
Email: *josbornerevis@buchalter.com*
Katharine H. Falace (Bar No. 222744)
Email: *kfalace@buchalter.com*
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone:    916.495.5170

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: 949.477.5050

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership,<br><br>                                    Plaintiffs,<br>       v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>                                    Defendant. | Case No. 2:25-cv-02614-DAD-CKD<br><br>**PLAINTIFFS' <u>COMBINED OPPOSITIONS</u> TO *EX PARTE* APPLICATIONS OF JOHN AND MARINA AKRABIAN FOR:**<br><br>**(1) WAIVER OF LOCAL RULE 230(F) SEVEN DAY NOTICE REQUIREMENT FOR MOTIONS FOR CONTINUANCE AND REQUEST TO DEEM THEIR EX PARTE APPLICATION FOR CONTINUANCE AS TIMELY FILED [DKT. 34]; AND**<br><br>**(2)  FOR LEAVE TO INTERVENE AND TO CONTINUE THE FEBRUARY 19, 2026, HEARING, ETC. [DKT. 33]**<br><br>[Request for Judicial Notice/ Declaration of Jason E. Goldstein filed concurrently] |

1
**PLAINTIFFS' COMBINED OPPOSITIONS TO *EX PARTE* APPLICATIONS [DKTS. 33 AND 34]**

...

I.      **INTRODUCTION**

The Akrabians (John and Marina) belatedly filed two *ex parte* applications just three business days before this Court's February 19, 2026, hearing. They seek permission to intervene, to continue the February 19 hearing, and to waive Local Rule 230's requirement that they give at least 7 days' notice for such applications. (Dkts. 33, 34). The applications are procedurally defective, substantively improper, and strategically timed to disrupt pending proceedings in this statewide constitutional challenge of California Civil Code section 2924.13.

First, the Akrabians have shown no emergency and no good cause. They submitted no supporting declaration in contravention of Local Rule 144's requirement that they explain the need for ex parte relief, and Local Rule 230(h)'s demand that an affidavit support factual contentions. Without any declarations, the Akrabians have failed to establish good cause warranting *ex parte* relief.

Second, the applications violate this Court's Standing Order in Civil Cases, which requires that applicants (a) first contact opposing parties and engage in "prefiling meet and confer to discuss thoroughly the substance of the contemplated motion and any potential resolution," and (b) file an affidavit setting forth the need for an ex parte order, the inability to obtain a stipulation from other counsel, and the reason for not filing a regularly noticed motion. (Standing Order, § I(C), III.) The Akrabians did not comply with any of these requirements. On February 12, 2026, at 9:41 a.m., the Akrabians emailed Plaintiffs' counsel, who promptly requested a meeting to discuss the relief sought. Instead of conferring with Plaintiffs' counsel, the Akrabians filed their applications the next day at about 5:35 p.m., without filing any declaration of counsel. (Dkts. 33, 34.)

Third, the intervention is untimely. This case has been pending for five (5) months. (Dkt. 1.) Rule 24 permits intervention only "on a timely motion." Fed. R. Civ. P. 24(a), (b). The Akrabians admit that they had "considered intervening prior to now." (Dkt. 33, p. 7:22-23.) The Akrabians chose to wait until they concluded that Defendant, Attorney General Rob Bonta, might not represent their personal interests. (Dkt. 33, p. 6:14-15.)

Fourth, a continuance and intervention here is improper as a matter of law and would severely prejudice the parties, derail pending hearings, and inject a wholly unrelated personal

dispute by serial filers into a statewide constitutional challenge. (Request for Judicial Notice/Declaration of Jason Goldstein ("Goldstein Decl."), Exs. 1-15.)

