
March 5, 2026

RE: *Cal. Mortgage Ass'n, et al. v. Bonta*, <u>Case No. 2:25-cv-02614-DAD-CKD</u>

Dear Judge Drozd:

Defendant Rob Bonta, in his official capacity as the Attorney General of California, submits this letter brief addressing certain topics discussed at the February 19, 2026 hearing.

## I. THE LEGISLATURE INTENDED SECTION 2924.13 TO BE GIVEN RETROACTIVE EFFECT.

Although statutes are generally presumed to apply only prospectively, "this presumption is rebuttable," *Preston v. State Board of Equalization*, 25 Cal. 4th 197, 222 (2001); indeed, "this presumption is a canon of statutory interpretation rather than a constitutional mandate." *People v. Frahs*, 9 Cal. 5th 618, 627 (2020). California's Legislature can enact laws that apply retroactively "by implication." *Id*. at 627. For example, *Frahs* concerned one type of statute—ameliorative criminal laws—where courts often decide laws are retroactive, even without express legislative statements, particularly when there is "no clear contraindication of legislative intent." *Id.* at 630. But courts look to legislative intent to determine a statute's retroactivity in other contexts as well. *See*, *e.g.*, *In re Marriage of Bouquet*, 16 Cal. 3d 583 (1976) (amendment to statute providing that earnings of both spouses while they live apart constitute separate property was intended to be retroactive). While *Marriage of Bouquet* has been disapproved of in several subsequent cases (*see Evangelatos v. Superior Ct.*, 44 Cal. 3d 1188 (1988) and *Californians for Disability Rts. V. Mervyn's, LLC*, 39 Cal. 4th 223 (2006)), it has also been cited approvingly. *See Preston*, 25 Cal. 4th at 221-222; *see also McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 248 (2021) (conc.) (quoting *Preston* for importance of looking to legislative history and extrinsic sources to determine whether statute is retroactive). And, a majority opinion of the California Supreme Court has recently confirmed: "The retroactivity presumption is not a straightjacket." *McHugh*, 12 Cal. 5th at 235 (cleaned up). In that case, the Court avowed, whether taking a general or more narrow view of the definition of retroactivity, "[u]nder either, we decline to give the presumption such weight that it determines the outcome of this case." *Id.*

So too, here. In determining whether Section 2924.13 should be given retroactive effect, this Court should look to the same factors that it does whenever it must determine the Legislature's intent to effectuate the law's purpose, including the statute's purpose, legislative history, and public policy. *See Sierra Club v. Superior Ct.*, 57 Cal. 4th 157, 166 (2013); *see also Preston*, 25 Cal. 4th at 222 (relying on statements in the legislative history regarding the statute's purpose to conclude that the legislature intended it to be retroactive). Section 2924.13's legislative history and purpose demonstrate that the Legislature intended retroactive application with respect to the unlawful practices in subdivision (b). The Legislature specifically called out certain zombie mortgages that were originated prior to the 2008 financial crisis and declared its intent to protect borrowers from such mortgages. Dkt. No. 20-2 at 20. It noted that many borrowers of these mortgages faced years of noncommunication or were told that their loans were forgiven as part of a loan modification during the financial crisis, years or even decades ago. *Id.* If these backwards-looking predatory practices could not be deemed "unlawful" because they occurred prior to the statute's enactment, the borrowers that the Legislature specifically identified would be essentially entirely unprotected from such practices. Interpreting the statute in this way would violate the "most fundamental rule of construction, namely that a statute must

be interpreted so as to effectuate legislative intent." *Russell v. Superior Ct.*, 185 Cal. App. 3d 810, 818 (Ct. App. 1986) (cleaned up); *see also Bank of Am. v. Angel View Crippled Children's Found.*, 72 Cal. App. 4th 451, 458 (Ct. App. 1999*)* (noting that "the remedial nature of the statute, and the 'evils to be remedied,' can be taken into account when reviewing a statute for an implied retroactive intent," and finding that the protective purpose of the challenged statute made it "eminently reasonable to conclude the Legislature would intend to apply its remedy" retroactively).[1]

## II.  *EX PARTE YOUNG* DOES NOT APPLY.

The Attorney General's ability to prosecute perjury charges does not provide sufficient enforcement authority under *Ex parte Young* for the reasons explained in Defendant's briefing. Dkt. No. 28 at 4. That the Ninth Circuit cited to *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) ("*ULCM*") in *Matsumoto* does not change this analysis.[2] *See Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th Cir. 2024). *Matsumoto* involved a criminal statute that granted the Idaho attorney general the authority to prosecute violations if the local prosecuting attorney refused to do so. *Id.* The Ninth Circuit cited to *ULCM* when noting that this direct grant of enforcement authority "clear[ed] the low bar set by [its] sister circuits' interpretations of *Ex parte Young*." *Id.* It did not hold that these "low bars" in other circuits were identical to the bar by which the Ninth Circuit operates. *Id.* Moreover, the parenthetical in the *ULCM* citation merely stated the general principle that "direct criminal enforcement authority is not necessary for *Ex parte Young* to apply." *Id.* The Ninth Circuit did not endorse the underlying holding of *ULCM* or discuss its specific fact pattern.

