UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA MORTGAGE
ASSOCIATION, et al.,

          Plaintiffs,

    v.

ROB BONTA,

          Defendant.

No.  2:25-cv-02614-DAD-CKD

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND DENYING MOTION TO INTERVENE

(Doc. Nos. 19, 20, 33)

This matter came before the court on February 19, 2026 for a hearing on plaintiffs' motion for preliminary injunction filed on December 15, 2025 (Doc. No. 19) and the motion to dismiss plaintiff's first amended complaint ("FAC") filed on behalf of defendant California Attorney General Rob Bonta on December 15, 2025 (Doc. No. 20).  Attorneys Robert Scott McWhorter, Jason Edward Goldstein, Robert Finlay, and Katherine Falace appeared by video on behalf of plaintiffs, Deputy Attorneys General Carter M. Jansen and William Bellamy appeared on behalf of defendant, and attorney Michael Tusken appeared on behalf of proposed intervenors.  (Doc. No. 44.)  For the reasons explained below, defendant's motion to dismiss will be granted, plaintiffs' motion for preliminary injunction will be denied, and proposed intervenors' motion to intervene will be denied.

/////

1

## BACKGROUND

Plaintiffs filed their complaint initiating this action on September 8, 2025, alleging that California Civil Code § 2924.13 imposed obligations on subordinate lienholders that substantially and materially impaired contracts in violation of multiple provisions of the United States Constitution.  (Doc. No. 1.)  On November 13, 2025, plaintiffs filed their FAC, in which they allege as follows.

Plaintiffs are various nonprofit associations comprised of private lenders, brokers, trustees, and credit unions, as well as various other individuals and corporate entities located in California.  (Doc. No. 14 at ¶¶ 8–27.)  Defendant is the current attorney general of the state of California and is sued in his official capacity.  (*Id.* at ¶¶ 1, 28.)

In AB 130, California enacted a statute the relevant portions of which are found at California Civil Code § 2924.13.  (*Id.* at ¶ 2.)  California Civil Code § 2924.13 regulates loans secured by subordinate liens on residential real property in California.  (*Id.*)  Section 2924.13 renders the following conduct "an unlawful practice" in connection with a subordinate mortgage: (1) failure to provide written communication regarding the loan secured by the mortgage for a period of at least three years; (2) failure to provide notice of transfer of loan servicing required by the federal Real Estate Settlement Procedures Act ("RESPA") and by investor or guarantor requirements; (3) failure to provide notice of transfer of loan ownership required by the federal Truth in Lending Act ("TILA") and by investor or guarantor requirements; (4) conducting or threatening to conduct a foreclosure sale after having provided a form to the borrower indicating that the debt had been written off or discharged; (5) conducting or threatening to conduct a foreclosure sale after the applicable statute of limitations has expired; and (6) failure to provide a periodic account statement as required under TILA and other investor or guarantor requirements. Cal. Civ. Code § 2924.13(b).  To commence foreclosure proceedings, § 2924.13(c) requires that the current loan servicer must certify under oath that one of these practices has not occurred or to otherwise list all instances when it committed a defined unlawful practice.  (Doc. No. 14 at ¶¶ 6, 40, 41.)  Moreover, § 2924.13(c)(2) requires that the loan servicer must provide the borrower with a notice that, if the borrower believes the servicer engaged in an unlawful practice or otherwise

misrepresented its compliance history, the borrower may petition the court for relief before a foreclosure sale.  (Doc. No. 14 at ¶ 41.)

California Civil Code § 2924.13 provides the following remedies for borrowers faced with an impending foreclosure sale if the loan servicer participated in defined unlawful practices:

> (d)  Upon a borrower's petition to the court for relief before the foreclosure sale, the court shall enjoin a proposed foreclosure sale pursuant to a power of sale in a subordinate mortgage until a final determination on the petition has been made.
>
> (e)  It shall be an affirmative defense in a judicial foreclosure proceeding if the court finds the mortgage servicer engaged in any of the unlawful practices specified in subdivision (b).
>
> (f)  The court may provide equitable remedies that the court deems appropriate, depending on the extent and severity of the mortgage servicer's violations.  The equitable remedies may include, but are not limited to, striking all or a portion of the arrears claim, barring foreclosure, or permitting foreclosure subject to future compliance and corrected arrearage claim.
>
> (g)  A borrower may also petition the court to set a nonjudicial foreclosure sale aside when a certification required by subdivision (c) was never recorded or when a certification recorded pursuant to subdivision (c) indicates that the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history.

