**BUCHALTER LLP**
Harry W.R. Chamberlain II (Bar No. 95780)
Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
Email: *rmcwhorter@buchalter.com*
Jarrett S. Osborne-Revis (Bar No. 289193)
Email: *josbornerevis@buchalter.com*
Katharine H. Falace (Bar No. 222744)
Email: *kfalace@buchalter.com*
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone: 916.495.5170

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: 949.477.5050

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership,

Plaintiffs,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California,

Defendant.

Case No. 2:25-cv-02614-DAD-CKD

**[CORRECTED Doc. No. 57] PLAINTIFFS' MOTION TO ALTER, AMEND, VACATE OR SET ASIDE JUDGMENT UNDER FEDERAL RULES OF CIVIL PROCEDURE 59 AND 60, AND FOR LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT (RULE 15); LEGAL MEMORANDUM IN SUPPORT**

**FILED CONCURRENTLY WITH SUPPORTING DECLARATION OF HARRY W.R. CHAMBERLAIN II; REQUEST FOR JUDICIAL NOTICE AND EXHIBITS; [PROPOSED] SECOND AMENDED COMPLAINT AND [PROPOSED] ORDER LODGED HEREWITH**

| | |
|---|---|
| Date: | October 19, 2026 |
| Time: | 1:30 p.m. |
| Judge: | Hon. Dale A. Drozd |
| Crtrm: | 4 |
| Location: | 501 I St, 15th Floor<br>Sacramento, CA 95814 |

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANT ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA ("DEFENDANT"), AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 19, 2026 at 1:30 p.m. in Courtroom 4 of the Hon. Dale A. Drozd in the above-captioned United States District Court located at 501 I Street, 15th Floor, Sacramento, CA 95814 or as soon thereafter as the matter may be heard, Plaintiffs, CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership, (collectively, referred to as "Plaintiffs") will move this Court for an order pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure to alter, amend, vacate or set aside the order and judgment entered on June 4, 2026 granting the motion of Defendant Rob Bonta, in his official capacity as the Attorney General for the State of California ("Defendant" or "Bonta"). The Court dismissed Plaintiff's' first amended complaint "without leave to amend" ostensibly for lack of standing and denied Plaintiffs' concurrent motion for injunction, accepting Defendant's sovereign immunity argument that in his official capacity as Attorney General he does not have specific power over enforcement of California Civil Code Section 2924.13 enacted by the California Legislature as part of AB 130. On the contrary, Bonta maintains in public declarations that his office is empowered to enforce California laws by means of administrative, civil and criminal proceedings to remedy alleged "unlawful practices" under state and federal financial protection laws (examples are provided with this motion). This authority presumably includes any such "violations" involving mortgage loans secured by subordinate liens proscribed the California

Legislature set forth in section 2924.13. The Court's rationale for entering judgment of dismissal is based upon mistake of fact and errors of law that are contradicted by the Attorney General's history of enforcement and the Legislative History of SB 825 (Cal. Legis. Session 2025-2026), which was enacted effective January 1, 2026, while the parties' motions were pending. SB 825 assigns the principal authority to regulate and uphold alleged "unlawful" lending practices to Bonta as Attorney General. As a State Attorney General, Bonta also has concurrent jurisdiction to enforce any alleged "unlawful" practices that section 2924.13, which "borrows" from federal financial protection laws, such as the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA). (See Civ. Code §§ 2924.13, subds. (b), (c).) As such, dismissal is contrary to precedents of the Ninth Circuit and United States Supreme Court, and persuasive decisions of courts within this District that have soundly rejected Bonta's disavowal of enforcement authority.

The Legislature's recent enactment of Senate Bill 825 (Senate Bill 825 (2025), Stats. 2025, ch. 355, eff. Jan. 1, 2026), which revised and amended the California Consumer Financial Protection law or "CCFPL" (see AB 1864, Stats. 2020, ch. 157; Cal. Financial Code, Div. 24, §§ 90000, et seq.) extended additional powers to the California Department of Financial Protection and Innovation (DFPI). SB 825's amendments to CCFPL broadens DFPI's authority to remediate alleged claims of "unlawful" or "unfair" practices relating to providers of "financial products and services" under California's Unfair Competition Law (UCL). However, as stated in the legislative history, the new powers conferred on the DFPI remains secondary to the primary enforcement authority of Bonta under the UCL and federal law as Attorney General. The significance of SB 825 is twofold in this case: First, the 2026 legislation acknowledges the jurisdiction of Bonta as Attorney General to enforce alleged "unlawful practices" (including those set forth in Civil Code section 2924.13). Second, the new law explicitly authorizes DFPI (as well as Bonta) to independently regulate, penalize or remediate any such alleged unfair or unlawful practices involving finance lenders, mortgage servicers, escrow agents, including the individual Plaintiffs and members of the Trade Associations who are among the Plaintiffs also named in this case.

In light of the views expressed and the agency authority specifically conferred by the California Legislature in the form of SB 825 (among other reasons), it is indisputable that the State

of California has extended enforcement authority to regulate alleged unfair or unlawful business practices relating to the financial lending activities challenged by this action to California's Attorney General (Bonta) and further expanded the DFPI's power to exercise jurisdiction to enforce and regulate any such "unlawful practices" as set forth in Civil Code section 2924.13. It would be a manifest injustice to dismiss this action given that at least two California State agencies (the Attorney General and DFPI) are explicitly authorized to enforce and regulate the laws that are the subject of the Plaintiffs' constitutional challenges to section 2924.13 raised by this action. Plaintiffs were and are of the view that Bonta's jurisdiction and authority to act in the capacity as the State of California's primary enforcement officer provides the necessary enforcement "nexus" concerning the constitutional challenges raised in this action (as properly alleged in their First Amended Complaint). While that should suffice to confer jurisdiction, in an abundance of caution, DFPI's Commissioner would also be a proper party in light of the expanded powers and enforcement authority conferred by the Legislature under SB 825. Accordingly, in addition to vacating or setting aside the June 4, 2026 order and judgment of dismissal, pursuant to FRCP Rules 59(e) and 60(b), Plaintiffs' motion also asks the Court for leave under FRCP Rule 15 to file their Second Amended Complaint to add DFPI's Commissioner as a defendant in his official capacity.

This motion is based on the matters alleged in Plaintiff's First Amended Complaint and in their [Proposed] Second Amended Complaint lodged herewith, on the memorandum of law concurrently filed in support of this motion, and upon all other pleadings, records and files in this action. In addition, this motion is based on the accompanying testimony and documentary evidence, including Declaration of Harry W.R. Chamberlain II, Plaintiffs' Request for Judicial Notice, which contains the Legislative History of AB 1864 and SB 825 and other supporting exhibits, and any such additional testimony or evidence and argument that may be submitted and allowed by Court at the time of the hearing. Plaintiffs concurrently lodge herewith their [Proposed] Second Amended Complaint, and a [Proposed] Order granting the relief requested by this motion.

