**BUCHALTER LLP**
Harry W.R. Chamberlain II (Bar No. 95780)
Email: *hchamberlain@buchalter.com*
Jason E. Goldstein (Bar No. 207481)
Email: *jgoldstein@buchalter.com*
Robert S. McWhorter (Bar No. 226186)
Email: *rmcwhorter@buchalter.com*
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone:      916.495.5170

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay (Bar No. 167280)
Email: *rfinlay@wrightlegal.net*
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone:  949.477.5050

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA MORTGAGE ASSOCIATION, a California nonprofit association; CALIFORNIA CREDIT UNION LEAGUE, a California nonprofit association; UNITED TRUSTEES ASSOCIATION, a nonprofit association; CHEN WANG QIN, an individual; SURF CITY INVESTORS, LLC, a California limited liability company; STEPHEN NG, an individual; NDETAIL CAPITAL LLC, a California limited liability company; BALBOA, LLC, a California limited liability company; WILLIAM TERRY HUNEFELD, an individual; and POSTCITY FINANCIAL CREDIT UNION, a non-profit financial cooperative; BEACON DEFAULT MANAGEMENT, INC., a California corporation; and ZBS LAW, LLP, a California limited liability partnership,<br><br>                       Plaintiffs,<br><br>       v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>                       Defendant. | Case No. 2:25-cv-02614-DAD-CKD<br><br>**[CORRECTED Doc. No. 57-1] REQUEST  FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' POST-JUDGMENT MOTION;**<br><br>**INDEX OF APPENDED  RJN EXHIBITS; SUPPORTING DECLARATION OF HARRY W.R. CHAMBERLAIN II**<br><br>Date:        October 19, 2026<br>Time:        1:30 p.m.<br>Judge:       Hon. Dale Drozd<br>Crtrm:       4<br>Location:      501 I St, 15th Floor<br>              Sacramento, CA 95814 |

**[CORRECTED] REQUEST FOR JUDICIAL NOTICE ISO PLAINTIFFS' POST-JUDGMENT MOTION**

## REQUEST FOR JUDICIAL NOTICE

Plaintiffs r requests that this Court judicially notice the exhibits attached to and authenticated by the Declaration of Harry W.R. Chamberlain II ("Chamberlain Declaration") and RJN Exhibits that Plaintiffs file herewith.

| Exhibit | Description |
|---|---|
| 1 | ~~June 30, 2025,~~ Legislative Counsel's Digest, California Legislature bill, SB 825 (Oct. 6, 2025, 2025 Stats, Ch. 355)<br><br>[RJN Exs. 1-4 and 6 are reprinted from the California Legislative Information website's "**Bill Analysis**" history **links** for the bills refererenced at **legisinfo.legislature.ca.gov**] |
| 2 | ~~June 24, 2025, operative language of Section 2924.13 taken from Senate Bill No. 681~~ SB 825 Assembly Floor Analysis (Aug. 22, 2025) |
| 3 | ~~June 24, 2025, operative language of Section 2924.13 taken from Senate Bill No. 681 ("SB 681") and added into AB 130~~ SB 825 Assemby Banking & Fin. Cmte. Analysis (July 7, 2025) |
| 4 | SB 825  AssemblyBanking & Fin. Cmte Analysis (July 3, 2025) |
| 5 | CFPB Rule, "Authority of States" (87 Fed. Reg. 319430) |
| 6 | AB 1864 Senate Floor Analysis (Third Reading) (Aug. 11, 2020) |
| 7 | DFPI website press releases - case settlements |

Plaintiffs bring this Request under Federal Rule of Evidence 201. This Request supports Plaintiffs' motion for preliminary injunction under Federal Rule of Civil Procedure 65. Plaintiffs bases this request upon the accompanying Memorandum of Points and Authorities, the supporting Declaration of Plaintiffs' counsel Harry W.R. Chamberlain II, the files and records in this action, and such other evidence as may be introduced at the hearing on this matter.

DATED:  July 2, 2026

**BUCHALTER LLP**

By:    //s// *Harry W.R. Chamberlain II*

**WRIGHT, FINLAY & ZAK, LLP**

By:  *//s// T. Robert Finlay (as authorized 7/2/2026)*
T. Robert Finlay
Attorneys for Plaintiffs, CALIFORNIA MORTGAGE, et al.

**[CORRECTED] REQUEST FOR JUDICIAL NOTICE ISO PLAINTIFFS' POST-JUDGMENT MOTION**

# SUPPORTING MEMORANDUM OF POINTS  & AUTHORITIES AND DECLARATION OF COUNSEL

**[CORRECTED] REQUEST FOR JUDICIAL NOTICE ISO PLAINTIFFS' POST-JUDGMENT MOTION**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      THIS COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE OF EXHIBITS**

In ruling on Plaintiffs' Post-Judgment Motion under FRCP Rules 59 and 60, related request for leave to file their proposed Second Amended Complaint, a district court may consider material beyond those matters alleged in the complaint in two circumstances. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The district court may consider matters beyond the complaint if those matters are judicially noticeable. *Lee*, 250 F.3d at 688. "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," if the facts noticed are not "subject to reasonable dispute." *Intri-Plex Technologies, Inc. v. Crest Grp. Inc*., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting *Lee*, 250 F.3d at 689).  Plaintiffs request that this Court take judicial notice of matters of public records and public declarations made by official agencies of the State of California and the United States government  – various pleadings and motions filed in MMI's patent infringement actions in other district courts. *See Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279 (9th Cir. 1986) (noting district courts may take judicial notice of "matters of public record" without converting a Rule 12(b)(6) motion to one for summary judgment). Federal Rule of Evidence 201 empowers this Court to judicially notice facts not reasonably subject to dispute if one of two conditions exists. First, the proffered judicially noticeable fact is generally known within the territorial jurisdiction of the trial court. Fed. R. Evid. 201(b)(1). Second, the proposed judicially noticeable fact is capable of accurate and ready determination from a source whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). A district court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1).

The Ninth Circuit has long recognized that Evidence Rule 201 authorizes district courts to take judicial notice of other district court proceedings directly related to "matters before the court." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). District courts may take judicial notice of pleadings and matters of public record in other district court files because the files constitute public records and originate from a source

**[CORRECTED] REQUEST FOR JUDICIAL NOTICE ISO PLAINTIFFS' POST-JUDGMENT MOTION**

whose accuracy cannot be questioned. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1005 n.9 (N.D. Cal. 2015); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) ("Proper subjects of judicial notice when ruling on a motion to dismiss include …court documents already in the public record and documents filed in other courts ….") (internal citations omitted). From other proceedings, district courts may take judicial notice of the existence of a "particular order, motion, pleading, or judicial proceeding, which is a matter of public record…." *U.S. v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).

## II.      CONCLUSION

For these reasons, Plaintiffs request this Court take judicial notice.

[CORRECTED] REQUEST FOR JUDICIAL NOTICE ISO PLAINTIFFS' POST-JUDGMENT MOTION

## DECLARATION OF HARRY W.R. CHAMBERLAIN II

I, Harry W.R. Chamberlain II, declare as follows:

1.    I am a licensed California attorney duly admitted to practice before this court.  I am a partner of Buchalter LLP, one plaintiffs' attorneys of record in this case. I have personal knowledge of the facts stated herein and if called as witness could and would so testify.

2.    RJN Exhibits One through ~~Four~~ Seven indexed above and appended to this Request for Judicial Notice were gathered and compiled by from public records and sources of reasonably indisputable accuracy.

I declare under penalty of perjury the above is true and correct. Executed on July 2, 2026 at Los Angeles, California.

//s// *Harry W.R. Chamberlain II*
Harry W.R. Chamberlain II

[CORRECTED] REQUEST FOR JUDICIAL NOTICE ISO PLAINTIFFS' POST-JUDGMENT MOTION

# RJN EXHIBIT "1"

 

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

## SB-825 Consumers: financial protection.  (2025-2026)

SHARE THIS:                                           Date Published: 10/07/2025 09:00 PM

### Senate Bill No. 825

### CHAPTER 355

An act to amend Section 90002 of the Financial Code, relating to finance.

[ Approved by Governor  October 06, 2025. Filed with Secretary of State October 06, 2025. ]

### LEGISLATIVE COUNSEL'S DIGEST

SB 825, Limón. Consumers: financial protection.

Existing law, the California Consumer Financial Protection Law (CCFPL), requires the Department of Financial Protection and Innovation, headed by the Commissioner of Financial Protection and Innovation, to regulate consumer financial products or services under California consumer financial laws. The CCFPL makes it unlawful for a covered person or service provider, as defined, to engage in certain deceptive or abusive acts or practices with respect to consumer financial products or services. The CCFPL exempts from its provisions a person or employee of that person to the extent that person or employee is acting under the authority of certain licenses, certificates, or charters issued by the department, including licensed escrow agents and finance lenders.

This bill would provide that nothing in the above-described exemption shall be deemed to prevent the commissioner from using the authority provided by the CCFPL to enforce the above-described provision on deceptive or abusive acts or practices.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: no

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 90002 of the Financial Code is amended to read:

**90002.** (a) This division shall not apply to a licensee, or an employee of a licensee, of any state agency other than the Department of Financial Protection and Innovation to the extent that licensee or employee is acting under the authority of the other state agency's license.

(b) (1) Except as provided by paragraph (2), this division shall not apply to a person or employee of that person to the extent that person or employee is acting under the authority of one of the following licenses, certificates, or charters issued by the Department of Financial Protection and Innovation:

(A) Any person licensed as an escrow agent under Division 6 (commencing with Section 17000) of the Financial Code.

(B) Any person licensed as a finance lender, broker, program administrator, or mortgage loan originator under Division 9 (commencing with Section 22000) of the Financial Code.

(C) Any person licensed as a broker-dealer or investment adviser under Division 1 (commencing with Section 25000) of Title 4 the Corporations Code.

(D) Any person licensed as a residential mortgage lender, a mortgage servicer, or a mortgage loan originator under Division 20 (commencing with Section 50000) of the Financial Code.

(E) Any person licensed as a check seller, bill payer, or prorater under Division 3 (commencing with Section 12000) of the Financial Code.

(F) Any person licensed as a capital access company under Division 3 (commencing with Section 28000) of Title 4 of the Corporations Code.

(G) Any person doing business under a license, charter, or certificate issued under the Financial Institutions Law, including Division 1 (commencing with Section 99), Division 1.1 (commencing with Section 1000), Division 1.2 (commencing with Section 2000), Division 1.6 (commencing with Section 4800), Division 2 (commencing with Section 5000), Division 5 (commencing with Section 14000), Division 7 (commencing with Section 18000), and Division 15 (commencing with Section 31000) of the Financial Code.

(2) Nothing in this subdivision shall be deemed to prevent the commissioner from using the authority provided by this division to enforce Section 90003.

(c) This division shall not apply to a bank, bank holding company, trust company, savings and loan association, savings and loan holding company, credit union, or an organization subject to oversight of the Farm Credit Administration, when acting under the authority of a license, certificate, or charter under federal law or the laws of another state.

(d) This division applies to all other covered persons, as defined in subdivision (f) of Section 90005.

RJN EXHIBIT "2"

SENATE THIRD READING
SB 825 (Limón and Grayson)
As Amended  March 24, 2025
Majority vote

## SUMMARY

This bill provides the Department of Financial Protection and Innovation (DFPI) independent enforcement authority for unfair, deceptive, and abusive acts and practices by licensees otherwise exempt from the California Consumer Financial Protection Law (CCFPL).

**Major Provisions**
Provides that persons exempted from the California Consumer Financial Protection Law are not exempt from the authority of the commissioner of the DFPI when they are engaged in unfair, deceptive or abusive acts or practices (UDAAP) with respect to consumer financial services or products.

## COMMENTS

*The Current State of Law:*

*Exempted Licensees:* The following categories of persons are exempt from the CCFPL: 1) Licensees of state agencies other than DFPI to the extent that such entities are acting under the authority of the other state agency's license; 2) specified categories of licensees of DFPI, including, but not limited to, banks, credit unions, residential mortgage lenders, finance lenders, and money transmitters; 3) banks, credit unions, and other financial institutions acting under the authority of a license, certificate, or charter under federal law or the laws of another state. (Fin. Code Section 90002)

*DFPI existing state authority over exempted licensees*: The DFPI has different enforcement authority across different licensing frameworks that govern the various exempted persons. This results in different triggering violations and enforcement procedures and outcomes for different licensees who commit the same harm to consumers. Thus, bad actors in the financial sector who commit the same UDAAP violations may enjoy a lower penalty or less rigorous enforcement procedure simply based on the type of business it is, not the act it committed. In addition to asymmetrical policy, this also requires a more vast knowledge of enforcement procedure among DFPI staff. Under these licensing regimes, the process is administrative, with a progressive written disciplinary procedural structure before imposing fees which are often capped instead of floored or given in a range. Remedies available under the licenses for all exempted licensees include ancillary relief such as disgorgement, restitution to victims, actual damages, or equitable relief, such as an injunction or license suspension. Each license framework requires criminal intent-level action to trigger discipline.

*DFPI existing UDAAP authority through federal statute*: Currently, the DFPI may pursue UDAAP claims against exempted persons using the federal Consumer Financial Protection Act (CFPA), however, it must first consult with the Consumer Financial Protection Bureau (CFPB) in order to do so. The CFPB may respond in several ways, but most germane to the present issue, it may remove the action to another jurisdiction or appeal any order or judgment to the same extent as any other party in the proceeding. The course of action that the CFPB may take is discretionary, and consideration for the costs and interest of Californians is not required. In the

event that CFPB were to respond with a removal or an appeal to an action as a party, the outcome could be detrimental to public policy, and the lengthy court process would be extremely costly to the state.