Further, the Akrabians have no pending secondary mortgage foreclosure. Indeed, the foreclosure of their property took place over six years ago on October 16, 2019, which predates Civil Code section 2924.13 by over five years. [Goldstein, Ex. 16] Thus, they lack standing to challenge Civil Code section 2924.13. In fact, the Akrabians purpose is to undo their own concluded foreclosure and to use this litigation to initiate collateral attacks on their prior state and federal actions. Specifically, the Akrabians seek to challenge two decisions: (1) a state court judgment of dismissal entered on April 9, 2021 in *Marine Akrabian v West Coast Servicing, Inc., et al.*, Los Angeles County Superior Court, Case No: 19AVCV00854 which dismissed the Akrabians' quiet title action against ZBS Law LLP and West Coast Servicing, Inc. concerning 1238 W. Avenue H6, Lancaster, California 93534; and (2) a judgment and order of dismissal, with prejudice, entered on December 3, 2024, in *Marina Akrabian v. Veripro Solutions, et al*., U.S. District Court for the Central District of California, Case No. 2:23-cv-08709-DMG-AGR, which is currently pending on appeal in *Akrabian v. Veripro Solutions et al*., Ninth Circuit Court of Appeals, Case No. 2025-cv-06099. See *Akrabian v. Veripro Sols.,* No. CV 23-8709-DMG (AGRX), 2024 WL 5466644, 2024 U.S. Dist. LEXIS 243317, (C.D. Cal. Dec. 3, 2024).

Finally, the prejudice could not be clearer. Briefing on Plaintiffs' motion for preliminary injunction is complete, and Defendant's motion to dismiss has been fully briefed. Allowing the Akrabians to intervene at this late stage—while simultaneously seeking to continue the February 19 hearing—would needlessly delay resolution of the pending motions, reward undue delay, and impose substantial prejudice on the existing parties. This lawsuit challenges the constitutionality of Section 2924.13, which can be addressed without the Akrabians' involvement. It is not a collateral vehicle for reopening or relitigating a final and fully adjudicated mortgage foreclosure that occurred years before Section 2924.13 was enacted on June 30, 2025. The Akrabians' attempt to inject stale, case-specific grievances into a constitutional challenge threatens judicial economy, undermines finality, and would needlessly complicate and delay adjudication of issues that have already been squarely presented and fully briefed.=

## II. THE AKRABIANS HAVE FAILED TO SATISFY THE STANDARD TO OBTAIN EX PARTE RELIEF

To obtain ex parte relief, the moving party must establish that it is "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995).  The Akrabians fail to satisfy either requirement.

The Akrabians have submitted no declarations in support of their ex parte applications. That failure alone is fatal. Local Rule 144 requires an applicant for ex parte relief to explain the necessity for proceeding on an ex parte basis, and Local Rule 230(h) expressly requires that factual contentions be supported by affidavit. The Akrabians ignored both rules. Without a single supporting declaration, there is no admissible evidence before this Court and no basis for the extraordinary relief they seek. *Ex parte* relief cannot rest on argument, speculation, or conclusory assertions by counsel.

The Akrabians' own judicial admissions foreclose any claim of exigency. They concede that they were aware of this action and the pending motions for preliminary injunction well before filing their applications. ("While John and Marina Akrabian had considered intervening prior to now . . ." [Dkt. 33, p. 7:22-23]). Their professed reason for delay is that they only recently concluded the Attorney General would not adequately represent their specific interests, stating that "the Attorney General seems only weakly and inadequately to represent their specific interest . . ." [Dkt. 33, p. 7:2-3] It beggars credulity to suggest that the California Attorney General would fail to vigorously defend the constitutionality of a duly enacted statute. The Akrabians' admission confirms that any purported "crisis" is entirely self-created and the product of inexcusable delay.

Additionally, the applications violate this Court's Standing Order in Civil Cases, which requires *ex parte* applicants/motions to (a) first contact opposing counsel and engage in a meaningful prefiling meet-and-confer regarding the contemplated relief, and (b) file an affidavit explaining the need for ex parte relief, the inability to obtain a stipulation, and why a regularly noticed motion is inadequate. (Standing Order §§ I(C), III.) The Akrabians complied with none of these requirements. On February 12, 2026, at 9:41 a.m., they emailed Plaintiffs' counsel, who

promptly requested a meeting to discuss the relief sought. Rather than confer as required, the Akrabians bypassed the process entirely and filed their applications the next day without any declaration of counsel. (Dkts., 33, 34.)

The Akrabians have demonstrated no emergency, no good cause, no diligence, and no compliance with the Local Rules or this Court's Standing Order. Their applications are procedurally defective and substantively unsupported. Thus, the applications should be denied.

## III. THE AKRABIANS DO NOT SATISFY INTERVENTION UNDER RULE 24(A)(1)

The Akrabians do not have an unconditional right to intervene under any federal statute; so they are not entitled to intervene under Rule 24(a)(1).