Regardless, *UCLM* is easily distinguishable from the present case. <u>First</u>, the attestation requirement in *UCLM* was central to the main purpose of the challenged statute in a way that the perjury component of Section 2924.13 is not. The statutory scheme in *ULCM* provided that: (1) marriage licenses must include a certificate in which the minister attests that they "solemnize[d] the rite of matrimony"; (2) individuals who are ordained online cannot "solemnize" marriages; and (3) making a false statement on a marriage license is a crime punishable under Tenn. Code § 39-16-504. *ULCM,* 35 F.4th at 1028. Thus, any time a minister who was ordained online purported to solemnize a marriage, they *necessarily* committed a crime and were subject to prosecution. In contrast, servicers can violate every material provision of Section 2924.13 without running afoul of California's perjury statutes. *See* Dkt. No. 28 at 4. <u>Second</u>, prosecution by government officials was the *only* method of enforcing the statute challenged in *ULCM. ULCM,* 35 F.4th at 1028. But Section 2924.13 is primarily privately

---

[1] Plaintiffs make the extraordinary claim that the statute is retroactive if applied to any mortgage that *originated* prior to the passage of the statute. Not so. Imposing forward-looking obligations (such as a certification requirement) that might impact contracts executed prior to a statute's enactment does not make the law retroactive. A law is only retroactive if it attaches new legal consequences to *past* conduct (for example, if conduct that occurred prior to enactment is deemed an "unlawful" practice that may provide protections to borrowers under Section 2924.13). *See Polone v. C.I.R.*, 505 F.3d 966, 972 (9th Cir. 2007) (a statute is not retroactive merely because it "is applied in a case arising from conduct antedating the statute's enactment," or because it "upsets expectations based in prior law"). For forward-looking obligations, a regular Contracts Clause analysis applies to determine if there is substantial impairment of pre-existing contracts.

[2] *UCLM* involved a challenge to a Tennessee statute that aimed to make ministers who received online ordinations incapable of solemnizing marriages. *Id.* at 1025. The court found that the district attorneys general had sufficient enforcement authority by virtue of their duty to prosecute false statements made by ministers in marriage licenses. *Id.* at 1041.

enforced by borrowers. § 2924.13(c)(2)(A), (d), (f), (g). <u>Third</u>, the enforcement authority of the Attorney General with respect to the perjury statutes is more attenuated than the enforcement authority of the district attorneys general in *ULCM*. Before prosecuting criminal violations, either the Attorney General must determine that the law is "not being adequately enforced" or the Governor must instruct the Attorney General to prosecute such violations. Cal. Const. Art. 5, § 13; Cal. Gov. Code § 12550. In contrast, Tennessee law vests district attorneys general with the "direct authority (and even duty)" to prosecute "false statements made on marriage licenses." *ULCM,* 35 F.4th at 1040.

## III.  PLAINTIFFS LACK ARTICLE III STANDING.

Under Supreme Court precedent, Plaintiffs can *at most* obtain an injunction against the Attorney General himself. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43-44 (2021). Plaintiffs lack Article III standing when the requested injunction would not redress their claimed harms. *See, e.g., California v. Texas*, 593 U.S. 659, 670 (2021) (plaintiffs lacked standing to obtain injunctive relief against government officials because they "have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to [the challenged law]"). Here, Plaintiffs' alleged injuries arise not from any action taken by the Attorney General, but from the mere existence of Section 2924.13 and the possibility that borrowers may privately enforce the statute. [3] An injunction against the Attorney General will not redress Plaintiffs' harms; they therefore lack standing.

Multiple courts have applied these longstanding principles to conclude that plaintiffs lack standing when they sue an official whose hypothetical enforcement of the challenged statute is not the cause of plaintiffs' alleged injuries. For example, the Second Circuit recently held that plaintiffs lacked standing to challenge a city ordinance—which provided for enforcement by private parties—via a lawsuit against the city. *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 523 (2d Cir. 2024). The court noted that "a judgment declaring the Guaranty Law unconstitutional could run only against the City," and "a declaratory judgment against the City could afford plaintiffs no relief from the injuries they claim flow from its enactment, *i.e.*, the defenses and/or penalties afforded *private parties*." *Id.* (emphasis in original). Here, too, a judgement in favor of Plaintiffs could run only against the Attorney General, and it would not redress Plaintiffs' claimed injuries, which all arise from "the defenses and/or penalties afforded *private parties*." *Id.*; *see also D'Souza v. Guerrero*, No. 24-2537, 2025 WL 636706, at * 2 (9th Cir. Feb. 27, 2025) (where the requested relief would either be "contrary to . . . *Whole Woman's Health*" or else "not redress [plaintiffs'] alleged grievances," plaintiffs lacked Article III standing); *Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1107 (N.D. Ill. 2022) (plaintiffs lacked standing to proceed against the State's Attorney because they "[could not show] that an injunction against the State's Attorney would redress their injuries"); *Uber Techs., Inc. v. Moss*, No. 1:25-CV-00096-DDD-KAS, 2025 WL 1420940, at *3 (D. Colo. Jan. 31, 2025) (declining to grant preliminary relief because the court could not enjoin "private enforcement" of the challenged statute; any relief running against the sued government officials "would be closer to an advisory opinion than to actual preservation of the status quo"); *Free Speech Coal. v. Knudsen*, No. CV 24-67-M-DWM, 2025 WL 2240252, at * 4 (D. Mont. Aug. 6, 2025) ("Because [under *Whole Woman's Health*] the Court cannot provide the redress for the injuries alleged, Plaintiffs lack Article III standing.").

---

[3] Plaintiffs also fail to allege facts suggesting a credible threat of imminent future harm arising from the Attorney General's enforcement of the statute.  *See Murthy v. Missouri*, 603 U.S. 43, 59 (2024) (plaintiffs must show "imminent future injury" that is traceable to the defendants' actions); *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1018-19 (9th Cir. 2025) (pre-enforcement review is improper if plaintiffs do not show a "credible threat that the violation will be prosecuted").

Sincerely,

CARTER M. JANSEN
Deputy Attorney General

For    ROB BONTA
Attorney General
*Defendant*