Based on the foregoing allegations, plaintiffs assert seven claims for relief against defendant:  (1) a 42 U.S.C. § 1983 claim for violation of the contract clause in Article I of the United States Constitution; (2) a 42 U.S.C. § 1983 claim for violation of the due process clause of the Fourteenth Amendment; (3) a 42 U.S.C. § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment; (4) a 42 U.S.C. § 1983 claim for violation of the supremacy clause; (5) injunctive relief; (6) declaratory and other equitable relief; and (7) attorney's fees pursuant to 42 U.S.C. § 1988.  (Doc. No. 14 at ¶¶ 55–131.)  As to the requests for injunctive and declaratory relief plaintiffs seek an order declaring that California Civil Code § 2924.13 violates the identified clauses of the United States Constitution and is accordingly void and enjoining defendant Attorney General Bonta from enforcing the statute.  (*Id.* at 43–44.)

On December 15, 2025, plaintiffs filed their motion for preliminary injunction and defendant filed his motion to dismiss.  (Doc. Nos. 19, 20.)  On January 12, 2026, the parties filed

3

their respective oppositions and on January 23, 2026, the parties filed their respective replies. (Doc. Nos. 26, 27, 28, 29.)  On February 13, 2026, proposed intervenors John and Marina Akrabian filed an *ex parte* application to intervene in this action.  (Doc. Nos. 33, 34.)  On February 19, 2026, the court held a hearing on the motions (Doc. No. 19, 20) at which time the court authorized supplemental briefing to be filed within two weeks of that hearing.  (Doc. No. 44.)  On March 5, 2026, the parties filed supplemental briefing.  (Doc. Nos. 49, 50.)

## LEGAL STANDARD

### A.      Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp. v. Allvoices, Inc.*, No. 13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted).  Here, defendant does not contest the veracity of plaintiffs' factual allegations.  Instead, defendant contends that plaintiffs' claims are barred by sovereign immunity pursuant to the Eleventh Amendment.  (Doc. No. 20-1 at 15–16.)[1]  Defendant therefore mounts a facial attack.

"The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

/////

/////

---

[1]  The Rule 12(b)(1) standard applies in determining whether sovereign immunity bars a plaintiff's claims or if instead the *Ex Parte Young* exception applies. *Forward, Inc. v. Macomber*, 173 F.4th 1121, 1124–25 (9th Cir. 2026).

**B.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

5

## C.      Motion for a Preliminary Injunction

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  "In the Ninth Circuit, a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[ ] to the merits' of its claims and a balance of hardships that tips 'sharply' towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (alterations in original) (citation omitted).  The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## DISCUSSION

## A.      Defendant's Motion to Dismiss

Defendant Attorney General Bonta moves to dismiss plaintiffs' FAC on the grounds that the claims brought therein are barred by sovereign immunity and that plaintiffs have failed to adequately state their claims.  Because, as explained below, the court determines that plaintiffs' claims are barred by sovereign immunity, the court need not and does not consider defendant's motion to dismiss plaintiffs' FAC for failure to adequately state their claims pursuant to Rule 12(b)(6).