**Certification of Meet and Confer Requirement**

Pursuant to this Court's standing order, counsel for Plaintiffs and Defendant met and conferred via Zoom video conference on June 29, 2026 to discuss thoroughly the substance of Plaintiffs' post-judgment motion, including the position of counsel for Defendant that he would oppose any relief sought by such motion. The parties therefore were unable to reach a resolution of the relief sought by this motion. After the conference, the parties submitted a stipulation and proposed order with the Court to set this motion on an available hearing date, establish a briefing schedule and related procedural issues (Doc. No. 53). The Court approved the parties' stipulation and proposed schedule with modifications by Minute Order entered on July 1, 2026 (Doc. No. 54).

DATED: July 2, 2026

Respectfully submitted,

**BUCHALTER LLP**

By: *//s// Harry W.R. Chamberlain II*
Harry W.R. Chamberlain II

**WRIGHT, FINLAY & ZAK, LLP**

By: *//s// T. Robert Finlay (as authorized 7/2/2026)*
T. Robert Finlay

Attorneys for Plaintiffs, CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a nonprofit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership

## TABLE OF CONTENTS

**Page**

**I. INTRODUCTION ... 1**

**II. THE ORDER AND JUDGMENT OF DISMISSAL ... 3**

**III. LEGISLATIVE HISTORY OF SB 825 ... 4**

A. AB 1864—Creation of DFPI and Enactment of the CCFPL ... 4

B. SB 825—In 2026, the Legislature Expands DFPI's Powers to Regulate "Unlawful Practices" of Mortgage Lenders and Service Providers ... 7

C. SB 825 Also Reconfirmed the Attorney General's Primary Enforcement Authority to Regulate and Remediate Such Practices ... 8

**IV. LEGAL ARGUMENT ... 10**

A. Standards for Post-Judgment Relief Under Rules 59 and 60 ... 10

B. The Judgment of Dismissal is Based Upon Clear Errors of Fact and Law ... 12

1. The Attorney General Has the Explicit Authority to Uphold and Enforce California and Federal Laws Involving Alleged "Unlawful Practices" Concerning the "Financial Products and Services" At-Issue... 12

2. The Judgment is Likewise Contrary to the Legislature's Intervening Adoption of SB 825 – Expanding the Enforcement Powers of DFPI and Acknowledging the Attorney General's Primary Enforcement Jurisdiction Over Ostensible "Unlawful Practices" Involving Financial Products and Services, Including Secured Mortgage Loans ... 18

**V. THE COURT SHOULD VACATE AND SET ASIDE THE JUDGMENT OF DISMISSAL AND ALLOW PLAINTIFFS LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT TO ADD THE COMMISSIONER OF DFPI AS A DEFENDANT ... 19**

**VI. CONCLUSION ... 21**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**


*Arthur v. King*,
500 F.3d 1335 (11th Cir. 2007) ... 11

*California Chamber of Commerce v. Becerra*,
529 F.Supp.3d 1099 (E.D. Cal. 2021), *aff'd, California Chamber of Commerce v. Council for Education & Research on Toxics,* 29 F.4th 468 (9th Cir. 2022) ... 16

*California Chamber of Commerce v. Bonta*,
781 F.Supp.3d 1071 (E.D. Cal. 2025), appeal dismissed (9th Cir., May 29, 2026, No. 25-3534) 2026 WL 1618559 ... 16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ... 17

*Chamber of Commerce of the United States v. Becerra*,
438 F.Supp.3d 1078 (E.D. Cal. 2020), *aff'd sub nom. Chamber of Commerce of United States v. Bonta*, 62 F.4th 473 (9th Cir. 2023) ... 16, 17

*Chamber of Commerce of the United States v. Bonta*,
*supra*, 62 F.4th at pp. 486–487 ... 17

*Coal. to Def. Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) ... 13

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*,
312 F.3d 1292 (10th Cir. 2002) ... 11

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ... 17

*Foman v. Davis*,
371 U.S. 178, 182 (1962) ... 20

*Hamid v. Price Waterhouse*,
51 F.3d 1411 (9th Cir. 1995) (*Hamid*) ... 11, 12

*Howard v. United States*,
533 F.3d 472 (6th Cir. 2008) ... 11

*Kaufmann v. Kijakazi*,
32 F.4th 843 (9th Cir. 2022) ... 11

*Lopez v. Smith*,
203 F.3d 1122, 1130 (9th Cir. 2000) ... 20

*Matsumoto v. Labrador*,
122 F.4th 787 (2024) (*Matsumoto*) .......... 12, 13, 14, 18

*McDowell v. Calderon*,
197 F.3d 1253 (9th Cir. 1999) (en banc) .......... 11

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) (*Mecinas*) .......... 13

*Rose v. Bank of America, N.A.*,
57 Cal.4th 390 (2013) (*Rose*) .......... 18

*Russell v. Delco Remy Div. of Gen. Motors Corp.*,
51 F.3d 746 (7th Cir. 1995) .......... 11

*Valley View Health Care, Inc. v. Chapman*,
992 F.Supp.2d 1016 (E.D. Cal. 2014) .......... 15, 16

*White v. N.H. Dep't of Emp't. Sec.*,
455 U.S. 445 (1982) .......... 11

**Statutes**

12 U.S.C. § 4301 .......... 18

12 U.S.C. § 5481 .......... 4, 6

12 U.S.C. § 5522 .......... 6

Administrative Procedure Act .......... 5

Cal. Bus. & Prof. Code § 17200 .......... *passim*

Cal. Bus. & Prof. Code § 17500 .......... 5

Cal. Civ. Code § 2924.13 .......... *passim*

Cal. Civ. Code § 2924.13(b) .......... 6, 14

Cal. Civ. Code § 2924.13(c) .......... 6, 14

Cal. Fin. Code § 90000 .......... 1, 4

Cal. Fin. Code § 90002(c) .......... 5

Cal. Fin. Code § 90003(a)(1) .......... 4

Cal. Fin. Code § 90005(k) .......... 4

Cal. Fin. Code § 90008 .......... 19

Cal. Fin. Code § 90009 ........ 7

Cal. Fin. Code § 90012 ........ 6, 7

Cal. Fin. Code § 90013 ........ 6, 7

Cal. Fin. Code § 90015 ........ 14

Cal. Fin. Code § 90017 ........ 7, 14

Cal. Fin. Code § 90017(a)-(e) ........ 5

Cal. Fin. Code § 90017(b)(1) ........ 5

Cal. Fin. Code § 90017(b)(2) ........ 5

Cal. Fin. Code § 900015 ........ 19

California Consumer Financial Protection Law ........ *passim*

California Consumer Protection Law ........ 6

California's Unfair Competition Act ........ 9

California Unfair Competition Law ........ 14

Dodd-Frank Act ........ 4, 6

Federal Consumer Financial Protection Act ........ 7

Federal Dodd-Frank Act Title X ........ 4, 6

Federal Dodd-Frank Wall Street Consumer Financial Protection Act of 2010 ........ 4