*Existing state UDAAP authority over exempted licensees*: The state Attorney General, district attorneys, some county counsel, or some city attorney already have authority to utilize Business and Professions Code Chapter 4, the Unfair Trade Practices Act, commonly referred to as Unfair Competition Law or UCL. Unlike the federal CFPA Dodd-Frank standards, "unfair" and "deceptive" under the UCL are determined through case law, while "abusive" generally shares the standard used federally. Thus exempted entities are already subject to UDAAP laws in California through different enforcement agencies.

*DFPI's existing remedies under the CCFPL*: The CCFPL remedies are victim-centered as well as statutorily deterrent. In addition to the ancillary relief described in the existing licensing framework, the CCFPL enforcement power is buildable based on the action and willfulness of the actor. The DFPI is required to take into account provided mitigating factors when pursuing relief.

*This Bill:* This bill will provide the DFPI, which already oversees CCFPL exempted licensees, with the authority to enforce California's existing UDAAP laws independent of a federal pathway.

**According to the Author**
"With recent changes to the Consumer Financial Protection Bureau, the sole federal agency tasked with enforcement of consumer financial protection laws, consumers will be left with less protections and fewer resources to help them navigate the financial marketplace. SB 825 authorizes DFPI to enforce state consumer financial protection laws over entities they currently regulate, including state banks, state credit unions, independent mortgage companies, nonbank lenders, and payment service providers."

**Arguments in Support**
The Consumer Federation of California, California Low-Income Consumer Coalition, National Consumer Law Center, and the Center for Responsible Lending write, as co-sponsors:

"This straightforward bill authorizes DFPI to enforce state consumer financial protection laws such as the CCFPL over entities they currently regulate, including state-chartered banks, state chartered credit unions, independent mortgage companies, nonbank lenders, and payment service providers.

The bill is needed to bring basic parity to California's regulation of financial products and services. It is simply unfair for the DFPI to have broad enforcement authority against non-licensed providers of financial products and services but not to have that authority against licensed entities that, in many cases, directly compete with non-licensed entities. In addition, consumers are left vulnerable if the DFPI does not have its broadest enforcement authority against the large swaths of the marketplace that are licensed by the DFPI.

Indeed, clear and effective DFPI enforcement authority is more important than ever. In the aftermath of the Great Recession of 2008, when some 10 million Americans lost their homes, Congress created the federal consumer protection watchdog that had been so conspicuously absent in the years leading up to the mortgage crisis: the Consumer Financial Protection Bureau

(CFPB). Through oversight, regulation, and especially enforcement, since its founding in 2011 the CFPB helped stabilize the housing market, create a level playing field within financial markets — and return more than $21 billion dollars to consumers.

Unfortunately, the incoming federal administration has moved to shut down, or otherwise dismantle, the CFPB. California therefore needs to act, right now, to protect consumers and to safeguard honest businesses."

**Arguments in Opposition**
A coalition representing banks, credit unions, mortgage lenders, and other nonbank lenders writes:

"As enacted in 2020, the CCFPL exempts from its scope DFPI licensees and those licensed or registered by other state or federal agencies, because the new program was intended to target new, emerging financial product and service providers entering the California marketplace that were not regulated under the DFPI's existing licensing laws. The new Consumer Financial Protection Division was established within the Department to register and supervise those previously unregulated "covered persons."

SB 825 upends the compromise reached in 2020 that resulted in passage of the California Consumer Financial Protection Law. We believe now, as we did then, that expanding the DFPI's authority to enforce UDAAP claims is unnecessary and redundant of both the existing authority of the Attorney General and the Department's own enforcement powers with respect to its licensees. The Department has existing authority alone, or in concert with the Attorney General, to discipline licensees for unfair practices. Further, this new authority will necessarily stretch limited Department resources and compound its current fiscal challenges - again with no clear showing as to why existing state enforcement powers are inadequate."

## FISCAL COMMENTS

Absorbable costs to DFPI.

## VOTES

**SENATE FLOOR:  28-10-2**
**YES:**  Allen, Archuleta, Arreguín, Ashby, Becker, Blakespear, Cabaldon, Caballero, Cervantes, Cortese, Durazo, Gonzalez, Grayson, Laird, Limón, McGuire, McNerney, Menjivar, Padilla, Pérez, Richardson, Rubio, Smallwood-Cuevas, Stern, Umberg, Wahab, Weber Pierson, Wiener
**NO:**  Alvarado-Gil, Choi, Dahle, Grove, Jones, Niello, Ochoa Bogh, Seyarto, Strickland, Valladares
**ABS, ABST OR NV:**  Hurtado, Reyes

**ASM BANKING AND FINANCE:  7-1-1**
**YES:**  Valencia, Fong, Krell, Michelle Rodriguez, Blanca Rubio, Schiavo, Soria
**NO:**  Dixon
**ABS, ABST OR NV:**  Chen

**SB 825**
Page 4

**ASM APPROPRIATIONS:  11-4-0**
**YES:**  Wicks, Arambula, Calderon, Caloza, Elhawary, Fong, Mark González, Hart, Pacheco, Pellerin, Solache
**NO:**  Dixon, Jeff Gonzalez, Ta, Tangipa


**UPDATED**

VERSION: March 24, 2025

CONSULTANT:  Desiree NguyenOrth / B. & F. / (916) 319-3081          FN: 0001229

RJN EXHIBIT "3"

**SB 825**
Page  1

Date of Hearing:  July 7, 2025

ASSEMBLY COMMITTEE ON BANKING AND FINANCE
Avelino Valencia, Chair
SB 825 (Limón) – As Amended March 24, 2025

**SENATE VOTE**:  28-10

**SUBJECT**:  Consumers:  financial protection

**SUMMARY:**  The bill clarifies the authority provided to the Department of Financial Protection and Innovation (DFPI) to take enforcement action for unfair, deceptive, and abusive acts and practices by licensees otherwise exempt from the California Consumer Financial Protection Law (CCFPL).

**EXISTING LAW**:

**Federal:**

1. Summary: Pursuant to the Consumer Financial Protection Act (CFPA), the Consumer Financial Protection Bureau (CFPB) is the federal analog to the state DFPI. It was established as an independent agency responsible for consumer protection in the financial sector. (12 U.S.C. § 5481 et seq.) "The Bureau shall seek to implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S. C. § 5511 (a).

2. Authority and Enforcement: The CFPB "may take any action authorized under part E (12 U.S.C. § 5561 et seq.) to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S. C. § 5531 (a).

    a. Unfairness means A)the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and (B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S. C. § 5531 (c)

    b. Abusive means (1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or (2) takes unreasonable advantage of—

        i. a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

        ii. the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or

       iii.   the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.12 U.S. C. § 5531 (d).

3.  <u>State Action</u>: Under the CFPA, state authorities and regulators may bring civil action or other appropriate proceedings to enforce provisions of the CFPA against any entity subject to the title. (12 U.S.C § 5552 (a)(1))

    a.  However, **<u>consultation with the CFPB is required</u>** before a state may initiate any action or other administrative or regulatory proceeding against a covered person or service provider subject to the CFPA. (12 U.S.C. §5552 (b)).

    b.  The CFPB may respond by:
       i.  intervene in the action as a party;
      ii.  upon intervening—
         1.  remove the action to the appropriate United States district court, if the action was not originally brought there; and
         2.  be heard on all matters arising in the action; and
      iii.  appeal any order or judgment, to the same extent as any other party in the proceeding may. (12 U.S.C. §5552 (b)(2))

**State:**
1.  The California Consumer Financial Protection Law (CCFPL) provides the DFPI broad nonexclusive oversight and enforcement authority to regulate financial services and products. (Financial Code §90006)

    a.  <u>Authority and Enforcement:</u>
       i.  The DFPI has the following functions, powers and duties 1) Bring and prosecute administrative and civil actions before state and federal courts. 2) Hold hearings and issue publications, results or inquiries and research, and reports that may aid in effectuating the purposes of the law. (Id.)

      ii.  The DFPI has broad enforcement authority to take action against covered persons of service providers who engage in unfair, deceptive or abusive acts or practices (UDAAP) with respect to consumer financial services or products. (Fin. Code § 90012)

    b.  <u>Prohibited Acts:</u> The following are prohibited for a covered person or service provider:
       i.  Engage in unfair, deceptive or abusive acts or practices (UDAAP) with respect to consumer financial services or products.

      ii.  Offer or provide any financial product or service to a consumer that is not in conformity with the financial law, or otherwise, commit any act or omission in violation of a consumer finance law.

      iii.  Fail or refuse to meet the records maintain, access, and auditing requirements and rules issued by the DFPI. (Fin. Code §90003)

   c. <u>Exemptions:</u> The following categories of persons are exempt from the CCFPL:

     i. Licensees of state agencies other than DFPI to the extent that such entities are acting under the authority of the other state agency's license.

     ii. Specified categories of licensees of DFPI, including, but not limited to, banks, credit unions, residential mortgage lenders, finance lenders, and money transmitters.

     iii. Banks, credit unions, and other financial institutions acting under the authority of a license, certificate, or charter under federal law or the laws of another state. (Fin. Code § 90002)

2. In relevant part, the Business and Professions Codes provides that the State Attorney General, District Attorneys, County Counsel (with limitations), and City Attorneys (with population requirements) may enforce unfair competition law (UCL) violations under Section 17200 et seq.

   a. Unfair competition means and includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

     i. Part 3 contains an expansive suite of business activity, for example, advertising, fictitious business names, premium coupons, water treatment devices, and bots.

**FISCAL EFFECT**: Appropriation: No   Fiscal Com.: Yes   Local: No

**COMMENTS**:

**1. <u>Original Drafting</u>**

In 2020, the legislature sought to expand consumer financial protections in California by strengthening the purview of the then existing Department of Business Oversight (DBO) through the passage of AB 1864 (Limón). The California Consumer Financial Protection Law (CCFPL) expanded the enforcement, and regulation authority, as well as subject matter authority of the currently named DFPI, much in the same vein as the Federal CFPB.

Exempted licensees of the CCFPL argue that at the inception of the CCFPL, which happened in parallel with the standing up of the DFPI, exempting specific categories of financial licensees was agreeable because these groups had existing licensing structures. This was an appealing pathway given the large amount of scaffolding that was yet to be put in place for a large number of previously unlicensed newly covered persons. Some of the exempted businesses claim that an agreement with the author was reached during the original drafting based on this rationale, which resulted in the current exemptions.

However, the author refutes that any agreement was struck. AB 1864 was a budget trailer bill. The proposed language provided by the Department of Finance to the Legislature for its consideration already included the exemption of licensees. Regardless of whether any agreement

existed or not, the last five years since the original drafting have changed into a completely different financial regulatory landscape– the most relevant issues are discussed below.

## 2.   <u>Relevant Current State of Federal Priorities</u>

As a priority act for the second Trump Administration, the CFPB quickly became the subject of the public spotlight in February of 2025 beginning when workers of the agency received the infamous stop work order[1]. As of the date of this publishing, the Bureau is in a legal campaign attempting to layoff over 1,200 CFPB employees, which represents over 90% of the agency. This would leave approximately 200 employees to handle all federal matters under the purview of the CFPA for the country. President Trump has made it clear that he intends to dismantle the CFPB and deprioritize regulation of financial institutions.

In a memo from the chief legal officer of the CFPB, Mark Paoletta was explicit in the administration's intentions stating "that **the Bureau would lean on states to carry out more enforcement and supervision activities**, arguing that doing so would allow the agency [ ] "to focus on tangible harms to consumers."[2] [3]

In addition to deeply cutting down agency resources, efforts have been made to undercut previously obtained consumer protections. For example, the CFPB issued a consent order against Wise, an electronic money services provider that misled customers about its ATM fees, and failed to refund remittance fees in the legal timeframe when money did not arrive on time costing consumers thousands of dollars.[4] "By deceiving customers, Wise gave itself an unfair advantage over other competitors in the remittances market," said then CFPB Director Rohit Chopra. "New technology can help make money transfers cheaper and more convenient, but companies must be truthful and live up to longstanding law."

On January 30, 2025, the CFPB ordered the company to pay approximately $450,000 to harmed consumers to resolve claims to at least 16,000 consumers, and a $2.025 million fine to the CFPB's victims' relief fund. On May 15, 2025, after appointing its new commissioner, the CFPB issued an amended consent order that supersedes the previous order reducing Wise's civil penalty fine from $2.025 million to $44,955, a 98% reduction, citing, among other sections, Executive Order 14219 (Feb. 19, 2025). In May 2025, the Consumer Federation of America and The Student Borrower Protection Center published a memorandum detailing the dismissal of 21 pending public enforcement actions by the Trump administration CFPB as well as the reduction of previous consent orders similar to the Wise order.[5]

---

[1] https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-cfpb-doge-access-musk

[2] https://www.npr.org/2025/04/17/nx-s1-5368206/cfpb-layoffs-rif#:~:text=Trump%20administration%20has%20gutted%20an,mass%20layoffs%20for%20April%2028

[3] See also: "*NY must step up to protect consumers as feds step back (Guest Opinion by Samuel Levine & Seth Frotman"*; www-syracuse-com.cdn.ampproject.org/c/s/www.syracuse.com/opinion/2025/05/ny-must-step-up-to-protect-consumers-as-feds-step-back-guest-opinion-by-samuel-levine-seth-frotman.html?outputType=amp. May 29, 2025.

[4] https://wayback.archive-it.org/23481/20250205113447/https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-wise-to-pay-25-million-for-illegal-remittance-practices/

[5] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://consumerfed.org/wp-content/uploads/2025/05/CFPB-Pending-Enforcement-Actions-v2-Fellows-1.pdf

This is a wide deviation from the previous administration's policy agenda and in a short amount of time. The uncertainty is harmful for both consumers and businesses. As a result, states have begun to bolster their existing UDAP (unfair and deceptive acts and practices) statutes.