## IV. THE AKRABIANS DO NOT SATISFY INTERVENTION UNDER RULE 24(A)(2)

An applicant for intervention under Rule 24(a)(2) must establish four elements: (1) that the prospective intervenor's motion is "timely"; (2) that the would-be intervenor has "a 'significantly protectable' interest relating to . . . the subject of the action"; (3) that the intervenor is "so situated that the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect that interest"; and (4) that such interest is "inadequately represented by the parties to the action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

### A. THE APPLICATION IS NOT TIMELY AND IS HIGHLY PREJUDICIAL

Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004). In analyzing these factors, however, courts should bear in mind that "[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

#### 1. Granting the ex parte would derail the Court's scheduled preliminary injunction hearing

The Akrabians ask this Court for "emergency" relief without any factual showing to: (1) vacate the February 19, 2026, preliminary injunction and motion to dismiss hearings; (2) allow

them time to craft an entirely new, expansive "mirror-image" complaint; and, (3) reframe the litigation around their personal foreclosure. This request must be denied.

Plaintiffs would suffer concrete prejudice. They briefed their preliminary injunction motion months ago after extensive negotiations with the Attorney General. The Plaintiffs are comprised of affected lenders and associations who are, and have been, severely impacted and prejudiced by Section 2924.13, and any further delays in obtaining a ruling on their preliminary injunction motion would be irreparable to them. Further delay would also prejudice the Attorney General who was already retained expert witnesses, opposed the preliminary injunction motion pursuant to a briefing schedule set pursuant to a stipulated order, and completed its motion to dismiss filing.

### 2.     The Akrabians' true motive is to halt other litigation

In their applications, the Akrabians have simultaneously asked ZBS and the Attorney General to stay their Ninth Circuit appeal to permit them to intervene here. This confirms that the Akrabians are attempting to use this case as leverage in unrelated litigation—a fact which disfavors intervention.

The Akrabians are effectively requesting this Court to undo a prior a state court judgment of dismissal entered on April 9, 2021 in *Marine Akrabian v West Coast Servicing, Inc., et al.*, Los Angeles County Superior Court, Case No: 19AVCV00854 which dismissed the Akrabians' quiet title action against ZBS Law LLP and West Coast Servicing, Inc. concerning 1238 W. Avenue H6, Lancaster, California 93534. This request violates the *Rooker-Feldman* doctrine, under which "district courts generally lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Akhlaghpour v. Orantes (In re Akhlaghpour)*, 164 F.4th 1139 [2026 U.S. App. LEXIS 1336, *16] (9th Cir. 2026). By seeking to determine that Section 2924.13 retroactively applies, the Akrabians are attempting to relitigate and overturn the prior state court's final judgment of dismissal (and bypass the pending appeal before the Ninth Circuit), an exercise this Court lacks subject-matter jurisdiction to undertake under *Rooker-Feldman*.

**B.  THE APPLICATION MUST BE DENIED BECAUSE THE AKRABIANS HAVE NO "SIGNIFICANT PROTECTABLE INTEREST" IN THIS RULE 24(A)(2) PROCEEDING**

**1.  This Action is a Facial Constitutional Challenge, Not an Enforcement Case about The Akrabians' Property**

Plaintiffs challenge Section 2924.13 on its face as an unconstitutional impairment of contract, a deprivation of due process, a violation of equal protection, and a violation of the Supremacy Clause. Section 2924.13 was originally marketed as a fix for "zombie mortgages," allegedly old, forgotten second liens that resurface unexpectedly to borrowers

Plaintiffs argue the law: (1) actually applies to *all* subordinate residential mortgages—not just zombie loans; (2) effectively makes many existing second mortgages **unenforceable**; (3) penalizes lenders for conduct that is **not unlawful under federal law** (e.g., missing statements, sending 1099-C forms); (4) creates impossible certification obligations under penalty of perjury; and, (5) conflicts with federal regulations (TILA, RESPA, IRS, Bankruptcy Code).

The Akrabians attempt to intervene because they want to argue that section 2924.13 gives them the right to relitigate their concluded foreclosure. But section 2924.13 did not exist during their foreclosure; and this case does not adjudicate any individual borrower's loan history. Nor could a mortgage holder be held to violate a law that did not exist at the time of the Akrabians foreclosure.

The Akrabians idiosyncratic personal stake is not a "significantly protectable"—it is collateral, retrospective, and wholly dependent on their private dispute with ZBS in different courts.