6

As noted, defendant Attorney General Bonta argues that sovereign immunity bars this action brought by plaintiffs.  (Doc. No. 20-1 at 15–16.)  In particular, defendant observes that plaintiffs seek to enjoin him from enforcing California Civil Code § 2924.13.  (*Id.*)  Defendant argues that plaintiffs' action is brought purportedly pursuant to the exception to sovereign immunity recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), but that, because the state attorney general lacks any statutory authority to enforce § 2924.13, he cannot be subject to such a suit.  (*Id.*)  In their opposition, plaintiffs argue that defendant Attorney General Bonta can properly be enjoined from enforcing § 2924.13 on four grounds:  (1) § 2924.13 does not expressly prohibit the attorney general from enforcing that provision and therefore it is implied that defendant is authorized to do so; (2) § 2924.13 imposes criminal obligations enforceable by the state attorney general; (3) § 2924.13 is separately enforceable under California's Unfair Competition Law ("UCL") and the attorney general may be enjoined from relying upon violations of § 2924.13 as predicates to an action brought under the UCL; and (4) defendant Attorney General Bonta can separately enforce § 2924.13 through the Department of Financial Protection and Innovation ("DFPI") which is charged with bringing administrative and civil actions against entities which engage in unfair, deceptive, or abusive acts.  (Doc. No. 26 at 9–14.)  Below, the court will evaluate each ground relied upon by plaintiffs in support of their contention that their claims brought against the state attorney general fall within the *Ex parte Young* exception to the Eleventh Amendment's bar of suits brought against the state or its instrumentality in the absence of consent.  Because the court concludes that plaintiffs have not demonstrated that defendant has the necessary connection to the enforcement of § 2924.13 required to invoke the *Ex Parte Young* exception, it will grant defendant's motion to dismiss this action as barred by sovereign immunity.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "The Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent."  *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996); *see also Mecinas v. Hobbs*, 30

7

F.4th 890, 903 (9th Cir. 2022). However, the Eleventh Amendment "does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). "Under *Ex Parte Young*, the state officer sued 'must have some connection with the enforcement of the [allegedly unconstitutional] act.' This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (internal citation omitted) (quoting *Ex Parte Young*, 209 U.S. at 157); *see also Matsumoto v. Labrador*, 122 F.4th 787, 802-03 (9th Cir. 2024); *Mecinas*, 30 F.4th at 903–04.[2]

### 1. Direct Enforcement

Plaintiffs generally assert that defendant has the authority to enforce § 2924.13. (Doc. No. 26 at 9–10.) However, it is unclear what plaintiffs base this assertion upon. As described in detail above, § 2924.13 specifically creates identified affirmative defenses in foreclosure proceedings, authorizes state courts to enjoin a proposed foreclosure sale on a borrower's petition for relief prior thereto, and creates other equitable remedies in connection with foreclosure proceedings, petitions for relief before a foreclosure sale, and petitions for relief following a foreclosure sale. § 2924.13(d)–(g). In short, § 2924.13 provides for its enforcement by borrowers in state court civil proceedings involving both nonjudicial and judicial foreclosures. The statute does not in any way authorize the defendant state attorney general to pursue a civil or administrative action in order to enforce the statute. "While *Ex [P]arte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to any enforcement authority the attorney general possesses . . . that a federal court might enjoin him from exercising." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021); *see*

---

[2] Defendant also argues in his reply that, were the injunction sought by plaintiffs issued, it would not provide plaintiffs the relief they seek and accordingly plaintiffs have not shown that their injuries are redressable by this court or traceable to defendant. (Doc. No. 28 at 12–13.) Because the court finds that the *Ex Parte Young* exception does not apply here, the court need not and does not address this argument.

8

*also Geo Grp., Inc. v. Inslee*, 151 F.4th 1107, 1124 (9th Cir. 2025) ("Like SB 8, Section 5 of HB 1470 does not grant 'any enforcement authority' to the Attorney General or the Governor.  Thus, the Attorney General and the Governor are not proper defendants as to Section 5.") (internal citation omitted).  Plaintiffs argue that § 2924.13 does not explicitly prohibit the attorney general from enforcing that statute, but also cite no authority that the lack of such an express prohibition renders the attorney general a proper defendant under the *Ex Parte Young* exception in an action seeking prospective injunctive relief barring such enforcement.  (Doc. No. 26 at 10.)  Indeed, the undersigned notes that the statute which the Ninth Circuit found did not grant enforcement authority to an attorney general in *Geo Group, Inc.* also did not contain such an express prohibition.  *See Geo Group, Inc.*, 151 F.4th at 1124; *see also* Wash. Rev. Code Ann § 70.395.070; *see generally Mecinas*, 30 F.4th at 903–04 ("The connection required under *Ex Parte Young* demands merely that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state law[.]") (internal quotation marks omitted).  Accordingly, the court rejects plaintiffs' assertion that § 2924.13 provides direct enforcement authority to defendant Attorney General Bonta.