Federal Truth in Lending Act ........ 12

Federal Truth in Savings Act ........ 18

Real Estate Settlement Act ........ 12

Real Estate Settlement Procedures Act ........ 6, 14

Truth In Lending Act ........ 6, 14

Truth In Lending Act, Reg. X ........ 6

**Other Authorities**

AB 130 ........ 2

AB 1864 ........ 4

Eleventh Amendment ........ 13

Fed. R. Civ. P. 15(a)(2) ........ 20

Fed. R. Civ. P. 59(e) ........ 11

H.R. No. 1057, 107th Cong., 1st Sess., § 3 (2001) ........ 18

https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=20252026 0SB825 ........ 9

Rule 12(b) ........ 11

Rule 59 ........ 1, 10, 11, 21

Rule 59(a) ........ 11

Rule 59(e) ........ 11

Rule 60 ........ 1, 10, 11, 21

Rule 60(b) ........ 11

SB 825 (2025) ........ 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

By its order and judgment entered on June 4, 2026 (Doc. Nos. 51, 52), the Court granted Defendant Rob Bonta's motion to dismiss Plaintiffs' first amended complaint based upon sovereign immunity – accepting the Attorney General's argument that he does not have specific power over the regulation and enforcement of California Civil Code 2924.13 (section 2924.13) enacted by the Legislature as part of AB 130. Pursuant to Rules 59 and 60, Plaintiffs move to alter, amend, vacate or set aside the order and judgment of dismissal. Respectfully, the dismissal ruling is based upon mistake of fact manifest legal errors urged by Bonta. As previously argued by Plaintiffs' opposition to Defendant's Motion to Dismiss and supplemental letter brief, Bonta acknowledges in public declarations that his office has the power to enforce California's financial protection laws, and has a history of doing so. The legislative history of recent statutes demonstrates that this includes alleged "unlawful" practices relating to secondary mortgage loans, such as those adopted by section 2924.13. The Court's rationale for dismissing this action with prejudice is factually mistaken, and contrary to controlling precedent of the Ninth Circuit, the United States Supreme Court, and the sound reasoning of other cases in this District rejecting Bonta's disavowal of that authority.

The Attorney General's primary authority to enforce and regulate the "unlawful practices" defined by section 2924.13 was recently bolstered by declarations of the California Legislature upon enactment of SB 825, which became effective January 1, 2026 while the parties' motions were pending. (Senate Bill 825 (2025), 2025 Stats. ch. 355, eff. Jan. 1, 2026). SB 825 revised and amended the California Consumer Financial Protection law or CCFPL. (Cal Fin. Code, §§ 90000, et seq.) by granting additional powers to California's Department of Financial Protection and Innovation (DFPI). SB 825 expands the powers of the DFPI to regulate alleged claims of "unlawful" or "unfair" practices by providers of consumer financial products and services. The new powers conferred on the DFPI under SB 825 are secondary to Bonta's primary enforcement authority in his capacity as the State's Attorney General. The significance of SB 825 is twofold in this case: First, the 2026 legislation acknowledges the primary authority of the Attorney General to enforce California unfair competition laws (including those set forth in section 2924.13) that Bonta

disavows. Second, the new law explicitly authorizes DFPI to independently regulate, penalize or remediate any such alleged unlawful or unfair practices involving lenders, mortgage servicers, escrow agents, including the individual Plaintiffs and members of the Trade Associations who are also among the Plaintiffs named in this case.

Plaintiffs' action challenges the constitutionality of section 2924.13, which fundamentally rewrote the rights and remedies governing every "subordinate" deed of trust recorded in this State. Section 2924.13 was enacted by Assembly Bill No. 130 ("AB130") on June 30, 2025, as part of a 215-page budget trailer bill in the final days of the budget cycle. Issued without hearings and without any finding of emergency or any articulated general social or economic threat to the public at large, section 2924.13 imposes sweeping retroactive restrictions on the ability of junior lienholders to exercise their contractual foreclosure rights. It requires that, before exercising or threatening to exercise the power of sale clause in junior deeds of trust, certifications must be recorded confirming that no "unlawful practices" associated with so-called "zombie mortgages" occurred at any point in the loan's history.[1] This obligation extends to actions taken by prior mortgage servicers decades ago, as well as conduct that federal law expressly permits or even mandates. The consequences of these now-declared "unlawful practices" under section 2924.13 are immediate and sweeping: The junior lienholder loses its rights under the deed of trust and its ability to foreclose to recover on its unpaid debt. In short, section 2924.13 retroactively impairs settled contractual rights, conflicts with federal law, and arbitrarily singles out subordinate lenders for punitive treatment that no other similarly-situated creditor faces.

These constitutional challenges raise important questions that should be addressed on their merits. Some agency of the State of California indisputably has the "authority" to enforce its laws. As reflected in the memorandum below, Bonta's sovereign immunity argument is factually and legally untenable. Therefore, the Court should set aside the dismissal, and grant Plaintiffs leave to file their Second Amended Complaint to add the Commissioner of DFPI as a named defendant.

---

[1] A "zombie mortgage" generally refers to an old home loan secured by a mortgage or trust deed on the borrower's residential property that the borrower believes has been settled or exonerated. But even when the debt represented by the loan has been abandoned or extinguished, the "power of sale" continues. (Prel. Inj. Mtn., Doc. No. 19 at 11; Deft. Amend. Mem., Doc. No. 24 at 1, 3.)

## II. THE ORDER AND JUDGMENT OF DISMISSAL

The Court's June 4, 2026 order granting Bonta's motion to dismiss concluded: "[P]laintiffs have not demonstrated that defendant has the necessary connection to the enforcement of § 2924.13 required to invoke the *Ex Parte Young* exception" to the Attorney General's claim that the present action was barred by sovereign immunity. (Order, Doc. No. 51 at 7.) Accepting Bonta's disavowal of enforcement jurisdiction over any of the "unlawful practices" enumerated by section 2924.13, the Court concluded that the primary enforcement mechanism of section 2924.13 is through actions by private litigants. The order dismissing the action also agreed with Bonta's position that he is not vested with either "direct" or "indirect" enforcement powers sufficient to overcome sovereign immunity. (*Id.* at 8-9, 14-15.)

On the contrary, as the Legislature's intervening enactment of SB 825 (eff. Jan. 1, 2026) illustrates, the Attorney General maintains primary authority to enforce the litany of "unlawful practices" that section 2924.13 proscribes in connection with the lending and foreclosure practices of subordinate mortgage lenders, banks, credit unions, escrow agents, mortgage servicers and other agents who are among the individual Plaintiffs and Plaintiff Trade Association members bringing this action.

In addition to these legislative declarations, the Attorney General's history of pursuing civil, criminal and regulatory proceedings against licensees for alleged violation of unlawful or unfair business practices (including lenders) meets the "some connection" nexus articulated by the Ninth Circuit establishing *Ex Parte Young*'s exception to sovereign immunity. SB 825 demonstrates that the primary enforcement jurisdiction of the Attorney General continues, while expanding the secondary powers of DFPI. That agency announced soon after AB 825 amended the California Consumer Financial Protection Law (CCFPL) how AB 825 broadened DFPI's powers to enforce state laws regulating lenders and mortgage service providers, whether or not "licensed" by DFPI.