- On March 13, 2025, New York enacted the Fostering Affordability and Integrity through Reasonable (FAIR) Business Practices Act in direct response to federal regulation.

- In March, the state of Massachusetts announced the adoption of "junk" fee" regulations to help consumers avoid unnecessary costs. It also subpoenaed Robinhood, an online brokerage platform, over launching a new predictions market hubs—a way to allow users to gamble on March Madness college basketball games on its platform.

Five years following the inception of the original bill, it is clear that we are in a different, unforeseen post-COVID financial landscape, both in the market and regulatory space.

## 3.  Different Enforcement Framework

Currently, the DFPI has different enforcement authority across different licensing frameworks that govern the various exempted persons. This results in different triggering violations and enforcement procedures and outcomes for different licensees who commit the same harm to consumers. (See tables below).  As a result, bad actors in the financial sector who commit UDAAP (unfair, deceptive, and abusive acts and practices) violations may enjoy a lower penalty or less rigorous enforcement procedure simply based on the type of business it is, not the act it committed, which is not in the best interest of public policy. In addition to unfair policy, this also requires a more vast knowledge of enforcement procedure among DFPI staff.

## 4.  No Existing Current Independent UDAAP Authority

Interestingly, both proponents and opponents argue that the federal CFPA UDAAP enforcement authority extended to states requires mere **notice** to be provided to the CFPB, and thus, UDAAP authority for the state already exists. But the statutory language is clear, **consultation with the CFPB** is required before a state may initiate any action or other administrative or regulatory proceeding against a covered person or service provider subject to the CFPA. (12 U.S.C. §5552 (b). The rationale behind this requirement is to streamline and coordinate law enforcement efforts between state and federal agencies if multiple agencies do intend to pursue action against a service provider.

However, the CFPB has options for its response, including removing the action to another jurisdiction or to appeal any order or judgment to the same extent as any other party in the proceeding. The course of action that the CFPB may take is discretionary, and consideration for the costs and interest of Californians is not required. In the event that CFPB were to respond with a removal or an appeal to an action as a party, the outcome could be detrimental to public policy, and the lengthy court process would be extremely costly to the state. This type of uncertainty is not prudent for public safety, industry compliance, or state budgeting. Thus, arguably, the requirement to consult with an outside federal agency, and the potential strings attached, do not amount to an "existing authority", independent or otherwise. Additionally, following the June 7th deployment of the National Guard by the Trump administration in California without the

support of Governor Newsom, a volley of threats to funding and resources from both administrations ensued. Given the Trump administration's actions against universities, law firms, individuals, and others who have been perceived to have "wronged" the president, the concern that using federal UDAAP authority could be a cost risk to California is reasonable and warranted.

The closest independent authority for UDAAP violations is under the Business and Professions Code Chapter 4, the Unfair Trade Practices Act, commonly referred to as Unfair Competition Law or UCL. This section only provides authority to pursue claims for UDAAP violations to the Attorney General, district attorneys, county counsel authorized by an agreement with the district for an action involving a violation of county ordinance, or city attorney of a city with a population of at least 750,000 people. Unlike the federal CFPA Dodd-Frank standards, "unfair" and "deceptive" under the UCL are determined through case law, while "abusive" generally shares the standard used federally.

Opposition has raised issues with the fact that the enforcement agencies with existing authority must file a civil suit in order to pursue UDAAP remedies, whereas the DFPI has both civil and administrative law enforcement authority, making UDAAP remedies available through an administrative procedure. "We continue to believe that the powers granted by SB 825 create significant leverage against a state licensed entity when potential violations are brought through an administrative proceeding by the commissioner."

However, the state's current access to UDAAP enforcement under the CFPA, states "authorities and regulators may bring civil action or other appropriate proceedings to enforce provisions of the CFPA against any entity subject to the title." (12 U.S.C § 5552 (a)(1)). And "before initiating any action in a court or other administrative or regulatory proceeding against any covered person as authorized by subsection (a)..." (12 U.S.C § 5552 (b)(1)(A)). This is a clear indication that the state already has the ability to pursue an administrative proceeding to address UDAAP violations through the federal CFPA route. An important point of clarity, administrative proceedings, like arbitration, have rules and procedures and are evaluated by a neutral third party. This avenue tends to be more cost effective while maintaining due process. However, unlike binding arbitration, which is often used in consumer finance contracts imposed by exempted licensees, administrative rulings have a pathway for appeal.

## 5. <u>Oppositions' Concerns</u>

*<u>Stacking Argument 1: Federal Dodd-Frank v. State UCL requirements</u>*

Opposition argues that this would create an additional layer of regulations to keep track of, making work in California overly onerous.

1. The state UDAAP authority works alongside the federal Dodd-Frank requirement. Though the definitions of "unfair" and "deceptive" are elemental in the CFPA, case law still defines the boundaries of interpretation for the elements.

2. The Dodd-Frank definitions of UDAP and the California definitions are not the same by design. In California, the CCFPL allows the DFPI to determine additional actions that would constitute a UDAAP violation, as well, the UCL and prevailing case law create the standard for unfair and deceptive practices. As a state that values innovation and

community responsiveness, the evolving standards of "unfair" and "deceptive" are necessary to keep up with the cultivated industry growth.

3.  The Attorney General and other law enforcement already have the ability to enforce the UCL on the relevant entities, thus all financial entities are already subject to state enforcement of UDAAP violations–this bill only extends that enforcement power to the DFPI which already has authority over these licensees.

4.  Opposition raises concerns that they would be subject to unfair stacking of claims under UCL, (Section 17205 Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.) however, this is already the status quo, see #3. Furthermore, it is a matter of civil procedure to assert claims for multiple causes of action based on best information and belief in any lawsuit, lest the plaintiff seek permission to amend its complaint. This is true of all civil action, whether in state or federal court, agency or private citizen.

5.  PayPal, as an exempt money transmitter licensee, has raised concerns about disproportionality of authority, specifically, that California only represents roughly 11% of the U.S. population but would retain 100% of the federal authority granted for the nation to regulate financial entities doing business in the state.

    a.  First, the scope of authority under the federal CFPA would be extended to the state, or any other state, under the existing provisions of the CFPA with consultation of the CFPB, in whole, not proportion to population.

    b.  Second, this bill does not seek to extend the authority of the federal CFPA to California. This bill explicitly extends the existing state UDAAP authority to currently exempted, but regulated licensees.

    c.  For completeness of the disproportionality argument evaluation, limited data supplied by PayPal shows that California represents 17% of the company's 2024 U.S. money transmitter business. However, at the time of publishing, California is ranked the fourth largest economy globally, consistently ranking in the top five over the last five years.

*Stacking Argument 2: Licensing framework v. UDAAP*

PayPal has also raised concerns over being subjected to CCFPL remedies, specifically the ceiling penalties for "knowing" violations. In pertinent part, the section reads:

> "…for any knowing violation, by a person of this division, rule or final order, or condition imposed by the department, a penalty may not exceed the lesser of 1 percent of the person's total assets, one million dollars ($1,000,000) for each day during which the violation continues, or twenty-five thousand dollars ($25,000) for each act or omission in violation."

To reiterate, this is the current law and standard by which all covered persons under the CCFPL are already subjected. To exempt other financial businesses from being held to the same standard

of public safety and accountability simply because of its entity type is not sound public policy. However, opposition remains steadfast in its belief that it should only be held to the more burdensome enforcement standards required under the licensing laws. Regardless, the enforcement actions available under the CCFPL are tiered and require the commissioner to take into account mitigating factors and appropriateness when seeking remedies; it is designed with proportionality.

Opposition argues that enforcement under UDAAP would create a stacking of penalties for the same violations, however, upon review of all the applicable licensing laws, no overlap of prohibited acts and penalties with UDAAP exist. Consistently, all of the licensing prohibited acts thresholds are a higher than strict liability, and any statutes with fees have a progressive written disciplinary procedural structure before imposing fees, which are then capped, usually around $2,500, with an outlier of a $25,000 cap under Division 1. Corporate Securities Law of 1968, Part 6, Section 25535. Where overlap does exist is in ancillary relief such as disgorgement, restitution to victims, actual damages, or equitable relief, such as an injunction or license suspension. None of these remedies can be stacked. Furthermore, many of the licensing statutes contain a section that specifically allows additional enforcement authority where applicable, which is to be expected given that the prohibited acts require criminal level intent or reckless negligence, thus meeting the lower thresholds of applicable administrative procedures or civil actions.

Example: Mortgage Lenders below, "Nothing in this division limits the power of the state to punish any person for any act that constitutes a crime under any statute. [Fin Code. 2152 (c).] ***The enforcement provisions of this division are in addition to any other enforcement powers that the commissioner may have under law.***" Fin Code 2153

The two subsequent tables are a side-by-side comparison of 1) the threshold triggers for enforcement action and 2) the permitted relief between the UDAAP section of the CCFPL and the Residential Mortgage Lending Act, which is only one of the exempted licensees for illustrative purposes.

Key takeaways:

1.  The Residential Mortgage Licensing Act ( "licensing") has a high threshold requirement to trigger a violation–the act is "knowingly", "recklessly" or "with intent to…" in nearly all of the sections. This is a high burden to meet, on par with criminal acts.

2.  UDAAP is strict liability meaning that no intent is required.

3.  The prohibited acts in the licensing law are geared towards the most egregious business practices, again, a high burden.

4.  The UDAAP prohibited acts are centered towards protection for the public at large.

5.  Remedies under the licensing act cap fees, one remedy requires a criminal conviction. No remedies for consumer victims

6.  UDAAP gives the DFPI much more latitude to tailor the relief to the offensive act and focuses on making consumers whole.

*Prohibit Acts Comparison Chart*

| **UDAAP** | **Residential Mortgage Lending Act (Fin Code Section 50500-50513** |
|---|---|
| The department, by regulation, may define unfair, deceptive, and abusive acts and practices in connection with the offering or provision of commercial financing, as defined in subdivision (d) of Section 22800, or other offering or provision of financial products and services to small business recipients, nonprofits, and family farms. Fin Code Section 90009(e) | It is a violation of this division for any person to make any untrue statement of a material fact in any document filed with the commissioner under this division or rules adopted thereunder, or to omit any material fact which is required to be stated in any document. |
| An act or practice is **unfair** or **deceptive** if the act is consistent with the provisions of, and the case law construing, California's Unfair Competition Law (UCL)<br><br>"Unfairness" under the UCL has been construed to permit courts to exercise significant discretion in addressing allegedly improper business practices.<br><br>As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. Business and Professions Code Section 17200 | (a) It is a violation for any person subject to this law or any director, partner, shareholder controlling an ownership interest of 10 percent or more, trustee, officer, agent, or employee of any such person to do any of the following:<br><br>(1) **Knowingly or recklessly** disburse or cause the disbursal of trust funds, except as permitted by Section 50202, or **knowingly or recklessly** to direct, participate in, or aid or abet in a material way, any activity that **constitutes theft or fraud** in connection with any trust fund transaction.<br><br>(2) **Knowingly or recklessly** make or cause to be made any misstatement or omission of a material fact, pertaining to a loan or loan servicing.<br><br>(b) Any director, officer, partner, shareholder controlling an ownership interest of 10 percent or more, trustee, or employee of a residential mortgage loan servicer who abstracts or **misappropriates** money, funds, trust obligations, or property deposited with a licensee, commits a violation of this section. |
| CCFPL defines "**abusive**" in accord with the Dodd-Frank Act, meaning an act or practice that "materially interferes" with a consumer's ability to understand a term or condition of a product or service, or that "takes unreasonable advantage" of: 1) a lack of understanding by the consumer of material risks, costs, or conditions; 2) the inability of the consumer to protect his or her interests in selecting or using a product or service; or *21 3) reasonable reliance on a covered person to act in the consumer's interests. | Any director, officer, partner, trustee, or employee of a licensee, its holding company, or its affiliates who **knowingly** receives or appropriates any of the licensee's property, other than in payment of a just demand or **with intent to defraud,** or who omits to make or causes an omission to be made in the full and true entry thereof in its books and accounts or concurs in omitting to make any material entry thereof, violates this division. |