**2.  An interest in collateral litigation is not a legally protectable interest under Rule 24(a)(2)**

An interest that could merely be impacted by the outcome of a litigation is not sufficient to intervene as of right. *United States v. Alisal Water Corp.*, 370 F.3d 915, 920, fn. 3 (9th Cir. 2004). Courts consistently hold that a litigant's desire to affect outcomes in other lawsuits does not qualify as an interest "in the property or transaction that is the subject of the action."  See, e.g., *Amica Mut. Ins. Co. v. Bernon*, 2014 U.S. Dist. LEXIS 172458, *6 (D. Id. 2014) ("Just because a lawsuit may impede a third party's ability to recover in a separate lawsuit typically does not give the third party a right to intervene.) Here, section 2924.13's effect on the Akrabians is more attenuated. It could

not have impeded or assisted them because it did not exist during their foreclosure. In *Medical Protective Co. v. Erfani*,[1] the court rejected the intervenors' argument that they were entitled to intervene because they were the plaintiffs in an underlying lawsuit against the defendant for which coverage under the plaintiff's insurance policy might apply. *Id*. The court noted that the intervenors had "merely established that the outcome of the instant action may affect their potential future rights to collect damages in their underlying suits. Such an interest is not sufficiently concrete or related to the underlying subject matter of this action to constitute a significant protectable interest relating to the property at issue here." *Id*. Here, the subject of the action is whether §2924.13 is constitutionally valid, not whether the Akrabians were victims of "zombie mortgage practices."

### C. DISPOSITION OF THIS CASE CANNOT "IMPAIR" THE AKRABIANS' SUPPOSED "INTERESTS"

The Akrabians contend that if Section 2924.13 is invalidated, they cannot use it retroactively to reopen their foreclosure. As an initial matter, no court has ever construed §2924.13 as retroactive and Plaintiffs' FAC explains that retroactivity would itself violate the Contract Clause. *See Barnitz v. Beverly*, 163 U.S. 118, 128-129 (1896) (stating the general rule that new legislation cannot permissibly "affect any remedy the mortgagee had by existing law for the enforcement of his contract"); *Warren v. Specialized Loan Servicing, LLC*, 2026 U.S. Dist. LEXIS 2800, *14 (C.D. Cal. 2026)("no "extrinsic authority indicating that the California legislature intended for Section 2924.13 to apply retroactively"); *Martinez v. Specialized Loan Servicing, LLC*, 2025 U.S. Dist. LEXIS 214451, *12 (E.D. Cal. 2025)("Plaintiff has not cited, nor can the court identify, any authority for the proposition that Cal. Civ. Code § 2924.13 applies retroactively. Accordingly, because the events giving rise to plaintiff's claim under this statute occurred before the statute was enacted, plaintiff's claim under Cal. Civ. Code § 2924.13 will be dismissed"); and *Cline v. Real Time Resols., Inc.*, 2025 U.S. Dist. LEXIS 179127, *8 (E.D. Cal. 2025) ("Plaintiffs do not cite to an express retroactivity provision nor provide any extrinsic sources demonstrating

---

[1] *Medical Protective Co. v. Erfani*, 2010 U.S. Dist. LEXIS 117768, 2010 WL 4569902 (S.D.Cal 2010)

the California Legislature intended § 2924.13 to apply retroactively. Without more, the Court finds Plaintiffs have not met their burden . . .").

The Akrabians asserted "interest" is purely speculative, because even under their interpretation, they would still need to demonstrate statutory applicability, causation, and entitlement to relief *in another court*. They have a pending appeal before the Ninth Circuit. Any relief that Akrabians seek can be addressed in that Court.

Rule 24 requires practical impairment—not conjectural hopes of collateral attack on a foreclosure long since completed. The need for separate litigation, here the prior lawsuits and pending appeal, does not demonstrate practical impairment. See, *Ahn v. Scarlett* 2018 U.S. Dist. LEIS 33784, *10 (N.D. Cal. 2018)("If, indeed, WTI determines that litigation is necessary to defend its own alleged ownership interests or recover money it believes it is owed as a result of these interests, it can do so by bringing a separate suit. Accordingly, WTI's motion fails on this basis as well.")