2.    <u>Indirect Enforcement Through California Perjury Statutes</u>

Second, plaintiffs argue § 2924.13 requires that, for a lender to record a notice of default, it must also file a certification under penalty of perjury.  (Doc. No. 26 at 11.)  Specifically, § 2924.13(c)(1) requires that a mortgage servicer seeking to record a notice of default must also record a certification either that it did not engage in an "unlawful practice" or otherwise list "all instances when it committed an unlawful practice[.]"  Cal. Civ. Code § 2924.13(c).  Clearly, by its terms California Civil Code § 2924.13 carries no criminal penalties for its violation.  Plaintiffs do not argue that a servicer *necessarily* commits perjury by violating this subsection and, in this regard, do not contend that a violation of § 2924.13 inherently carries criminal penalties.  (Doc. No. 26 at 11.)  Instead, plaintiffs argue only that if a servicer chooses to knowingly file a false certification it would be subject to prosecution for perjury.  (*Id.*)  Accordingly, they contend that defendant has the authority to enforce § 2924.13 through the criminal statutes pertaining to perjury found at California Penal Code §§ 118, 126.  (*Id.*)

9

Plaintiffs also argue that defendant Attorney General Bonta has discretion to assume the role of a district attorney, prosecute a violation of the California Penal Code, and can accordingly enforce § 2924.13.  (*Id.*)  It is true that the California Attorney General generally has broad discretion to determine when to step in to directly prosecute any action involving the alleged violation of California criminal law.  *See Welchen v. Bonta*, 630 F. Supp. 3d 1290, 1311 (E.D. Cal. 2022) (discussing the attorney general's authority to prosecute).  In this regard, the Ninth Circuit has held that a state attorney general's discretionary authority to prosecute violations of a criminal statute is sufficient to render the attorney general a proper defendant in an *Ex Parte Young* action challenging the criminal statute.  *Matsumoto*, 122 F.4th at 803 (finding that the attorney general's authority to deputize himself as a prosecutor made him a proper defendant under *Ex Parte Young*).   Nonetheless, and as noted above, defendant must still have a "fairly direct" connection to the enforcement of § 2924.13 for the *Ex Parte Young* exception to apply. *Eu*, 979 F.2d at 704; *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) ("State attorneys general are not invariably proper defendants in challenges to state criminal laws.  Where an attorney general cannot direct, in a binding fashion, the prosecutorial activities of the officers who actually enforce the law or bring his own prosecution, he may not be a proper defendant.")

It does not appear that the Ninth Circuit has addressed whether a state statute that includes a requirement that a certification be filed under penalty of perjury is sufficient to render a county prosecutor or a state attorney general a proper defendant in a suit challenging the constitutionality of that statute pursuant to the *Ex Parte Young* exception.  However, the Sixth and Seventh Circuits have addressed that question and reached at least somewhat disparate conclusions. *Compare Universal Life Church Monastery Storehouse v. Nabors* ("*Universal Life*"), 35 F.4th 1021, 1040–41 (6th Cir. 2022) (concluding that district attorneys were properly named defendants under *Ex Parte Young* in an action challenging enforcement of a statute restricting minister ordination programs because the plaintiffs who were ordained online would commit a felony by representing themselves as ministers on a marriage license), *with Doe v. Holcomb* ("*Holcomb*"), 883 F.3d 971, 977 (7th Cir. 2018) (finding that the defendant attorney general was not a proper

10

defendant under *Ex Parte Young* in an action challenging enforcement of a statute requiring proof of citizenship to change a legal name because the connection to the defendant attorney general's ability to enforce perjury statutes was too attenuated).  At the February 19, 2026 hearing, the court discussed these two circuit court decisions and authorized the parties to file supplemental briefing addressing their impact on resolution of the pending motion.  (Doc. No. 44.)  On March 5, 2026, the parties filed supplemental briefing, though only defendant addressed the decisions in *Universal Life* and *Holcomb*.  (Doc. Nos. 49, 50.)  Below, the court addresses those decisions.