As explained in the discussion of the California Legislature's adoption and amendment of CCFPL and the legal arguments below, "splitting" the authority of the Attorney General with another state agency (DFPI) and permitting by actions by private litigants under section 2924.13, does not divest Bonta of enforcement power. He is a proper defendant, as is DFPI's commissioner.

## III. LEGISLATIVE HISTORY OF SB 825

### A. AB 1864—Creation of DFPI and Enactment of the CCFPL

In September 2020, the Legislature enacted Assembly Bill 1864, which renamed the Department of Business Oversight and created the Department of Financial Protection and Innovation (DFPI) in its place within a new regulatory framework—the California Consumer Financial Protection Law (CCFPL)—to strengthen consumer financial protections in California. (2020 Stats., ch. 157; Cal. Fin. Code, §§ 90000, et. seq.; see Leg. Counsel's Digest, RJN Ex. 1.)

AB 1864 transferred DBO's authority to DFPI to enforce provisions of the federal Dodd-Frank Wall Street Consumer Financial Protection Act of 2010 (Dodd-Frank Act) over existing licensees, to protect consumers from unlawful, unfair, deceptive, or abusive acts or practices, and expanded the new agency's jurisdiction to cover currently unlicensed persons that offer or provide "consumer financial products and services in California." (AB 1864, Senate Analyses, Aug. 31, 2020; RJN Ex. 6 at 1-2.)

Modeled on Title X of the federal Dodd-Frank Act, the CCFPL makes it unlawful for a "covered person" or "service provider" to engage in any unfair, deceptive, or abusive act or practice in offering or providing consumer financial products or services. (Cal. Fin. Code, §§ 90003, subd. (a)(1), 90005, subd. (k).) In adopting the CCFPL, the Legislature "clarified" the following:

> ***Clarifying Statutes and Provisions***
>
> 7) <u>Clarifies that DFPI, as a state financial market regulator, has the authority to bring a civil action or other appropriate proceedings against an entity licensed, registered or subject to oversight by the DFPI</u> to enforce the provisions of the Consumer Financial Protection Act of 2010 (12 U.S.C. Sec. 5481 et seq.) or regulations issued by the federal Consumer Financial Protection Bureau.
>
> 8) Clarifies that in the instance that a provision in this division is preempted by federal law, the provision shall not apply and shall not be enforced to the extent that it is preempted.
>
> (RJN Ex. 6 at 2 (emphasis added).)

The CCFPL defines "prohibited acts" by a covered person as, among other things: "a) Engaging in unlawful, unfair, deceptive, or abusive acts or practices with respect to consumer financial products or services. … b) Offering or providing a consumer a financial product or service that is not in conformity with any consumer financial law." (RJN Ex. 6 at 3.)

Exemptions from CCPFL were provided for licensees and their agents who are licensed by other state agencies. AB 1864 also exempted "a bank, bank holding company, trust company, savings and loan association, savings and loan holding company, credit union, or an organization" acting under the license, authority or charter of federal law or the laws of another state. (Cal. Fin. Code, § 90002, subdiv. (c); see also *id*. at § 90002, subdivs. (a), (b).)

As adopted in its final form, AB 1864 directed that covered persons and service providers file certain annual reports and other documents, under oath, with the Department: "By expanding the crime of perjury, the bill would impose a state-mandated local program. The bill would also impose specific civil and monetary penalties for violations of the CCFPL, as well as injunctive relief." (Legis. Counsel's Digest, AB 1864 (2020); RJN Ex. 1 at 2.) The act encouraged DFPI to cooperate and coordinate its enforcement activities with the State's Attorney General, requiring "administrative procedures under the act to be conducted in accordance with the provisions of the Administrative Procedure Act and would authorize [DFPI] to enter into agreements with the Attorney General regarding coordinating civil and investigatory actions among these agencies." (*Id*. at 4 (emphasis added); see also Cal. Fin. Code, § 90017, subdivs. (a)-(e).)

The DFPI's enforcement authority does not limit the powers of law enforcement agencies, or private citizens to pursue actions "under the Unfair Competition Law [Cal. Bus.& Prof. Code, §§ 17200, et seq.], the False Advertising Law [Cal. Bus.& Prof. Code, §§ 17500, et seq.], or any consumer financial law." (Cal. Fin. Code, § 90017, subdiv. (b)(1) and (2).) If DFPI receives evidence that a person "has engaged in conduct that may constitute a violation of criminal law, the department shall transmit that evidence to the Attorney General." (*Id*. at § 90017, subdiv. (c)(1).)

AB 1864 also enacted a California law version prohibiting "Unfair, Deceptive, or Abusive Acts or Practices" or "UDAAP" in connection with consumer financial products and services

administered under federal law Consumer Financial Protection Act of 2010 by the Consumer Financial Protection Bureau (CFPB). (See Cal. Fin. Code, §§ 90012, 90013.)

As reflected in the recent legislative history of SB 825, the California Consumer Protection Law (CCFPL) was modeled closely on Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act). Dodd-Frank created the CFPB, and California's 2020 consumer protection law enacted by AB 1864 (establishing the regulatory authority of DFPI) was designed to create a state-law counterpart to the CFPA's financial protection laws. Under the Dodd-Frank Act, State Attorneys General (including Mr. Bonta as California's Attorney General) have concurrent jurisdiction to enforce federal consumer protection laws and are expressly authorized to bring civil enforcement actions in state or federal courts for any alleged violations of UDAAP against "covered persons or servicers" after consulting with the federal Bureau (CFPB). (See 12 U.S.C. § 5522; RJN Ex. 3 at 5-6 [SB 825, Assembly Cmt. on Banking & Finance Analysis, July 3, 2025].)

On May 23, 2022, the Director of CFPB issued an interpretive bulletin advising that the Bureau authorized State Attorneys General to enforce 18 federal consumer financial protection laws ("the Bureau is not the only enforcer of those laws"). Thus, as of the May 2022 bulletin, Mr. Bonta's office had the express authority of the Federal Government to bring legal actions for alleged violations of the Truth In Lending Act (TILA, Regulation X) and the Real Estate Settlement Procedures Act (RESPA, Regulation Z). (See CFPB May 23, 2022 Interpretive Bulletin, RJN Ex. 5.) These TILA and RESPA regulations are among the specific federal laws referenced by California Civil Code section 2924.13, subdivisions (b) and (c), which define the supposed "unlawful practices" involving subordinate Zombie mortgages prohibited under section 2924.13. The CFPB bulletin confers enforcement authority of Mr. Bonta to remedy such "unlawful practices." (*Ibid*.)

As the Legislature acknowledged when amending California's Financial Code effective on January 1, 2026, this State's Attorney General already had enforcement authority to bring civil or administrative actions under UDAAP for violations of either state or federal law as defined by Business and Professions Code §17200 and Dodd-Frank. Among the purposes of SB 825 was to

confirm that DPFI, as the regulatory agency overseeing these "financial products and services," this agency had the same enforcement authority as the Attorney General did under Dodd-Frank. RJN Ex. 3 at 5-6 [SB 825, Assembly Cmt. on Banking & Finance Analysis, July 3, 2025].) As amended in 2026, Financial Code § 90017 clarifies that nothing in the current law limits the enforcement powers of the California Attorney General.