*Enforcement Comparison Chart*

| **UDAAP Fin Code 90012-90013** | **Residential Mortgage Lending Act (Fin Code Section 50500-50513** |
|---|---|
| (a) The department may take any action authorized by this law against a covered person or service provider who engages, has engaged, or proposes to engage in unfair, deceptive, or abusive practices with respect to consumer financial products or services.<br><br>(b) Relief under this section may include, but is not limited to, any of the following:<br><br>(1) Rescission or reformation of contracts.<br><br>(2) Refund of moneys or return of real property.<br><br>(3) Restitution.<br><br>(4) Disgorgement or compensation for unjust enrichment, with any disgorged amounts returned to the affected consumers, to the extent practicable.<br><br>(5) Payment of damages or other monetary relief.<br><br>(6) Public notification regarding the violation, including the costs of notification.<br><br>(7) Limits on the activities or functions of the person.<br><br>(8) Monetary penalties | Any person who **willfully** violates any provision of this division, or any rule or order under this division, shall, **upon conviction**, be subject to a fine of not more than ten thousand dollars ($10,000) or imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or in a county jail for not more than one year, or to both that fine and imprisonment. No person may be imprisoned for the violation of any rule or order unless he or she had knowledge of the rule or order. Conviction under this section shall not preclude the commissioner from exercising the authority provided in Section 50320 |
| In any civil or administrative action brought pursuant to this division, the following penalties shall apply:<br>(1) Any person that violates, through any act or omission, any provision of this division shall forfeit and pay a penalty pursuant to this subdivision.<br><br>(A) The penalty amounts are as follows:<br><br>(i) For any violation of this division, rule or final order, or condition imposed in writing by the department, a penalty may not exceed the greater of either five thousand dollars ($5,000) for each day during which the violation or failure to pay continues, or two thousand five hundred dollars ($2,500) for each act or omission in violation.<br><br>(ii) Notwithstanding clause (i), for any reckless | (a) Any person who violates a provision of this division, or any rule or order under this division, shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation. This penalty shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the commissioner in any court of competent jurisdiction.<br><br>(b) As applied to the penalties for acts in violation of this division, the remedies provided by this section and by other sections of this division are not exclusive, and may be sought and employed in any combination to enforce the provisions of this division. |

| | |
|---|---|
| violation by a person of this division, rule or final order, or condition imposed by the department, a penalty may not exceed the greater of twenty-five thousand dollars ($25,000) for each day during which the violation continues, or ten thousand dollars ($10,000) for each act or omission in violation.<br><br>(iii) Notwithstanding clause (i) or (ii), for any knowing violation, by a person of this division, rule or final order, or condition imposed by the department, a penalty may not exceed the lesser of 1 percent of the person's total assets, one million dollars ($1,000,000) for each day during which the violation continues, or twenty-five thousand dollars ($25,000) for each act or omission in violation. | |
| In determining the amount of any penalty assessed under this division, the department shall take into account mitigating factors and the appropriateness of the penalty with respect to all of the following:<br><br>(i) The amount of financial resources of the person charged.<br><br>(ii) The good faith of the person charged.<br><br>(iii) The gravity of the violation.<br><br>(iv) The severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided.<br><br>(v) The history of previous violations.<br><br>(vi) Other matters as justice may require. | (a) If, upon inspection, examination, or investigation, the commissioner has cause to believe that a licensee or person is violating or has violated any provision of this division or any rule or order thereunder, the commissioner or his or her designee may issue a citation to that licensee or person in writing, describing with particularity the basis of the citation. Each citation may contain an order to correct the violation or violations identified and provide a reasonable time period or periods by which the violation or violations must be corrected. In addition, each citation may assess an administrative fine not to exceed two thousand five hundred dollars ($2,500) that shall be deposited in the State Corporations Fund. In assessing a fine, the commissioner shall give due consideration to the appropriateness of the amount of the fine with respect to factors including the gravity of the violation, the good faith of the person or licensees cited, and the history of previous violations. A citation issued and a fine assessed pursuant to this section, while constituting punishment for a violation of law, shall be in lieu of other administrative discipline by the commissioner for the offense or offenses cited, and the citation and fine payment thereof by a licensee shall not be reported as disciplinary action taken by the commissioner. |
| The department may compromise, modify, or remit any penalty that may be assessed or has already been assessed.<br><br>In any action brought by the department, the department may recover its costs in connection with prosecuting the action if the department is the prevailing party in the action. | b) Notwithstanding subdivision (a), nothing in this section shall prevent the commissioner from issuing an order to desist and refrain from engaging in a specific business or activity or activities, or an order to suspend all business operations to a person or licensee who is engaged in or who has engaged in continued or repeated violations of this division.<br><br>In any of these circumstances, the sanctions authorized under this section shall be separate from, and in addition to, all other administrative, civil, or criminal remedies. |

Opposition also raises concerns over uncertainty, despite also arguing that codification of UDAAP authority for the state is redundant. The CCFPL is explicit in its broad authority given to the DFPI to define unfair, deceptive, and abusive acts and practices. See Fin Code Section 90009(e). However, unfair and deceptive acts are interpreted by the Department consistently with the longstanding Unfair Competition Law (UCL).The Dodd-Frank interpretation of "abusive" is also very clear.

As a state that has a long standing history and foreseeable future in financial innovation and technology, the need for parallel elasticity in our regulatory interpretation is a vital accommodation to industry. Simply put, the aim for innovation should be to meet the demands of consumers in a safe manner, not to evade the law.

6.  **What this Bill Does NOT Do**:

    a)  This bill does not subject the exempted categories of persons to other provisions of the CCFPL, including new licensing or registration requirements.

    b)  Nor will it prohibit the ability for interagency or interstate agency cooperation.

    c)  Again, according to the opposition, it does not change the DFPI's existing authority to bring a UDAAP action under the current federal law.

    d)  It does not change the fact that the licensed exemptees are already subject to UDAAP enforcement in California through the Attorney General and select other law enforcement.

    e)  Finally, this bill will not impact businesses that do not engage in unfair, deceptive, and abusive acts or practices.

7.  **Statement from the Author:**

"With recent changes to the Consumer Financial Protection Bureau, the sole federal agency tasked with enforcement of consumer financial protection laws, consumers will be left with less protections and fewer resources to help them navigate the financial marketplace. SB 825 authorizes DFPI to enforce state consumer financial protection laws over entities they currently regulate, including state banks, state credit unions, independent mortgage companies, nonbank lenders, and payment service providers."

8.  **Arguments in Support**

"…The bill is needed to bring basic parity to California's regulation of financial products and services. It is simply unfair for the DFPI to have broad enforcement authority against non-licensed providers of financial products and services but not to have that authority against licensed entities that, in many cases, directly compete with non-licensed entities. In addition, consumers are left vulnerable if the DFPI does not have its broadest enforcement authority against the large swaths of the marketplace that are licensed by the DFPI.

Indeed, clear and effective DFPI enforcement authority is more important than ever. In the aftermath of the Great Recession of 2008, when some 10 million Americans lost their homes, Congress created the federal consumer protection watchdog that had been so conspicuously

absent in the years leading up to the mortgage crisis: the Consumer Financial Protection Bureau (CFPB). Through oversight, regulation, and especially enforcement, since its founding in 2011 the CFPB helped stabilize the housing market, create a level playing field within financial markets — and return more than $21 billion dollars to consumers.

Unfortunately, the incoming federal administration has moved to shut down, or otherwise dismantle, the CFPB.2 California therefore needs to act, right now, to protect consumers and to safeguard honest businesses...”

### 9.   Arguments in Opposition

“ …As enacted in 2020, the CCFPL exempts from its scope DFPI licensees and those licensed or registered by other state or federal agencies, because the new program was intended to target new, emerging financial product and service providers entering the California marketplace that were not regulated under the DFPI’s existing licensing laws. The new Consumer Financial Protection Division was established within the Department to register and supervise those previously unregulated “covered persons.”

SB 825 upends the compromise reached in 2020 that resulted in passage of the California Consumer Financial Protection Law. We believe now, as we did then, that expanding the DFPI’s authority to enforce UDAAP claims is unnecessary and redundant of both the existing authority of the Attorney General and the Department’s own enforcement powers with respect to its licensees. The Department has existing authority alone, or in concert with the Attorney General, to discipline licensees for unfair practices. Further, this new authority will necessarily stretch limited Department resources and compound its current fiscal challenges - again with no clear showing as to why existing state enforcement powers are inadequate.

In summary, the CCFPL was not intended to add redundant investigations of existing licensees outside of their respective licensing laws, where the Department already has clear jurisdiction to regulate any person acting under the authority of their license, certificate, or charter, up to and including suspension or revocation of license. And, under existing law, the DFPI can partner with the Attorney General to prosecute egregious UDAAP cases against bad actors under California’s unfair business practices statutes.”

**REGISTERED SUPPORT / OPPOSITION**:

**Support:** (Verified 7/2/25)

California Low-income Consumer Coalition
CAMEO - California Association for Micro Enterprise Opportunity
Center for Responsible Lending
Consumer Federation of California
Consumer Reports
National Consumer Law Center
National Consumer Law Center, Inc.
Nextgen California
Office of Kat Taylor
Small Business Majority

The Responsible Business Lending Coalition

**Opposition:** (Verified 7/2/25)

American Financial Services Association
California Bankers Association
California Community Banking Network
California Credit Union League
California Financial Services Association
California Mortgage Association
California Mortgage Bankers Association
Mortgage Bankers Association
Secured Finance Network

**Analysis Prepared by**: Desiree Nguyen Orth / B. & F. / (916) 319-3081

RJN EXHIBIT "4"

Date of Hearing:  July 7, 2025

ASSEMBLY COMMITTEE ON BANKING AND FINANCE
Avelino Valencia, Chair
SB 825 (Limón) – As Amended March 24, 2025

**SENATE VOTE**:  28-10

**SUBJECT**:  Consumers:  financial protection

**SUMMARY**:  The bill clarifies the authority provided to the Department of Financial Protection and Innovation (DFPI) to take enforcement action for unfair, deceptive, and abusive acts and practices by licensees otherwise exempt from the California Consumer Financial Protection Law (CCFPL).

**EXISTING LAW**:

**Federal:**

1. <u>Summary</u>: Pursuant to the Consumer Financial Protection Act (CFPA), the Consumer Financial Protection Bureau (CFPB) is the federal analog to the state DFPI. It was established as an independent agency responsible for consumer protection in the financial sector. (12 U.S.C. § 5481 et seq.) "The Bureau shall seek to implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S. C. § 5511 (a).

2. <u>Authority and Enforcement</u>: The CFPB "may take any action authorized under part E (12 U.S.C. § 5561 et seq.) to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S. C. § 5531 (a).

   a. Unfairness means A)the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and (B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S. C. § 5531 (c)

   b. Abusive means (1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or (2) takes unreasonable advantage of—

      i. a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

      ii. the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or

      iii.  the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.12 U.S. C. § 5531 (d).

3. <u>State Action</u>: Under the CFPA, state authorities and regulators may bring civil action or other appropriate proceedings to enforce provisions of the CFPA against any entity subject to the title. (12 U.S.C § 5552 (a)(1))

    a.  However, **<u>consultation with the CFPB is required</u>** before a state may initiate any action or other administrative or regulatory proceeding against a covered person or service provider subject to the CFPA. (12 U.S.C. §5552 (b)).

    b.  The CFPB may respond by:
        i.  intervene in the action as a party;
        ii.  upon intervening—
            1.  remove the action to the appropriate United States district court, if the action was not originally brought there; and
            2.  be heard on all matters arising in the action; and
        iii.  appeal any order or judgment, to the same extent as any other party in the proceeding may. (12 U.S.C. §5552 (b)(2))

**State:**

1. The California Consumer Financial Protection Law (CCFPL) provides the DFPI broad nonexclusive oversight and enforcement authority to regulate financial services and products. (Financial Code §90006)

    a.  <u>Authority and Enforcement:</u>
        i.  The DFPI has the following functions, powers and duties 1) Bring and prosecute administrative and civil actions before state and federal courts. 2) Hold hearings and issue publications, results or inquiries and research, and reports that may aid in effectuating the purposes of the law. (Id.)

        ii.  The DFPI has broad enforcement authority to take action against covered persons of service providers who engage in unfair, deceptive or abusive acts or practices (UDAAP) with respect to consumer financial services or products. (Fin. Code § 90012)

    b.  <u>Prohibited Acts:</u> The following are prohibited for a covered person or service provider:
        i.  Engage in unfair, deceptive or abusive acts or practices (UDAAP) with respect to consumer financial services or products.

        ii.  Offer or provide any financial product or service to a consumer that is not in conformity with the financial law, or otherwise, commit any act or omission in violation of a consumer finance law.

        iii.  Fail or refuse to meet the records maintain, access, and auditing requirements and rules issued by the DFPI. (Fin. Code §90003)

    c.  <u>Exemptions:</u> The following categories of persons are exempt from the CCFPL:

        i.  Licensees of state agencies other than DFPI to the extent that such entities are acting under the authority of the other state agency's license.

        ii.  Specified categories of licensees of DFPI, including, but not limited to, banks, credit unions, residential mortgage lenders, finance lenders, and money transmitters.

        iii.  Banks, credit unions, and other financial institutions acting under the authority of a license, certificate, or charter under federal law or the laws of another state. (Fin. Code § 90002)

2. In relevant part, the Business and Professions Codes provides that the State Attorney General, District Attorneys, County Counsel (with limitations), and City Attorneys (with population requirements) may enforce unfair competition law (UCL) violations under Section 17200 et seq.

    a.  Unfair competition means and includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

        i.  Part 3 contains an expansive suite of business activity, for example, advertising, fictitious business names, premium coupons, water treatment devices, and bots.

**FISCAL EFFECT**: Appropriation: No    Fiscal Com.: Yes    Local: No

**COMMENTS**:

**1. <u>Original Drafting</u>**

In 2020, the legislature sought to expand consumer financial protections in California by strengthening the purview of the then existing Department of Business Oversight (DBO) through the passage of AB 1864 (Limón). The California Consumer Financial Protection Law (CCFPL) expanded the enforcement, and regulation authority, as well as subject matter authority of the currently named DFPI, much in the same vein as the Federal CFPB.

Exempted licensees of the CCFPL argue that at the inception of the CCFPL, which happened in parallel with the standing up of the DFPI, exempting specific categories of financial licensees was agreeable because these groups had existing licensing structures. This was an appealing pathway given the large amount of scaffolding that was yet to be put in place for a large number of previously unlicensed newly covered persons. Some of the exempted businesses claim that an agreement with the author was reached during the original drafting based on this rationale, which resulted in the current exemptions.

However, the author refutes that any agreement was struck. AB 1864 was a budget trailer bill.  The proposed language provided by the Department of Finance to the Legislature for its consideration already included the exemption of licensees. Regardless of whether any agreement

existed or not, the last five years since the original drafting have changed into a completely different financial regulatory landscape– the most relevant issues are discussed below.