### D. THE APPLICATIONS FAIL TO COMPLY WITH RULE 24(C)

Under Rule 24(c), an applicant for intervention must be accompanied by a copy of the proposed pleading in intervention that sets forth the claim or defense to be asserted by the prospective intervenor. 6 Moore's Federal Practice. § 24.20 (Matthew Bender 3d ed.). Here, the Akrabians do not attach any proposed intervention complaint to their ex parte applications.

### E. THE ATTORNEY GENERAL ADEQUATELY REPRESENTS ANY PUBLIC INTEREST IN DEFENDING THE STATUTE

The Akrabians' argument hinges on an assertion that the Attorney General is insufficiently committed to "full retroactivity." This is fatal to their application.

#### 1. The Attorney General's litigation posture is fundamentally aligned with defending the statute

The Attorney General is vigorously defending Section 2924.13, including limited retroactive application to conduct relevant to foreclosures initiated after July 1, 2025.

The Attorney General is not required to adopt the Akrabians' extreme, transformative retroactive theory, one that conflicts with: (1) long-standing California presumption against

**PLAINTIFFS' COMBINED OPPOSITIONS TO *EX PARTE* APPLICATIONS [DKTS. 33 AND 34]**

retroactivity (Cal. Civ. Code §3); (2) constitutional limits (Dkt 14, ¶¶ 63–65); and (3) Due Process and Takings principles.

### 2. Divergent litigation strategy does not equal inadequate representation

The Supreme Court's decisions in *Berger v. North Carolina State Conference of the NAACP*[2] and *Cameron v. EMW Women's Surgical Center, P.S.C.*[3] do not support intervention because the Akrabians seek to substitute their personal agenda for the State's legitimate and sovereign litigation position. See, *Berger*, 597 U.S. at 197(the State sought to intervene; and the court held that a state's chosen representative should not be presumed inadequate; applied here, intervention is not necessary when the state has a concrete interest in defending the constitutionality of a law) and *Cameron*, 595 U.S. at 279-280(this case to involved the state's attorney general seeking to intervene, not a private party seeking to collaterally attack other pending litigation).

Similarly, the Attorney General is actively defending the law in this action. The Akrabians effort to radically reinterpret it to retroactively unwind final judgments does not change this fact.

Simply put, intervention is not a platform for collateral attack on foreclosures.

## V. PERMISSIVE INTERVENTION SHOULD ALSO BE DENIED UNDER RULE 24(B)

Even if the Akrabians' met Rule 24(a)(2) (they do not), permissive intervention fails because they have not established through admissible evidence (and the Akrabians' submitted no evidence – at all): (1) common legal or factual questions; or (2) that intervention would not significantly delay adjudication. In addition, the Akrabians seek to inject nonjusticiable controversies into this case, challenge the concept of res judicata and seek review of closed foreclosure judgments. The Court retains discretion to deny the request for permissive intervention under these circumstances. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

As discussed above, the Akrabians share no common legal or factual question with this facial challenge to the constitutionality of Section 2924.13. (Section IV, *infra*.) Likewise, granting this untimely and prejudicial request would significantly delay the adjudication of a constitutional

---

[2] *Berger v. North Carolina State Conference of the NAACP* 597 U.S. 179 (2022).
[3] *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022).

challenge with affects every lender in the State of California. (*Ibid*.) Intervention should be denied because it would significantly delay adjudication of matter of public importance to all lenders.

Furthermore, courts routinely deny permissive intervention where the intervenor's agenda would "clutter the case with unrelated issues." *See UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004) (denying permissive intervention because addition of new party would "necessitate the consideration of extraneous legal and factual issues," unrelated to the original party's claim); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (affirming denial of permissive intervention where proposed intervenor's interests were adequately represented by existing parties and permitting intervention would cause undue delay).

Here, the Akrabians seek to inject nonjusticiable controversies into this case, including res judicata and review of closed foreclosure judgments. These issues are separate and distinct from the facial challenge to the constitutionality of Section 2924.13.

## VI.  **CONCLUSION**

For the foregoing reasons, the Plaintiffs respectfully request that this Court deny the Akrabians ex parte applications to continue the February 19, 2026, hearings and for intervention. The Plaintiffs further respectfully request that this Court strike any proposed intervener pleadings and proceed forward with the scheduled preliminary injunction and motion-to-dismiss hearings.

DATED: February 17, 2026                    Respectfully submitted,

**BUCHALTER LLP**

By: */s/Jason E. Goldstein*
        JASON E. GOLDSTEIN
        Attorney for Plaintiffs