In *Universal Life*, the Sixth Circuit found that plaintiffs would violate Tennessee's "criminal prohibition against false statements made on marriage licenses" by asserting they were ordained when they were only ordained online in violation of the challenged statute.  *Universal Life*, 35 F.4th at 1040.  The court held that, because plaintiffs had alleged that they intended to solemnize marriages despite only having an online minister certification, the named county district attorneys[3] were proper defendants under *Ex Parte Young* because they had the duty to prosecute plaintiffs for engaging in that conduct.  *Id.*  Defendant argues that this reasoning does not apply here because § 2924.13 does not have the same necessary connection to perjury statutes that the challenged statute in *Universal Life* did.  (Doc. No. 50 at 2.)  Specifically, defendant contends that a violation of the challenged statute in *Universal Life* necessarily required plaintiffs to make a false statement which would be the subject of a criminal prosecution under the applicable perjury statutes.  *Universal Life*, 35 F.4th at 1040 ("Plaintiffs allege that they want to violate [the perjury statute] by making the representations that it and § 36-3-301 forbid.").  The court finds defendant's argument to be persuasive.  A violation of § 2924.13 would not necessarily result in plaintiffs committing perjury and being subject to criminal prosecution.  Indeed, one obvious way to violate the provisions of § 2924.13(c)(1) would be to conduct a nonjudicial foreclosure without filing a certification.  While proceeding in that manner would

---

[3]  The Sixth Circuit concluded that the plaintiffs lacked standing to sue the Tennessee Attorney General in seeking an anti-enforcement injunction or related declaratory relief because under Tennessee law the state attorney general lacks the authority to initiate criminal enforcement proceedings, to command county district attorneys to prosecute, or to indirectly enforce criminal laws at the local level.  *Universal Life,* 35 F.4th at 1032-33.

permit a borrower to "petition the court to set aside [the] nonjudicial foreclosure sale"—though it is not clear from the face of the statute that such relief would necessarily be granted—it would not subject the mortgage servicer to prosecution for perjury.  Cal. Civ. Code § 2924.13(g).

The court finds that this distinction is highlighted by the Seventh Circuit's decision in *Holcomb*.  There, the Seventh Circuit found that there were no potential criminal penalties posed for failing to provide proof of citizenship in a name-change petition, but only for the separate crime of committing perjury by falsely claiming citizenship.  *Holcomb*, 883 F.3d at 977.  In other words, the Seventh Circuit found that a violation of Indiana Code § 34-28-2-2.5 did not necessarily also entail commission of perjury and that the fact that the Attorney General could assist in a perjury prosecution if a person happened to commit perjury in a name-change petition was insufficient to invoke the *Ex Parte Young* exception to sovereign immunity.  One district court has applied this reasoning of the Seventh Circuit in *Holcomb* in the context of a different statute, explaining as follows:

> We do not read *Doe* [*v. Holcomb*] to hold that, because the Attorney General cannot initiate criminal prosecutions, the Attorney General is never a proper party to a lawsuit which, as here, challenges the constitutionality of criminally enforceable statutes.  If that were so, the Seventh Circuit's discussion would have begun and ended there.  Rather, we read *Doe* to hold that possible participation in a collateral criminal prosecution is insufficient to establish a connection with the enforcement of the underlying civil regulatory statute.  Many such statutes require submission to public authorities of statements under penalty of perjury.  If the possibility of a collateral perjury prosecution were a sufficient connection to the enforcement of such statutes, it would indeed "extend *Ex Parte Young* past its limits."

*Whole Woman's Health Alliance v. Hill*, 377 F. Supp. 3d 924, 935–36 (S.D. Ind. 2019) (internal citations omitted) (quoting *Holcomb*, 883 F.3d at 977).  The court finds this explanation provided in the district court's decision in *Whole Woman's Health Alliance* to be instructive.  Here, just as in *Doe v. Holcomb*, plaintiffs' argument is that the mere submission of a statement under penalty of perjury allows for the invocation of the *Ex Parte Young* exception.  Moreover, as in *Doe*, plaintiffs can violate the challenged statute by failing to file a certification, such that a violation of the challenged statute does not necessarily entail commission of perjury.  In light of the persuasive analysis in *Holcomb* analyzing a more analogous statutory scheme to § 2924.13 than

that which was at issue in *Universal Life*, this court concludes that the threat of any potential collateral perjury prosecution of a servicer for filing the certification required by the statute in order to record a notice of default is insufficient to invoke the *Ex Parte Young* exception.