While California's CCFPL initially focused on the regulation of "consumer financial products," effective on October 1, 2023, the Department promulgated regulations that also govern UDAAP violations involving "commercial financial products and services." (Cal. Code of Regs., tit. 10, §§ 1061, 1062; Cal. Fin. Code, §§ 90009, 90012, 90013; see also RJN Ex. 6.) California's UDAAP law (Cal. Fin. Code §§ 90012, 90013) and the 2023 regulations adopted by the Department define UDAAP violations in a hybrid fashion – unfair, deceptive, or abusive largely track those set forth in the federal Consumer Financial Protection Act, *or* involve unlawful, unfair or deceptive acts and practices that would violate California's Unfair Competition Law, Business and Professions Code section l7200 "and the case law thereunder." (Cal. Code of Regs., tit. 10, § 1061, subds. (b) and (c); see also RJN Ex. 3 at 9 [SB 825, Assembly Cmt. on Banking & Finance Analysis, July 3, 2025].)

Both types of "violations" fall squarely within the purview of the California Attorney General's explicit enforcement authority under state and federal law (Legal Argument, III.B, *infra*).

### B. SB 825—IN 2026, THE LEGISLATURE EXPANDS DFPI'S POWERS TO REGULATE "UNLAWFUL PRACTICES" OF MORTGAGE LENDERS AND SERVICE PROVIDERS

According to DFPI's website, as of January 1 for the first time in its history, the DFPI can oversee providers of consumer financial products and services, including banks and mortgage lenders as well as their service providers, who were previously unregulated by that Department:

> On January 1, 2026, a new law, SB 825, went into effect that helps to strengthen protection for California consumers. While many California businesses currently engage in best practices and comply with the law, at DFPI, we see many emerging trends indicating risks to consumers in the Golden State, the fourth-largest economy in the world. <u>This law clarifies that providers of consumer financial products and services, regardless of their licensing status, are subject to the DFPI's authority to</u>

stop unlawful, unfair, deceptive, or abusive acts or practices. This applies to banks, mortgage lenders, escrow agents, brokers, and other entities that DFPI regulates. The law helps ensure that businesses operate on a level playing field and helps DFPI protect California consumers from illegal practices that cost time and money, or worse, may facilitate frauds and scams. https://dfpi.ca.gov/rules-enforcement/laws-and-regulations/california-consumer-financial-protection-law/ (DFPI website, Enforcement/Laws and Regulations, reprinted in Plaintiffs' Request for Judicial Notice, RJN Ex. * (emphasis added).)

Who" is regulated by DFPI under SB 825?

Notwithstanding the exemptions previously found in AB 1864, DFPI now maintains that its enforcement jurisdiction extends to banks, residential mortgage lenders and servicers, escrow agents and trust companies that are not directly licensed by DFPI. (Regulated Entities List - DFPI, DFPI website, Enforcement/Laws and Regulations, reprinted in Plaintiffs' Request for Judicial Notice. DFPI's website cites examples of the "millions of dollars" secured in civil and administrative actions brought under the statutes and regulations within its authority during the last five years involving lenders and service providers of those regulated "financial products and services." (H. Chamberlain decl. ¶2; RJN Ex. 7.)

As reflected in the legislative history of SB 825, effective as of January 2026, the enforcement authority of DFPI has been expanded to include any alleged violation of UDAAP, encompassing any violation of California laws involving consumer or commercial loans. Claims involving alleged "unlawful practices" as defined by section 2924.13 clearly fall within those definitions. The Attorney General's primary enforcement authority to remediate alleged "unlawful practices" by bringing administrative or civil actions under the UCL, or prosecute alleged criminal violations, in the specific area of consumer and commercial loans ("financial products and services") is explicitly acknowledged by the Legislature and remains unchanged.

### C. SB 825 Also Reconfirmed the Attorney General's Primary Enforcement Authority to Regulate and Remediate Such Practices

What is the Attorney General's enforcement role in the area of California and federal laws involving consumer and commercial lending practices after SB 825?

Again, like AB 1864, the primary enforcement authority of Bonta's office to bring civil actions under the UCL or criminal prosecutions continues under SB 825's statutory scheme, as the Attorney General acting within his authority as the "chief legal officer" of the state. The legislative history of SB 825 contains this unequivocal recitation of Bonta's enforcement authority:

> *Existing state UDAAP authority over exempted licensees*: **The state Attorney General**, district attorneys, some county counsel, or some city attorneys already have authority to utilize Business and Professions Code Chapter 4, the Unfair Trade Practices Act, commonly referred to as Unfair Competition Law or UCL. Unlike the federal CFPA Dodd-Frank standards, "unfair" and "deceptive" under the UCL are determined through case law, while "abusive" generally shares the standard used federally. **Thus exempted entities are already subject to UDAAP laws in California through different enforcement agencies**.

https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202520260SB825 (SB 825, Assembly Floor Analysis, , RJN Ex. 2 at 2, emphasis added).) RJN Ex. 4 at 5-6 [SB 825, Assembly Cmt. on Banking & Finance Analysis, July 3, 2025].)

According to the CFPB's May 2022 bulletin, the California Attorney General is among the authorized "enforcement agencies" who regulates and remedies UDAAP violations. (RJN Ex. 5.)

Regarding California's regulation and enforcement of "prohibited acts" involving consumer or commercial "financial products and services," "the *bill does not limit* the power of the "<u>Attorney General to prosecute violations of civil or criminal laws</u>. … [and] [c]larifies that nothing in the bill limits the authority of any district attorney or city attorney lawfully permitted to bring actions to enforce California's Unfair Competition Act …" i.e., Business & Professions Code section 17200, et seq. (SB 825, Assembly Floor Analysis, Mar. 22, 2025 RJN Ex. 2 at 2-3 (emphasis added).)

A coalition of banks, mortgage lenders, credit unions and other non-bank lenders opposed SB 825's expansion of DFPI's enforcement powers on the grounds that:

> SB 825 upends the compromise reached in 2020 that resulted in passage of the California Consumer Financial Protection Law [AB 1864]. We believe now, as we did then, that expanding the DFPI's authority to enforce UDAAP claims is

> unnecessary and redundant of both the existing authority of the Attorney General and the Department's own enforcement powers with respect to its licensees. The Department has existing authority alone, or in concert with the Attorney General, to discipline licensees for unfair practices. Further, this new authority will necessarily stretch limited Department resources and compound its current fiscal challenges - again with no clear showing as to why existing state enforcement powers are inadequate.

(RN Ex. 2 at 4; RJN Ex. 4 at 13 (first bracketed text added).)

The Attorney General's primary enforcement powers to bring civil, criminal or administrative actions for alleged UDAAP violations (including any "unlawful" or "unfair" practices in providing "financial products and services") as defined under the Business and Professions Code remained unchanged with the passage of SB 825 as of January 1, 2026. While the independent authority of DFPI has increased, the California Legislature was aware of those enforcement powers explicitly conferred upon both state agencies when considering the amendments passed by SB 825.