## 2.  <u>Relevant Current State of Federal Priorities</u>

As a priority act for the second Trump Administration, the CFPB quickly became the subject of the public spotlight in February of 2025 beginning when workers of the agency received the infamous stop work order[1]. As of the date of this publishing, the Bureau is in a legal campaign attempting to layoff over 1,200 CFPB employees, which represents over 90% of the agency. This would leave approximately 200 employees to handle all federal matters under the purview of the CFPA for the country. President Trump has made it clear that he intends to dismantle the CFPB and deprioritize regulation of financial institutions.

In a memo from the chief legal officer of the CFPB, Mark Paoletta was explicit in the administration's intentions stating "that **the Bureau would lean on states to carry out more enforcement and supervision activities**, arguing that doing so would allow the agency [ ] "to focus on tangible harms to consumers."[2] [3]

In addition to deeply cutting down agency resources, efforts have been made to undercut previously obtained consumer protections. For example, the CFPB issued a consent order against Wise, an electronic money services provider that misled customers about its ATM fees, and failed to refund remittance fees in the legal timeframe when money did not arrive on time costing consumers thousands of dollars.[4] "By deceiving customers, Wise gave itself an unfair advantage over other competitors in the remittances market," said then CFPB Director Rohit Chopra. "New technology can help make money transfers cheaper and more convenient, but companies must be truthful and live up to longstanding law."

On January 30, 2025, the CFPB ordered the company to pay approximately $450,000 to harmed consumers to resolve claims to at least 16,000 consumers, and a $2.025 million fine to the CFPB's victims' relief fund. On May 15, 2025, after appointing its new commissioner, the CFPB issued an amended consent order that supersedes the previous order reducing Wise's civil penalty fine from $2.025 million to $44,955, a 98% reduction, citing, among other sections, Executive Order 14219 (Feb. 19, 2025). In May 2025, the Consumer Federation of America and The Student Borrower Protection Center published a memorandum detailing the dismissal of 21 pending public enforcement actions by the Trump administration CFPB as well as the reduction of previous consent orders similar to the Wise order.[5]

---

[1] https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-cfpb-doge-access-musk

[2] https://www.npr.org/2025/04/17/nx-s1-5368206/cfpb-layoffs-rif#:~:text=Trump%20administration%20has%20gutted%20an,mass%20layoffs%20for%20April%2028

[3] See also: "*NY must step up to protect consumers as feds step back (Guest Opinion by Samuel Levine & Seth Frotman*"; www-syracuse-com.cdn.ampproject.org/c/s/www.syracuse.com/opinion/2025/05/ny-must-step-up-to-protect-consumers-as-feds-step-back-guest-opinion-by-samuel-levine-seth-frotman.html?outputType=amp. May 29, 2025.

[4] https://wayback.archive-it.org/23481/20250205113447/https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-wise-to-pay-25-million-for-illegal-remittance-practices/

[5] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://consumerfed.org/wp-content/uploads/2025/05/CFPB-Pending-Enforcement-Actions-v2-Fellows-1.pdf

This is a wide deviation from the previous administration's policy agenda and in a short amount of time. The uncertainty is harmful for both consumers and businesses. As a result, states have begun to bolster their existing UDAP (unfair and deceptive acts and practices) statutes.

- On March 13, 2025, New York enacted the Fostering Affordability and Integrity through Reasonable (FAIR) Business Practices Act in direct response to federal regulation.

- In March, the state of Massachusetts announced the adoption of "junk" fee" regulations to help consumers avoid unnecessary costs. It also subpoenaed Robinhood, an online brokerage platform, over launching a new predictions market hubs—a way to allow users to gamble on March Madness college basketball games on its platform.

Five years following the inception of the original bill, it is clear that we are in a different, unforeseen post-COVID financial landscape, both in the market and regulatory space.

### 3. Different Enforcement Framework

Currently, the DFPI has different enforcement authority across different licensing frameworks that govern the various exempted persons. This results in different triggering violations and enforcement procedures and outcomes for different licensees who commit the same harm to consumers. (See tables below). As a result, bad actors in the financial sector who commit UDAAP (unfair, deceptive, and abusive acts and practices) violations may enjoy a lower penalty or less rigorous enforcement procedure simply based on the type of business it is, not the act it committed, which is not in the best interest of public policy. In addition to unfair policy, this also requires a more vast knowledge of enforcement procedure among DFPI staff.

### 4. No Existing Current Independent UDAAP Authority

Interestingly, both proponents and opponents argue that the federal CFPA UDAAP enforcement authority extended to states requires mere **notice** to be provided to the CFPB, and thus, UDAAP authority for the state already exists. But the statutory language is clear, **consultation with the CFPB** is required before a state may initiate any action or other administrative or regulatory proceeding against a covered person or service provider subject to the CFPA. (12 U.S.C. §5552 (b). The rationale behind this requirement is to streamline and coordinate law enforcement efforts between state and federal agencies if multiple agencies do intend to pursue action against a service provider.

However, the CFPB has options for its response, including removing the action to another jurisdiction or to appeal any order or judgment to the same extent as any other party in the proceeding. The course of action that the CFPB may take is discretionary, and consideration for the costs and interest of Californians is not required. In the event that CFPB were to respond with a removal or an appeal to an action as a party, the outcome could be detrimental to public policy, and the lengthy court process would be extremely costly to the state. This type of uncertainty is not prudent for public safety, industry compliance, or state budgeting. Thus, arguably, the requirement to consult with an outside federal agency, and the potential strings attached, do not amount to an "existing authority", independent or otherwise. Additionally, following the June 7th deployment of the National Guard by the Trump administration in California without the

support of Governor Newsom, a volley of threats to funding and resources from both administrations ensued. Given the Trump administration's actions against universities, law firms, individuals, and others who have been perceived to have "wronged" the president, the concern that using federal UDAAP authority could be a cost risk to California is reasonable and warranted.

The closest independent authority for UDAAP violations is under the Business and Professions Code Chapter 4, the Unfair Trade Practices Act, commonly referred to as Unfair Competition Law or UCL. This section only provides authority to pursue claims for UDAAP violations to the Attorney General, district attorneys, county counsel authorized by an agreement with the district for an action involving a violation of county ordinance, or city attorney of a city with a population of at least 750,000 people. Unlike the federal CFPA Dodd-Frank standards, "unfair" and "deceptive" under the UCL are determined through case law, while "abusive" generally shares the standard used federally.

Opposition has raised issues with the fact that the enforcement agencies with existing authority must file a civil suit in order to pursue UDAAP remedies, whereas the DFPI has both civil and administrative law enforcement authority, making UDAAP remedies available through an administrative procedure. "We continue to believe that the powers granted by SB 825 create significant leverage against a state licensed entity when potential violations are brought through an administrative proceeding by the commissioner."

However, the state's current access to UDAAP enforcement under the CFPA, states "authorities and regulators may bring civil action <u>or other appropriate proceedings</u> to enforce provisions of the CFPA against any entity subject to the title." (12 U.S.C § 5552 (a)(1)). And "before initiating any action in a court or <u>other administrative or regulatory proceeding</u> against any covered person as authorized by subsection (a)..." (12 U.S.C § 5552 (b)(1)(A)). This is a clear indication that the state already has the ability to pursue an administrative proceeding to address UDAAP violations through the federal CFPA route. An important point of clarity, administrative proceedings, like arbitration, have rules and procedures and are evaluated by a neutral third party. This avenue tends to be more cost effective while maintaining due process. However, unlike binding arbitration, which is often used in consumer finance contracts imposed by exempted licensees, administrative rulings have a pathway for appeal.

## 5.  <u>Oppositions' Concerns</u>

*<u>Stacking Argument 1: Federal Dodd-Frank v. State UCL requirements</u>*

Opposition argues that this would create an additional layer of regulations to keep track of, making work in California overly onerous.

1.  The state UDAAP authority works alongside the federal Dodd-Frank requirement. Though the definitions of "unfair" and "deceptive" are elemental in the CFPA, case law still defines the boundaries of interpretation for the elements.

2.  The Dodd-Frank definitions of UDAP and the California definitions are not the same by design. In California, the CCFPL allows the DFPI to determine additional actions that would constitute a UDAAP violation, as well, the UCL and prevailing case law create the standard for unfair and deceptive practices. As a state that values innovation and

community responsiveness, the evolving standards of "unfair" and "deceptive" are necessary to keep up with the cultivated industry growth.

3.  The Attorney General and other law enforcement already have the ability to enforce the UCL on the relevant entities, thus all financial entities are already subject to state enforcement of UDAAP violations–this bill only extends that enforcement power to the DFPI which already has authority over these licensees.

4.  Opposition raises concerns that they would be subject to unfair stacking of claims under UCL, (Section 17205 Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.) however, this is already the status quo, see #3. Furthermore, it is a matter of civil procedure to assert claims for multiple causes of action based on best information and belief in any lawsuit, lest the plaintiff seek permission to amend its complaint. This is true of all civil action, whether in state or federal court, agency or private citizen.

5.  PayPal, as an exempt money transmitter licensee, has raised concerns about disproportionality of authority, specifically, that California only represents roughly 11% of the U.S. population but would retain 100% of the federal authority granted for the nation to regulate financial entities doing business in the state.

    a.  First, the scope of authority under the federal CFPA would be extended to the state, or any other state, under the existing provisions of the CFPA with consultation of the CFPB, in whole, not proportion to population.

    b.  Second, this bill does not seek to extend the authority of the federal CFPA to California. This bill explicitly extends the existing state UDAAP authority to currently exempted, but regulated licensees.

    c.  For completeness of the disproportionality argument evaluation, limited data supplied by PayPal shows that California represents 17% of the company's 2024 U.S. money transmitter business. However, at the time of publishing, California is ranked the fourth largest economy globally, consistently ranking in the top five over the last five years.

*Stacking Argument 2: Licensing framework v. UDAAP*

PayPal has also raised concerns over being subjected to CCFPL remedies, specifically the ceiling penalties for "knowing" violations. In pertinent part, the section reads:

> "…for any knowing violation, by a person of this division, rule or final order, or condition imposed by the department, a penalty may not exceed the lesser of 1 percent of the person's total assets, one million dollars ($1,000,000) for each day during which the violation continues, or twenty-five thousand dollars ($25,000) for each act or omission in violation."

To reiterate, this is the current law and standard by which all covered persons under the CCFPL are already subjected. To exempt other financial businesses from being held to the same standard

of public safety and accountability simply because of its entity type is not sound public policy. However, opposition remains steadfast in its belief that it should only be held to the more burdensome enforcement standards required under the licensing laws. Regardless, the enforcement actions available under the CCFPL are tiered and require the commissioner to take into account mitigating factors and appropriateness when seeking remedies; it is designed with proportionality.

Opposition argues that enforcement under UDAAP would create a stacking of penalties for the same violations, however, upon review of all the applicable licensing laws, no overlap of prohibited acts and penalties with UDAAP exist. Consistently, all of the licensing prohibited acts thresholds are a higher than strict liability, and any statutes with fees have a progressive written disciplinary procedural structure before imposing fees, which are then capped, usually around $2,500, with an outlier of a $25,000 cap under Division 1. Corporate Securities Law of 1968, Part 6, Section 25535. Where overlap does exist is in ancillary relief such as disgorgement, restitution to victims, actual damages, or equitable relief, such as an injunction or license suspension. None of these remedies can be stacked. Furthermore, many of the licensing statutes contain a section that specifically allows additional enforcement authority where applicable, which is to be expected given that the prohibited acts require criminal level intent or reckless negligence, thus meeting the lower thresholds of applicable administrative procedures or civil actions.

Example: Mortgage Lenders below, "Nothing in this division limits the power of the state to punish any person for any act that constitutes a crime under any statute. [Fin Code. 2152 (c).] ***The enforcement provisions of this division are in addition to any other enforcement powers that the commissioner may have under law.***" Fin Code 2153

The two subsequent tables are a side-by-side comparison of 1) the threshold triggers for enforcement action and 2) the permitted relief between the UDAAP section of the CCFPL and the Residential Mortgage Lending Act, which is only one of the exempted licensees for illustrative purposes.

Key takeaways:

1.  The Residential Mortgage Licensing Act ( "licensing") has a high threshold requirement to trigger a violation–the act is "knowingly", "recklessly" or "with intent to…" in nearly all of the sections. This is a high burden to meet, on par with criminal acts.

2.  UDAAP is strict liability meaning that no intent is required.

3.  The prohibited acts in the licensing law are geared towards the most egregious business practices, again, a high burden.

4.  The UDAAP prohibited acts are centered towards protection for the public at large.

5.  Remedies under the licensing act cap fees, one remedy requires a criminal conviction. No remedies for consumer victims

6.  UDAAP gives the DFPI much more latitude to tailor the relief to the offensive act and focuses on making consumers whole.