Accordingly, the court concludes that plaintiffs' argument that defendant's criminal enforcement authority with respect to separate and tangential provisions of the California Penal Code does not render the defendant state attorney general a proper defendant under *Ex Parte Young* in this action which challenges the constitutionality of a section of the California Civil Code that does not itself impose any criminal penalties for its violation.

### 3.   Indirect Enforcement Through the UCL

Plaintiffs next argue that defendant is a proper defendant in this action under *Ex Parte Young* because he may civilly enforce § 2924.13 through the UCL.  (Doc. No. 26 at 11–13.) Defendant responds that because of the breadth of the UCL, plaintiffs' argument in this regard is akin to stating that defendant's generalized duty to enforce the law constitutes enforcement of § 2924.13.  (Doc. No. 28 at 9–10.)  Defendant notes that plaintiffs have cited no authority that any enforcement power the state attorney general has through the UCL can serve as a basis for finding him a proper defendant under *Ex Parte Young* in an action challenging the enforcement of another civil statute.  (*Id.*)  The court inquired at the hearing on the pending motion whether either party had identified authority addressing the question of whether the attorney general's ability to enforce the UCL is a sufficiently direct connection to make him a proper defendant in a suit seeking to enjoin a separate statutory provision.  (Doc. No. 47 at 12–14.)  Both parties indicated that they had been unable to identify any such authority.

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "The UCL's coverage is broad, sweeping and embracing of anything that can be properly called a business practice and at the same time forbidden by law."  *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1302 (S.D. Cal. 2014).  The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)

13

(internal quotation marks omitted); *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020).

Defendant argues that if enforcement through the UCL was sufficient to maintain an *Ex Parte Young* action against him, then "it would effectively eliminate sovereign immunity for [defendant] for any statute that could conceivably be said to regulate business practices." (Doc. No. 28 at 10.) The court has identified one out-of-circuit district court order addressing this issue in the context of a similar statute. There the district court stated:

> Moreover, contrary to Plaintiffs' contention, the Attorney General's discretionary authority to seek enforcement against "illegal acts" under Executive Law § 63(12) does not bestow a particular duty upon her to enforce Part A of CEEFPA sufficient to invoke the *Ex [P]arte Young* exception to sovereign immunity. The Attorney General is authorized under Executive Law § 63(12) to seek, *inter alia*, an injunction "whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." Although this statute would allow the Attorney General to pursue claims against those who engage in repeated or persistent violations of CEEFPA, it does not create a particular duty to enforce Part A of CEEFPA itself that would make the Attorney General the appropriate state defendant for a pre-enforcement lawsuit like this one seeking prospective relief. *See HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 295 (W.D.N.Y. 2010) ("The Attorney General's general authority to investigate and enforce the laws of New York State pursuant to Executive Law § 63(12) is not a sufficient connection to support an exception to sovereign immunity under *Ex [P]arte Young* for the Attorney General to be a proper party in the instant case"), *aff'd on other grounds*, 448 F. App'x 79 (2d Cir. Sept. 12, 2011) (summary order). Indeed, because Executive Law § 63(12) gives the Attorney General broad authority to investigate and pursue claims for injunctive relief whenever a person engages in any repeated or persistent illegality in the conduct of business, relying solely on § 63(12) to find a particular duty to enforce a specific state law would impermissibly allow lawsuits against the Attorney General to try to invalidate nearly any statute that regulates "the carrying on, conducting or transaction of business." *HealthNow*, 739 F. Supp. 2d at 297 ("If a federal case could be made for the purpose of testing the constitutionality of a state statute merely by naming any state official in an injunction suit, the limited exception of *Ex [P]arte Young* would be stretched far beyond its intended purpose.")[.]