Accordingly, the Courts's rationale for dismissing this action on the basis that the Attorney General does not have sufficient "direct" or "indirect" powers to enforce section 2924.13's definition of "unlawful practices" concerning mortgage loans secured by subordinate trust deeds is factually and legally mistaken. By this motion, Plaintiffs seek relief to alter, amend or vacate the dismissal of this action pursuant to Federal Rules of Civil Procedure 59 and 60. Should the dismissal be set aside, they ask the Court for leave to file their Second Amended Complaint.

## IV. <u>LEGAL ARGUMENT</u>

### A. STANDARDS FOR POST-JUDGMENT RELIEF UNDER RULES 59 AND 60

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) asks the district court to correct a substantive judicial error or factual mistake that resulted in its decision within 28 days after entry of judgment. (FRCP Rule 59(e) advisory committee's note to 1946 amendment; see *White v. N.H. Dep't of Emp't. Sec.*, 455 U.S. 445, 451 (1982); *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).) The grounds

are akin to a motion for a "new trial" under Rule 59(a), and post-judgment relief is available at any stage where the Court dismisses an action "with prejudice" on the pleadings, as in this case, by granting defendant's motion under Rule 12(b). (*Arthur v. King*, 500 F.3d 1335, 1342 (11th Cir. 2007); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir. 1995) (*Hamid*).)

Courts have ample discretion to grant relief under FRCP 59(e). (*Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022). However, they typically do so sparingly, and grant motions to alter or amend a judgment only in exceptional circumstances when the error or mistake has been clearly demonstrated. (*McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc).)

Grounds justifying relief under Rule 59(e), including those raised by this motion, include:

- Correcting a clear error of law or fact;
- An intervening change in the controlling law;
- Preventing a manifest injustice.

Rule 60(b) generally provides that, within one year, a judgment may be vacated due to:

(1) mistake, inadvertence, surprise, or excusable neglect;

(4) the judgment is void;

…; or

(6) any other reason that justifies relief.

By timely seeking correction of substantive errors or mistakes under Rule 59(e) and 60(b), a party may be able to have the district court correct the mistake in the first instance, and avoid the burden, time, and expense of an unnecessary appeal. (*Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008); *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).) The order granting or denying a post-judgment motion is subsumed within either party's appeal from the final judgment, and while generally involving the district court's broad discretionary powers, dismissal of an action for failure to state a claim as a matter of law is reviewed de novo. (*Hamid*, *supra*, 51 F.4th at p. 1414.)

///

///

///

### B. THE JUDGMENT OF DISMISSAL IS BASED UPON CLEAR ERRORS OF FACT AND LAW

#### 1. The Attorney General Has the Explicit Authority to Uphold and Enforce California and Federal Laws Involving Alleged "Unlawful Practices" Concerning the "Financial Products and Services" At-Issue

In granting Bonta's motion to dismiss, this Court accepted his argument that the enumeration of "unlawful practices" set forth in section 2924.13 "provides for its enforcement by borrowers in state court civil proceedings involving both nonjudicial and judicial foreclosures. The statute does not in any way authorize the defendant state attorney general to pursue a civil or administrative action in order to enforce the statute." (Doc. No. 51 at 8.)

Respectfully, that conclusion is based upon clear errors of fact and law. The Supreme Court and Ninth Circuit employ the "some connection" standard for determining whether an action challenging the constitutionality of a statute or regulation against the state's enforcement officers in their official capacity has sufficient nexus to that officer's enforcement authority. (See *Matsumoto v. Labrador*, 122 F.4th 787, 802-803 (2024) (*Matsumoto*).) The present action amply satisfies that test.

State and federal laws governing lending and foreclosure practices explicitly empower the California Attorney General to investigate, coordinate with other state agencies, and directly bring enforcement actions in state and federal court against "covered persons" (e.g., Plaintiffs) for any alleged "violation" of consumer finance laws, including those that section 2429.13 purports amount to "unlawful practices" by reference to the Federal Truth in Lending Act (TILA) and the Real Estate Settlement Act (RESPA). (RJN Ex. 5 at 1-3.)

The dismissal order analyzes Bonta's claim of sovereign immunity in light of *Ex Parte Young*. (Doc. 51 at 6-8.) Plaintiffs submit that his arguments and the order misapply controlling precedent in ruling that California's Attorney General is entitled to such immunity:

The Eleventh Amendment precludes federal courts from hearing "suits brought by a state citizen against the state or its instrumentality in the absence of consent." (*Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (*Mecinas*).) Despite this prohibition, there is an exception under the United States Supreme Court's *Ex parte Young* doctrine that allows "actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged

violations of federal law," (*Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)), provided that the officer has "*some connection* with the enforcement of the act." (*Matsumoto*, *supra*, 122 F.4th at p. 903.)

The Ninth Circuit's recent application in *Matsumoto* of the "some connection" test is instructive: There, an Idaho criminal statute defined the crime of "abortion trafficking" as procuring an abortion or obtaining an abortion-inducing drug for an unemancipated minor with the intent of concealing the abortion from the minor's parents. The statutory framework extended prosecutorial discretion to the State Attorney General if local law enforcement officials declined to bring charges against the alleged trafficker. (*Matsumoto*, *supra*, 122 F.4th at p. 800.) The *Matsumoto* court applied the plain meaning of *Ex parte Young*'s standard as only requiring that the Attorney General (the state official subject to suit) have some "relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" (*Id.* at p. 802 (citing *Mecinas*, *supra*, 30 F.4th at 903-904, quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004 (*Wasden*)).)

The *Matsumoto* challengers' action against the Idaho Attorney General successfully raised issues regarding the unconstitutionality of certain aspects of the trafficking statute, obtaining declaratory and injunctive relief enjoining enforcement of them. Finding that the Attorney General "in his official capacity" was a proper defendant for that purpose, the Ninth Circuit held:

> Attorney General Labrador's criminal enforcement role under [the Idaho law] also clears the low bar set by our sister circuits' interpretations of *Ex parte Young. See, e.g.*, *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) ("All that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." (internal quotation marks omitted)); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040-41 (6th Cir. 2022) ("direct criminal enforcement authority" is not necessary for *Ex parte Young* to apply) (quoting *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018)); *Frank v. Lee*, 84 F.4th 1119, 1132-33 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1349, 218 L. Ed. 2d 424 (2024) (requiring only some "statutory duties" connected to enforcement); *City of*

> *S. Miami v. Governor*, 65 F.4th 631, 644 (11th Cir. 2023) (finding that "sufficient contact with the state officers that implemented the law" could satisfy).

(*Matsumoto*, *supra*, 122 F.4th at p. 803 (first bracketed text added).)

*Matsumoto* continues, "[t]hat connection does not need to be primary authority to enforce the challenged law[,] … '[n]or does the attorney general need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." (*Matsumoto*, *supra*, 122 F.4th at p. 803 (quoting *281 Care Comm. v. Arneson*, 638 F.3d 621, 632-633 (8th Cir. 2011).) The Idaho Attorney General's designated role to enforce the challenged law "far exceed[s]" this "modest requirement." (*Ibid*. (quoting *Mecinas*, *supra*, 30 F.4th at p. 904).)