*Prohibit Acts Comparison Chart*

| **UDAAP** | **Residential Mortgage Lending Act (Fin Code Section 50500-50513** |
|---|---|
| The department, by regulation, may define unfair, deceptive, and abusive acts and practices in connection with the offering or provision of commercial financing, as defined in subdivision (d) of Section 22800, or other offering or provision of financial products and services to small business recipients, nonprofits, and family farms. Fin Code Section 90009(e) | It is a violation of this division for any person to make any untrue statement of a material fact in any document filed with the commissioner under this division or rules adopted thereunder, or to omit any material fact which is required to be stated in any document. |
| An act or practice is **unfair** or **deceptive** if the act is consistent with the provisions of, and the case law construing, California's Unfair Competition Law (UCL)<br><br>"Unfairness" under the UCL has been construed to permit courts to exercise significant discretion in addressing allegedly improper business practices.<br><br>As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code. Business and Professions Code Section 17200 | (a) It is a violation for any person subject to this law or any director, partner, shareholder controlling an ownership interest of 10 percent or more, trustee, officer, agent, or employee of any such person to do any of the following:<br><br>(1) **Knowingly or recklessly** disburse or cause the disbursal of trust funds, except as permitted by Section 50202, or **knowingly or recklessly** to direct, participate in, or aid or abet in a material way, any activity that **constitutes theft or fraud** in connection with any trust fund transaction.<br><br>(2) **Knowingly or recklessly** make or cause to be made any misstatement or omission of a material fact, pertaining to a loan or loan servicing.<br><br>(b) Any director, officer, partner, shareholder controlling an ownership interest of 10 percent or more, trustee, or employee of a residential mortgage loan servicer who abstracts or **misappropriates** money, funds, trust obligations, or property deposited with a licensee, commits a violation of this section. |
| CCFPL defines "**abusive**" in accord with the Dodd-Frank Act, meaning an act or practice that "materially interferes" with a consumer's ability to understand a term or condition of a product or service, or that "takes unreasonable advantage" of: 1) a lack of understanding by the consumer of material risks, costs, or conditions; 2) the inability of the consumer to protect his or her interests in selecting or using a product or service; or *21 3) reasonable reliance on a covered person to act in the consumer's interests. | Any director, officer, partner, trustee, or employee of a licensee, its holding company, or its affiliates who **knowingly** receives or appropriates any of the licensee's property, other than in payment of a just demand or **with intent to defraud,** or who omits to make or causes an omission to be made in the full and true entry thereof in its books and accounts or concurs in omitting to make any material entry thereof, violates this division. |

*Enforcement Comparison Chart*

| **UDAAP Fin Code 90012-90013** | **Residential Mortgage Lending Act (Fin Code Section 50500-50513** |
|---|---|
| (a) The department may take any action authorized by this law against a covered person or service provider who engages, has engaged, or proposes to engage in unfair, deceptive, or abusive practices with respect to consumer financial products or services.<br><br>(b) Relief under this section may include, but is not limited to, any of the following:<br><br>(1) Rescission or reformation of contracts.<br><br>(2) Refund of moneys or return of real property.<br><br>(3) Restitution.<br><br>(4) Disgorgement or compensation for unjust enrichment, with any disgorged amounts returned to the affected consumers, to the extent practicable.<br><br>(5) Payment of damages or other monetary relief.<br><br>(6) Public notification regarding the violation, including the costs of notification.<br><br>(7) Limits on the activities or functions of the person.<br><br>(8) Monetary penalties | Any person who **willfully** violates any provision of this division, or any rule or order under this division, shall, **upon conviction**, be subject to a fine of not more than ten thousand dollars ($10,000) or imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or in a county jail for not more than one year, or to both that fine and imprisonment. No person may be imprisoned for the violation of any rule or order unless he or she had knowledge of the rule or order. Conviction under this section shall not preclude the commissioner from exercising the authority provided in Section 50320 |
| In any civil or administrative action brought pursuant to this division, the following penalties shall apply:<br>(1) Any person that violates, through any act or omission, any provision of this division shall forfeit and pay a penalty pursuant to this subdivision.<br><br>(A) The penalty amounts are as follows:<br><br>(i) For any violation of this division, rule or final order, or condition imposed in writing by the department, a penalty may not exceed the greater of either five thousand dollars ($5,000) for each day during which the violation or failure to pay continues, or two thousand five hundred dollars ($2,500) for each act or omission in violation.<br><br>(ii) Notwithstanding clause (i), for any reckless | (a) Any person who violates a provision of this division, or any rule or order under this division, shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation. This penalty shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the commissioner in any court of competent jurisdiction.<br><br>(b) As applied to the penalties for acts in violation of this division, the remedies provided by this section and by other sections of this division are not exclusive, and may be sought and employed in any combination to enforce the provisions of this division. |

| | |
|---|---|
| violation by a person of this division, rule or final order, or condition imposed by the department, a penalty may not exceed the greater of twenty-five thousand dollars ($25,000) for each day during which the violation continues, or ten thousand dollars ($10,000) for each act or omission in violation.<br><br>(iii) Notwithstanding clause (i) or (ii), for any knowing violation, by a person of this division, rule or final order, or condition imposed by the department, a penalty may not exceed the lesser of 1 percent of the person's total assets, one million dollars ($1,000,000) for each day during which the violation continues, or twenty-five thousand dollars ($25,000) for each act or omission in violation. | |
| In determining the amount of any penalty assessed under this division, the department shall take into account mitigating factors and the appropriateness of the penalty with respect to all of the following:<br><br>(i) The amount of financial resources of the person charged.<br><br>(ii) The good faith of the person charged.<br><br>(iii) The gravity of the violation.<br><br>(iv) The severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided.<br><br>(v) The history of previous violations.<br><br>(vi) Other matters as justice may require. | (a) If, upon inspection, examination, or investigation, the commissioner has cause to believe that a licensee or person is violating or has violated any provision of this division or any rule or order thereunder, the commissioner or his or her designee may issue a citation to that licensee or person in writing, describing with particularity the basis of the citation. Each citation may contain an order to correct the violation or violations identified and provide a reasonable time period or periods by which the violation or violations must be corrected. In addition, each citation may assess an administrative fine not to exceed two thousand five hundred dollars ($2,500) that shall be deposited in the State Corporations Fund. In assessing a fine, the commissioner shall give due consideration to the appropriateness of the amount of the fine with respect to factors including the gravity of the violation, the good faith of the person or licensees cited, and the history of previous violations. A citation issued and a fine assessed pursuant to this section, while constituting punishment for a violation of law, shall be in lieu of other administrative discipline by the commissioner for the offense or offenses cited, and the citation and fine payment thereof by a licensee shall not be reported as disciplinary action taken by the commissioner. |
| The department may compromise, modify, or remit any penalty that may be assessed or has already been assessed. | b) Notwithstanding subdivision (a), nothing in this section shall prevent the commissioner from issuing an order to desist and refrain from engaging in a specific business or activity or activities, or an order to suspend all business operations to a person or licensee who is engaged in or who has engaged in continued or repeated violations of this division.<br><br>In any of these circumstances, the sanctions authorized under this section shall be separate from, and in addition to, all other administrative, civil, or criminal remedies. |
| In any action brought by the department, the department may recover its costs in connection with prosecuting the action if the department is the prevailing party in the action. | |

Opposition also raises concerns over uncertainty, despite also arguing that codification of UDAAP authority for the state is redundant. The CCFPL is explicit in its broad authority given to the DFPI to define unfair, deceptive, and abusive acts and practices. See Fin Code Section 90009(e). However, unfair and deceptive acts are interpreted by the Department consistently with the longstanding Unfair Competition Law (UCL).The Dodd-Frank interpretation of "abusive" is also very clear.

As a state that has a long standing history and foreseeable future in financial innovation and technology, the need for parallel elasticity in our regulatory interpretation is a vital accommodation to industry. Simply put, the aim for innovation should be to meet the demands of consumers in a safe manner, not to evade the law.

6. **What this Bill Does NOT Do**:

   a) This bill does not subject the exempted categories of persons to other provisions of the CCFPL, including new licensing or registration requirements.

   b) Nor will it prohibit the ability for interagency or interstate agency cooperation.

   c) Again, according to the opposition, it does not change the DFPI's existing authority to bring a UDAAP action under the current federal law.

   d) It does not change the fact that the licensed exemptees are already subject to UDAAP enforcement in California through the Attorney General and select other law enforcement.

   e) Finally, this bill will not impact businesses that do not engage in unfair, deceptive, and abusive acts or practices.

7. **Statement from the Author:**

"With recent changes to the Consumer Financial Protection Bureau, the sole federal agency tasked with enforcement of consumer financial protection laws, consumers will be left with less protections and fewer resources to help them navigate the financial marketplace. SB 825 authorizes DFPI to enforce state consumer financial protection laws over entities they currently regulate, including state banks, state credit unions, independent mortgage companies, nonbank lenders, and payment service providers."

8. **Arguments in Support**

"…The bill is needed to bring basic parity to California's regulation of financial products and services. It is simply unfair for the DFPI to have broad enforcement authority against non-licensed providers of financial products and services but not to have that authority against licensed entities that, in many cases, directly compete with non-licensed entities. In addition, consumers are left vulnerable if the DFPI does not have its broadest enforcement authority against the large swaths of the marketplace that are licensed by the DFPI.

Indeed, clear and effective DFPI enforcement authority is more important than ever. In the aftermath of the Great Recession of 2008, when some 10 million Americans lost their homes, Congress created the federal consumer protection watchdog that had been so conspicuously

absent in the years leading up to the mortgage crisis: the Consumer Financial Protection Bureau (CFPB). Through oversight, regulation, and especially enforcement, since its founding in 2011 the CFPB helped stabilize the housing market, create a level playing field within financial markets — and return more than $21 billion dollars to consumers.

Unfortunately, the incoming federal administration has moved to shut down, or otherwise dismantle, the CFPB.2 California therefore needs to act, right now, to protect consumers and to safeguard honest businesses...”

9. <u>**Arguments in Opposition**</u>

“ …As enacted in 2020, the CCFPL exempts from its scope DFPI licensees and those licensed or registered by other state or federal agencies, because the new program was intended to target new, emerging financial product and service providers entering the California marketplace that were not regulated under the DFPI’s existing licensing laws. The new Consumer Financial Protection Division was established within the Department to register and supervise those previously unregulated “covered persons.”

SB 825 upends the compromise reached in 2020 that resulted in passage of the California Consumer Financial Protection Law. We believe now, as we did then, that expanding the DFPI’s authority to enforce UDAAP claims is unnecessary and redundant of both the existing authority of the Attorney General and the Department’s own enforcement powers with respect to its licensees. The Department has existing authority alone, or in concert with the Attorney General, to discipline licensees for unfair practices. Further, this new authority will necessarily stretch limited Department resources and compound its current fiscal challenges - again with no clear showing as to why existing state enforcement powers are inadequate.

In summary, the CCFPL was not intended to add redundant investigations of existing licensees outside of their respective licensing laws, where the Department already has clear jurisdiction to regulate any person acting under the authority of their license, certificate, or charter, up to and including suspension or revocation of license. And, under existing law, the DFPI can partner with the Attorney General to prosecute egregious UDAAP cases against bad actors under California’s unfair business practices statutes.”

**REGISTERED SUPPORT / OPPOSITION**:

**Support:** (Verified 7/2/25)

California Low-income Consumer Coalition
CAMEO - California Association for Micro Enterprise Opportunity
Center for Responsible Lending
Consumer Federation of California
Consumer Reports
National Consumer Law Center
National Consumer Law Center, Inc.
Nextgen California
Office of Kat Taylor
Small Business Majority

The Responsible Business Lending Coalition

**Opposition:** (Verified 7/2/25)

American Financial Services Association
California Bankers Association
California Community Banking Network
California Credit Union League
California Financial Services Association
California Mortgage Association
California Mortgage Bankers Association
Mortgage Bankers Association
Secured Finance Network

**Analysis Prepared by**: Desiree Nguyen Orth / B. & F. / (916) 319-3081

RJN EXHIBIT "5"

**LEGAL STATUS**

**LINK:** https://www.federalregister.gov/documents/2022/05/26/2022-11356/authority-of-states-to-enforce-the-consumer-financial-protection-act-of-2010

# Authority of States To Enforce the Consumer Financial Protection Act of 2010

A Rule by the Consumer Financial Protection Bureau on 05/26/2022

**PUBLISHED CONTENT - DOCUMENT DETAILS**

**Agency:** Bureau of Consumer Financial Protection
**CFR:** 12 CFR chapter undef
**Document Citation:** 87 FR 31940
**Document Number:** 2022-11356
**Document Type:** Rule
**Pages:** 31940-31943 (4 pages)
**Publication Date:** 05/26/2022

**PUBLISHED DOCUMENT: 2022-11356 (87 FR 31940)**

**DOCUMENT HEADINGS**

**Bureau of Consumer Financial Protection**
12 CFR Chapter X

## AGENCY:

Bureau of Consumer Financial Protection.

## ACTION:

Interpretive rule.

## SUMMARY:

Section 1042 of the Consumer Financial Protection Act of 2010 (CFPA) generally authorizes States to enforce the CFPA's provisions. The Consumer Financial Protection Bureau (Bureau) is issuing this interpretive rule to provide further clarity regarding the scope of State enforcement under section 1042 and related provisions of the CFPA. Specifically, the Bureau is issuing the following interpretations: Section 1042 allows States to enforce any provision of the CFPA, including section 1036(a)(1)(A), a provision that makes it unlawful for covered persons or service providers to violate the Federal consumer financial laws; the limitations on the Bureau's authority in sections 1027 and 1029 generally do not constrain States' enforcement authority under section 1042; and section 1042 does not restrict States from bringing concurrent enforcement actions with the Bureau.

## DATES:

This interpretive rule is effective on May 26, 2022.

## FOR FURTHER INFORMATION CONTACT:

Shiva Nagaraj, Senior Counsel, Legal Division, (202) 435-7700. If you require this document in an alternative electronic format, please contact *CFPB_Accessibility@cfpb.gov (mailto:CFPB_Accessibility@cfpb.gov)*.

## SUPPLEMENTARY INFORMATION:

### I. Background

The Consumer Financial Protection Act of 2010 (CFPA) establishes the Consumer Financial Protection Bureau as the Federal government's primary regulator of consumer financial products and services.[1] The Bureau is charged with administering, interpreting, and enforcing the "Federal consumer financial laws," a category that includes the CFPA itself, 18 enumerated consumer laws (such as the Fair Credit Reporting Act and the Truth in Lending Act), and the laws for which authorities were transferred to the Bureau under subtitles F and H of the CFPA, as well as rules and orders issued by the Bureau under any of these laws.[2]

However, the Bureau is not the only enforcer of these laws. The CFPA recognizes the important role that States play in overseeing the consumer financial marketplace.[3] As noted in a 2010 Senate report on the financial crisis that precipitated the CFPA, "[w]here [F]ederal regulators refused to act, the [S]tates stepped into the breach."[4] These efforts

were stymied, however, because "rather than supporting [States'] anti-predatory lending laws [F]ederal regulators (a printed page 31941) preempted them." [5] Thus, Congress provided States with their own Bureau enforcement authority.