*Chrysafis v. James*, 534 F. Supp. 3d 272, 292–93 (E.D.N.Y. 2021) (cleaned up). Similarly here, plaintiffs argue that defendant's authority to enforce the UCL is sufficient to challenge the constitutionality of a separate statute regulating mortgage related practices. (Doc. No. 26 at 11–

14

13.) As the district court found in *Chrysafis*, although defendant could conceivably pursue civil liability for violations of § 2924.13 through this separate statutory scheme, that does not create "a particular duty to enforce" § 2924.13 as is required to invoke the *Ex Parte Young* exception. *Id.* at 292. Finding this reasoning to be persuasive, the court rejects plaintiffs' UCL based argument.

        4.      Indirect Enforcement through the DFPI

Finally, plaintiffs argue that defendant's role in representing the Department of Financial Protection and Innovation, which engages in enforcement actions against financial service providers, requires him to enforce § 2924.13. (Doc. No. 28 at 10–11.) Assuming this to be the case, it is entirely unclear how this would impact whether defendant is properly named in this action under *Ex Parte Young* since § 2924.13 does not separately authorize the DFPI to enforce that statute. Moreover, as defendant correctly points out, DFPI is only authorized to refer violations of the Financial Code or violations of state law punishable by criminal penalties to the state attorney general for enforcement proceedings. *See* Cal. Fin. Code §§ 5301 (authorizing referral for enforcement proceedings regarding violations of Financial Code), 378 (authorizing referral for enforcement proceedings regarding violations of state law punishable by criminal penalties). As detailed above, there are no criminal penalties prescribed for violating § 2924.13 and it is part of the California Civil Code rather than the Financial Code. Accordingly, the court rejects plaintiffs' argument in this regard.

Because the court has concluded that defendant does not possess enforcement authority for § 2924.13, the court finds that the *Ex Parte Young* exception does not apply. Accordingly, the court also finds that plaintiffs' claims brought against defendant Attorney General Bonta are barred by sovereign immunity. Therefore, the court will grant defendant's motion to dismiss.

**B.**    **Plaintiffs' Motion For Preliminary Injunction**

"Likelihood of success on the merits is the most important *Winter* factor; if a movant fail to meet this threshold inquiry, the court need not consider the other factors in the absence of serious questions going to the merits[.]" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citations and quotation marks omitted). Here, the court has concluded that plaintiffs' claims against defendant are barred by sovereign immunity. Accordingly,

15

plaintiffs have not shown a likelihood of success on the merits. *Our Watch With Tim Thompson v. Bonta*, 682 F. Supp. 3d 838, 855 (E.D. Cal. 2023) (finding that the plaintiff had not shown a likelihood of success on the merits where it failed to allege facts sufficient to demonstrate that it had Article III standing); *see also Public Watchdogs v. S. Cal. Edison Co.*, No. 19-cv-01635-JLS-MSB, 2019 WL 6497886, at *19 (S.D. Cal. Dec. 3, 2019) (concluding that the plaintiff was unlikely to succeed on the merits of its claim where the court lacked jurisdiction over the action), *aff'd*, 984 F.3d 744 (9th Cir. 2020); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 724 (D. Ariz. 2020) (concluding that the plaintiffs could not establish they have a likelihood of success on their claims where they faced "serious jurisdictional impediments in bringing their claims to federal court"). Therefore, the court will also deny plaintiffs' motion for a preliminary injunction.

**C.    Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

Here, the court has found that plaintiffs' claims are barred by sovereign immunity pursuant to the Eleventh Amendment. Any attempt to amend would therefore be futile for the reasons discussed in this order. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1187 (E.D. Cal. 2017) (denying leave to amend claims barred by the Eleventh Amendment on the basis that any amendment would be futile). Accordingly, the court will dismiss plaintiffs' first amended complaint without leave to amend.

/////

/////

/////

16

**CONCLUSION**

For the reasons above,

1.  Plaintiffs' motion for preliminary injunction (Doc. No. 19) is DENIED;

2.  Defendant's motion to dismiss (Doc. No. 20) is GRANTED;

3.  Plaintiffs' first amended complaint (Doc. No. 14) is DISMISSED without leave to amend;

4.  Proposed intervenors' motion to intervene (Doc. No. 33) is DENIED as having been rendered moot by this order; and

5.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 3, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

17