Bonta's "connection" to the enforcement of ostensible "unlawful practices" set forth in section 2924.13 is the same. Bonta's enforcement authority, newly illuminated by SB 825, "far exceeds" the "mere scintilla of enforcement by the relevant state official with respect to the challenged law." (*Matsumoto*, *supra*, 122 F.4th at p. 803.) The following discussion of those powers illustrate the point:

Bonta as California's Attorney General has the explicit "enforcement authority" under California Financial Code section ~~90015~~ 90017 to bring enforcement actions for alleged violations of UDAAP as defined by California Unfair Competition Law. His office may do so alone or in collaboration with DPFI. (See Cal. Fin. Code § 90017.) According to the CFPB May 2022 bulletin, Bonta is furthermore empowered to bring actions to enforce alleged violations of the federal TILA and RESPA regulations – among those federal regulations that are the basis of the challenged "unlawful practices" set forth in section 2924.13, subdivisions (b) and (c) . (RJN Ex. 5 at 1-3.)

The Courts within this District have addressed and rejected similar arguments by California state officials that Plaintiffs raising constitutional challenges lacked standing where those officials "disavowed" their authority, or their intention, to enforce a particular statute.

For example, Judge O'Neill in *Valley View Health Care, Inc. v. Chapman*, 992 F.Supp.2d 1016, 1033 (E.D. Cal. 2014) (*Valley View*), in granting a permanent injunction against the enforcement of preempted California Health and Safety Code statutes and regulations that barred the arbitration of "Patient's Bill of Rights" claims, stated:

> [Plaintiffs contend] that lack of current enforcement and the Department's disavowal of enforcement fail to remove a "realistic" danger of enforcement. *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988) ("[w]e are not troubled by the pre-enforcement nature of this suit.... We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution"); *San Francisco County Democratic Cent. Committee v. Eu,* 826 F.2d 814, 822 (9th Cir.1987) (lack of enforcement disregarded when "plaintiffs' uncontroverted affidavits show that they have consistently, if reluctantly, obeyed the statutes in conducting party affairs"); *Lopez v. Candaele,* 630 F.3d 775, 788 (9th Cir. 2010) ("the government's disavowal [of enforcement] must be more than a mere litigation position"); *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 383 (2nd Cir.2000) (although State lacks intention to sue, "there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation"); *see also Mobil Oil Corp. v. Attorney General of the Commonwealth of Virginia,* 940 F.2d 73, 76 (4th Cir.1991) (plaintiff has standing where "the Attorney General has not ... disclaimed any intention of exercising her enforcement authority"); *KVUE, Inc. v. Moore,* 709 F.2d 922, 930 (5th Cir.1983) (plaintiff has standing where "[t]he state has not disavowed enforcement"), *aff'd,* 465 U.S. 1092 …(1984).

"Despite the Department's claims of non-enforcement, the challenged arbitration laws remain effective and in turn subject to enforcement" against skilled nursing homes within the purview of the State agency's regulatory authority. (*Valley View, supra,* 992 F.Supp.2d at p. 1035.)

More recently, in *California Chamber of Commerce v. Bonta*, 781 F.Supp.3d 1071, 1083 (E.D. Cal. 2025), appeal dismissed (9th Cir., May 29, 2026, No. 25-3534) 2026 WL 1618559, Judge Calabretta granted a permanent injunction against enforcement of Proposition 65 regulations by the State of California or private litigants that would have compelled the California Chamber of

Commerce's members to post "cancer warnings" on their products. The fact that the enforcement remedy under Proposition 65 was split between the right to sue by private citizens or Bonta as attorney general did not eliminate plaintiffs' standing:

> [Plaintiffs] establish a credible threat of enforcement against CalChamber's members such that they have standing to challenge the constitutionality of Prop 65's compelled warning such that they have standing to challenge the constitutionality of Prop 65's compelled warning. *See, e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (threatened enforcement of a law creates a cognizable Article III injury); *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018) (party had standing because "even if the Attorney General would not enforce the law," private citizens had a right of action to sue for damages).

781 F.Supp.2d at p. 1083; accord, *California Chamber of Commerce v. Becerra*, 529 F.Supp.3d 1099, 1114 (E.D. Cal. 2021) (Trade Association and members demonstrated a credible threat of civil, criminal and administrative action by California officials), *aff'd, California Chamber of Commerce v. Council for Education & Research on Toxics,* 29 F.4th 468 (9th Cir. 2022).

The Ninth Circuit likewise affirmed the preliminary injunction issued by Judge Mueller in the Proposition 51 employment arbitration "preemption" case, *Chamber of Commerce of the United States v. Becerra*, 438 F.Supp.3d 1078, 1095 (E.D. Cal. 2020) (the statute posed a credible threat of enforcement by State officials or private litigants), *aff'd sub nom*. *Chamber of Commerce of United States v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023). As the Ninth Circuit panel held, Plaintiffs credibly demonstrated the unconstitutionality of Proposition 51: "The threat of criminal and civil liabilities is intended to have a deterrent effect, [citation omitted] and so it is clear that the penalties imposed by AB 51 inhibit an employer's willingness to create an arbitration contract with employee. (*Chamber of Commerce of the United States v. Bonta*, *supra*, 62 F.4th at pp. 486–487.) The courts must '"ensure that 'private agreements to arbitrate are enforced according to their terms' even in the face of state laws imposing different requirements on the contracting parties." (*Id*. at p. 489.)

///

By the same token, here, section 2924.13 contains an array of civil, criminal and administrative remedies that may be imposed by either the Attorney General or other California regulatory agencies with oversight of "financial products and services" (now including DFPI), regardless of the licensed status of the provider or servicer.

The Court's dismissal order (Doc. 51 at 12-13) aptly recites that: "The unlawful prong of the UCL [Cal. Business & Professions Code, § 17200] 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."' *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted); *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020)." However, based upon a New York district court decision, the order adopts Bonta's erroneous argument that "if enforcement through the UCL was sufficient to maintain an *Ex Parte Young* action against him, then "it would effectively eliminate sovereign immunity for [defendant] for any statute that could conceivably be said to regulate business practices." (Doc. No. 51 at 13, quoting Bonta's Letter Brief, Doc. No. 28 at 10.)

The New York decision is inapt. California case law, and the practice of the California Attorney General and regulatory state agencies (such as DFPI), demonstrates that the "borrowing" of alleged "unlawful practices" from other California statutes is routinely used as a basis for bringing civil and administrative enforcement actions against California licensees. Although the CCFPL and related UDAAP laws were only enacted five years ago by AB 1864, DFPI's website includes press releases touting the "millions of dollars" in administrative fines and settlements with regulated providers and servicers of "financial products"; including lenders and mortgage servicers. (See RJN Ex. 7.) The California Attorney General Office's website includes links to numerous UCL settlements, with links to UCL complaints, including the $8 billion settlement of alleged "unlawful" and "unfair" subprime mortgage lending and foreclosure practices committed during by Countrywide Savings and affiliates (which resulted in over $3 billion in restitution and penalties allocated to California borrowers). (~~RJN Ex. **~~. **Link: CA Dept. of Justice website**.)