Case 2:25-cv-02614-DAD-CKD    Document 82    Filed 07/06/26    Page 48 of 65

Generally, State attorneys general may "bring a civil action in the name of such State in any district court of the United States in that State or in State court that is located in that State and that has jurisdiction over the defendant, to enforce provisions of this title [ *i.e.,* the CFPA] or regulations issued under this title, and to secure remedies under provisions of this titleor remedies otherwise provided under other law." [6] Likewise, a "state regulator may bring a civil action or other appropriate proceeding to enforce the provisions of this title or regulations issued under this title with respect to any entity that is State-chartered, incorporated, licensed, or otherwise authorized to do business under State law . . . and to secure remedies under provisions of this title or remedies otherwise provided under other provisions of law with respect to such an entity." [7] State attorneys general and regulators are required to consult the Bureau before initiating an action or proceeding under section 1042, in accordance with section 1042(b) and 12 CFR part 1082 (https://www.ecfr.gov/current/title-12/part-1082).

Section 1042, as one court has explained, allows States to vindicate their "fundamental right to protect their citizens and prevent harmful conduct from occurring in their jurisdictions" and gives them tools "to pick up slack when the [F]ederal Government fails to enforce and regulate." [8]

Since the CFPA was enacted, many States have relied on section 1042 to bring civil enforcement actions, on their own or in joint or coordinated filings with the Bureau, to enforce a provision of the CFPA that prohibits unfair, deceptive, and abusive acts and practices in connection with the offering or provision of consumer financial products or services.[9] Some States have also joined the Bureau in alleging violations of the CFPA's prohibition on covered persons and service providers violating other enumerated Federal consumer financial laws, but few have pursued such claims in their own CFPA actions. The Bureau is issuing this interpretive rule regarding several important aspects of section 1042. [10]

# III. Analysis

## A. States' Authority Under Section 1042 To Address Violations of Federal Consumer Financial Laws

CFPA section 1042 authorizes State attorneys general and State regulators to bring an enforcement action to pursue violations of section 1036(a)(1)(A), which makes it unlawful for a covered person or service provider to violate any Federal consumer financial law.[11]

As noted above, section 1042(a) generally authorizes States to bring civil actions "to enforce provisions of [the CFPA]." One such provision of the CFPA, section 1036(a)(1)(B), states that it is unlawful for any "covered person" or "service provider" to "engage in any unfair, deceptive, or abusive act or practice." [12] States can thus rely on section 1042(a) to pursue an enforcement action against a covered person or service provider that commits an unfair, deceptive, or abusive act or practice, and many States have filed such enforcement actions.

Additionally, another provision of the CFPA, section 1036(a)(1)(A), declares it unlawful for any "covered person" or "service provider" to "offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." [13] Because section 1036(a)(1)(A) is a "provision of [the CFPA]," States may use their section 1042 authority to enforce section 1036(a)(1)(A) against covered persons or service providers. Thus, when a covered person or service provider violates any of the Federal consumer financial laws, section 1042 gives States authority to address that violation by bringing a claim under section 1036(a)(1)(A) of the CFPA.

As explained above, the "Federal consumer financial laws" are the CFPA, the enumerated consumer laws, the laws for which authorities are transferred under subtitles F and H of the CFPA, and any rule or order prescribed by the Bureau under the CFPA, an enumerated consumer law, or pursuant to the authorities transferred under subtitles F and H. The enumerated consumer laws are the 18 laws referred to in section 1002(12) of the CFPA. Rules prescribed by the Bureau include, for example, the rules implementing the Real Estate Settlement Procedures Act (Regulation X),[14] the Truth in Lending Act (Regulation Z),[15] and the Fair Debt Collection Practices Act (Regulation F).[16] Orders prescribed by the Bureau include, for example, consent orders and other final orders issued by the Bureau under sections 1053 and 1055 of the CFPA.[17]

States' authority to pursue violations of the CFPA is, of course, supplemental to the authority States may already have to enforce the Federal consumer financial laws. Several enumerated consumer laws authorize States to bring actions to enforce the substantive provisions of those laws. Section 1042(a)(3) of the CFPA clarifies that it does not "modify[ ], limit[ ], or supersed[e] the operation of any [such] provision of an enumerated consumer law." [18] As a result, States can enforce those laws to the full extent authorized under those laws—including against entities that are not covered persons or service providers (and thus not subject to liability under section 1036(a)(1)(A)) and including against national banks and Federal savings associations. For example, the Fair Credit Reporting Act allows States to bring enforcement actions against any person violating that statute, including users of consumer reports that are not themselves covered persons or service providers.[19] The Real Estate Settlement Procedures Act authorizes States to enforce the anti-kickback rule against those who profit from kickbacks but are not actually providing settlement services, and thus may not be covered persons.[20] And the Truth in Lending Act authorizes States to enforce provisions of that statute against national banks and Federal savings associations. [21] Thus, States may bring such claims even if they could not bring similar claims against such a defendant under section 1036(a)(1)(A).

(🗎 printed page 31942)

## B. Limitations on States' Enforcement Authority Under Section 1042

The enforcement authority of States under section 1042 is generally not subject to certain limits applicable to the Bureau's enforcement authority.

Sections 1027 and 1029 of the CFPA set limits on the Bureau's enforcement authority. Under section 1027, the Bureau is subject to limits on its authority with respect to merchants, retailers, and other sellers of nonfinancial goods; real estate brokerage activities; retailers of manufactured or modular homes; accountants and tax preparers; attorneys engaged in the practice of law; persons regulated by a State insurance regulator; products or services that relate to specified employee benefit and compensation plans; persons regulated by a State securities commission; persons regulated by the Securities and Exchange Commission; persons regulated by the Commodity Futures Trading Commission; persons regulated by the Farm Credit Administration; and activities related to charitable contributions.[22] Similarly, under section 1029, the Bureau is limited in exercising authority with respect to a motor vehicle dealer that is predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor vehicles, or both.[23]

With one exception discussed below, each of these limitations expressly applies to only the "Bureau," or the Bureau's "Director." For example, under section 1027(e), "the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law," except as specified.[24] Likewise, under section 1029(a), "the Bureau may not exercise any rulemaking, supervisory, enforcement or any other authority, including any authority to order assessments, over a motor vehicle dealer that is predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor vehicles, or both," except as specified.[25]

Because Congress applied these limitations in sections 1027 and 1029 only to the Bureau, they do not extend to States exercising their enforcement authority under section 1042. Indeed, Congress used different language in the one exclusion that it intended to apply to States, the limitation on sellers of nonfinancial goods: "To the extent that the Bureau may not exercise authority under this subsection with respect to a merchant, retailer, or seller of nonfinancial goods or services, no action by a State attorney general or State regulator with respect to a claim made under this titlemay be brought under [section 1042], with respect to an activity described in any of clauses (i) through (iii) of subparagraph (A) by such merchant, retailer, or seller of nonfinancial goods or services." [26] Because Congress did not similarly extend the exclusions to States in other provisions of 1027 and 1029, and instead applied them only to the Bureau, those exclusions do not extend to States.[27]

## C. States May Pursue Actions Under Section 1042 Even While the Bureau Is Pursuing a Concurrent Action

State attorneys general and regulators may bring (or continue to pursue) actions under section 1042 even if the Bureau is pursuing a concurrent action against the same entity. As explained by the Third Circuit, "the clear statutory language of the Consumer [Financial] Protection Act permits concurrent [S]tate claims, for nothing in the statutory framework suggests otherwise." [28]

When Congress intended to preclude concurrent CFPA actions, it expressly did so. There are multiple places within the CFPA where Congress made clear that concurrent actions should not occur or that one agency should take primary enforcement role over other agencies. For example, with respect to nondepository covered persons, if the Bureau or the Federal Trade Commission (FTC) has filed an action asserting certain violations of the CFPA, the other agency is prohibited during the pendency of the action from instituting "a civil action under such provision of law against any defendant named in the complaint in such pending action for any violation alleged in the complaint." [29] Likewise, Congress limited States' ability to enforce rules relating to mortgage loan modification and

foreclosure rescue services during the pendency of enforcement activity by either the Bureau or the FTC.[30] Finally, Congress can—and did—designate the Bureau as holding primary CFPA enforcement authority among Federal regulators, limiting other agencies to the position of backup enforcement or precluding their authority to enforce entirely. Congress made that decision regarding supervised nondepository covered persons and very large banks, savings associations, and credit unions in sections 1024(c) and 1025(c), limiting the possibility of concurrent enforcement activity by the Bureau and certain Federal agencies. In short, when Congress seeks to limit concurrent statutory enforcement activity, it knows how to do so.[31] It did not exercise that option with respect to section 1042.

## V. Regulatory Matters

This is an interpretive rule issued under the Bureau's authority to interpret the CFPA, including under section 1022(b)(1) of the CFPA, which authorizes guidance as may be necessary or appropriate to enable the Bureau to administer and carry out the purposes and objectives of Federal consumer financial laws, such as the CFPA.[32]

As an interpretive rule, this rule is exempt from the notice-and-comment rulemaking requirements of the Administrative Procedure Act.[33] Because no notice of proposed rulemaking is required, the Regulatory Flexibility Act does not require an initial or final regulatory flexibility analysis.[34] The Bureau has also determined that this interpretive rule does not impose any new or revise any existing recordkeeping, reporting, or disclosure requirements on covered entities or members of the public that would be collections of information requiring approval by the Office of Management and Budget under the Paperwork Reduction Act.[35]

Pursuant to the Congressional Review Act,[36] the Bureau will submit a report containing this interpretive rule and other required information to the United States Senate, the United States House (⬚ printed page 31943) of Representatives, and the Comptroller General of the United States prior to the rule's published effective date. The Office of Information and Regulatory Affairs has designated this interpretive rule as not a "major rule" as defined by 5 U.S.C. 804(2) (https://www.govinfo.gov/link/uscode/5/804).

**Rohit Chopra,**
*Director, Consumer Financial Protection Bureau.*

## Footnotes

1. *Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Public Law 111-203 (https://www.govinfo.gov/link/plaw/111/public/203), 124 Stat. 1376, 1955-2113 (2010).*
Back to Citation

2. *12 U.S.C. 5481(14) (https://www.govinfo.gov/link/uscode/12/5481), (12).*
Back to Citation

3. *As defined in 12 U.S.C. 5481(27) (https://www.govinfo.gov/link/uscode/12/5481), "[t]he term `State' means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, Guam, American Samoa, or the United States Virgin Islands or any federally recognized Indian tribe, as defined by the Secretary of the Interior under section 5131(a) of title 25."*
Back to Citation

4. *S. Rep. No. 111-176, at 16 (2010), https://www.congress.gov/congressional-report/111th-congress/senate-report/176/1 (https://www.congress.gov/congressional-report/111th-congress/senate-report/176/1).*
Back to Citation

5. *Id.*
Back to Citation

6. *12 U.S.C. 5552(a)(1) (https://www.govinfo.gov/link/uscode/12/5552). With respect to national banks or Federal savings associations, State attorneys general may only "bring a civil action in the name of such State" in order "to enforce a regulation prescribed by the Bureau under a provision of this titleand to secure remedies under provisions of this titleor remedies otherwise provided under other law." 12 U.S.C. 5552(a)(2) (https://www.govinfo.gov/link/uscode/12/5552).*
Back to Citation

7. *Id.*
Back to Citation

8. *Pennsylvania v. Navient Corp., 967 F.3d 273, 286 (3d Cir. 2020).*
Back to Citation

9. *12 U.S.C. 5536(a)(1)(B) (https://www.govinfo.gov/link/uscode/12/5536); see also id. 5531.*
Back to Citation

10. *This interpretive rule is not intended as an exhaustive interpretation of section 1042.*
Back to Citation

11. *As noted above, however, section 1042 does not allow State attorneys general to bring an enforcement action against national banks or Federal savings associations, except for violations of "a regulation prescribed by the Bureau under a provision of this title." 12 U.S.C.*

5552(a)(2) (https://www.govinfo.gov/link/uscode/12/5552).

Back to Citation

12. *12 U.S.C. 5536(a)(1)(B) (https://www.govinfo.gov/link/uscode/12/5536).*
Back to Citation

13. *12 U.S.C. 5536(a)(1)(A) (https://www.govinfo.gov/link/uscode/12/5536); see also id. 5481(6) (defining "covered person"), 5481(26) (defining "service provider").*
Back to Citation

14. *12 CFR part 1024 (https://www.ecfr.gov/current/title-12/part-1024).*
Back to Citation

15. *12 CFR part 1026 (https://www.ecfr.gov/current/title-12/part-1026).*
Back to Citation

16. *12 CFR part 1006 (https://www.ecfr.gov/current/title-12/part-1006).*
Back to Citation

17. *These orders can generally be found at https://www.consumerfinance.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/ (https://www.consumerfinance.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/).*
Back to Citation

18. *12 U.S.C. 5552(a)(3) (https://www.govinfo.gov/link/uscode/12/5552).*
Back to Citation

19. *15 U.S.C. 1681s(c)(1) (https://www.govinfo.gov/link/uscode/15/1681s).*
Back to Citation

20. *12 U.S.C. 2607(d)(4) (https://www.govinfo.gov/link/uscode/12/2607).*
Back to Citation

21. *15 U.S.C. 1640(e) (https://www.govinfo.gov/link/uscode/15/1640).*
Back to Citation

22. *12 U.S.C. 5517 (https://www.govinfo.gov/link/uscode/12/5517). Each of these exclusions is subject to various exceptions as detailed in section 1027(a) through (l) and (n).*
Back to Citation

23. *12 U.S.C. 5519 (https://www.govinfo.gov/link/uscode/12/5519). As with the section 1027 limitations, this limitation is also subject to various exceptions as detailed in section 1029.*
Back to Citation

24. *12 U.S.C. 5517(e) (https://www.govinfo.gov/link/uscode/12/5517).*
Back to Citation

25. *12 U.S.C. 5519(a) (https://www.govinfo.gov/link/uscode/12/5519).*
Back to Citation

26. *12 U.S.C. 5517(a)(2)(E) (https://www.govinfo.gov/link/uscode/12/5517).*
Back to Citation

27.  *See, e.g., Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").*
Back to Citation

28.  *Navient Corp., 967 F.3d at 287.*
Back to Citation

29. *12 U.S.C. 5514(c)(3) (https://www.govinfo.gov/link/uscode/12/5514).*
Back to Citation

30. *12 U.S.C. 5538(b)(6) (https://www.govinfo.gov/link/uscode/12/5538).*
Back to Citation

31.  *See, e.g., Russello, 464 U.S. at 23 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").*
Back to Citation

32. *12 U.S.C. 5512(b)(1) (https://www.govinfo.gov/link/uscode/12/5512).*
Back to Citation

33.  *5 U.S.C. 553(b) (https://www.govinfo.gov/link/uscode/5/553).*
Back to Citation

34.  *5 U.S.C. 603(a) (https://www.govinfo.gov/link/uscode/5/603), 604(a) (https://www.govinfo.gov/link/uscode/5/604).*
Back to Citation

35.  *44 U.S.C. 3501-3521 (https://www.govinfo.gov/link/uscode/44/3501).*
Back to Citation

36.  *5 U.S.C. 801 (https://www.govinfo.gov/link/uscode/5/801) et seq.*
Back to Citation

[FR Doc. 2022-11356 (/d/2022-11356) Filed 5-25-22; 8:45 am]

BILLING CODE 4810-AM-P

RJN EXHIBIT "6"

**SENATE RULES COMMITTEE**                                                    AB 1864
Office of Senate Floor Analyses
(916) 651-1520    Fax: (916) 327-4478

---

THIRD READING

---

Bill No:     AB 1864
Author:     Limón (D)
Amended:    8/25/20 in Senate
Vote:        21

---

SENATE BUDGET & FISCAL REVIEW COMMITTEE:  13-5, 8/29/20
AYES: Mitchell, Beall, Caballero, Durazo, Hertzberg, Hurtado, Leyva, McGuire,
  Monning, Pan, Roth, Skinner, Wieckowski
NOES: Nielsen, Dahle, Melendez, Moorlach, Morrell

ASSEMBLY FLOOR:  Not relevant

---

**SUBJECT:** Financial institutions:  regulation:  Department of Financial
Protection and Innovation

**SOURCE:**  Author

---

**DIGEST:**   This bill seeks to reorganize and rename the Department of Business
Oversight (DBO), to clarify DBO's authority to enforce provisions of the federal
Dodd-Frank Wall Street Consumer Financial Protection Act of 2010 over existing
licensees, to protect consumers from unlawful, unfair, deceptive, or abusive acts or
practices, and to expand DBO's jurisdiction to cover currently unlicensed persons
that offer or provide consumer financial products and services in California.

**ANALYSIS:**  This bill contains the necessary changes to enact the California
Consumer Financial Protection Law (CCFPL) and add Division 24 to the Financial
Code with a purpose to promote consumer welfare, fair competition and wealth
creation in the state. More specifically, this bill:

*Reorganization and New Activities*

1) Retains all the powers, duties, responsibilities and functions of the DBO and
   renames it the Department of Financial Protection and Innovation (DFPI).

2) Merges the Division of Corporations and the Division of Financial Institutions under the Division of Corporations and Financial Institutions, overseen by a Senior Deputy Commissioner appointed by the Governor and subject to Senate confirmation.

3) Establishes and requires all moneys collected under the CCFPL to be deposited into the Financial Protection Fund.

4) Establishes the Financial Technology Office under DFPI to promote innovation and consumer access within financial technology services sector.

5) Establishes a new Division of Consumer Financial Protection with a Senior Deputy Commissioner appointed by the Governor and subject to Senate confirmation.

6) Authorizes the DFPI to perform new activities like consumer financial product market research and targeted consumer outreach and education programs.

*Clarifying Statutes and Provisions*

7) Clarifies that DFPI, as a state financial market regulator, has the authority to bring a civil action or other appropriate proceedings against an entity licensed, registered or subject to oversight by the DFPI to enforce the provisions of the Consumer Financial Protection Act of 2010 (12 U.S.C. Sec. 5481 et seq.) or regulations issued by the federal Consumer Financial Protection Bureau.

8) Clarifies that in the instance that a provision in this division is preempted by federal law, the provision shall not apply and shall not be enforced to the extent of that it is preempted.

9) Makes clear that enforcement authority provided by this bill is applicable only to acts and practices engaged in on or after the operative date of this act.

*Notable Definitions*

10) Defines a covered person as any person that engages in the offering or providing of a consumer financial product or service to a California resident.

11) Defines a service provider, with some exceptions, as any person providing a material service to a covered person in connection with the offering or provision by that covered person of a consumer financial product or service.

12) Provides that the CCFPL also makes other necessary definitions.

*Exemptions*

13) Exempts the following from CCFPL:

a)  A licensee or employee of a licensee of another state agency to the extent that licensee or employee is operating under the authority that state agency's license.

b)  A bank, bank holding company, trust company, savings and loan association, savings and loan holding company, credit union or an organization subject to oversight of the Farm Credit Administration when acting under the authority of federal law or the law of another state.

c)  A person or employee of that person to the extent that they are currently licensed under the authority of one of the specified divisions of the Financial Code and the Corporations Code. Exempted employees and licensees include: check sellers, bill payers, and proraters (Division 3 of the Financial Code); escrow agents (Division 6 of the Financial Code); finance lenders, finance brokers, program administrators, and mortgage loan originators (Division 9 of the Financial Code); residential mortgage lenders, mortgage servicers, and mortgage loan originators (Division 20 of the Financial Code); broker-dealers and investment advisors (Division 1 of Title 4 of the Corporations Code); capital access company licensees (Division 3 of Title 4 of the Corporations Code), and any person doing business under a license, charter, or certificate issued under the Financial Institutions Law (Divisions 1, 1.1, 1.2, 1.6, 5, 7, and 15 of the Financial Code).

*Prohibited Acts*

The CCFPL:

14) Prohibits covered persons or service providers from:

a)  Engaging in unlawful, unfair, deceptive, or abusive acts or practices with respect to consumer financial products or services.

b)  Offering or providing a consumer a financial product or service that is not in conformity with any consumer financial law.

c)  Failing or refusing to maintain and make accessible records required by a consumer financial law or any rule or order issued by the DFPI.

15) Holds any person who knowingly or recklessly provides substantial assistance to a covered person or service provider who violates the prohibited acts above liable to the same extent as the person who violates those acts.

*Unlawful, Unfair and Deceptive or Abusive Acts or Practices*

16) Defines "unfair" and "deceptive" acts and practices consistent with the California's Business and Professions Code (Section 17200) and related case law.

17) Defines "abusive" acts and practices as acts and practices that materially interfere with the ability of a consumer to understand terms or conditions of a financial product or service and/or that take unreasonable advantage of the lack of understanding of the consumer and/or the inability of the consumer to protect their interests in selecting or using a consumer financial product or service. This definition is consistent with provisions of the federal Consumer Financial Protection Act of 2010.

18) Allows the department to prescribe rules and regulations applicable to any covered person or service provider identifying unlawful, unfair, deceptive or abusive acts or practices in connection with the offering of:

   a) A consumer financial product or service. In promulgating these rules, the department is required to consider the relative harm to consumer, the frequency of the act or practice, and whether the act is unintentional or stems from a technical, clerical, or nonmaterial error.

   b) Commercial financing or other offering or provision of financial products and services to small business recipients, nonprofits and family farms. This rulemaking may include data collection and reporting.

*Registration Requirement and Oversight Activities*

19) Allows the DFPI to promulgate rules and regulations regarding registration requirements applicable to covered persons engaged in the business of offering or providing consumer financial products or services.

20) Allows the DFPI to set and collect an annual registration fee for each entity required to register. The required registration fee must be limited to the reasonable regulatory costs and take into account the size and market participation of the entity.

21) Allows the DFPI to prescribe regulations required to facilitate oversight of covered persons. Rules may require covered persons to generate, provide, or retain records for oversight purposes.

22) Allows the DFPI to prescribe rules to ensure that the features of any consumer financial product or service are accurate and disclosed to consumers in a manner that permits consumers to understand the risks, costs and benefits of the financial service or product.

23) Allows the DFPI to establish, by rule, reasonable procedures for covered persons and service providers to provide a timely response to consumers and the department concerning consumer inquiries or complaints.

24) Provides that the rules described above (19-23) must be promulgated prior to any related enforcement action by the DFPI against covered persons or service providers for a violation.

*Enforcement*

25) Authorizes the DFPI to bring an enforcement action against any covered person or service provider who engages in unlawful, unfair, deceptive or abusive practices with respect to consumer financial products and services.

26) Provides DFPI authority to seek relief including rescission or reformation of contracts, refunds, restitution, disgorgements, payment of damages, public notification regarding violations, set limits on the activities of the person cited, and impose the monetary penalties described immediately below.

27) Authorizes penalty amounts that range from $5,000 for each day the violation or failure to pay continues or $2,500 for each act or omission in violation to $1,000,000 for each day the violation or failure to pay continues or $25,000 for each act or omission in violation. These penalties are consistent with those provided in the federal Consumer Financial Protection Act of 2010.

28) Requires, in determining the size of the penalty, DFPI to take into account mitigating factors such as the gravity of the violation, the financial resources of the person charged, that person's history of violations, the severity of risks or losses to the consumer, and other related matters.

29) Authorizes the use funds obtained through enforcement of any of the laws administered by the DFPI, with some exceptions, to be used to administer the CCFPL.

30) Authorizes the department to enter into an agreement with the Attorney General with respect to civil actions. Ensures that nothing in the provisions provided limits the authority of the Attorney General to prosecute violations of civil or criminal laws.

31) Clarifies that nothing in the bill limits the authority of any district attorney or city attorney lawfully permitted to bring actions to enforce California's Unfair Competition Act.

*Legislative Oversight of DFPI*

32) Requires that the DFPI promulgate rules for registration of a covered person or service provider within three years after the second action to enforce a violation of the CCFPL against covered persons providing the same or substantially similar financial product or service.

33) Sunsets each registration requirement four years after the initial year of required registration of that category of covered persons. At the end of the sunset, requires the Legislature to conduct public hearings regarding the desirability or feasibility of extending, revising, or terminating the registration. Provides that the Legislature can:

a) Take action to extend the registration or

b) Incorporate the activity in which the covered person is authorized to engage into a new or existing licensing law.

c) Ensures that failure of the Legislature to do any of the above will not impact the DFPI's enforcement authority.

34) Requires the DFPI to submit a report of its activities related to the covered person required to be registered to the appropriate committees in the Legislature on or before December 1 before the year the registration regulation is scheduled to become inoperative.

35) Requires the Commissioner of the DFPI to appear before the appropriate committees of the Legislature annually and present a report reviewing all activities conducted to implement CCFPL during the prior year and all of the activities planned to implement the CCFPL during the upcoming year.

36) Requires the DFPI to prepare and publish on the department's website actions taken during the prior year including rulemaking, enforcement, activities of the financial technology innovation office, consumer complaints and resolutions,

education, outreach, research and recommendations for improved oversight, transparency and availability of financial products and services.

**FISCAL EFFECT:** Appropriation:  No      Fiscal Com.: Yes      Local: Yes

According to the Senate Budget and Fiscal Review Committee, this bill contains no fiscal appropriations. However, the Administration estimates a cost of $10.2 million and 44 positions in 2020-21, an additional $4.6 million and 28 positions in 2021- 22, and an additional $4.5 million and 18 staff positions in 2022-23 and ongoing funding. This is an overall increase of $19.3 million and 90 positions by the end of 2022-23 upon full implementation of DFPI.

**SUPPORT:** (Verified  8/29/20)

None received

**OPPOSITION:** (Verified  8/29/20)

None received

Prepared by:  Meron Tesfaye / B. & F.R. / 916-651-4103
8/31/20 0:32:05

**\*\*\*\*  END  \*\*\*\***

RJN EXHIBIT "7"

# DFPI website regarding settlements

https://dfpi.ca.gov/news/press-releases/?isGrid=false&start=0&model=DFPI&searchStudioQuery=million%20lender&facets=&orderBy=

---

PRESS RELEASE

## California and federal government secure $3 million in refunds for mortgage fraud victims

Published: Jun 09, 2026

The DFPI announced today that more than 1,800 consumers — about half of them from California — who were victims of a multiyear mortgage fraud scheme, will soon receive refunds totaling nearly $3 million.

---

PRESS RELEASE

## DFPI Secures $4 Million Penalty Against Florida Company Navitas for Lending Without a License

Published: Jun 08, 2026

The DFPI today announced that it has ordered Florida-based Navitas Credit Corp. (Navitas) to pay a $4 million penalty for carrying out unlicensed lending activities – a violation of the California Financing Law (CFL).

---

PRESS RELEASE

## DFPI Secures $1 Million Settlement with Yotta Technologies for Deceptive Practices

Published: May 15, 2026

DFPI takes action after a California fintech company deceives financial customers. Yotta is required to provide notice and documents to impacted Californians to assist with fund recovery.