The California Supreme Court's decision in *Rose v. Bank of America, N.A.*, 57 Cal.4th 390, 394 (2013) (*Rose*), illustrates how the broad reach of the UCL involving "[state or] federal statutes,

including those governing the financial industry, may serve as the predicate for a UCL cause of action." *Rose* was a putative class action brought by private litigants under "[t]he federal Truth in Savings Act (TISA; 12 U.S.C. § 4301 et seq.) [that] regulates banks' disclosures to customers. … This case involves the effect of that repeal on claims brought under the unfair competition law (UCL; Bus. & Prof.Code, § 17200 et seq.)." (*Id*. at pp. 393-394.)

The *Rose* court rejected the lender-defendant's argument that "Congress's intent to bar private actions under TISA is demonstrated by its rejection, in 2001, of a proposed amendment seeking to restore the provision for civil actions formerly found in section 4310. (H.R. No. 1057, 107th Cong., 1st Sess., § 3, p. 4 (2001).) However, this failed amendment says nothing about Congress's intent with respect to *state law* claims. The retention of section 4312, allowing states to maintain laws consistent with TISA, demonstrates the intent to permit state law remedies" and those remedies di not preclude the UCL action brought by the *Rose* plaintiffs. (*Rose, supra*, 57 Cal.4th at p. 399 (italics in original).)

Whether or not a private right of action is extended by a particular financial protection statute, remedies are among the "broad" array of enforcement mechanisms available to state officials, including the Attorney General and licensing agencies. (See Plaintiffs' Letter Brief, Doc. 49 at 2-3.) As in *Matsumoto* and the other standing cases discussed above, Bonta's enforcement nexus to the challenged unlawful practices described by section 2924.13 is hardly "hypothetical," "tenuous," or "[im]plausible." (*Matsumoto, supra*, 122 F.4th at p. 800.)

**2. The Judgment is Likewise Contrary to the Legislature's Intervening Adoption of SB 825 – Expanding the Enforcement Powers of DFPI and Acknowledging the Attorney General's Primary Enforcement Jurisdiction Over Ostensible "Unlawful Practices" Involving Financial Products and Services, Including Secured Mortgage Loans**

When SB 825 expanded the enforcement authority of DFPI effective in January 2026 regardless of the licensing status of the providers or servicers of regulated "financial products," that enactment did not supplant the Attorney General's continued enforcement authority.

> **What this Bill Does NOT Do**:
>
> … [¶] It does not change the fact that the licensed exemptees are already subject to UDAAP enforcement in California through the Attorney General and select other law enforcement.

(SB 825 Assem. Bank & Fin. Cmt. Analysis, RJN Ex. 3 at 12.)

Sections 90008 and ~~900015~~ 90017 of the Financial Code expressly preserve and continue to confer that authority upon the Attorney General.

Both the Attorney General and DFPI have at least co-extensive enforcement powers over any licensee who provides "financial products or services" within the meaning of UDAAP. It defies logic and the plain meaning of language for Defendant Bonta to argue that the supposed "unlawful practices" regarding mortgage loans secured by subordinate liens enumerated by section 2924.13 (b) and (c) somehow do not qualify as "financial products or services."

The motion to set aside or vacate should be granted based upon clear mistakes of fact and law. To deny these Plaintiffs standing to challenge the constitutionality of section 2924.13 by requiring them to await an appeal of this question of law for up to a year or more, while these issues are litigated piecemeal by private litigants, is inefficient and would be manifestly "unjust."

## V. THE COURT SHOULD VACATE AND SET ASIDE THE JUDGMENT OF DISMISSAL AND ALLOW PLAINTIFFS LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT TO ADD THE COMMISSIONER OF DFPI AS A DEFENDANT

Even if the Court concludes that the First Amended Complaint did not sufficiently allege a defendant with the requisite enforcement connection to satisfy Ex parte Young, dismissal without leave to amend is no longer warranted in light of the Legislature's intervening enactment of SB 825 and the expanded enforcement authority now vested in the DFPI's Commissioner. Generally, leave to amend should be freely granted when justice so requires. (Fed. R. Civ. P. 15(a)(2).) The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lopez v. Smith* 203 F.3d 1122, 1130 (9th Cir. 2000). A dismissal without leave to amend was therefore contrary to our longstanding rule that "leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect." Id.

Here, Plaintiffs seek prospective declaratory and injunctive relief challenging the constitutionality of Civil Code section 2924.13. Since the Court entered its dismissal order, the Legislature has clarified and expanded DFPI's authority to regulate and remediate alleged unlawful, unfair, deceptive, or abusive acts and practices involving providers of financial products and

services. As discussed above, based on SB 825, DFPI now expressly asserts jurisdiction over banks, mortgage lenders, mortgage servicers, escrow agents, and other entities affected by section 2924.13, regardless of whether those entities are directly licensed by the DFPI. Consequently, if the Court remains unpersuaded that Attorney General Bonta alone possesses a sufficient enforcement nexus, the Commissioner of DFPI is plainly an appropriate defendant whose authority independently establishes the requisite connection to enforcement of the challenged statutory scheme.

The enactment of SB 825 while the parties' motions were pending constitutes significant intervening authority bearing directly upon the standing and sovereign-immunity issues that formed the basis for dismissal. It would be inequitable to require Plaintiffs to commence an entirely new action asserting the same constitutional claims against an additional state official whose enforcement authority has now been expressly recognized and expanded by the Legislature. Judicial economy, fairness, and the strong federal policy favoring resolution of claims on their merits all weigh heavily in favor of reopening the judgment and permitting amendment.

Moreover, the amendment would not prejudice the Defendants. Plaintiffs promptly sought post-judgment relief after entry of the dismissal order and submitted a proposed Second Amended Complaint with this Motion identifying the additional defendant and the statutory authority establishing his enforcement connection to the challenged law. The proposed amendment does not alter the fundamental nature of the action or introduce unrelated claims. Rather, it addresses the precise jurisdictional concern identified by the Court and ensures that all state officials possessing enforcement authority over the challenged statutory framework are properly before the Court.

Accordingly, Plaintiffs respectfully request that the Court vacate the judgment entered on June 4, 2026, and permit the filing of the lodged Second Amended Complaint naming the Commissioner of the DPFI, in his official capacity, as an additional defendant. Doing so will allow the parties and the Court to address the important constitutional questions presented by this action on a complete record and with the participation of the state officials charged with enforcing the challenged law.

///

## VI. CONCLUSION

For all these reasons, Plaintiffs respectfully submit that this motion to alter, amend or vacate the Judgment dismissing this action should be granted under Rules 59 and 60, and if the Court deems it appropriate, they should be allowed leave to file their Second Amended Complaint which is lodged concurrently with the motion.

DATED: July 2, 2026

Respectfully submitted,

**BUCHALTER LLP**

By: *//s// Harry W.R. Chamberlain II*
Harry W.R. Chamberlain II

**WRIGHT, FINLAY & ZAK, LLP**

By: *//s// T. Robert Finlay (as authorized 7/2/2026)*
T. Robert Finlay

Attorneys for Plaintiffs, CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association, UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual;; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership